12 of 24 DOCUMENTS

Copyright 2000 Crain Communications, Inc.
Pensions and Investments

June 26, 2000, Monday

**SECTION:** Pg. 19

**LENGTH:** 874 words

**HEADLINE:** ONCE NEW, NOW OLD: BofA plan to take on modern face

**BYLINE:** Vineeta Anand

**BODY:**

CHARLOTTE, N.C. -- The nation's first cash balance plan is being scuttled in favor of a more innovative one.

Beginning July 1, participants in the 15-year-old, plain vanilla Bank of America Corp. cash balance plan will be moved into the 2-year-old NationsBank Corp. plan. Assets of the combined plans total $8 billion.

BofA, San Francisco, and NationsBank, Charlotte, merged in September 1998; the merged entity was named Bank of America, and is based in Charlotte. NationsBank launched its cash balance plan in July 1998.

Also beginning July 1, employees of the original BofA may roll over assets in their $4.7 billion 401(k) plan into the NationsBank-created cash balance plan. They then can rebuild their 401(k) account balances.

Most money moved

When that option was offered to the company's East Coast employees in 1998, they moved 74% of their 401(k) money to the cash balance plan.

What makes NationsBank's cash balance plan unusual is participants' ability to invest, on paper, in 12 investment options: company stock; large-cap, midcap and small-cap index funds; aggressive growth fund; value fund; international equity fund; investment-grade bond fund; stable capital fund; and three portfolios called balanced growth, growth and income and growth.

Participants' cash balance accounts grow in accordance with the return on the options they pick. They can check the value of their accounts and move money daily among the options.

In a plain vanilla cash balance plan, the company predetermines the return on employees' accounts, for example, the return on 30-year Treasury bills plus one percentage point.

The company also will credit all employees' hypothetical accounts with credits linked to age and service, ranging from 2% of pay for the youngest, shortest-tenured employees to 8% of pay for the oldest, longest-tenured employees.

NationsBank originally credited between 1% for the youngest, shortest-tenured employees to up to 10% of pay for accounts of the oldest, longest-tenured employees.

When they move into the cash balance plan created by NationsBank, the original Bank of America employees will get the same safety net the East Coast employees have had. Regardless of how their investment options perform, at a minimum they will get the company's annual contribution, plus the amount of money they moved from the 401(k) plan and the pension benefits they had accrued.

Concurrently, the company is letting new employees participate in the 401(k) plan after just a month on the job, instead of the old one-year waiting period.

Moreover, the company is boosting its matching contribution in the 401(k) plan to 100% up to 5% of pay, from 75% up to 6% of pay.

But the company might have a tough time getting the necessary IRS blessing on its amended plan.

Last September, the Internal Revenue Service began requiring regional offices to send all requests for "determination letters" or clearance of cash balance plan conversions to the Washington office for analysis.

The head office of the IRS has, in effect, imposed a moratorium on any new determination letters for cash balance plans.

Although NationsBank sought and received the IRS' blessing for the plan in January 1997, well before it set up the remarkable cash balance plan, questions later were raised about whether the IRS agent who approved the plan really understood its ramifications.

In private conversations, regulators since have hinted they are troubled by that plan design.

For one thing, regulators strongly disapprove of the way the company has defined normal retirement age -- to which various calculations are pegged in a defined benefit plan -- as age 65 or five years of service, whichever comes first. That's because such an abbreviated normal retirement age overrides the provisions in federal pension and tax law aimed at ensuring that pension plans do not stack benefits heavily in favor of longer-tenured employees.

Short span

Moreover, a short normal retirement age allows employers to give departing employees only their account balances, without conducting onerous calculations to determine the present value of their pension benefit at retirement age (Pensions & Investments, May 31, 1999).

"The five-year normal retirement age looks like a contrivance to get around rules," said an expert who did not wish to be identified.

Moreover, the cash balance plan could flunk the anti-backloading provisions in the Employee Retirement Income Security Act because the benefit formula rises steeply from credits of 2% of pay for young workers to 8% of pay for older, longer-tenured employees, the expert said.

That formula, while resembling that of a traditional defined benefit plan, contradicts the purported aim of cash balance plans -- to give younger, mobile workers a bigger pension than they otherwise would have gotten.

"That plan would have difficulty passing the accrual rules because it is so backloaded. Normally cash balance plans are front-loaded," the expert pointed out.

Even if the IRS does not sign off on the plan, the company has little risk of losing its tax-favored status. Instead, the regulator might ask the company to change aspects of the plan it does not like.

**GRAPHIC:** Bank of America employees will switch to NationsBank's cash balance plan.

**LOAD-DATE:** June 30, 2000

# No. 02-3674

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

DAVID BERGER AND GERRY TSUPROS,
on behalf of themselves and others similarly situated,

        Plaintiffs-Appellees,

v.

XEROX CORPORATION RETIREMENT
INCOME GUARANTEE PLAN,

        Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois,
Hon. David R. Herndon, District Judge

## BRIEF OF THE
## PLAINTIFFS-APPELLEES

Lee A. Freeman, Jr.
James T. Malysiak
Freeman, Freeman & Salzman, P.C.
401 N. Michigan Avenue
Suite 3200
Chicago, IL 60611-4207
(312) 222-5100
(312) 822-0870 (facsimile)

Steven A. Katz
Douglas R. Sprong
Carr, Korein, Tillery, LLC
10 Executive Woods Ct.
Belleville, IL 62226
(618) 277-1180
(618) 277-9804 (facsimile)

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)

Counsel for Plaintiffs-Appellees

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ iii

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF ISSUES PRESENTED ............................................ 3

STATEMENT OF THE CASE .......................................................... 4

    Nature of the Case ................................................................ 4
    Proceedings Below ................................................................ 5
    Statement of Facts ................................................................ 8

SUMMARY OF ARGUMENT ......................................................... 12

ARGUMENT ............................................................................ 13

I.    The Xerox Plan Systematically Underpaid Lump Sums ................... 13

    A.    The Plan Cannot Opt Out of ERISA's Requirements ................. 13

    B.    *Esden, Lyons*, and IRS Notice 96-8 Directly Support the
        District Court's Decision ................................................ 18

        1.    *Esden* ............................................................ 19
        2.    *Lyons* ............................................................ 21
        3.    IRS Notice 96-8 ................................................. 22

    C.    The Plan Cannot Justify Its Failure To Use the Interest Crediting
        Rate in Determining the Normal Retirement Benefit ................ 25

    D.    The Retirement Protection Act of 1994 Did Not Change the
        Requirements for Determining Present Value ........................ 26

II.    The District Court Properly Certified a Rule 23(b)(2) Class ............. 30

    A.    The Class Is Entitled to Equitable and Incidental Monetary Relief ... 30

**Page**

        1. The Relief Sought Is Equitable .................................. 30
        2. The Restitution Remedy Here Is Appropriate .................... 33
        3. The Class Recovery of Additional Benefits is Incidental
           to the Declaratory Relief Granted ............................. 34

    B. Alternatively, Certification Is Proper under Rule 23(b)(1) ................. 35

    C. Berger and Tsupros Are Proper Class Representatives Regardless
       of Their Ultimate Individual Recoveries ............................. 36

III. The District Court's Class-Wide Remedy Was Proper ........................ 38

    A. Exhaustion Was Not Required and Would Have Been Futile ............... 38

    B. The District Court Correctly Chose the Interest Crediting Rate
       as the Projection Rate ............................................. 39

    C. The District Court Correctly Limited Use of 120% of the
       PBGC Rate to CBRA Benefit Amounts With a Present
       Value Exceeding $25,000 ........................................ 42

    D. A Mortality Discount Is Improper Because a Participant's Beneficiary
       Receives the Full CBRA Benefit ................................... 44

    E. The Court Properly Directed Its Order to the Plan Itself ................... 46

    F. The District Court Properly Awarded Prejudgment Interest at the
       Prime Rate ...................................................... 46

CONCLUSION ................................................................ 47

CERTIFICATE OF COMPLIANCE

CIRCUIT RULE 31(e) CERTIFICATION

Appendix 1: Brief of the United States as *Amicus Curiae* in *Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan, et al.*, 11th Cir. No. 99-10640-GG, pp. 4-10

CERTIFICATE OF SERVICE

contributions. The Plan makes its argument based on § 411(c)(2)(B) without even acknowledging the Second Circuit's refutation of it in *Esden*: The "focus" of § 411(c)(2) "is on the proper valuation (including a reasonable investment return) of employees' *actual* past contributions, not the present valuation of accrued future benefits promised by the employer." 229 F.3d at 171 (emphasis supplied by the Court).

### D. The Retirement Protection Act of 1994 Did Not Change the Requirements for Determining Present Value.

The Xerox Plan asserts that the Retirement Protection Act of 1994[17] ("RPA") repealed the statutory basis for the District Court's holding that lump sum recipients had been underpaid throughout the 1990s. (Plan Br. 60-61) The Plan offers no specific argument in support of its assertion, merely cites the district court's decision on remand from the Eleventh Circuit's decision in *Lyons*,[18] and concludes by observing that "if" the *Lyons* district court's holding is correct, then the District Court's judgment in this case must be reversed in its entirety.

The Plan's failure to make its own argument on this point and instead to "adopt by reference" the *Lyons* district court decision in lieu of an argument should not be allowed. *DeSilva v. DiLeonardi*, 181 F.3d 865, 866-867 (7th Cir. 1999).

The Plan also errs by asserting that adoption of the *Lyons* district court's holding would require reversal of the District Court here. First and foremost, the *Lyons* decision involves a plan that did not specify a discount rate; thus, the district court was compelled to decide what rate the plan had to use to determine present value. In this case, Plan § 8.2(a)(v) (JA 132-133) specifies

---

[17] P.L. 103-465, § 767(c), 108 Stat. 4809, 5039.

[18] *Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Fund*, 196 F. Supp. 2d 1260, 1273 (N.D. Ga. 2002).

what discount rates to use to determine present value. Thus, even if the RPA allowed plans to use any discount rate for distributions in excess of $3,500 (and it did not), that is irrelevant to the Xerox Plan, which must use the rate specified in the Plan. *See* 29 U.S.C. § 1104(a)(1)(D) (plan must be run in accordance with its ERISA-compliant provisions).

Second, that aspect of the *Lyons* decision was limited to the period after 1994 when the RPA became effective. 196 F. Supp.2d at 1271-1272.

Finally, the cursory analysis by the *Lyons* district court is incorrect and, if addressed at all by this Court, should be rejected. The Second Circuit in *Esden*, 229 F.3d at 174-175, found ERISA § 203(e), 29 U.S.C. 1053(e)[19]—in its form prior to the RPA's enactment—ambiguous on the issue of whether the present value requirements for lump sum payments applied to all such distributions or were limited to small distributions (then not exceeding $3,500) that could be distributed at any time without the participant's consent. But the Second Circuit resolved that ambiguity through the

---

[19] Section 203(e) then read as follows:

(e) Consent for distribution; present value; covered distributions.

(1) If the present value of any nonforfeitable benefit with respect to a participant in a plan exceeds $3,500, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant.

(2)(A) For purposes of paragraph (1), the present value shall be calculated-- (i) by using an interest rate no greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and (ii) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (i)). In no event shall the present value determined under subclause (II) [ sic] be less than $25,000.

(B) For purposes of subparagraph (A), the term "applicable interest rate" means the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

27