IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN D. WEST, on Behalf of          :
Himself and All Other Persons       :
Similarly Situated                  :
                                    :
            Plaintiff,              :
                                    :
        vs.                         :      Case 1:02cv0001
                                    :
AK STEEL CORPORATION                :
RETIREMENT ACCUMULATION PENSION     :
PLAN, et al.                        :
                                    :
            Defendant.              :


<u>ORDER</u>

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 37) and Defendants' Motion for Summary Judgment (Doc. No. 39). Plaintiffs' filed a joint memorandum in opposition to Defendants' motion and a reply in support of their own motion (Doc. No. 42) to which Defendants filed a reply (Doc. No. 44). The parties filed a number of supplemental filings of recent authority relating to the issues raised in this case. (Doc. No. 45, 47, and 48).

I.    **BACKGROUND**

This class action[1] was brought by former participants of the

---

[1]The Court certified the class on March 9, 2004. (Doc. No. 55).

AK Steel Corporation Retirement Accumulation Pension Plan ("the AK Steel Plan")[2] against the AK Steel Plan and the AK Steel Corporation Benefit Plans Administrative Committee ("the AK Steel Committee") for violations of the Employee Retirement Income Act of 1974 ("ERISA") and the Internal Revenue Code ("I.R.C.")  (Doc. No. 1, ¶ 31).

The AK Steel Plan is a cash balance plan, a hybrid of a traditional defined benefits plan and a traditional defined contribution plan.[3]  Under a cash balance plan, an employee has a hypothetical account balance which periodically increases by a specified percentage of the employee's salary ("a compensation credit") plus an interest credit.  When an employee reaches the normal age of retirement (usually age 65), his or her pension benefit is the value of the hypothetical account balance in the form of a single life annuity and/or a lump sum disbursement.

The issue in this case is the manner in which a participant's benefit is calculated in the event his or her participation in the

---

[2]The AK Steel Plan is a component of a larger plan, the AK Steel Corporation Noncontributory Pension Plan, which resulted from the merger of Armco with AK Steel Corporation and the merger of their respective pension plans in 1999.

[3]Under a traditional defined contribution plan, an employee's pension benefit is the value of his or her retirement account to which contributions have been made by the employer and/or employee.  Under a defined benefit plan, an employee's pension benefit is an amount, either in the form of an annuity or lump sum, equal to a specified percentage of the employee's salary in the final years of his employment.

AK Steel Plan is terminated prior to reaching normal retirement age.[4]  Under the AK Steel Plan, such a participant may elect to receive his or her pension benefit in the form of an immediate lump sum disbursement.  The amount of the lump sum disbursement is equal to the amount of a participants's hypothetical account balance.

Plaintiffs have brought the current action alleging that the manner in which their lump sum disbursements were calculated under the AK Steel Plan violated ERISA and the I.R.C.  Plaintiffs are seeking partial summary judgment on the issue of liability and Defendants are seeking summary judgment on all of Plaintiffs' claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party

---

[4]Armco converted its traditional defined benefit plan into a cash balance plan on January 1, 1995.  Employees affected by the conversion received two types of hypothetical accounts – a Future Account and an Opening Account.  The Future Account was for service after January 1, 1995 and was credited with both compensation and interest credits.  The Opening Account included benefits earned prior to January 1, 1995.  An employee's Opening Account balance was determined by converting an employee's pre-1995 life annuity benefit into an account balance by calculating the present value of the employee's life annuity using a 7.5% discount rate.  After the initial conversion, only interest credits were added to the Opening Account.

opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, *Superior Roll Forming Co. v. InterRoyal Corp.*, 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962).

## III. DISCUSSION

ERISA classifies retirement plans as either defined

contribution plans or defined benefit plans.  *See* ERISA §§ 3(34), (35), 29 U.S.C. §§ 1002 (34), (35).  If a plan does not meet the definition of a defined contribution plan, it is considered a defined benefit plan by default.  ERISA § 3(35).  Cash balance plans fall into this category.  As such, the terms and administration of a cash balance plan must comply with the same ERISA requirements as those for a traditional defined benefit plan.

The issue before the Court is whether the lump sum disbursements received by Plaintiffs complied with ERISA's requirements relating to the early payment of pension benefits.[5] Generally, a pension benefit under a traditional defined benefit plan is in the form of an annual benefit beginning when a participant reaches retirement age.  Consequently, ERISA defines a participant's accrued benefit under a defined benefit plan as an "individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age."  ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A).

While ERISA defines an accrued benefit in the form of an annual benefit, it does not actually mandate that pension benefits be paid in such a form.  Thus, plans are permitted to disburse benefits in other forms, such as a lump sum disbursement.  To protect a participant who receives his or her benefit in the form

---

[5]Plaintiffs have brought identical claims under both ERISA and the I.R.C. For the sake of simplicity the Court will analyze Plaintiffs' claims under ERISA.

of a non-annuity, ERISA requires that when a pension benefit takes some other form than an annual benefit, the alternative form must "be the actuarial equivalent" of an annuity commencing at normal retirement age. *See* ERISA § 204(c)(3), 29 U.S.C. 1054(c)(3). *See also, Berger v. Xerox*, 338 F.3d 755, 759 (7th Cir. 2003)("ERISA requires that any lump sum substitute for an accrued pension benefit be the actuarial equivalent of that benefit."); *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2nd Cir. 2000), *cert. dismissed*, 531 U.S. 1061 (2001). Consequently, a lump sum disbursement, like the ones received by Plaintiffs under the AK Steel Plan, must be the actuarial equivalent of the annual benefit the participants would have received at normal retirement age.[6]

In the case of a cash balance plan, the actuarial equivalent is calculated by projecting a participant's hypothetical account balance to normal retirement age using the rate at which future interest credits would have been calculated if the participant had remained in the plan until retirement age and then discounting it back to its present value. *See Xerox*, 338 F.3d at 760; *Esden*, 229 F.3d at 159. If the rate at which a participant's hypothetical account balance is projected forward is the same as the rate at which it is discounted back, the amount of the participant's lump sum disbursement will be equal to the amount of his or her hypothetical account balance. However, if the projection rate is

---

[6]Normal retirement age under the AK Steel Plan is 65.

higher than the discount rate, the amount of the participant's lump sum disbursement will be larger than his or her hypothetical account balance.  Such a situation exists if a cash balance plan's rate for calculating future interest credits is higher than the discount rate established by ERISA.  This is commonly referred to as a "whipsaw" calculation.  *See Esden*, 229 F.3d at 159, fn. 7.

Administrators of cash balance plans are naturally reluctant to engage in whipsaw calculations because participants whose participation in a plan is terminated prior to normal retirement age would receive lump sum disbursements larger than their hypothetical account balances.  Despite the existence of regulations upholding whipsaw calculations, sponsors of cash balance plans have argued that whipsaw calculations are not required under ERISA.  *See* T.R. § 1.411(a)-11 (d), 26 C.F.R. §1.411(a)-11(d); I.R.S. Notice 96-8.  Several courts have addressed this issue and have consistently held that ERISA's valuation rules are valid and that cash balance must comply with these valuation rules even if such compliance results in a whipsaw effect.  *See Xerox*, 338 F.3d at 763;  *Esden*, 229 F.3d at 165-68.[7]

---

[7]In *Esden*, the court explained the purpose of ERISA's valuation rules:

> For the purposes of [actuarial equivalence], the regulations do not leave a plan free to choose its own methodology for determining the actuarial equivalent of the accrued benefit expressed as an annuity payable at normal retirement age.  If plans were free to determine their own assumptions and methodology, they could

7

Based on these authorities, Plaintiffs argue that the administrators of the AK Steel Plan were required to engage in a whipsaw calculation when calculating their early lump sum disbursements. Under the current administration of the AK Steel Plan, lump sum disbursements paid prior to normal retirement age are equal to the amount of a participant's hypothetical account balance at the time he or she stopped participating in the plan. Plaintiffs' contend that this practice violates ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), because such lump sum disbursements are not the actuarial equivalent of the annual benefit to which Plaintiffs would have been entitled if they had remained in the AK Steel Plan until age 65.

Defendants disagree, arguing that the facts of the present case distinguish it from the case law upholding whipsaw calculations. Specifically, Defendants argue that, under the AK Steel Plan, the projection rate is a statutory rate established by ERISA rather than the rate established by the AK Steel Plan. Furthermore, Defendants argue that, due to changes in the law, the discount rate that should be used in the calculation of an AK Steel Plan participant's lump sum disbursement is not established by ERISA, as was the case in the *Xerox* and *Esden* cases. If

------

effectively eviscerate the protections provided by ERISA's requirement of "actuarial equivalence."

*Esden*, 229 F.3d at 164.

Defendants' prevail on both of these arguments, the projection and discount rates would be the same. Therefore, the rates would cancel each other out and the amount of Plaintiffs' lump sum disbursements would be the same as their hypothetical account balances.

**a.    Projection Rate**

Defendants argue that to the extent that any projection forward is required, the projection rate is established by ERISA rather than the terms of the AK Steel Plan.[8]  Specifically, Defendants contend that the projection rate of a participant's hypothetical account balance is controlled by ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3)[9].  According to Defendants, the purpose of §

---

[8]Defendants contend that the *Xerox* and *Esden* courts were never presented with this particular argument and therefore, did not consider it when reaching their respective holdings.

[9]ERISA § 204(c)(3) provides as follows:

> For the purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than an annual benefit in the form of a single life annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).

204(c)(3) is to convert a "plan accrued benefit" that is in the form of a non-annuity, such as a hypothetical account balance, into an annual benefit commencing at normal retirement age. Defendants' characterize the product of this conversion as a participant's "statutory accrued benefit".[10] Because the administrators of the AK Steel Plan view a participant's "plan accrued benefit" as the participant's hypothetical account balance, Defendants' argue that § 204(c)(3) controls the projection of a participant's hypothetical account balance to normal retirement age.

The Court need not reach the merits of Defendant's interpretation of § 204(c)(3) because Defendant's argument fails on a more fundamental basis. The premise underlying Defendants' entire argument is that a participant's accrued benefit under the AK Steel Plan is the participant's hypothetical account balance. However, § 1.2 of the AK Steel Plan plainly states that the term "accrued benefit" means "[a participant's hypothetical account] payable *in the form of a single life annuity commencing on a Participant's Normal Retirement Date* . . . that is the Actuarial Equivalent of the Participant's current Account."[11] (Doc. 39, Exh.

---

[10]The terms "plan accrued benefit" and "statutory accrued benefit" do not appear anywhere in ERISA's statutory scheme.

[11]Section 1.2 provides in full:

"Accrued Benefit" means that Accounts payable in the form of a single life annuity commencing on a Participant's Normal Retirement Date (or, if later, such Participant's actual retirement date) that is the

2, § 1.2)(emphasis added). Thus, contrary to Defendants' premise, a participant's accrued benefit under the AK Steel Plan is an annuity rather than his or her hypothetical account balance. Consequently, it does not appear that the provisions § 204(c)(3) are even triggered with respect to the projection forward of a participant's hypothetical account balance.

Despite the plain language of § 1.2, Defendants contend that a participant's accrued benefit under the AK Steel Plan is, in fact, his or her hypothetical account balance rather than the single life annuity referenced in § 1.2. Defendants argue that § 1.2 is merely the incorporation of the provisions of § 204(c)(3) into the AK Steel Plan. Thus, according to Defendants, § 1.2 defines a participant's "statutory accrued benefit" not a participant's "plan accrued benefit".

Defendants' argument, although creative, ignores a fundamental principle of ERISA law – the plain language of the plan controls. *E.g.*, *Marquette General Hospital v. Goodman Forest Industries*, 315 F.3d 629, 633 (6th Cir. 2003)("ERISA plans should be interpreted

---

Actuarial Equivalent of the Participant's current Account. The Account is projected to Normal Retirement Date and converted to a single life annuity using the factors set forth in Exhibit I. This single life annuity shall be determined by dividing the then current value of such Participant's Account by the applicable factor as described in Section A of Exhibit I.

(Doc. No. 39, Exh.2, § 1.2)

11

'according to their plain meaning, in an ordinary and popular sense.'"(quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998))  The AK Steel Plan does not distinguish between a "plan accrued benefit" and a "statutory accrued benefit".  Under the plain language of the Plan, the term "accrued benefit" is defined as a single life annuity commencing at normal retirement age.  Accordingly, a participant's accrued benefit under the AK Steel Plan is in the form of an annual benefit commencing at normal retirement age.  If the Plan drafters had intended otherwise, (*i.e.*, that § 1.2 merely be a restatement of § 204(c)(3)), they could have indicated that intent in the language of the Plan.  They did not do so.  Therefore, because a participant's accrued benefit is defined by the AK Steel Plan in the form of an annual benefit commencing at age 65, the provisions of § 204(c)(3) are not implicated in the projection of a participant's hypothetical account balance.

Under I.R.S. Notice 96-8, *Xerox*, and *Esden*, the projection rate is the rate at which future interest credits are calculated.  I.R.S. Notice 96-8(III)(B)(1), *Xerox*, 338 F.3d at 760; *Esden*, 229 F.3d at 165-68.  Neither of the parties have provided the Court with a clear understanding of the rate at which the AK Steel Plan calculates future interest credits.  It appears that the parties anticipate that the rate will be determined during the damages phase of this litigation in the event the Court finds in favor of

Plaintiffs on liability.[12]

**b.    Discount Rate**

In addition to disagreeing on the projection rate, the parties also disagree on the appropriate discount rate that should be used when calculating the present value of a participant's accrued benefit.    Plaintiffs argue that the present value calculation should be performed using the rates established by ERISA § 205(g)(3), 29 U.S.C. 1055(g)(3).[13]  *See* ERISA § 203(e)(2), 29 U.S.C. § 1053(e)(2).    In support of their argument, Plaintiffs rely on

---

[12]During briefing of their respective motions, both parties have argued that the appropriate projection rates can be found in Exhibit I of the AK Steel Plan.  Plaintiffs' argue that the appropriate rate can be found in Exhibit I(A) while Defendants' argue that it can be found in Exhibit I(C).  The Court is not convinced that either of the parties are correct on this point. The interest credit rate for Future and Opening Accounts is established in § 3.3 of the AK Steel Plan.  The Court believes it is this rate that should be used when projecting Plaintiffs' hypothetical account balances to normal retirement age.

When determining the projection rate under § 3.3, consideration must be given to minimum/maximum rates established by § 3.3 and to the appropriate methods for performing actuarial equivalency calculations using a variable interest rate.  *See Esden*, 229 F.3d at 176 (projection rate could not fall below the 5.5 % floor established in the plan); *Xerox*, 338 F.3d at 760 (T.R. § 1.401(a)(4)-8(c)(3)(v)(B) provides the methods for performing calculations using a variable interest rate).

[13]ERISA and the I.R.C. have a number of parallel provisions with nearly identical wording.  *Lyons*, 221 F.3d at 1243.  ERISA § 205(g) is the counterpart to I.R.C. § 417(e) and ERISA § 203(e) is the counterpart to I.R.C. 411(a)(11).  To avoid confusion, the Court will only refer to the ERISA code sections.

T.R. § 1.411(a)-11 (d), 26 C.F.R. §1.411(a)-11(d),[14] and I.R.S. Notice 96-8, both of which require that the present value calculation for consensual lump sum disbursements be performed using the discount rates established in ERISA § 205(g)[15]. The requirements of T.R. § 1.411(a)-11(d) and I.R.S. Notice 96-8 have been upheld by a number of courts. *Xerox*, 339 F.3d at 762 ("I.R.S. Notice 96-8 is "an authoritative interpretation of the applicable [ERISA] statutes and regulations . . .")(citing *Esden*, 229 F.3d at 168-69)); *Esden*, 229 F.3d at 168-71, 173-74; *Lyons v. Georgia-Pacific Corporation*, 221 F.3d 1235, 1249 (11th Cir. 2000)("*Lyons II*"), *cert. denied*, 532 U.S. 967 (2001).

Defendants argue that the § 205(g)(3) rates are not applicable in this case because T.R. § 1.411(a)-11(d) was invalidated when ERISA § 203(e), the ERISA statute underlying T.R. § 1.411(a)-11(d), was amended in 1994. To fully understand Defendants argument, a review of the history of § 203(e) is required.

ERISA § 203(e) was enacted in 1984, prior to the advent of cash balance accounts. As originally enacted, § 203(e), which was titled "Restrictions on mandatory distributions", required that a participant's consent be obtained before a participant's accrued

---

[14]T.R. § 1.411(a)-11(d) was promulgated under I.R.C. § 411(a)(11). ERISA § 3002(c), 29 U.S.C. § 1202(c), makes T.R. § 1.411(a)-11(d) applicable to ERISA § 203(e).

[15]T.R. § 1.411(a)-11 (d) and I.R.S. Notice 96-8 refer to I.R.C. § 411(e). However, as explained in footnote 14, such regulations are also applicable to ERISA § 203(e).

benefit could be distributed as a lump sum if the present value of the participant's accrued benefit exceeded $3500.[16]   The second paragraph of the statute established the rate at which the present value calculation should be performed.   ERISA § 203(e)(2).   It is Defendant's position that the *sole* application of § 203(e)(2) was to calculate the present value of a participant's accrued benefit for the purpose of determining whether the present value of the benefit exceeded $3500.   Defendant's interpretation of § 203(e)(2) is based on the legislative history[17] of the statute and on the fact

---

[16]The 1984 version of § 203(e) provides:

(e)   Restrictions on mandatory distributions

     (1)   If the present value of any accrued benefit exceeds $3,500, such benefit shall not be treated as nonforfeitable if the plan provides that the present value of such benefit could be immediately distributed without the consent of the participant.

     (2)   For purposes of paragraph (1), the present value shall be calculated by using an interest rate not greater than the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

Pub. L. No. 98-397 § 105(1984); 29 U.S.C. § 1053(e)(1985).

[17]In support of their position, Defendants point to the Senate Report accompanying the 1984 Act, which states as follows:

Under present law, in the case of an employee whose plan participation terminates, a pension, profit-sharing, or stock bonus plan (pension plan) may involuntarily "cash out" the benefit (i.e., pay out the balance to the credit of a plan participant without the

that § 203(e)(2) opened with the phrase "[f]or the purposes of paragraph (1)", indicating that the present value calculation of paragraph 2 was only performed to determine the need for consent described in paragraph 1.  The significance of Defendants' argument will become apparent as the Court proceeds with its analysis.

In 1986, § 203(e) was amended.  The discount rate established in § 203(e)(2) was replaced with discount rates that varied depending on whether a participant's accrued benefit was at or above or below $25,000.[18]  Additionally, the heading of § 203(e)

---

participant's consent) if the present value of the benefit does not exceed $1,750 . . .

. . .

Explanation of Provisions

The bill provides that, if the present value of an accrued benefit exceeds $3,500, then the benefit is not to be considered non-forfeitable if the plan provides that the present value of the benefit can be immediately distributed **without the consent of the participant . . . Under the bill, the interest rate to be used in determining whether the present value of a benefit exceeds $3,500** is not to be greater than the interest rate that would be used (as of the date of distribution) by the Pension Benefit Guaranty Corporation (PBGC) for the purposes of determining the present value of a lump sum distribution upon termination of the plan.

S.Rep. No. 98-575 (1984), reprinted in 1984 U.S.C.C.A.N. 2547, 2569 (emphasis added).

[18]The 1986 version of § 203(e) provides:

(e)  Consent for distribution; present value; covered distributions

(1)  If the present value of any nonforfeitable benefit

16

was changed from "Restrictions on mandatory distributions" to "Consent for distribution; present value; covered distributions."[19] Shortly thereafter, T.R. § 1.411(a)-11(d) was promulgated requiring consensual lump sum disbursements to be discounted using the rates

---

with respect to a participant in a plan exceeds $3,500, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant.

(2)(A)    For purposes of paragraph (1), the present value shall be calculated –

(i)  by using an interest rate not greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and

(ii) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (I)).

In no event shall the present value determined under subclause (ii) be less than $25,0000.

(B)  For purposes of subparagraph (A), the term "applicable interest rate" means the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

29 U.S.C. § 1053(e)(1990).

[19]The heading change occurred later in 1986 and was made by the Office of the Law Revision Counsel. *Lyons II*, 221 F.3d at 1246, fn. 19.

established in § 205(g).[20]

In *Esden* and *Lyons II*, T.R. § 1.411(a)-11(d) was challenged on the grounds that it exceeded the scope of the statute under which it was promulgated and was, therefore, invalid under *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837 (1984).[21]  *Esden*, 229 F.3d at 173; *Lyons II*, 221 F.3d at 1244. Specifically, it was argued that § 203(e) only applied to non-consensual lump sum disbursements, not consensual lump sum disbursements.[22]  *Esden*, 229 F.3d at 173; *Lyons II*, 221 F.3d at 1245.  The *Esden* and *Lyons II* courts disagreed.  *Esden*, 229 F.3d at 174; *Lyons II*, 221 F.3d at 1245.  The courts noted that the statute accounted for accrued benefits up to and in excess of $25,000 when calculating the present value of a participant's accrued benefit. *Id.*  The courts reasoned that if the statute was intended to apply only to non-consensual lump sum disbursements, Congress would not have included provisions to cover benefit amounts in excess of the non-consensual limit of $3,5000.  *Id.*  Based on the inclusion of such provisions, the *Esden* and *Lyons II* courts concluded that the

---

[20]T.R. § 1.411(a)-11(d) refers to I.R.C. § 417(e).  The ERISA counterpart to § 417(e) is § 205(g).

[21] Under *Chevron*, a regulation is only valid if (1) Congress has not directly addressed the issue in question and (2) the agency's interpretation is based on a permissible construction of the statute.  467 U.S. at 843-43.

[22] A lump sum disbursement that was $3,500 or less was non-consensual because under § 203(e), a participant's consent was not required for disbursement of the benefit.

statute applied to consensual as well as non-consensual lump sum disbursements.[23]   *Esden*, 229 F.3d at 175; *Lyons II*, 221 F.3d at 1246.   Consequently, the *Esden* and *Lyons II* courts held that T.R. § 1.411(a)-11(d) was valid under a *Chevron* analysis because it was a permissible construction of § 203(e).  *Esden*, 229 F.3d at 175; *Lyons II*, 221 F.3d at 1249.

In 1994, § 203(e) was amended again by the Retirement Protection Act of 1994.[24]   The amended statute eliminated the

_____

[23]The legislative history seems to support this conclusion. The House Conference Report accompanying the 1986 amendments stated as follows:

> If the present value of the vested accrued benefit is no more that $25,000, then the amount to be distributed to the participant or beneficiary is calculated using the PBGC rate.  If the present value of the accrued benefit exceeds $25,000 (using the PBGC interest rate), then the conference agreement provides that the amount to be distributed is determined using an interest rate no greater than 120 percent of the interest rate . . . that would be used by the PBGC (as of the date of distribution) upon the plan's termination. . .  For example, assume that, upon separation from service, the present value of an employee's total accrued benefit . . . is $50,000 using the applicable PBGC rate.  Under the conference agreement, the plan may distribute to his employee . . . the total accrued benefit, calculated using 120 percent of the applicable PBGC rate (e.g., $47,000).

H.R. Conf. Rep. 99-841, pt. 3(1986), reprinted in 1986 U.S.C.C.A.N. 4075.

[24]The 1994 version of § 203(e) provides:

> (e)  Consent for distribution; present value; covered distributions
>
>     (1)  If the present value of any nonforfeitable benefit with respect to a participant in a plan exceeds

differing rates in paragraph 2 and replaced them with the rates established in § 205(g)(3), 29 U.C.C. § 1055(g)(3). Two years later in 1996, I.R.S. Notice 96-8 was published requiring that the present value calculation for consensual lump sum disbursements be performed using the rates established in § 205(g)(3).

Defendants argue that T.R. § 1.411(a)-11(d) was invalidated by the 1994 amendment of § 203(e) because it could no longer be read as applying to consensual lump sum disbursements after the reference to accrued benefits up to and in excess of $25,000 was removed. Simply put, Defendants' argue that when § 203(e) was amended in 1994, it reverted back to its pre-1986 form. As discussed previously, it is Defendants' position that the pre-1986 § 203(e) only applied to non-consensual lump sum disbursements. Accordingly, Defendants' argue that T.R. § 1.411(a)-11(d) is not a "permissible contruction[s]" of § 203(e), because the 1994 version of the statute does not apply to consensual lump sum disbursements. In support of their argument, Defendants rely on *Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan*, 196 F.Supp.2d 1260, 1271-72 (N.D. GA 2002)(" *Lyons III"*), in which the court held that T.R. §§ 1.411(a)-11(d) does not apply to consensual lump sum

-----

$5,000, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant.

(2) For purposes of paragraph (1), the present value shall be calculated in accordance with section 1055(g)(3) of this title.

20

disbursements made after the 1994 amendment to § 203(e).[25]

The Court finds neither Defendants' argument nor the reasoning of *Lyons III* persuasive on this point. Defendants' argument that the 1994 version of § 203(e) only applies to non-consensual lump sum disbursment is based on his contention that the pre-1986 version of § 203(e) only applied to non-consensual lump sum disbursment. As previously discussed, Defendant's position regarding the scope of the pre-1986 version of § 203(e) is based on (1) the "limiting" phrase at the beginning of § 203(e)(2) and (2) the legislative history.

Whatever the purpose of the phrase at the beginning § 203(e)(2), it does not appear that its purpose was to limit the application of § 203(e) to non-consensual lump sum disbursements. The version of the statute analyzed by the *Esden* and *Lyons II* courts included the identical phrase, but neither of these courts found that the phrase limited the present value calculation to the determination of consent as required in § 203(e)(1).

_____

[25]In *Lyons I*, 66 F.Supp.2d 1328 (N.D. GA 1999), the court determined that T.R. § 1.411(a)-11(d) was invalid under a *Chevron* analysis. This decision was reversed by the *Lyons II* court, which concluded that the regulations were valid under the 1986 version of § 203(e). *Lyons II*, 221 F.3d at 1244-45. With respect to consensual lump sum disbursements made after the 1994 amendment to § 203(e), the *Lyons II* court stated that 1994 amendment "may or may not compel a different conclusion as to lump sum distributions made after the effective date of the 1994 legislation." In *Lyons III*, the court seized on this statement by that appellate court to revive its *Chevron* analysis with respect to post-1994 consensual lump sum disbursements.

Moreover, it seems clear from the legislative history of the 1986 and the 1994 amendment that Congress did not intend the phrase to be so limiting.  The legislative history accompanying the 1986 amendment indicated a clear intention that § 203(e) should apply to consensual disbursements.[26]  When the statute was amended in 1994, the legislative history did not indicate that Congress was amending the statute to limit is applicability to non-consensual disbursements only.  On the contrary, the legislative history indicates that Congress contemplated that the statute would apply to any lump sum disbursement and was only amended for the purpose of remedying the manner in which the PBGC rate was used by the statute.[27]  Thus, even if the legislative history accompanying the

---

[26]*Supra,* at fn. 23.

[27]The House Report accompanying the 1994 amendment provided the following explanation for the change:

> The plan must [currently] value a single-sum payment using an interest rate no greater than the applicable PBGC interest rate.  (If the value exceeds $25,000, the interest rates must be no greater than 120% of the applicable PBGC rate.)  PBGC regulations have been revised to change the methodology for calculating the applicable PBGC interest rate for terminated plans.  The change in the regulations does not apply for purposes of determining the applicable interest rate for valuing single-sum payments.  A plan may use any reasonable mortality table it specifies.

> Congress adopted the interest rate cap to prevent plans from using unreasonably high interest rates to determine the present value of participants' benefits.  If plans could use high interest rates, plans could lower the single sum paid to participants.  The PBGC

original enactment of § 203(e) can be interpreted as limiting the scope of § 203(e) to non-consensual lump sum disbursements, the legislative history accompanying subsequent amendments indicates no such intent to limit the scope of § 203(e).[28]  In fact, subsequent legislative history seems to indicate that Congress intended the statute to apply to all lump sum disbursements, consensual or non-consensual.

Moreover, although certainly not determinative, it is noteworthy that when § 203(e) was amended in 1994, the heading of the statute remained "Consent for distribution; present value;

---

interest rates were adopted as the standard because the rates were presumed to duplicate group annuity rates. However, the PBGC interest rates reflect annuity rates only if considered in combination with specified PBGC mortality tables, and the law does not require that the specified PBGC mortality tables be used.

Sections 405(a) and 405(c) of the bill amend sections 203(e) and 205(g) of ERISA and section 411(a)(11) and 417(e) of the Code to change the manner in which single sum distributions must be valued for purposes of these sections. ***Under the bill, single sum distributions may not be less than the amount that would be derived using the 30-year Treasury bond rate as of the date of distribution and a mortality table prescribed by the Secretary of the Treasury*** . . .

H.Rep. No. 103-632, pt. 2, Section 405 (1994)(emphasis added).

[28]It is not altogether clear from the legislative history that § 203(e), as originally enacted, was intended only to apply to non-consensual lump sum disbursements.  In *Lyons II*, the Court noted that the legislative history accompanying the 1984 enactment "spoke in broader terms" than just mandatory distributions.  *Lyons II*, 221 F.3d at 1242, fn. 10.

covered distributions" and was not changed back to "Restrictions on mandatory distributions", further indicating a lack of intent to limit the application § 203(e) to non-consensual lump sum disbursements.

Finally, both the *Esden* and *Xerox* courts indicated that the 1994 amendment of § 203(e) had no effect on their holdings that T.R. §§ 1.411(a)-11(d) did not exceed the scope of § 203(e).[29]

---

[29]When discussing the legislative history of § 203(e), the *Esden* court noted the continuing intent of Congress to regulate the discount rate that plans could use to calculate lump sum disbursements:

> [T]he legislative history accompanying the Tax Reform Act of 1986, which introduced these consent and valuation restrictions, evidences a congressional intent to apply these valuation rules to all distributions. *See* H.R. Conv. Rep. No 99-841, pt. 2, at 488 (1986), reprinted in 1986 U.S.C.C.A.N. at 4075, 4576, reprinted in 1986-3 C.B. Vol 4 at 488 (using an illustrative example of an employee with a $50,000 accrued benefit). ***And, in 1994, when Congress amended these provisions to replace the PBGC rate with the 30-year long-bond rate,*** it explained again its intention:

>> Congress adopted the interest rate cap to prevent plans from using unreasonably high interest rates to determine the present value of participants' benefits. *If plans could use high interest rates, plans could lower the single sum paid to participants.*

> H.R. Rep. No. 103-632, pt. 2, at 54 (1994) (emphasis added) reprinted in 1994.

>> If there were no regulation of the discount rates that plans could use in calculating lump sum equivalents of accrued normal retirement benefits, they could eviscerate the protective provisions of ERISA

*Esden*, 229 F.3d at 175 (emphasis added).

For all of these reasons, the Court concludes that the 1994 version of § 203(e) is ambiguous as to whether it applies to consensual as well as non-consensual lump sum distributions. In such a situation, regulations are permissible provided they are reasonable. *See e.g.*, *Lyons III*, 221 F.3d at 1248. Numerous courts have found these regulations to be reasonable and Defendants' have not presented any arguments that would change this conclusion.[30] *Xerox*, 338 F.3d at 760; *Esden*, 229 F.3d at 174, *Lyons III*, 221 F.2d at 1249. Therefore, the Court finds that T.R. §§ 1.411(a)-11(d) is valid with respect to lump-sum disbursement made after the

---

Similarly, when discussing the appropriate discount rate, the *Xerox* court explained that new pension plans (*i.e.*, post-1994 plans) would use the 30-year T-bill rate. 338 F.3d at 760. The Court specifically cited to the 1994 version § 203(e)(2) in support of this proposition, indicating that the Court viewed the 1994 version of the statute as applying to consensual lump sum disbursements. *Id.*

The *Lyons II* court, however, alluded to the possibility that T.R. §§ 1.411(a)-11(d) would not be valid under the 1994 version of § 293(e):

> In the Retirement Protection Act of 1994, Congress removed the language relating to the calculation of present value amounts in excess of $25,000, thereby lessening (or perhaps removing) the ambiguity or self-contradictory nature of the § 203(e) provisions. That amendment may or may not compel a different conclusion as to lump sum distributions made after the effective date of the 1994 legislation.

221 F.3d at 1246.

[30]A number of Defendants' other arguments are based on policy considerations. Such considerations are within the purview of the legislature, and the Court will not ignore the statutory and administrative scheme of ERISA based on such considerations.

amendment of § 203(e) in 1994.

Thus, under ERISA, the present value calculation for consensual lump sum disbursements should be performed using the discount rates established in ERISA § 205(g)(3), 29 U.S.C. § 1055(g)(3), as required by T.R. §§ 1.411(a)-11(d) and I.R.S. Notice 96-8.

## IV.  CONCLUSION

Therefore, the Court concludes that the manner in which Plaintiffs' lump sum disbursements were calculated under the AK Steel Plan violated ERISA and the I.R.C.   Consequently, Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 37) with respect to liability is hereby **GRANTED**.   Defendants' Motion for Summary Judgment (Doc. No. 39) is **DENIED**.   This matter will proceed on the issue of damages.


                    **IT IS SO ORDERED**

Date:   April 8, 2004          /s Sandra S. Beckwith
                             Sandra S. Beckwith
                             United States District Judge


26