2004 WL 2002267 **Page 1**
--- F.3d ----, 33 Employee Benefits Cas. 1769, 2004 Fed.App. 0303P
**(Publication page references are not available for this document.)**
**H**

Briefs and Other Related Documents

United States Court of Appeals,
Sixth Circuit.

Frank J. **CROSBY,** individually and on behalf of all others similarly situated,
Plaintiff-Appellee,
v.
**BOWATER** INCORPORATED RETIREMENT PLAN FOR SALARIED EMPLOYEES OF GREAT NORTHERN
PAPER INC. and **Bowater,** Incorporated, Defendants-Appellants.

No. 03-1044.

Argued: April 20, 2004.
Decided and Filed: Sept. 9, 2004.

Background: Employee benefit plan participant who had opted to receive lump-sum cash payment for early retirement benefits brought purported class action against plan and administrator, on behalf of himself and approximately 350 similarly situated plan participants and beneficiaries, alleging that administrator's use of mortality discount for period before normal retirement age caused partial forfeiture of participant's accrued benefit, in violation of Employee Retirement Income Security Act (ERISA). The United States District Court for the Western District of Michigan, Richard A. Enslen, J., 212 F.R.D. 350, granted class certification, entered summary judgment in favor of participant and class, ordered recalculation of lump sum preretirement benefits without mortality discount, and required immediate refund of underpayments. Plan and administrator appealed.

Holdings: The Court of Appeals, David A. Nelson, Circuit Judge, held that:
(1) relief ordered was not "other appropriate equitable relief" within meaning of ERISA section relied on by participant, and
(2) because participant never had justiciable claim, federal subject matter jurisdiction was lacking in class action.

Vacated and remanded.

[1] Labor and Employment ⚖ 639
231Hk639

ERISA subsection which authorizes only suits for injunctive or other equitable relief, does not, in most situations, authorize action for money claimed to be due and owing. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

[2] Labor and Employment ⚖ 639
231Hk639

As used in ERISA, "equitable relief" refers to those categories of relief that were typically available in equity such as injunction, mandamus, and restitution, but not compensatory damages. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

[3] Labor and Employment ⚖ 700
231Hk700

In purported class action by employee benefit plan participant who had opted to receive lump-sum cash payment for early retirement benefits, alleging that use of mortality discount for period before normal retirement age caused partial forfeiture of participant's accrued benefit, district court lacked authority to order plan and administrator to refund difference between amount calculated without mortality discount and amount actually received; that relief was not "other appropriate equitable relief" within meaning of ERISA subsection relied on by participant, despite his claim that, because he was seeking imposition of constructive trust on property belonging to him and because restitution could be awarded for any ill-gotten plan assets or profits, his claim for amount wrongfully withheld was equitable in nature. Employee Retirement Income Security Act of 1974, §§ 203(a), 502(a)(3), 29 U.S.C.A. §§ 1053(a), 1132(a)(3).

[4] Federal Civil Procedure ⚖ 164
170Ak164

[4] Federal Civil Procedure ⚖ 164.5
170Ak164.5

Class action may proceed despite dismissal of named plaintiff's claim, if class has been certified and at least one class member has live claim. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

[5] Federal Courts ⚖ 12.1

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:02-cv-00001-SSB-TSB   Document 58-2   Filed 10/06/2004   Page 2 of 8

2004 WL 2002267                                                                                                    Page 2
(Publication page references are not available for this document.)

170Bk12.1

Judicial power of Article III courts extends only to cases and controversies specified in that article, and if class action is to be maintained, there must be named plaintiff who has such case or controversy at time complaint is filed and at time the class action is certified. U.S.C.A. Const. Art. 3, § 1 et seq.; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

[6] Labor and Employment ⚖︎678
231Hk678

Class action could not be maintained on behalf of approximately 350 ERISA plan participants and beneficiaries seeking recovery of additional lump sum benefits based on improper use of preretirement mortality discount factor, where named plaintiff never had justiciable claim under subsection on which he elected to sue. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.
 Bradley J. Schram (briefed), Robert P. Geller (briefed), Eva T. Cantarella, (argued and briefed), Bradford T. Yaker (briefed), Hertz, Schram & Saretzky, Bloomfield Hills, MI, for Plaintitts-Appellees.

Thomas J. Piskorski (argued), Ian H. Morrison (briefed), Seyfarth Shaw, Chicago, IL, for Defendants-Appellants.

Before: BOGGS, Chief Judge; DAVID A. NELSON and SUTTON, Circuit Judges.

OPINION

DAVID A. NELSON, Circuit Judge.

This appeal shows that the distinction between law and equity can still have consequences. ("The forms of action we have buried," Maitland observed in a very different context, "but they still rule us from their graves." [FN1])

The plaintiff, a participant in a retirement plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, claimed that the plan administrator had acted improperly in using a pre-retirement mortality discount factor when calculating lump sum pre-retirement benefits. As a result, the plaintiff asserted, he was paid a benefit that fell $5,249.08 short of what he was entitled to receive. Invoking § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), [FN2] and purporting to act on behalf of a class of approximately 350 plan participants said to be similarly situated, the plaintiff brought suit against the plan and its administrator for what he described as "equitable and injunctive relief." At the heart of the plaintiff's prayer for relief was a request for recovery of additional lump sum benefits.

After a wave of motions had been filed, the district court entered an order granting class certification, granting summary judgment in favor of the plaintiff and the class, ordering a recalculation of lump sum pre-retirement benefits without the mortality discount, and requiring the defendants "to immediately refund [the] under-payments...."

For the district court to order the defendants to "refund" (*i.e.* to pay) the difference between the amount calculated without a mortality discount and the amount actually received was to grant a form of relief not typically available in equity. Such relief, we conclude, was thus not available under the statutory provision on which the plaintiff elected to base his action. See *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), and *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

[1] If we assume, for purposes of analysis, that the defendants had no discretion to use the mortality discount factor in making the benefit calculation, the fact remains that ERISA § 502(a)(3), which authorizes only suits for injunctive or other equitable relief, does not, in most situations, authorize an action for money claimed to be due and owing. An action in which the plaintiff complains that the defendant owes him money and has refused to pay the debt is, of course, the *locus classicus* of an action at law; if we were to say that such an action qualifies as a suit in equity, we should be giving the words used by Congress in § 502(a)(3) a meaning that *Great-West* and *Mertens* teach they will not bear. The challenged judgment will therefore be reversed.

I

The individual plaintiff, Frank J. Crosby, was a participant in an ERISA retirement plan administered by defendant Bowater Incorporated, the parent corporation of Mr. Crosby's sometime employer, Great Northern Paper, Inc. Before he reached his normal retirement age, but after his pension rights had vested, Mr. Crosby lost his job as a result of Great Northern's having been sold to another company. The termination of Mr. Crosby's employment accelerated his right to

Case 1:02-cv-00001-SSB-TSB   Document 58-2   Filed 10/06/2004   Page 3 of 8

2004 WL 2002267                                                              Page 3
(Publication page references are not available for this document.)

receive benefits under the retirement plan.

The Bowater plan was of the "cash balance" variety, a species of the "defined benefit" genus. The plan gave Mr. Crosby a hypothetical "Personal Account," and his benefits were to be a function of the balance in that account. The balance reflected credits geared to Mr. Crosby's monthly compensation and a specified rate of interest. The Personal Account was nothing more than a computational construct, and benefits were to be paid from the plan's general assets.

If Mr. Crosby had been able to retire from Great Northern at age 65--the "normal retirement age" specified in the plan--a joint-and-survivor annuity would have been payable as long as he or his wife continued living. The amount of the annuity would have been determined by taking the balance in Mr. Crosby's Personal Account at age 65 and dividing it by a prescribed annuity factor. And had Mr. Crosby died before age 65 while still employed by Great Northern, a death benefit would have been payable in an amount equal to the then present value of his accrued retirement benefit.

When Mr. Crosby ceased to be an employee of Great Northern, not having retired or died on the job, he became eligible, under the terms of the plan, for a distribution of his retirement benefit. Mr. Crosby, who was 43 years old at the time, elected to take his distribution in a lump sum.

Bowater, as plan administrator, [FN3] told Mr. Crosby that the lump sum would be $48,732.14. That was the balance in Crosby's Personal Account. (Article XII of the plan provided that a participant's accrued benefit could only be distributed in a form of payment selected by the participant from a list of options incorporated in § 12.2 of the plan. The second option, set forth in § 12.2(b), was "[a] single lump sum payment equal to the amount credited to the Participant's Personal Account as of the end of the month preceding his Benefit Commencement date.")

Claiming that the relevant statutory law, as interpreted by the Internal Revenue Service in IRS Notice 96-8 (IRB 1996-6, Feb. 5, 1996), entitled him to receive more than the amount credited to his Personal Account, Mr. Crosby asked Bowater to recompute his lump sum by (1) projecting interest credits to normal retirement age, (2) dividing the resultant age-65 account balance by the annuity factor prescribed in the plan, and (3) discounting the age-65 annuity to its present value. Bowater acceded to this request, notwithstanding that the Internal Revenue Service had approved the plan provision pegging the lump sum entitlement to the amount credited to the participant's Personal Account. Mr. Crosby was advised that his claim for a larger benefit had been granted and that his lump sum entitlement had been recalculated. The resulting figure was $52,013.90. We presume that this amount was paid in full.

In a detailed explanation of how it arrived at the $52,013.90, Bowater told Mr. Crosby, among other things, that it had used a pre-normal-retirement-age mortality discount factor in its present-value calculation. When it determined the present value of an age-65 annuity, in other words, Bowater took into account the possibility that Mr. Crosby might die before reaching the age at which he would be entitled to start receiving annuity payments.

Mr. Crosby objected to the use of the mortality discount factor, filing an appeal with Bowater in which he made the following argument:
> "This discount factor is not consistent with the calculation method described in IRS Notice 96-8. Further, I believe this discount reduces my accrued benefit, and, thus, is not allowed under ERISA."

Bowater's Pension Administration Committee denied the appeal, issuing a five-page explanation of its decision to do so.

Mr. Crosby then sued the Bowater plan and Bowater Incorporated in the United States District Court for the Western District of Michigan. The complaint alleged, among other things, (1) that "when Bowater discounted Crosby's age-65 annuity to present value, it should not have used a mortality discount for the period *before* normal retirement age;" (2) that "[i]f Bowater had utilized the ... mortality discount factors for the period *after* normal retirement age only, Crosby's lump sum entitlement ... would have been $57,262.98" instead of the $52,013.90 produced by the method Bowater in fact used; and (3) that "Bowater's use of a mortality discount for the period *before* normal retirement age caused a partial forfeiture of Crosby's accrued benefit, thereby violating ERISA § 203(a), 29 U.S.C. § 1053(a) ." [FN4]

The complaint stated that Mr. Crosby brought his claim "under ERISA § 203(a), 29 U.S.C. § 1053(a), and the enabling statute, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)." As noted above, Mr. Crosby did not bring his claim under ERISA § 502(a)(1)(B)--the section that authorizes a party to sue for "benefits due to him under the terms of his plan...." (Under the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:02-cv-00001-SSB-TSB    Document 58-2    Filed 10/06/2004    Page 4 of 8

2004 WL 2002267                                                                    Page 4
(Publication page references are not available for this document.)

language of the plan, Mr. Crosby was entitled to less than he had already been paid--a circumstance that explains the decision not to invoke § 502(a)(1)(B). [FN5])

The complaint alleged that approximately 350 plan participants or beneficiaries were in the same boat as Mr. Crosby--*i.e.,* they were victims of Bowater's insistence on use of a mortality discount factor for the period before normal retirement age. Joinder of such a large number of individuals was said to be impracticable, and the complaint stated that Mr. Crosby "seeks both equitable and injunctive relief for the Class, as permitted under ERISA § 502(a)(3)."

The complaint's prayer for relief asked the court to enter a judgment ordering the defendants to "[r]e-compute any and all lump sum benefits previously paid," using the methodology followed in the recomputation of Mr. Crosby's lump sum entitlement " *but without any mortality discount for the period before normal retirement age.*" The court was further asked to (1) order the defendants to "[p]ay all Plan participants or their beneficiaries who previously received a lump sum distribution ... the difference between the amount [so] computed ... and the lump sum amount the participant or beneficiary received from the Plan, plus pre-judgment and post-judgment interest on this amount;" to (2) "[e]njoin defendants from utilizing a mortality discount for the period *before* normal retirement age when computing a lump sum distribution from the Plan in the future;" and to (3) order the defendants to "[p]ay ... reasonable attorney's fees and costs...." The prayer for relief also included a request that the court "impose a constructive trust over the amount of plan assets necessary to pay the amounts determined ... and award any other equitable relief this Court deems appropriate."

The defendants responded to the complaint with a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P. The first and second numbered paragraphs of the defendants' motion read as follows:
> "1. Crosby purports to bring this action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. § 1132(a)(3), and styles it as an action to enforce Section 203(a)(2)(A) of ERISA.
> 2. Crosby sues to recover an increased lump sum distribution of his retirement benefit under the Plan, a retirement benefit plan sponsored and administered by Bowater. In particular, Crosby claims that in calculating the present value of his retirement benefit, defendants incorrectly used a mortality discount for the part of that calculation dealing with the time before Crosby had reached age 65."

The brief accompanying the motion pointed out that the statutory provision on which Mr. Crosby purported to sue did not authorize a suit for the relief he was seeking:
> "Although what he really seeks is an award of additional benefits, a claim properly brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) [footnote omitted], Crosby purports to sue under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). That provision only authorizes Crosby to bring an action to 'enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan.' "

Mr. Crosby filed a response to the 12(b)(6) motion in which he admitted the substance of paragraphs 1 and 2 of the motion:
> "1.Crosby agrees that he brought this action under § 203(a)(2) and § 502(a)(3) of the Employee Retirement Income Security Act ('ERISA'). 29 U.S.C. § 1053(a)(2) and 29 U.S.C. § 1132(a)(3).
> 2.Crosby agrees that (a) he is suing to recover additional lump sum benefits; (b) the Plan is sponsored and administered by Bowater; and (c) he claims that Bowater incorrectly utilized a mortality discount for the period before age 65 when it computed his lump sum."

The response was accompanied with a cross motion for summary judgment based on the complaint as filed; at no time did Mr. Crosby seek leave to amend the complaint.

In due course, after Mr. Crosby had filed a motion for class certification, the district court ordered briefing on the appropriateness of the requested equitable remedies in the event the plaintiff succeeded on his summary judgment motion. In the brief filed pursuant to the court's direction, Mr. Crosby reiterated he had brought his claim under § 502(a)(3), "which authorizes 'appropriate equitable relief.' " Arguing that the relief he sought was "equitable" as well as "appropriate," Mr. Crosby cited *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), as "suggest[ing] that if the relief requested does not seek to impose liability for a *contractual* monetary obligation, it is probably an appropriate equitable remedy." The district court was told that "Crosby does not seek to impose liability on defendants for any contractual obligation to pay money."

After the completion of briefing, and having dispensed

Case 1:02-cv-00001-SSB-TSB   Document 58-2   Filed 10/06/2004   Page 5 of 8

2004 WL 2002267                                                                                                        Page 5
(Publication page references are not available for this document.)

with oral argument, the district court entered a final judgment in which the court granted class certification; denied the defendants' motion to dismiss; granted the plaintiff's summary judgment motion; enjoined the defendants "to recalculate the lump sum benefits of class members who had previously received lump sum benefits, in accordance with the Court's Opinion, and to immediately refund under-payments, plus pre-judgment and post-judgment interest;" and to "calculate lump sum benefit payments for class members who have not yet received any lump sum benefits in accordance with the Court's Opinion."

The opinion itself--a comprehensive and well-crafted analysis of a variety of issues, some of which are not in contention on appeal--reasoned that because the plan provided for payment of a pre-retirement death benefit in the amount of the then-vested present value of the participant's accrued benefit, the death benefit was not "incidental" to the participant's accrued benefit and the plan administrator thus lacked discretion to use a mortality discount factor in reducing the projected age-65 annuity to its present value. The bottom line, in the district court's view, was that the lump sum payment to which Mr. Crosby claimed to be entitled--$57,262.98, as the court noted--should not have undergone the mortality reduction that resulted in a lump sum payout of only $52,013.90.

The defendants perfected a timely appeal. Much of the argument they present to our court is a defense of the merits of the plan administrator's decision to take pre-retirement mortality risk into account. The defendants argue further that the decision should have been reviewed under an arbitrary-and-capricious standard, and that the district court was required to uphold the decision as reasonable. We do not reach these issues, because--as the defendants also argue--the primary relief sought by Mr. Crosby did not qualify as "equitable relief" of the sort authorized by ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

II

The present opinion is not the place for a history lesson on the development of the parallel systems of jurisprudence known as "law" and "equity." It will suffice, we trust, to remind the reader that courts of law--in which the common law of the English speaking peoples had its principal growth--were for a number of centuries separate and distinct from chancery courts (originally the court of an ecclesiastical person appointed by the king to be his chancellor); that the rules of decision followed in chancery courts were not common law rules, but rules of equity; that chancery courts (*i.e.* courts of equity) likewise had their own procedures--procedures under which, for example, the chancellor performed the fact-finding role that in courts of law would be performed by a jury; and that the remedies typically available to a party who prevailed in a court of equity (injunctive relief, *e.g.*) were far from identical to the remedies the prevailing party could obtain in a court of law. Although, in most jurisdictions, the same courts have long administered both law and equity, [FN6] the unified courts have been administering what Professor Geldart described as "distinct bodies of law, governed largely by different principles." [FN7]

Against this background, we return to the text of ERISA § 502(a)(3), the statutory section under which plaintiff Crosby brought his suit. Under § 502(a)(3), as codified at 29 U.S.C. § 1132(a)(3), Mr. Crosby could institute a proceeding "(A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or (B) to obtain other appropriate *equitable* relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." (Emphasis supplied.) Section 502(a)(3) does not authorize a plan participant to sue for recovery of benefits due to him under the terms of the plan. That is the office of § 502(1)(B)--a section with which Mr. Crosby has always insisted he will have nothing to do.

But what if the benefits are not claimed to be due under terms of the plan, strictly speaking, but under the terms of a statute--in this case ERISA § 203(a), 29 U.S.C. § 1053(a)--setting forth requirements that the plan must satisfy? The answer, we believe, depends on whether the claim for benefits allegedly due under the statutory requirements is or is not, at bottom, a claim for injunctive or other equitable relief. No matter how well founded it may be as a matter of substantive law, a claim for benefits is not cognizable under § 502(a)(3) of ERISA unless it is a claim for "equitable relief."

[2] As used in § 502(a)(3), the Supreme Court has repeatedly held, "equitable relief" refers to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *cf. Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). And "[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:02-cv-00001-SSB-TSB    Document 58-2    Filed 10/06/2004    Page 6 of 8

2004 WL 2002267                                                                                     Page 6
(Publication page references are not available for this document.)

that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v. Massachusetts,* 487 U.S. 879, 918-19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting), as quoted with approval in *Great-West,* 534 U.S. at 210, 122 S.Ct. 708. "And '[m]oney damages are, of course, the classic form of *legal* relief.' " *Id.* (quoting *Mertens,* 508 U.S. at 255, 113 S.Ct. 2063).

[3] Mr. Crosby acknowledged in the court below that suits seeking to compel the defendant to pay a sum of money to the plaintiff are "almost invariably" excluded from the category of suits seeking relief typically available in equity, according to the Supreme Court. Citing *Harris Trust and Savings Bank v. Salomon Smith Barney Inc.,* 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), however, Crosby argued that " '[a]lmost invariably' does not mean 'always'...." (Reply Brief in Support of Plaintiff's Request for Equitable Relief, at page 29.) Because he is seeking imposition of a constructive trust (an equitable remedy) on property that he says "truly and equitably" belongs to him, see *Harris Trust* at 250-51, 120 S.Ct. 2180, and because "restitution [another equitable remedy] may be awarded for any 'ill-gotten plan assets or profits,' " see *id.* at 253, 120 S.Ct. 2180, Mr. Crosby argued that his individual claim for the wrongfully withheld $5,249.08 was not a claim for legal relief, but a claim for the sort of "equitable relief" spoken of in § 502(a)(3).

We do not find this line of argument persuasive. It is true that Mr. Crosby requested the district court to impose a constructive trust over the amount of plan assets necessary to pay his claim--and over the separate assets of Bowater Incorporated, if necessary--but we do not read *Harris Trust* as suggesting that such a request for securitization of the debt can transmogrify Mr. Crosby's claim for a money judgment into an essentially equitable claim. A glance at the facts of *Harris Trust* explains why.

In *Harris Trust* a retirement plan had purchased certain motel interests from a company that the plan had been using as a stockbroker. Because the stockbroker was a "party in interest," as the Supreme Court assumed, the purchase of the motel interests was prohibited under § 406(a)(1)(A) of ERISA, 29 U.S.C. § 1106(a)(1)(A). Invoking the "equitable relief" provision of ERISA § 502(a)(3), the trustee and the administrator of the retirement plan sued the stockbroker for rescission of the purchase of the motel interests; restitution of the purchase price, with interest, from the stockbroker; and disgorgement of any profits the stockbroker had made with the purchase money.

The Court of Appeals for the Seventh Circuit concluded that as a non-fiduciary, the stockbroker could not be held liable under § 502(a)(3) for participating in a transaction prohibited by § 406. See *Harris Trust and Savings Bank v. Salomon Brothers Inc.,* 184 F.3d 646, 653 (7th Cir.1999). The Supreme Court reversed, holding that the stockbroker's non-fiduciary status did not insulate it from claims for equitable relief under § 502(a)(3).

Referring to the law of trusts--one of the main branches of equity jurisprudence--the *Harris Trust* court observed that

> "it has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom." *Harris Trust,* 530 U.S. at 250, 120 S.Ct. 2180.

The Court went on to explain that

> "[o]nly a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." *Id.* at 251, 120 S.Ct. 2180.

And--making an obvious point that has obvious significance for us--the Supreme Court observed that a suit against a transferee for tainted plan assets, in addition to satisfying the "appropriateness" criterion,

> "is also '*equitable* ' in nature. See *Mertens,* 508 U.S., at 260, 113 S.Ct. 2063 ('[T]he "*equitable relief* " awardable under § 502(a)(5) *includes restitution of ill-gotten plan assets or profits ...*'); *ibid.* (explaining that, in light of the similarity of language in §§ 502(a)(3) and (5), that language should be deemed to have the same meaning in both subsections)." *Id.* at 253, 113 S.Ct. 2063 (emphasis supplied).

In the case at bar, of course, Mr. Crosby is not seeking restitution to the plan of assets wrongfully conveyed to a third party. He is not seeking to have a constructive trust imposed on assets so conveyed. [FN8] And he is not seeking disgorgement of profits made by a third party on ill-gotten assets. *Harris Trust,* as we see it, is

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:02-cv-00001-SSB-TSB    Document 58-2    Filed 10/06/2004    Page 7 of 8

2004 WL 2002267                                                                                      Page 7
(Publication page references are not available for this document.)

thus inapposite.

While *Harris Trust* is readily distinguishable from the case now before us, *Great-West,* in our judgment, is not. It is true that the plaintiffs in *Great-West* sought to impose personal liability on the defendants for a *contractual* obligation to pay money, whereas here the plaintiff insists that the asserted liability is not contractual in nature. [FN9] But if we accept, for purposes of analysis, plaintiff Crosby's representation that he, unlike the plaintiffs in *Great-West,* has no claim for breach of contract, we think that the distinction between the *Great-West* case and this one is a distinction without a difference.

The statutory origin of Bowater's asserted obligation to pay Mr. Crosby an additional $5,249.08, with interest, does not mean that a breach of the obligation to pay is redressable through a suit in equity rather than an action at law. Historically, an action in debt was no less an action at law than an action in covenant. See F.W. Maitland, The Forms of Action at Common Law 63, 64 (A.H. Chaytor & W.J. Whittaker eds., 1948). And an action of assumpsit (a form of trespass on the case) to redress the breach of a statutory obligation to pay a sum certain was likewise an action at law. See G.C. Cheshire and C.H.S. Fifoot, Law of Contract 15 (3rd ed.1952); *Marley v. Bankers' Indemnity Insurance Co.,* 53 R.I. 289, 166 A. 350, 351 (1933) (holding that trespass on the case is the appropriate action to enforce a statutory right).

If it be argued that Mr. Crosby's position should be likened to that of a beneficiary of a trust, who could invoke the jurisdiction of an equity court to enforce a right to receive money from the trust, the short answer is that just such an argument has been explicitly rejected by the United States Supreme Court. See *Great-West,* 534 U.S. at 219, 122 S.Ct. 708:

> "These trust remedies are simply inapposite. In *Mertens,* we rejected the claim that the special equity-court powers applicable to trusts define the reach of § 502(a)(3)."

It remains to be mentioned that Mr. Crosby does request a form of equitable relief in asking that the defendants be ordered to recompute--without any mortality discount for the period before normal retirement age--"any and all lump sum benefits previously paid to Plan participants," including Mr. Crosby. As far as Crosby's individual claim is concerned, however, such a recomputation by the defendants is unnecessary; Mr. Crosby or his advisors have already performed the recomputation themselves, and Crosby's complaint specifies the amount claimed to be due him down to the last penny. Equity, as the pertinent equitable maxim tells us, does not require the doing of a vain act.

Mr. Crosby's complaint also asks for equitable relief in the form of injunction against use of a pre-normal-retirement-age mortality discount factor in computing *future* lump sum distributions. Assuming that such relief might be beneficial to someone, however, it could only benefit members of the class other than Mr. Crosby. In the next (and concluding) part of this opinion we address the question whether Mr. Crosby can maintain the present suit on behalf of other class members who might arguably receive some benefit from the equitable relief sought for them.

III

[4][5] The Supreme Court has held that a class action may proceed despite the dismissal of the named plaintiff's claim, if the class has been certified and at least one class member has a live claim. See *County of Riverside v. McLaughlin,* 500 U.S. 44, 51-52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), and *Sosna v. Iowa,* 419 U.S. 393, 399-403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). But these decisions in no way detract from the principle that the judicial power of Article III courts extends only to the "cases and controversies" specified in that article. If the class action is to be maintained, therefore, there must be "a named plaintiff who has such a case or controversy at the time the complaint is filed and at the time the class action is certified." *Sosna,* 419 U.S. at 402, 95 S.Ct. 553. Where the named plaintiff's claim is one over which "federal jurisdiction never attached," there can be no class action. See *Walters v. Edgar,* 163 F.3d 430, 432-33 (7th Cir.1998), *cert. denied,* 526 U.S. 1146, 119 S.Ct. 2022, 143 L.Ed.2d 1033 (1999).

[6] For reasons already explained, we do not believe that Mr. Crosby ever had a justiciable claim under ERISA § 502(a)(3), the particular statutory provision on which he elected to sue. Our caselaw teaches--perhaps surprisingly--that federal subject matter jurisdiction is lacking in such a situation. Thus in *Qualchoice, Inc. v. Rowland,* 367 F.3d 638, 650 (6th Cir.2004), we affirmed the dismissal, on jurisdictional grounds, of an action that sought essentially legal relief under § 502(a)(3). In *Community Health Plan of Ohio v. Mosser,* 347 F.3d 619, 624 (6th Cir.2003), similarly, we held that an action seeking legal relief under § 502(a)(3) must be dismissed for lack of subject matter jurisdiction. *Community Insurance Co. v. Morgan,* 54

Case 1:02-cv-00001-SSB-TSB  Document 58-2  Filed 10/06/2004  Page 8 of 8

2004 WL 2002267
(Publication page references are not available for this document.)

Page 8

Fed. Appx. 828, 831-33 (6th Cir.2002), and *Sheet Metal Local # 24 v. Newman,* 35 Fed. Appx. 204, 207 (6th Cir.2002), are in accordance with that holding. If these decisions mean what they say, federal jurisdiction never attached to Mr. Crosby's claim in the case at bar. It follows that there is no class action. See *Walters,* 163 F.3d at 432-33.

The judgment entered by the district court is VACATED and the case is REMANDED with instructions to DISMISS Mr. Crosby's complaint for lack of subject matter jurisdiction.

FN1. F.W. Maitland, The Forms of Action at Common Law 2 (A.H. Chaytor & W.J. Whittaker eds., 1948).

FN2. As codified in Title 29 of the U.S.Code, ERISA § 502(a)(3) provides as follows:
"A civil action may be brought-- * * *
(3) by a participant, beneficiary, or fiduciary (A) *to enjoin* any act or practice which violates any provision of this subchapter or the terms of the plan, *or* (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis supplied).
A separate provision, § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), authorizes a participant to bring suit "to recover benefits due to him under the terms of his plan...." The plaintiff in this case did not invoke § 502(a)(1)(B).

FN3. Except where the context indicates otherwise, all references in this opinion to "Bowater" should be read as meaning Bowater in its plan-administrator capacity.

FN4. Section 203(a) sets forth rules on the extent to which accrued benefits are nonforfeitable. As Mr. Crosby subsequently reiterated in a brief filed with the district court, "Crosby's claim is for violation of ... the anti-forfeiture rules under ERISA § 203(a)."

FN5. In his brief on appeal, Mr. Crosby tells us that he "*could not bring his claim under ERISA § 502(a)(1)(B)* because the Plan's lump sum provision contemplates payment of an amount equal to the participant's Personal Account ..., the amount Bowater initially offered Crosby. Consequently, if Crosby *had* brought his claim under § 502(a)(1)(B), he would be entitled to no relief at all...." We intimate no view as to whether this proposition is correct.

FN6. In England, for example, this has been true since 1875. See W.M. Geldart, *Elements of English Law* (5th Ed.1953) at p. 22. In some American jurisdictions--New Jersey, for example--the fusion took place within living memory. See N.J. Const., Art. 11, § 4, § 3 (1947).

FN7. Geldart, *id.*

FN8. Mr. Crosby does ask for imposition of a constructive trust over sufficient assets to assure that his claim will be paid, thereby putting him in a better position than he would occupy as a general creditor. But Crosby has no basis for obtaining such a priority, as far as we can see, and he is clearly not asking for application of the principle applied in *Harris Trust*--the principle that trust property transferred to a third party in breach of the trustee's fiduciary duty is impressed with a trust "unless [the third party] has purchased the property for value and without notice of the fiduciary's breach of duty." *Harris Trust,* 530 U.S. at 250, 120 S.Ct. 2180.

FN9. On its face, as we have seen, the language of the retirement plan's lump sum provision contemplates payment of an amount equal only to the participant's Personal Account--an amount less than Bowater has already voluntarily paid. In addition to pointing this out, Mr. Crosby notes that among the plan's miscellaneous provisions is the following: "The adoption and maintenance of this Plan shall not be deemed to constitute a contract, expressed or implied, between the Company and any Employee or to be a consideration for, or inducement or condition of, the employment of any person." It thus seems clear that Mr. Crosby would have had no claim for breach of contract absent ERISA, whatever the situation may be in light of ERISA.

--- F.3d ----, 33 Employee Benefits Cas. 1769, 2004 Fed.App. 0303P

Briefs and Other Related Documents (Back to top)

. 03-1044 (Docket) (Jan. 08, 2003)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.