1 of 1 DOCUMENT

JACK R. HUGHES and MERLE A. PETTIT,
Plaintiffs-Appellants, v. GENERAL MOTORS CORPORATION, A
DELAWARE CORPORATION; THE GENERAL MOTORS RETIREMENT PROGRAM
FOR SALARIED EMPLOYEES, AN EMPLOYEE BENEFIT PLAN; THE
FINANCE COMMITTEE OF GENERAL MOTORS CORPORATION; JAMES L.
LEWANDOWSKI, JOINTLY AND SEVERALLY, Defendants-Appellees,
EDMOND W. LITTLEFIELD; ET AL., Defendants

No. 87-1506

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

852 F.2d 568; 1988 U.S. App. LEXIS 9637

July 14, 1988

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, No. G 84-1169.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff retired employees appealed a decision from the United States District Court for the Western District of Michigan, which granted summary judgment to defendants, employer, its retirement program, and certain corporate officers, and dismissed the employees' complaint, under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1132, for lack of standing.

**OVERVIEW:** The retired employees claimed they were entitled to additional benefits under an amendment to the plan due to misconduct of the employer. The court held they were within the zone of interests ERISA was designed to protect and thus they had standing to bring the claim. Under both ERISA and traditional concepts of standing the retired employees alleged a sufficient personal stake in the outcome of a justiciable controversy to obtain a judicial resolution of their dispute. However, the fact that they had standing did not resolve the matter. In order to pursue their claims, the retired employees also had to show that the court had subject matter jurisdiction. The court found that it did not have jurisdiction under either 29 U.S.C.S. § 1132(e)(1) or 28 U.S.C.S. § 1331, as alleged. Neither of the employees claimed to be a "beneficiary" within the statutory definition of that term, even though each fell within the definition of a "participant." But it was undisputed that each of the employees was already receiving all the benefits due him under the terms of his plan and that neither

  

had a colorable claim that the fiduciary had failed properly to discharge its statutory duties.

**OUTCOME:** The court affirmed the decision granting summary judgment to the employer because the retired employees failed to show that the court had subject matter jurisdiction.

**CORE TERMS:** early retirement, retirement, employee benefit plan, beneficiary, retirement benefits, fiduciary, duty, entitlement, colorable claim, adjudicated, generous, clarify, subject matter jurisdiction, retired, eligible to receive, civil action, former employees, summary judgment, pension plan, adjudicate, qualify, retire, entitled to participate, judicial resolution, failing to disclose, former employee, personal stake, prudent man, discriminate, interfering

**LexisNexis(R) Headnotes**

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action**
**Governments > Courts > Authority to Adjudicate**
HN1 The United States district courts are not courts of general jurisdiction, and before a federal court can decide a claim for relief, the court must be satisfied that Congress has empowered it to do so. While it is conceivable that plaintiffs may have meritorious claims arising under state law, in order to pursue those claims in federal court, they must demonstrate that they and their claims come within the terms of the statutory provisions they rely upon in their complaint as giving rise to federal court jurisdiction.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN2 The Employee Retirement Income Security Act (ERISA) authorizes a "participant" to commence a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C.S. § 1132(a)(1)(B). A participant may also sue to enforce provisions of ERISA. 29 U.S.C.S. § 1132(a)(3)(B)(ii).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN3 The Employee Retirement Income Security Act defines a "participant" as any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. 29 U.S.C.S. § 1002(7).

**Civil Procedure > Justiciability > Standing**
**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN4 In determining who is a "participant," for purposes of standing, the



definition found in 29 U.S.C.S. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim that they are not receiving the full extent of the benefits to which they are entitled from the employee benefit plan which is paying them retirement benefits. The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue, whether a person has alleged such a personal stake in the outcome of a justiciable controversy that he should be entitled to obtain its judicial resolution. Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated.

**Civil Procedure > Justiciability > Standing**
**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN5 A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C.S. § 1132(a)(1)(B). Unless a plaintiff is "a participant or beneficiary" seeking to recover benefits or enforce or clarify his rights "under the terms of the plan," he may not bring an action under 29 U.S.C.S. § 1132(a)(1)(B).

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question Jurisdiction**
**Governments > Courts > Authority to Adjudicate**
HN6 Under 28 U.S.C.S. § 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
HN7 The fiduciary has a statutory duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan, which duty must be carried out with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C.S. § 1104(a)(1)(A)-(B).

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
HN8 29 U.S.C.S. § 1140 provides that it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

OPINIONBY:

NORRIS





OPINION:

BEFORE: NELSON and NORRIS, Circuit Judges; and SPIEGEL, District Judge. *

* The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

ALAN E. NORRIS, Circuit Judge.

Plaintiffs-appellants, Jack R. Hughes and Merle A. Pettit, appeal from an order of summary judgment dismissing, for lack of standing, their complaint against defendants-appellees, General Motors Corporation ("GM"), the General Motors Retirement Program for Salaried Employees ("GM Plan"), the Finance Committee of General Motors, and certain GM officers. Hughes and Pettit are retired employees of GM's Oldsmobile division, and their complaint asserted claims based upon the Employee Retirement Income Security Act of 1974 ("ERISA").

BACKGROUND

On May 1, 1980, Hughes and Pettit retired and began receiving retirement benefits from the GM Plan, an ERISA employee pension benefit plan.

Special early retirement benefits had been offered by other divisions of GM and it was rumored that Oldsmobile would follow suit. In February 1980, Pettit contacted Robert Shong, *2 coordinator of employee benefits, and was advised by him that Oldsmobile was not contemplating adopting a program to increase early retirement benefits. Relying upon this advice, Pettit gave written notice that he would retire on May 1, 1980. Hughes also gave written notice of his intent to retire on May 1, 1980.

Both Hughes and Pettit continued to inquire about possible adoption by Oldsmobile of special early retirement benefits, and indicated their willingness to work any additional time necessary to qualify. Pettit's final inquiry was made on April 15, and Hughes last inquired on April 30, the day before his retirement.

On April 22, Oldsmobile's general manager authorized special early retirement benefits for employees who would attain the age of fifty-eight or fifty-nine by August 1, 1980. Even though the decision would not have applied to Hughes and Pettit, both fifty-six years of age, they argue that knowledge of its existence would have alerted them to postpone retirement and await further developments.

In May 1980, in an effort to reduce its salaried work force, Oldsmobile offered special early retirement benefits to employees who would attain the age of fifty-five, fifty-six, *3 or fifty-seven by August 1, 1980. The special benefits would have provided higher monthly payments to both Hughes and Pettit, and would have eliminated the requirement in their present benefits plan that retirement benefits be reduced by outside income. They contend that Shong and other personnel department employees knew, no later than April 28, 1980, that Oldsmobile had decided to extend these special benefits to persons in their age bracket.

Pettit requested that he be allowed the additional benefits under the special early retirement offer, maintaining that he had moved up his originally scheduled retirement date of May 1, 1980 because of Shong's advice. James

  

Lewandowski, Oldsmobile's personnel director, wrote to Hughes and Pettit, stating that the company made its decision to offer special early retirement to their age group after May 1, 1980 and, since Hughes and Pettit were no longer active employees, neither was entitled to those benefits.

Plaintiffs' second amended complaint detailed three claims based upon provisions of ERISA: that, by failing to disclose information, defendants deprived them of rights and benefits to which they would have been entitled under the special *4 early retirement program (29 U.S.C. § 1132(a)(1)(B)); that defendants violated fiduciary duties by failing to disclose information and by intentionally or negligently misrepresenting GM's intention to implement special early retirement programs (29 U.S.C. § 1104); and that defendants interfered with their eligibility to receive early retirement benefits (29 U.S.C. § 1140).

Defendants filed motions for summary judgment contending that Hughes and Pettit had failed to exhaust their administrative remedies under the GM Plan, that they lacked standing to bring suit under ERISA, and that, even if they did have standing, Oldsmobile had no duty to disclose retirement plans that were only contemplated at the time they retired.

On March 24, 1987, the district court granted the motions for summary judgment, solely upon the ground that Hughes and Pettit lacked standing because they were not "participants," as defined in 29 U.S.C. § 1002(7) and, therefore, were not authorized to pursue their claims.

DISCUSSION

HN1 The United States district courts are not courts of general jurisdiction, of course, and before a federal court can decide a claim for relief, the court must be satisfied that Congress has *5 empowered it to do so. While it is conceivable that plaintiffs in the case at bar may have meritorious claims arising under state law, in order to pursue those claims in federal court, they must demonstrate that they and their claims come within the terms of the statutory provisions they rely upon in their complaint as giving rise to federal court jurisdiction.

Standing

HN2 ERISA authorizes a "participant" to commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A participant may also sue to enforce provisions of ERISA. 29 U.S.C. § 1132(a)(3)(B)(ii). The Act defines a "participant" as:

HN3 Any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7) (emphasis added).

According to their complaint, *6 Hughes and Pettit are former employees who are receiving benefits from the GM Plan. They claim they are entitled to additional benefits under an amendment to the plan, due to misconduct of

  


defendants. Accordingly, plaintiffs appear to have alleged a status that fits precisely within the plain language of the statutes quoted above. The district court reasoned that, since the benefits sought were first made available as the result of an amendment adopted after plaintiffs retired, they could not be eligible for the benefits and therefore could not be "participants" authorized to bring suit. It seems to us that the district court's reasoning requires treating each component benefit under a pension plan as a separate and distinct "employee benefit plan" for the purpose of determining who is a "participant" having standing. Such a strained reading of the statute is not warranted. In addition, the practical effect of the district court's holding was to require that plaintiffs prevail on the merits--demonstrate that they are entitled to the additional benefits--as a prerequisite to qualifying for the standing necessary to adjudicate the merits of their claims.

HN4 In determining who is a "participant," *7 for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim that they are not receiving the full extent of the benefits to which they are entitled from the employee benefit plan which is paying them retirement benefits. The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue  Flast v. Cohen, 392 U.S. 83, 101-02 (1968), whether a person has alleged such a personal stake in the outcome of a justiciable controversy that he should be entitled to obtain its judicial resolution. See Baker v. Carr, 369 U.S. 186, 204 (1962). Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 484 (1982).

The question before us, then, is whether Congress intended that persons in plaintiffs' positions have the right to seek judicial relief. It appears to us that the statute manifests an intention *8 that the right to bring claims concerning pension benefits should be limited to those who are, or claim they are, entitled to receive a benefit from a pension plan.

Here, plaintiffs allege that they are former employees who are receiving benefits from their employee benefit plan and seek to recover additional benefits to which they claim they are entitled, but are being denied them as the result of defendants conduct. Accordingly, they have alleged, under both ERISA and traditional concepts of standing, a sufficient personal stake in the outcome of a justiciable controversy to obtain a judicial resolution of their dispute with defendants. They are within the zone of interests ERISA was intended to protect. See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3531.7 (1984).

The district court relied upon Stanton v. Gulf Oil Corp., 792 F.2d 432, 434-35 (4th Cir. 1986); Joseph v. New Orleans Elec. Pension & Retirement Plan, 754 F.2d 628, 630 (5th Cir.), cert. denied, 474 U.S. 1006 (1985); Jackson v. Sears, Roebuck & Co., 648 F.2d 225, 227-29 (5th Cir. 1981); and Nugent v. Jesuit High School, 625 F.2d 1285, 1286-87 (5th Cir. 1980). The *9 cases from the Court of Appeals for the Fifth Circuit are easily distinguished. In Jackson, the employer historically had maintained two separate and distinct retirement plans; at the time of her termination, Jackson was among the class of employees entitled to participate in one plan but not in the other--she claimed she would have been entitled to participate in the other plan had she been permitted to stay for another one and one-half months. In Joseph, the plaintiffs were employees who had elected to receive a lump-sum retirement benefit in lieu of a

  

continuing monthly benefit, and sought the benefit of a later adopted amendment to the plan which changed the way in which benefits were calculated. Actually, it may be argued that Nugent supports our view since there the court of appeals recognized that an employee who is terminated after the vesting of rights in a pension plan is a participant for purposes of standing.

However, the Stanton case does appear to support the district court's holding, at least to the extent of its denial of standing. There, the court of appeals in essence required an early retiree, who was seeking additional benefits from his retirement plan *10 under circumstances remarkably similar to those before us, to prove his entitlement to the benefits as a condition of standing; it appears to have treated the modification of benefits which plaintiff was seeking as though it were a separate and distinct plan from the one in which plaintiff was participating as a retiree.

To require a plaintiff to prove the issue he seeks to have adjudicated, as a condition of entitlement to the opportunity to have it adjudicated, would turn the traditional concept of standing on its head. Accordingly, to the extent that the cases cited above require a former employee, who is receiving benefits from an employee benefit plan, to establish his entitlement to additional benefits from the plan as a condition of standing to adjudicate his entitlement to the additional benefits, we decline to follow those cases.

We note that our reasoning is supported by an opinion from the Court of Appeals for the Third Circuit in Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 152-53 (3d Cir. 1987), cert. granted, 108 S.Ct. 1288 (1988). In Bruch, the court reasoned that 29 U.S.C. § 1132(a) should be construed as if it read "a civil action may be brought *11 by someone who claims to be a participant," and that a person does not lack "standing to claim an entitlement to benefits just because it turns out that he is in fact not entitled to those benefits. When a court holds that a claimant is not entitled to benefits, the claimant loses on the merits and judgment is entered against him." Bruch, 828 F.2d at 152.

Subject Matter Jurisdiction

However, our having determined that plaintiffs were persons authorized by Congress to bring ERISA claims, does not conclude the matter since the federal courts will not have subject matter jurisdiction unless plaintiffs have alleged claims which Congress, in ERISA, authorized the federal courts to adjudicate. Because we conclude that plaintiffs have not alleged ERISA claims, we affirm the judgment of the district court.

I.

The complaint informs us that the court's subject matter jurisdiction rests upon 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. The former tells us that district courts have jurisdiction of actions brought under 29 U.S.C. § 1132(a)(1)(B). The jurisdictional inquiry starts, therefore, with that section: HN5 "A civil action may be brought . . . by a participant or beneficiary . . *12 . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Unless a plaintiff is "a participant or beneficiary" seeking to recover benefits or enforce or clarify his rights "under the terms of the plan," he may not bring an action under 29 U.S.C. § 1132(a)(1)(B).

  

Although neither of the plaintiffs claims to be an employee benefit plan "beneficiary" within the statutory definition of that term, we have already determined that each is a "participant." But it is undisputed that each of the plaintiffs is already receiving all the benefits due him "under the terms of his plan." The plaintiffs affirmatively allege that they do not qualify for the higher retirement benefits that became available to the plan participants who were still employed by the Oldsmobile Division of General Motors Corporation at a certain date after the plaintiffs retired. The whole point of the lawsuit is that the defendants, as the complaint avers, "caused the plaintiffs to be damaged by not being able to qualify for higher *13 retirement benefits under the special early retirement program. . . ." (Emphasis added.)

Just as it is evident that no special early retirement benefits are "due to" plaintiffs "under the terms of the plan," It is evident that the plaintiffs have no "rights" to present or future benefits "under the terms of the plan." The plaintiffs allege, rather, that they would have been entitled to special early retirement benefits under the terms of the plan but for the fact that the defendants maliciously, falsely, or recklessly led the plaintiffs to believe that the terms of the plan would not be changed, after the date of their proposed retirements, to make special retirement benefits available to participants who might still be on the payroll after that date. The words of 29 U.S.C. § 1132, as we read them, do not give the district court jurisdiction to decide claims of this type; the claims cannot fairly be said to be claims by a participant seeking to recover benefits or enforce or clarify rights "under the terms of the plan."

In this context, the result, if not the rationale, of the opinion in Stanton v. Gulf Oil Corp., does not appear to be inconsistent with the outcome of *14 this appeal. By the same token, it appears that the plaintiffs in Bruch were assumed to have colorable claims to benefits "under the terms of the plan," whereas the plaintiffs in the case at bar, like their Stanton counterpart, assert no such claims.

Plaintiffs would have been entitled to come into federal court had Congress seen fit to authorize suits not only by plan participants who are or may become eligible to receive a benefit "under the terms of the plan," but also by participants who would have become eligible but for a retirement induced by the withholding of information on contemplated changes in the plan's terms. The reason Congress did not include such language could well be that Congress simply did not happen to consider the possibility that it might have been appropriate. But whatever the reason, Congress said what it said--no more and no less. Congress did not say what the plaintiffs obviously would have wished it to say. Much as we might wish we had the power to amend congressional legislation where our sense of equity tells us that amendments would be desirable, the Constitution simply does not give us that power. See Commissioner v. Asphalt Prods. Co., *15 107 S.Ct. 2275 (1987).

II.

It remains to be considered whether the district court had subject matter jurisdiction HN6 under 28 U.S.C. § 1331, which says that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

In this connection, we must determine first whether the plaintiffs have a colorable claim for damages resulting from a breach of HN7 the fiduciary's statutory duty to "discharge his duties with respect to a plan solely in the

  

interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan," which duty must be carried out "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(A)-(B). Absent any suggestion that the terms of the GM plan obligated the plan fiduciary to tell participants, prior to their retirement, of any changes *16 in the terms of the plan that were under consideration but had not yet been adopted, we see no basis for a colorable claim that the fiduciary failed properly to discharge its statutory duties as a prudent man would have done. If the fiduciary had a duty not to deceive plaintiffs as to what was being contemplated in the way of future amendments to the terms of the plan, the duty arose under the common law of the State of Michigan; it did not arise under the terms of the plan itself, or under the terms of the federal statute prescribing the standards under which the fiduciary's duties with respect to the plan were to be discharged.

Finally, we address the question whether plaintiffs have a colorable claim arising under HN8 29 U.S.C. § 1140. The statute provides that "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . ." The operative verb here is "discriminate"--for there is not so much as a hint that plaintiffs were discharged, fined, suspended, expelled, or disciplined for the purpose *17 of interfering with the attainment of any right to which plaintiffs might become entitled under the plan.

A colorable claim of "discrimination" in violation of 29 U.S.C. § 1140 was found to be present in Saporito v. Combustion Eng'g, Inc., 843 F.2d 666, 672 (3d Cir. 1988), the plaintiffs in that case having alleged that the defendants not only failed to inform them of the development of a more generous retirement plan than that in which the plaintiffs were participants, but also "coerced the plaintiffs into retiring while providing information on the development of the more generous plan to some other employees. The Saporito plaintiffs contended, in the words of the court, that "but for the selective divulgence of information, they would have been members of the more generous plan. . . ." Id. The court went on to point out that "this is not an instance where plaintiffs simply alleged that the employer did not inform the employees of a plan in development. Instead, appellants here argue that the defendant induced appellants to retire under the less generous plan, while secretly informing some individuals of the more lucrative plan." Id. (emphasis added) *18 (footnote omitted).

The sort of discrimination alleged in Saporito has not been alleged here. Plaintiffs in this case do allege that GM made special early retirement benefits available before May 1, 1980, to participants employed by the Pontiac, Buick, and Delco-Remy divisions of the company, but there is no allegation that any Oldsmobile Division employee was told, prior to May 1, that special early retirement benefits had been made available to participants in other divisions, and there is no allegation that any employee of the Oldsmobile Division was told that the company planned to make such benefits available to Oldsmobile Division employees in the future. Plaintiffs have simply not alleged any discrimination in favor of other employees in their division.

The point of the foregoing discussion is that, although plaintiffs, as former employees who are receiving benefits under the GM plan are undoubtedly

  

852 F.2d 568; 1988 U.S. App. LEXIS 9637, *18

"participants" in the plan, that fact alone does not give the federal courts jurisdiction to adjudicate claims that arise neither under the terms of the plan nor under the terms of the statute. If a plan participant had purchased an Oldsmobile car that proved to have a defective *19 transmission, for example, the participant might have had a claim against GM for breach of warranty--but such a claim could not be adjudicated in the federal courts absent a statute giving the federal courts jurisdiction to entertain warranty claims. So it is with the claims sought to be advanced here; they do not arise under the terms of the plan, they do not arise under the terms of the statute, and thus they are not justiciable in a federal court.

The judgment of the district court is affirmed.

