IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John D. West, on Behalf Of Himself and All Other Persons Similarly Situated ) ) ) | Case No.: C-1-02-0001 |
| Plaintiffs ) ) | |
| v. ) ) | District Judge Sandra S. Beckwith |
| AK Steel Corporation (formerly ARMCO) ) Retirement Accumulation Pension Plan ) ) | Magistrate Judge Timothy S. Black |
| Defendants ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF
DAMAGES AND PREJUDGMENT INTEREST**

In its decision of April 8, 2004, this Court determined that "the manner in which Plaintiffs' lump sum disbursements were calculated under the AK Steel Plan violated ERISA and the I.R.C." *West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 318 F. Supp. 2d 579, 591 (S.D. Ohio 2004). The Court therefore granted plaintiffs' motion for partial summary judgment on the issue of liability and directed that "[t]his matter will proceed on the issue of damages." *Id.*

Plaintiffs now move for summary judgment on the issue of damages, and on the related issue of prejudgment interest thereon. For the reasons addressed below, plaintiffs' motion should be granted.

## I. **INTRODUCTION**

The procedure being followed in this case was agreed upon by the parties, and corresponds to the pattern established in prior ERISA cases involving underpayments of lump sum distributions. *See, e.g.*, *Rybarczyk v. TRW Inc.*, 235 F.3d 975 (6th Cir. 2001); *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994); *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804 (S.D. Ill., 2002), *aff'd sub nom. Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003). In each of those cases, the court first addressed the question of liability, determining that the defendants' calculation of the lump sum distributions violated ERISA, and then the question of damages, determining the appropriate method for computing the amount of the underpayments and awarding those amounts, with interest, to the plaintiff class.[1]

In the instant case, the parties agreed in their proposed Scheduling Orders that the case should be bifurcated, with the issue of liability to be addressed first. Stipulated Order filed October 30, 2002 (Doc. No. 33), at 2; Stipulated Scheduling Order filed May 19, 2004 (Doc. No. 57), at 1-2. In the event of a finding of liability, the parties would conduct discovery and submit dispositive motions on the issue of quantifying the amount of the damages. *Id*.

Following the Court's April 8, 2004 determination of liability (Doc. No. 56), discovery on the issue of damages was conducted, and plaintiffs obtained from defendants the data

---

[1] That was exactly the procedure in *Berger*. The district court first determined liability, *Berger v. Nazametz*, 157 F. Supp. 2d 998 (S.D. Ill. 2001), and then the amount of the damages, *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804 (S.D. Ill., 2002). In *Rybarczyk*, the Sixth Circuit prescribed the method of computing the damages. *Rybarczyk v. TRW Inc.*, 235 F.3d 975 (6th Cir. 2001). Following remand, proceedings were underway in the district court to implement that method and determine the amounts awardable to the class members, but the case was settled before that process was completed.

necessary to compute the amount of the underpayment of each class member. That data was then utilized by plaintiffs' actuarial expert, Michael L. Libman, who computed the underpayments.

The method of computation is described in detail in the Affidavit of Michael L. Libman ("Libman Affidavit"),[2] and the results are set forth in Exhibit 4 thereto, entitled Proposed Schedule of Underpayments. As Libman explains in his Affidavit, the Proposed Schedule of Underpayments "identifies by name each of the 1,257 class members thus far identified by the defendants, and specifies for each" class member:

- The date on which the class member received their retirement benefits in the form that the retiree had specified – an immediate lump-sum payment;

- The amount of that original lump-sum payment; and

- The additional amount that should have been paid the retiree on the date that the member had received the original lump-sum payment, as determined pursuant to Judge Beckwith's April 8, 2004 Order, and the proper application of widely accepted pension actuarial principles to such legal directives.

Libman Affidavit at ¶ 7.

The total of these underpayments for all class members, before any interest computation, is $ 40,176,529.34. *See* Exhibit 1: Summary of Underpayments.

Once this Court determined the proper method of calculation in its April 8, 2004 opinion, computing the underpayments in accordance with the Court's opinion was a straightforward actuarial process. Defendants do not dispute the accuracy of Mr. Libman's computations, and indeed their own schedule of underpayments is based on Mr. Libman's actuarial formula. Defendants merely offer "comments" on certain variables in the formula.

---

[2] The Libman Affidavit and Exhibits were filed separately in Submissions in Support of Plaintiffs' Motion for Partial Summary Judgment on the Issues of Damages and Prejudgment Interest ("Plaintiffs' Submissions in Support").

As shown below, defendants' comments should be overruled, and the computations set forth in Exhibit 4: Proposed Schedule of Underpayments should be approved and adopted.

## II. ARGUMENT

### A. DEFENDANTS "COMMENTS" SHOULD BE OVERRULED

Defendants' actuarial expert, Lawrence Sher, states that "I have comments on four aspects of Mr. Libman's damages calculations." Report of Lawrence Sher ("Sher Report") at 3 (filed as a part of Plaintiffs' Submissions in Support). Sher's comments, and the phrases he coins to label them, are set forth in his report as follows:

1. Mr. Libman's determination of damages separately with respect to opening and future service accounts ("segregation issue")

2. Mr. Libman's assumption that no employees would die before reaching age 65 ("pre-age 65 mortality issue")

3. Mr. Libman's presentation of damages in the form of lump sum payments rather than as annuities ("form of payment issue")

4. Mr. Libman's methodology for projecting interest to age 65 ("interest credit projection issue")

Sher Report at 3.

Sher's first comment is moot, and the remaining comments are unfounded and inappropriate as a matter of law.

### 1. The "Segregation Issue" Is Moot

Sher's first comment—the so-called "segregation" issue—is a moot point. It arises from the fact that a participant's cash balance under the AK Steel Plan consists of two hypothetical accounts: an "Opening Account" (representing the value of the participant's benefits as of the date the Plan was established, January 1, 1995), and a "Future Account" (into which subsequent employer contributions are credited). *West*, 318 F. Supp. 2d at 581 n.4; Plan §§ 1.1, 3.1, 3.2.

4

When Mr. Libman computed the underpayments in accordance with the Court's April 8, 2004 opinion, he made separate calculations for the Opening Account and the Future Account and then added the results together to arrive at the total underpayment. Mr. Sher suggests that instead of "segregating" the accounts in this manner, it is possible to "consolidate" the results at earlier point in the calculation.

Sher and Libman agree, however, that neither approach is required, and that the effect of this "segregation" issue on the computation of damages is only about $300,000—a de minimis amount in comparison to the total underpayment of over $40,000,000. To eliminate the issue, Mr. Libman used Sher's "consolidated" approach in his Proposed Schedule of Underpayments. Libman Affidavit at ¶ 5.

### 2. Defendants Are Not Entitled To A Reduction Of The Damages On Account Of "Pre-Retirement Mortality"

For his second comment, Sher proposes that every class member's damages be reduced on account of "pre-retirement mortality"—that is, the statistical possibility that the class member might have died before reaching the normal retirement age of 65. The case law, however, establishes that an ERISA defendant is not entitled to a pre-retirement mortality discount under the circumstances presented by the AK Steel Plan.

A participant's pension benefit under ERISA consists of an annuity that will commence when the participant reaches the normal retirement age of 65. *West*, 318 F. Supp. 2d at 582-83. A lump sum distribution is the actuarial equivalent, or present value, of the participant's age-65 benefit. *Id.* In theory, a pre-retirement mortality discount reduces the lump sum distribution based on the statistical possibility that the participant might have died before reaching age 65 and therefore not received his or her full pension benefit. Under the AK Steel Plan, however, a

5

participant's death prior to age 65 triggers a death benefit to the surviving spouse or beneficiary that equals the benefit to which the participant was entitled. Plan § 5.1; Libman Aff. at ¶ 10. Inasmuch as the pension benefit is not reduced in the event of pre-retirement mortality, there is no basis for a pre-retirement mortality reduction of the corresponding lump sum. *Berger v. Xerox Corp. Retirement Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003) (opinion by Posner, J.).

Like the instant case, *Berger* involved a cash balance plan that had been found to violate ERISA in the calculation of participants' lump sum distributions. And like the instant case, the Plan provided there would be no reduction in the normal pension benefit in the event a participant died before reaching age 65. Writing for the Seventh Circuit, Judge Posner described as "unfathomable" the defendant's argument for a pre-retirement mortality discount in the calculation of class members' damages under such facts:

> Regarding damages, Xerox complains that the district judge refused to discount the pension benefit by the probability that the employee would actually live till age 65. This complaint, typical of many of the arguments made in scattershot fashion in Xerox's briefs, is unfathomable, since the plan provides that if the employee dies before reaching retirement age his spouse or other designated beneficiary steps into his shoes and is entitled to his entire pension benefit.

*Berger*, 338 F.3d at 764.

The district court opinion in *Berger* explained in greater detail the legal basis for this outcome under ERISA. The district court began by noting that on the issue of pre-retirement mortality, "the Court is considering questions of law, not plan interpretation, and that it does so *de novo*. … Accordingly, the Court will not refer the issue of pre-retirement mortality discount to the Plan administrator for consideration." *Berger*, 231 F. Supp. 2d at 813 (citing *Berger v. Nazametz*, 157 F. Supp. 2d 998, 1001 (S.D. Ill. 2001); *Williams v. Midwest Operating Eng'rs*

6

*Welfare Fund*, 125 F.3d 1138, 1140 (7th Cir. 1997)).

The district court then gave five reasons for concluding that when a Plan does not reduce the normal pension benefit payable to beneficiaries in the event of a participant's death, ERISA precludes the use of a pre-retirement mortality discount in the lump sum calculation as a matter of law. First, the district court held that a pre-retirement mortality discount would violate the anti-forfeiture rules of ERISA §§ 3(35) & 203(a):

> Once a participant completes the required period of service, five years in the case of the RIGP [i.e., the Xerox plan], the participant becomes fully vested and his or her "accrued benefit," is deemed "nonforfeitable." *See* ERISA § 3(35). Treasury Regulations implement the ERISA vesting requirement. *E.g.* Treasury Regs. § 1.411(a)-4(a) ("Certain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."). While certain benefits provided under the RIGP are reduced when a participant dies before reaching retirement age, this is not true of the cash balance accounts. When a participant dies before reaching age sixty-five, the RIGP will pay to her beneficiary the entire amount allocated to her cash balance account(s). <u>Use of a mortality discount for the period before age sixty-five would, accordingly, result in a partial forfeiture of benefits in violation of the ERISA vesting rules (i.e., the anti-forfeiture rules)</u>.

*Berger*, 231 F. Supp. 2d at 813 (emphasis added).

Second, the court held that a pre-retirement mortality discount would violate the rule of ERISA § 204(c)(3) that "any lump sum substitute for an accrued pension benefit [must] be the actuarial equivalent of that benefit." *Berger*, 338 F.3d at 759. This Court applied that rule in its April 8, 2004 opinion, holding that "a lump sum disbursement, like the ones received by Plaintiffs under the AK Steel Plan, must be the actuarial equivalent of the annual benefit the participants would have received at normal retirement age." *West*, 318 F. Supp. 2d at 583 (citing ERISA § 204(c)(3), 29 U.S.C. 1054(c)(3); *Berger*, 338 F.3d at 759; *Esden*, 229 F.3d at 163). In *Berger*, the district held that the rule precludes a pre-retirement mortality discount under the circumstances presented here:

7

> [U]sing pre-retirement mortality to determine the present value of a normal retirement annuity that does not decrease if the participant dies prior to age sixty-five results in a lump sum with a value less than the actuarial equivalent of the annuity form of benefit it replaces.

*Berger*, 231 F. Supp. 2d at 813 (citing ERISA § 204(c)(3); Treas. Reg. § 1.417(e)-1(d)).

The district court in *Berger* cited three additional reasons for rejecting a pre-retirement mortality discount:

- Denial of the pre-retirement mortality discount "is consistent with the position of the Internal Revenue Service in Notice 96-8." 231 F. Supp. 2d at 814.

- "In other contexts where there can be no forfeiture of a benefit, ERISA precludes use of a pre-retirement mortality discount." 231 F. Supp. 2d at 815.

- Under the "safe harbor" regulation, Treas. Reg. § 1.401(a)(4)-8(c)(3), "the single safe-harbor rate that is derived from a projection-forward/discount-back methodology expressly provides that mortality may not be assumed before normal retirement age." 231 F. Supp. 2d at 816.

For the reasons given by the Seventh Circuit and the district court in *Berger*, this Court should reject defendants' request for a pre-retirement mortality discount in the computation of the damages they must pay to class members.

### 3. Having Underpaid Class Members' Lump Sum Distributions, Defendants Must Pay Damages In The Lump Sum Form, Not In The Form Of Annuities Commencing At Age 65

For his third comment —the so-called "form of payment issue"—Sher criticizes Mr. Libman for computing the damages "on the presumption that they would be paid to class members in the form of additional lump sum distributions." Sher Report at 5. That criticism seems curious on its face. The purpose of this relief is to compensate class members for the losses they sustained when the Plan illegally withheld a portion of their lump sum pension distributions. Why wouldn't these amounts also be paid in a lump sum?

8

But Sher's full intent becomes clear from the body of his argument. Characterizing these damages computations as "additional benefits," Sher suggests that the AK Steel Plan "be amended to permit or require that the additional benefits be paid in the form of age 65 annuities." Sher Report at 5. Apparently Sher is proposing to defendants that they attempt to trump the authority of this Court by dictating that any damages awarded by the Court (i.e., "additional benefits") be paid only as annuities commencing at age 65.

Sher's proposal would work a cruel irony. As plaintiffs' expert, Michael Libman, points out, paying the damages "in the form of an annuity commencing at age 65 (an age that 80% of the class has not yet reached) … would be contrary to the election that each class member made—to take retirement benefits in a lump-sum payment at retirement." Libman Affidavit at ¶ 15. The class members' election to take their pension benefits out of the Plan in lump sum distributions would seem a wise choice in light of AK Steel's uncertain financial condition. Yet the Plan underpaid those distribution, effectively forcing the class members to leave a portion of their benefits in the Plan. Now Sher would have the Plan impose a further withholding, keeping the underpayments in the Plan until class members reach age 65, and paying it out to them even then only in small amounts each month.

Sher's rationale for such a travesty is internally flawed. He states that "[t]his 'residual' annuity approach is commonly used in defined benefit plans that allow partial lump sum distributions—e.g., where the plan allows employees to take back their own contributions to the plan in a lump sum and pay the remainder of the benefit in an annuity." Sher Report at 5. Sher's analogy doesn't fit. The class members in this case did not elect to take "partial lump sum distributions." They elected to take full lump sum distributions, consisting of 100% of their pension benefits. The Plan underpaid those distributions, and must now compensate class

9

members for their loss.

### 4. Sher's Approach On The "Interest Credit Projection Issue" Was Previously Rejected By This Court

For his fourth comment, Sher suggests a modification of the "projection forward" part of the whipsaw calculation. Instead of projecting class members' cash balance accounts forward to age 65 at the Plan's interest credit rate in accordance with the Court's April 8, 2004 opinion (as Mr. Libman did), Sher would make the projection using "the annual rate of 30-year Treasury securities" (which of course eliminates all damages). Sher Report at 5, 6.

Sher acknowledges that his approach was specifically rejected by this Court in footnote 12 of its April 8, 2004 opinion, while Libman's approach was specifically approved. In footnote 12, the Court held that:

> The interest credit rate for Future and Opening Accounts is established in § 3.3 of the AK Steel Plan. The Court believes it is this rate that should be used when projecting Plaintiffs' hypothetical account balances to normal retirement age.

*West*, 318 F. Supp. 2d at 585 n.12. Section 3.3 sets the minimum interest credit rate at 7.5% for Opening Accounts and at 3% for Future Accounts. Between the minimum and maximum, the rate in a given year is tied to the rate on 5-year Treasury securities. Plan § 3.3.

As Sher acknowledges, Mr. Libman computed the damages in accordance with section 3.3 and footnote 12 of the Court's opinion:

> Mr. Libman's damages calculations … project interest credits from the class member's original lump sum date to age 65 using the AK Steel plan's interest crediting rate applicable in the year the lump sum was paid.

Sher Report at 6. Libman's computations took into account the minimum and maximum rates established by Plan § 3.3. With regard to the Opening Account, for example, Libman always used the 7.5% minimum rate pursuant to § 3.3. *See* Libman Aff. at 6, 14 ¶¶ & Exhs. 2, 3.

10

Sher, on the other hand, performed the "projection forward" calculation in two ways. He first used Libman's approach, which conformed with footnote 12 of the Court's opinion. Then, as Sher explains in his report, "[d]efendants' counsel requested that I run the damages calculations both reflecting that approach and under the approach discussed in footnote 12 that the Defendants advocated." Sher Report at 5. Instead of using the 5-year Treasury rate and the minimum and maximum rates specified in Plan § 3.3, defendants' approach substituted a single variable rate based on "the annual rate on 30-year Treasury securities." But that approach, which the defendants tried to justify by citing Exhibit I(C) of the Plan, was specifically rejected by the Court in footnote 12. *West*, 318 F. Supp. 2d at 585 n.12.

Clearly Libman's approach on this "projection forward" calculation is the proper one, while defendants' approach is not.

### B. THE COURT SHOULD AWARD PREJUDGMENT INTEREST ON THE DAMAGES

The Sixth Circuit has held that while a "district court has broad discretion to award prejudgment interest" in an ERISA case, "beneficiaries of pension plans have a right to prejudgment interest on benefits wrongfully withheld." *Wells v. United States Steel*, 76 F.3d 731, 737 (6th Cir. 1996) (discussing *Tiemeyer v. Community Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993), *cert. denied*, —U.S.—, 114 S.Ct. 1371 (1993)). *Accord*, *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991) ("prejudgment interest should be *presumptively* available to victims of federal law violations," and that rule is "specifically applicable to ERISA cases"); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 n.11 (5th Cir. 1991).

In this Circuit and elsewhere, it is well settled that without an appropriate award of prejudgment interest, "the relief granted would fall short of making the victim whole because he has been denied the use of money which was his." *Sweet v. Consolidated Alum. Corp.*, 913

F.2d 268, 270 (6th Cir. 1990), *quoted in Tiemeyer*, 8 F.3d at 1102. *See West Virginia v. United States*, 479 U.S. 305, 310 & n.2 (1987) (prejudgment interest "serves to compensate for the loss of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation").

Thus, "'[a]wards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award,'" *Tiemeyer v. Comm. Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) (quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 [6th Cir. 1992], cert. denied -- U.S. --, 113 S. Ct. 2416 (1993). *Accord Brown v. Consolidated Rail Corp.*, 614 F. Supp. 289, 291 (N.D. Ohio 1985) ("Defendants' good faith or justification for its position is immaterial to the decision to award such interest."); *Stroh Container Co. v. Delphi Inds., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986), cert. denied 476 U.S. 1141, 106 S. Ct. 2249 (1986).

In the instant case, therefore, the Court should exercise its discretion to award prejudgment interest on the class members' damages. Proposed rates for this requested award of prejudgment interest are discussed below.

### C. LIBMAN'S EXHIBIT 4: PROPOSED SCHEDULE OF UNDERPAYMENTS PROPERLY QUANTIFIES THE AMOUNTS DUE

Mr. Libman's computations take into account all of the issues relating to damages, including defendants' "comments" and the issue of prejudgment interest.

In Exhibit 1: Summary of Underpayments, Mr. Libman shows the total amount of the damages of all class members, calculated in two ways. First, he shows the total amount *without* a reduction of the damages on account of pre-retirement mortality (as plaintiffs propose). Second, though he states in his Affidavit that "I am of the opinion that a pre-age-65 mortality

factor has no proper place in these calculations," Mr. Libman provides at counsel's request the result of the damages calculation *with* a reduction for pre-retirement mortality (as defendants assert). For each total damages figure, Exhibit 1 also shows the total amount of pre-judgment interest using alternative rates (as discussed below).

In Exhibit 2: Method of Calculation, Mr. Libman itemizes the steps in his computations. The method shown in Exhibit 2 is without a reduction of the damages on account of pre-retirement mortality. In Exhibit 3: Interest Rates and Mortality Factors, Mr. Libman lists the actuarial factors used in his computations.

Exhibit 4: Proposed Schedule of Underpayents shows the damages of each class member, calculated without a reduction of the damages on account of pre-retirement mortality (as plaintiffs propose). Exhibit 4 also shows the amount of prejudgment interest for each damages figure, using three alternative interest rates.

The first prejudgment interest rate shown on Exhibit 4 is the Ohio statutory rate, which was 10% for most of the relevant period. Ohio Rev. Code Ann. § 1343.03; *Sandusky Properties v. Aveni*, 15 Ohio St. 3d 273, 473 N.E.2d 798, 799 n.1 (1984). Plaintiffs are mindful that the courts "look with disfavor on simply adopting state law interest rates" in ERISA cases because "ERISA is "not an area 'primarily of state concern.'" *Rybarczyk v. TRW Inc.*, 235 F.3d 975, 985 (6th Cir. 2001) (quoting *Ford v. Uniroyal,* 154 F.3d 613, 616 (6th Cir.1998)). The Ohio statutory rate is provided for purposes of comparison.

The second prejudgment interest rate shown on Exhibit 4 is the Plan's minimum interest credit rate for the Opening Accounts pursuant to Plan § 3.3. That rate would certainly be appropriate in this case. It is the interest rate actually credited by the Plan on the Opening Accounts of plan participants who elect to leave their pension benefits in the Plan. The class

members in this case did not *elect* to leave their pension benefits in the Plan, but the Plan's underpayment of their lump sum distributions effectively forced them to do so. The Plan cannot object to paying interest on the underpayments at the minimum interest credit rate established by section 3.3 of the Plan.

The third prejudgment interest rate shown on Exhibit 4 is the applicable rate under the federal post-judgment interest statute, 28 U.S.C. § 1961, as of the date of the class member's original lump sum distribution.

Finally, Mr. Libman included, as Exhibit 5, an Alternative Schedule of Underpayments which were calculated *with* a reduction for pre-retirement mortality (as defendants assert). Schedule 5 shows the damages of each class member with the pre-retirement mortality reduction, as well as the corresponding prejudgment interest amounts using the three alternative interest rates discussed above.

### III.  CONCLUSION

For the reasons addressed above, plaintiffs respectfully submit that the Court should grant their motion for partial summary judgment against defendants on the issues of damages and prejudgment interest, and that the Court should approve and adopt the damages and prejudgment interest computations set forth in Mr. Libman's Exhibit 4: Proposed Schedule of Underpayments.

                          Respectfully submitted,

                          s/   Thomas R. Theado
                          Trial Attorney
                          Thomas R. Theado (0013937)
                          GARY, NAEGELE & THEADO
                          446 Broadway Avenue
                          Lorain, Ohio  44052-1797
                          Ph:     440-244-4809
                          Fx:     440-244-3462

Of Counsel:              Robert D. Gary (0019610)
                          Jori Bloom Naegele (0019602)
                          Thomas A. Downie (0033119)
                          GARY, NAEGELE & THEADO
                          446 Broadway Avenue
                          Lorain, Ohio  44052-1797
                          Ph:     440-244-4809
                          Fx:     440-244-3462

                          Allen C. Engerman
                          Law Offices of Allen C. Engerman, P.C.
                          666 Dundee Road–# 1200
                          Northbrook, Illinois  60062
                          Ph:     847-564-5555
                          Fx:     847-564-4944

                          Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 15 , 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Thomas A Downie    tdownie@gntlaw.com
    Allen C Engerman    acelaw@mcn.org
    Stuart J Evans    sevans@cov.com
    Robert D Gary    office@gntlaw.com
    Jori Bloom Naegele    Jnaegele@gntlaw.com
    Michael A Roberts    mroberts@graydon.com
    Thomas R Theado    ttheado@gntlaw.com
    Robert D Wick    rwick@cov.com

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

    Christopher M Denig
    Covington and Burling
    1201 Pennsylvania Avenue, N.W.
    P.O. Box 7566
    Washington, DC 20044

    s/  Thomas R. Theado
    Thomas R. Theado (0013937)
    Attorney for Plaintiffs
    Gary, Naegele & Theado
    446 Broadway Avenue
    Lorain, Ohio 44052-1797
    Telephone: (440) 244-4809
    Telecopier: (440) 244-3462
    E-mail: TomTheado@aol.com