IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John D. West, on Behalf of Himself and All Other Persons Similarly Situated )<br><br>Plaintiffs )<br>v. )<br><br>AK Steel Corporation Retirement )<br>Accumulation Pension Plan, et al. )<br><br>Defendants ) | Case No.: C-1-02-0001<br><br><br><br>District Judge Sandra S. Beckwith<br><br><br><br>Magistrate Judge Timothy S. Black |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS UNDER *CROSBY v. BOWATER***

Once again the defendants have moved to dismiss, this time on the basis of the Sixth Circuit's recent decision in *Crosby v. Bowater, Inc. Retirement Plan*, 382 F.3d 587 (6th Cir. 2004). As shown below, however, *Crosby* has no applicability to this case.

Defendants' motion is premised on an insupportable proposition. In its April 8, 2004 decision on liability, this Court determined that "the manner in which Plaintiffs' lump sum disbursements were calculated under the AK Steel Plan violated ERISA." *West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 318 F. Supp. 2d 579, 591 (S.D. Ohio 2004). Yet, according to defendants, this Court lacks jurisdiction under ERISA to grant any relief whatsoever. Defendants' position is demonstrably wrong.

## I. **INTRODUCTION**

Plaintiffs' Complaint invoked the Court's subject matter jurisdiction under both of the enforcement sections of ERISA that authorize civil actions by plan participants, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3). Complaint filed January 2, 2002 (Doc. No. 1) at ¶ 1. In pertinent part, ERISA § 502(a)(1)(B) states that a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(3) provides that a plan participant may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.'"

In *Crosby*, the Sixth Circuit construed only the second of these sections, holding that § 502(a)(3) "authorizes only suits for injunctive or other equitable relief, [and] does not, in most situations, authorize an action for money claimed to be due and owing." *Crosby*, 382 F.3d at 589. The Sixth Circuit noted that "[a]s used in § 502(a)(3), the Supreme Court has repeatedly held, 'equitable relief' refers to 'those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).'" *Crosby*, 382 F.3d at 594 (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993), and citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)) (emphasis in *Crosby*). In contrast, "money damages are … the classic form of *legal* relief.'" *Id*. (quoting *Mertens*, 508 U.S. at 255) (emphasis in *Mertens*).

The plaintiffs in *Crosby* were seeking monetary relief for alleged underpayment of pension benefits, but they were seeking such relief *solely* on the basis of § 502(a)(3), having expressly disavowed any reliance on § 502(a)(1)(B). *Crosby,* 382 F.3d at 589 n.2 & 594. The Sixth Circuit emphasized that it was expressing no view on the correctness of Crosby's reason for disavowing § 502(a)(1)(B).[1] *Crosby,* 382 F.3d at 591 n.5 & 596. Nonetheless, the court found that Crosby's decision was fatal to his case because the section he *was* relying on, § 502(a)(3), did not authorize the monetary relief he was seeking:

> Section 502(a)(3) does not authorize a plan participant to sue for recovery of benefits due to him under the terms of the plan. That is the office of § 502(a)(1)(B)—a section with which Mr. Crosby has always insisted he will have nothing to do.

*Crosby*, 382 F.3d at 596.

In the instant case, plaintiffs do not disavow § 502(a)(1)(B); the complaint invokes this Court's jurisdiction under both § 502(a)(1)(B) and § 502(a)(3). Yet defendants assert that the Court lacks jurisdiction under *either* section. Defendants Motion at 2, 6.

The full import of defendants' assertion becomes clear by considering this Court's April 8, 2004 liability judgment in the light of Fed. R. Civ. P. 54(c). Rule 54(c) provides that, except for a judgment by default, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." This Court has determined that "the manner in which Plaintiffs' lump sum

---

[1] The defendants in *Crosby* had argued that the monetary relief Crosby was seeking <u>was</u> available under § 502(a)(1)(B). They stated that "Crosby may not seek additional benefits under ERISA § 502(a)(3) because he may pursue such a claim under Section 502(a)(1)(B)." Brief of Defendants-Appellants in *Crosby* at 48 (copy attached). Later they reiterated that "Crosby claims additional benefits under an ERISA plan; therefore, his claim falls under § 502(a)(1)(B)." Reply Brief of Defendants-Appellants in *Crosby* at 18 (copy attached).

disbursements were calculated under the AK Steel Plan violated ERISA." *West*, 318 F. Supp. 2d at 591. Yet defendants contend that ERISA—a comprehensive statutory scheme for the protection of pension benefits—has no enforcement mechanism enabling the Court to recompense class members for those underpayments of benefits.

There are many cases in which the circuit courts, including the Sixth Circuit, have awarded monetary recoveries to plan participants whose lump sum distributions of pension benefits were miscalculated and underpaid in violation of ERISA. *See, e.g.*, *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994); *Rybarczyk v. TRW Inc.*, 235 F.3d 975 (6th Cir. 2001); *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000); *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804 (S.D. Ill. 2002), *aff'd sub nom. Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003).

Defendants cite no case holding that federal courts lack authority to award monetary relief for underpayments of pension benefits pursuant to ERISA § 502(a)(1)(B). In fact, underpayments of benefits fall squarely within the scope of § 502(a)(1)(B).

## II. ARGUMENT

### A. UNDERPAYMENTS OF PENSION BENEFITS ARE RECOVERABLE PURSUANT TO ERISA § 502(A)(1)(B)

ERISA § 502(a)(1)(B) provides that a participant may bring an action "to recover benefits due to him under the terms of his plan." Defendants assert that this provision is inapplicable in this case because defendants' calculation of class members' lump sum distributions violated ERISA. According to defendants, "[p]laintiffs here do not seek relief 'under the terms of the plan'; they seek relief under the terms of ERISA." Defendants' Motion at 6. That argument ignores the nature of the protection afforded by ERISA. Defendants' method of calculating the

lump sum distributions did violate ERISA, as this Court found. But the additional pension benefits class members should have received nonetheless constitute "benefits due under the terms of the plan" within the meaning of § 502(a)(1)(B).

### 1. ERISA Does Not Create a Right to a Pension Benefit, But Rather "Only the Words of the Plan Itself Can Create an Entitlement to Benefits"

ERISA does not create pension benefits; rather, it is designed "to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). As the Supreme Court observed in *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996):

> Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.

517 U.S. at 887.

This principle has been recognized by the federal appellate courts as well. As the Sixth Circuit has explained:

> We begin with an analysis of what ERISA is and is not designed to do. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." With respect to pension plans, ERISA imposes participation, funding, and vesting requirements and establishes rules concerning reporting, disclosure, and fiduciary responsibility. ERISA does not, however, purport to govern what benefits a Plan must provide.

*Coomer v. Bethesda Hospital, Inc.*, 370 F.3d 499, 508 (6th Cir. 2004) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)), and citing *Shaw v. Delta Air Lines*, 463 U.S. 85, 91 (1983) (citing 29 U.S.C. § § 1021-1031,1051-1086, 1101-1114)).

Consequently, "[o]nly the words of the Plan itself can create an entitlement to benefits." *Hein v. Federal Deposit Insurance Corp.*, 88 F.3d 210, 215 (3d Cir. 1996), *cert. denied*, 519 U.S.

5

1056 (1997) (citing *Dade v. North American Philips Corp.*, 68 F.3d 1558, 1561; *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 283 (3d Cir. 1988); H.R. Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code.Cong. & Admin. News 4670, 4677). *Accord*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (ERISA was intended "to protect contractually defined benefits"); *Smith v. Contini*, 205 F.3d 597, 602 (3d Cir. 2000), *cert. denied sub nom. Contini v. Smith*, 531 U.S. 875 (2000), *quoted in Bottle Beer Drivers, Warehousemen & Helpers Teamsters Local 843 v. Anheuser Busch Inc.*, 32 Employee Benefits Cas. (BNA) 2229, 2004 U.S. App. LEXIS 8629 (3d Cir. Apr. 30, 2004) (copy attached) ("ERISA neither mandates the creation of pension plans nor in general dictates the benefits to be afforded once a plan is created," so "only the plan can create an entitlement to benefits"); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287 (10th Cir. 1999); *Wright v. Oregon Metallurgical Corp.*, 222 F. Supp. 2d 1224, 1235 (D. Oregon 2004) ("ERISA does no more than protect the benefits which are due to an employee under a plan"); *Musmeci v. Schwegmann Giant Super Mkts.*, 159 F. Supp. 2d 329, 351 (E.D. La. 2001) ("only the terms of the plan itself can create an entitlement to benefits"), *judgment entered*, 2002 U.S. Dist. LEXIS 2364 (D. La. 2002), *aff'd in part and vacated in part on other grounds*, 332 F.3d 339 (5th Cir. 2003), *cert. denied*, —U.S.—, 124 S. Ct. 1078 (2004).

In the instant case, the pension benefits which this Court found to have been underpaid arose under the terms of the Plan. As discussed below, that is necessarily true under ERISA, and this Court so found in its liability decision.

## 2. The Benefits Provided by the Plan Are Subject to the Regulatory Requirements of ERISA, Which Constitute Implied Terms of the Plan

A "qualified" pension plan is eligible for the favorable tax treatment offered to such plans by Congress and, as a consequence of its "qualified" status, such a plan is "subject to the vesting, funding, and participation requirements of the Internal Revenue Code of 1954 and ERISA." *Smith v. Contini*, 205 F.3d 597, 603 (3d Cir. 2000). For example, "ERISA requires express provisions in benefit plans" to ensure the "nonforfeitability" of participants' benefits. *Id.* at 602 (quoting ERISA § 203(a), 29 U.S.C. § 1053(a) ("Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age")). By mandating these express provisions, ERISA establishes "minimum vesting standards to which an employee benefit plan is obligated to adhere." *Id.* at 602.

In *Smith*, the Third Circuit underscored that these obligations are assumed voluntarily, but once assumed they must be complied with:

> We reiterate that we agree with the defendants and the district court that the defendants were under no obligation under ERISA to provide for reciprocal agreements and Pro-rata Pensions. Nevertheless, once having made the determination to provide for such pensions, the defendants were obliged to formulate a plan providing for vesting in accordance with ERISA section 203(a)(2)(A), 29 U.S.C. § 1053(a)(2)(A). Thus, this case represents a situation, not unusual in the law, that an actor's discretion in how it engages in certain conduct is circumscribed, even though it was not obliged to engage in the conduct in the first instance.

*Smith v. Contini*, 205 F.3d at 605.

In other words, "a plan is not required to provide any particular benefits to its employees and thus the ERISA provisions become applicable only after benefits are provided." *Smith v. Contini*, 205 F.3d at 604 (citing *Dade v. North American Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir. 1995)).

ERISA's system of prescribing regulatory requirements "to protect contractually defined benefits" was the basis of Judge Posner's opinion in *May Dept. Stores Co. v. Federal Insurance Co.*, 305 F.3d 597 (7th Cir. 2002), *cited with approval in Berger*, 338 F.3d at 759. In that case, the Seventh Circuit rejected an argument virtually identical to the one advanced by the defendants here.

*May Dept. Stores* involved two class actions. In one (a case similar to the instant case), plan participants alleged a violation of ERISA's requirement that a lump sum distribution "must be the actuarial equivalent of the annuity" benefit payable under the plan. *May Dept. Stores*, 305 F.3d at 600 (citing 29 U.S.C. § 1054(c)(3)). They sought to recover "the difference between that equivalent and the (smaller) lump sum the class members actually received, plus interest." *Id.*

The employer (referred to as "May") settled the class actions, then sued for reimbursement of the settlement amount under its liability insurance. The policy excluded coverage, however, where "the loss for which liability is sought to be fastened on the insureds 'constitutes benefits due or to become due under the terms of a Benefit Program.'" 305 F.3d at 600-601. Making the same argument advanced by the defendants in the instant case, May argued that the exclusion did not apply because the basis of the claims "was not language in the plan but provisions of ERISA." The Seventh Circuit rejected the argument:

> In both cases the legal basis of the claims against May was not language in the plan but provisions of ERISA (or, what amounts to the same thing, a regulation issued by the Department of Labor under ERISA), and this means, according to May, that the claims were not for benefits and so did not come within the exclusion. That is incorrect. … The benefits sought were plan benefits; the question was how to compute them. The answer was given by ERISA, but that is just to say that, like many other contracts, pension plans governed by ERISA contain provisions implied by law.

*May Dept. Stores*, 305 F.3d at 601.

8

Thus, the court held that the terms of a pension plan "include terms implied by law." *May Dept. Stores*, 305 F.3d at 602. *Accord*, *Page v. Pension Ben. Guaranty Corp.*, 968 F.2d 1310 (D.C. Cir. 1992) (opinion by Ginsburg, J.) (minimum vesting standards established by ERISA must either be immediately adopted by pension plans or become "implied 'terms of the plan'" for purposes of ERISA's nonforfeitability provision) (quoting *Rettig v. Pension Ben. Guaranty Corp.*, 744 F.2d 133, 143 (D.C. Cir. 1984)).

### 3. The "Accrued Benefit" to Which Plan Participants Are Entitled Is Always Determined Under the Terms of the Plan

As this Court recognized in its April 8, 2004 decision on liability, ERISA does not dictate to pension plans what the "accrued benefit" protected by ERISA must be. Rather, "[t]he 'accrued benefit' earned by a participant under a defined benefit plan is 'defined' by the terms of the plan." *Berger v. Nazametz*, 157 F. Supp. 2d 998, 1006-07 (S.D. Ill. 2001). *Accord*, *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000) ("in the case of a defined benefit plan, the term accrued benefit means 'the individual's accrued benefit determined under the plan'"). This Court made the same observation in the instant case:

> ERISA defines a participant's accrued benefit under a defined benefit plan as an "individual's accrued benefit determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age."

*West*, 318 F. Supp. 2d at 582 (quoting ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A)).

Thus, ERISA's prime directive to a pension plan is that it must pay the full "accrued benefit" to which plan participants are entitled under the terms of the plan. This holds true even when the plan pays a participant's pension benefit in a lump sum distribution:

> [P]lans are permitted to disburse benefits in other forms, such as a lump sum disbursement. To protect a participant who receives his or her benefit in the form of a non-annuity, ERISA requires that when a pension benefit takes some other

9

> form than an annual benefit, the alternative form must "be the actuarial equivalent" of an annuity commencing at normal retirement age. Consequently, a lump sum disbursement, like the ones received by Plaintiffs under the AK Steel Plan, must be the actuarial equivalent of the annual benefit the participants would have received at normal retirement age.

*West*, 318 F. Supp. 2d at 583 (citing ERISA § 204(c)(3), 29 U.S.C. 1054(c)(3); *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 759 (7th Cir. 2003) ("ERISA requires that any lump sum substitute for an accrued pension benefit be the actuarial equivalent of that benefit."); *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000), *cert. dismissed*, 531 U.S. 1061 (2001)).

This equivalency benchmark for a lump sum distribution—"the annual benefit the participants would have received at normal retirement age"—is always the "accrued benefit" to which the participants are entitled <u>under the terms of the Plan</u>. Consequently, when a pension plan violates ERISA by making a lump sum distribution that is less than the actuarial equivalent of the "accrued benefit" (as the AK Steel Plan did in the instant case), that also means that the plan failed to pay the full benefit to which the participant is entitled under the terms of the plan. A civil action to recover the unpaid balance is an action "to recover benefits due under the terms of the plan" as provided by ERISA § 502(a)(1)(B).

### 4. In This Case, the Court Specifically Found That Class Members Are Entitled to Additional Benefits Under the Terms of the Plan

In its liability decision, the court specifically found that the "accrued benefit" to which class members are entitled under ERISA is precisely the same as the benefit determined under the terms of the AK Steel Plan. In a manner analogous to their present argument, defendants contended that there was a difference between the rights protected by ERISA and benefits payable under the plan. Defendants argued that while the "statutory accrued benefit" under

10

ERISA is an annuity payable at normal retirement age, the "plan accrued benefit" under the AK Steel Plan was simply the participant's hypothetical cash balance account. This Court rejected defendants' argument:

> Defendants' argument, although creative, ignores a fundamental principle of ERISA law—the plain language of the plan controls. The AK Steel Plan does not distinguish between a "plan accrued benefit" and a "statutory accrued benefit." Under the plain language of the Plan, the term "accrued benefit" is defined as a single life annuity commencing at normal retirement age. Accordingly, a participant's accrued benefit under the AK Steel Plan is in the form of an annual benefit commencing at normal retirement age.

*West*, 318 F. Supp. 2d at 585 (citing *Marquette General Hospital v. Goodman Forest Industries*, 315 F.3d 629, 633 (6th Cir. 2003) ("ERISA plans should be interpreted 'according to their plain meaning, in an ordinary and popular sense'" (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998))).

Here again, when defendants violated ERISA by making a lump sum distributions that were less than the actuarial equivalent of this "accrued benefit," defendants failed to pay the full benefit to which class members were entitled under the terms of the plan.

### B. THE CASES CITED BY DEFENDANTS DO NOT INVOLVE PENSION BENEFITS DUE UNDER A PLAN, BUT RATHER EXTRACONTRACTUAL DAMAGES CAUSED BY NEGLIGENCE OR BREACH OF FIDUCIARY DUTY

None of the cases cited by defendants conflict with the foregoing holdings in any way. They did not involve pension benefits that were underpaid. Rather, they involved claims for "extracontractual damages" resulting from negligence or breach of fiduciary duty.

For example, in *Fraser v. Lintas*, 56 F.3d 722 (6th Cir. 1995), *cert. denied*, 516 U.S. 975 (1995) the plaintiff claimed to have suffered "adverse tax consequences due to the plan administrator's failure to provide her with timely notice of a 'rollover option' as required by the Internal Revenue Code." 56 F.3d at 723. The plaintiff alleged that "as a result of this oversight,

she incurred $28,310 in unnecessary tax liability." *Id.* The Sixth Circuit concluded that this was a essentially a negligence claim for damages, rather than a claim for pension benefits due under the terms of the plan:

> Plaintiff's complaint hinges upon Interpublic's failure to advise her of the rollover option. It does not allege that the plan failed to disburse the correct amount to plaintiff under the terms of the qualified domestic relations order, nor does it contend that anything further is owed by the plan itself as the result of her failure to roll over the amount received.

56 F.3d at 725-26.

Another case cited by defendants, *Griggs v. E.I. DuPont De Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001), also involved negligence on the part of the plan administrator, resulting in adverse tax consequences to the participant. As explained by the court, "Griggs claimed that DuPont breached its fiduciary duty by leading Griggs to believe that he was eligible for a tax-deferred lump sum distribution of early retirement benefits under DuPont's Temporary Pension System and then failing to notify Griggs when DuPont learned that Griggs's election to receive such a distribution was not permitted by federal tax laws." 237 F.3d at 373. The court noted that "Griggs cannot recover 'benefits due' under section 502(a)(1), see 29 U.S.C.A. § 1132(a)(1), because when he received his lump sum payment, he received all that he was entitled to receive from DuPont—there are no outstanding benefits." 237 F.3d at 373.

In another of defendants' cases, *Hughes v. General Motors Corp.*, 852 F.2d 568, 1988 U.S. App. LEXIS 9637 (6th Cir. June 14, 1988) (copy attached), the plaintiffs claimed that the defendants "violated fiduciary duties by failing to disclose information and by intentionally or negligently misrepresenting GM's intention to implement special early retirement programs." *Hughes* at *3. The plaintiffs gave notice of their intention to retire, believing that the company "was not contemplating adopting a program to increase early retirement benefits." *Hughes* at

12

\*2. The company then adopted such a plan, but it "would not have applied" to the plaintiffs who were not yet old enough to qualify for the program. Nonetheless, they claimed to have been damaged by non-disclosure of information about the program, because "knowledge of its existence would have alerted them to postpone retirement and await further developments." *Hughes* at \*2. The Sixth Circuit concluded that their claim did not involve "benefits due under the terms of the plan" because the plaintiffs never qualified for additional benefits:

> The plaintiffs affirmatively allege that they do not qualify for the higher retirement benefits that became available to the plan participants who were still employed by the Oldsmobile Division of General Motors Corporation at a certain date after the plaintiffs retired. The whole point of the lawsuit is that the defendants, as the complaint avers, "caused [the plaintiffs] to be damaged by not being able to qualify for higher retirement benefits under the special early retirement program. . . ."

*Hughes* at \*12.

This Court dealt with a similar situation in *Ramsey v. Formica Corp.*, 33 Employee Benefits Cas. (BNA) 1095, 2004 U.S. Dist. LEXIS 9558 (S.D. Ohio April 6, 2004) (copy attached). There, "Formica Corporation offered Plaintiffs and the putative class members an early retirement buyout," and plaintiffs alleged that "they relied on Formica's representation regarding their monthly pension benefit in deciding to accept early retirement." *Ramsey* at \*2. The company's auditors later discovered that "Formica had miscalculated the monthly benefit" and "had been overpaying nearly 300 pensioners, including the Plaintiffs and the putative class members." *Ramsey* at \*2-3. In order to avoid jeopardizing the plan's "qualified" status, Formica was required to "adjust the pensioners' payments to the amount called for by the plan." *Ramsey* at \*3. This Court concluded that the plaintiffs:

> are not suing to recover benefits under the terms of the plan. Under the terms of the plan, they are due less benefits, not more, and Plaintiffs do not appear to contest the fact that the actual terms of the plan require them to be paid less.

*Ramsey* at *8.

Defendants also cite *Simpson v. Ernst & Young*, 879 F. Supp. 802 (S.D. Ohio 1994), in which the plaintiff was wrongfully discharged "with intent to interfere with the attainment of his retirement rights, in order to avoid its obligation to pay retirement benefits to him." 879 F. Supp. at 808. The court actually awarded the plaintiff "ERISA damages in the amount of $712,529," for "past retirement benefits" and "future retirement benefits." *Id*. at 812, 828. However, the plaintiff also sought "compensatory and punitive damages" which the court characterized as "extracontractual damages, not being available under the terms of a benefit plan." *Id*. at 825. The court found that these "extracontractual" claims for compensatory and punitive damages were not recoverable under ERISA § 502(a)(1)(B). *Id.*

Neither the *Simpson* case, nor any other case cited by defendants, denies recovery under 502(a)(1(B) where, as here, the plaintiffs seek recovery of pension benefits to which they were entitled pursuant to ERISA and the terms of the plan.

### III. CONCLUSION

For the reasons addressed above, defendants' motion to dismiss based on the Sixth Circuit's decision in *Crosby* should be denied.

        Respectfully submitted,

        s/   Thomas R. Theado
        Trial Attorney
        Thomas R. Theado (0013937)
        GARY, NAEGELE & THEADO
        446 Broadway Avenue
        Lorain, Ohio  44052-1797
        Ph:     440-244-4809
        Fx:     440-244-3462

Of Counsel:        Robert D. Gary (0019610)
        Jori Bloom Naegele (0019602)
        Thomas A. Downie (0033119)
        GARY, NAEGELE & THEADO
        446 Broadway Avenue
        Lorain, Ohio  44052-1797
        Ph:     440-244-4809
        Fx:     440-244-3462

        Allen C. Engerman
        Law Offices of Allen C. Engerman, P.C.
        666 Dundee Road–# 1200
        Northbrook, Illinois  60062
        Ph:     847-564-5555
        Fx:     847-564-4944

        Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Thomas A Downie     tdownie@gntlaw.com
> Allen C Engerman     acelaw@mcn.org
> Stuart J Evans     sevans@cov.com
> Robert D Gary     office@gntlaw.com
> Jori Bloom Naegele     jnaegele@gntlaw.com
> Thomas R Theado     ttheado@gntlaw.com
> Robert D Wick     rwick@cov.com
> George Edward Yund     gyund@fbtlaw.com

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Christopher M. Denig
> Covington and Burling
> 1201 Pennsylvania Avenue, N.W.
> P.O. Box 7566
> Washington, DC 20044

> s/ Thomas R. Theado
> Thomas R. Theado (0013937)
> Attorney for Plaintiffs
> Gary, Naegele & Theado
> 446 Broadway Avenue
> Lorain, Ohio 44052-1797
> Telephone: (440) 244-4809
> Telecopier: (440) 244-3462
> E-mail: TomTheado@aol.com