death benefit, the district court reviewed the Plan language and concluded that the Plan's drafters "intended the creation of an accrued right." (R. 51 Opinion, pg. 19, Apx. 000054). Clearly, the district court was not judging whether the reasons advanced by the Plan's Administrator for its decision were reasonable, but was instead acting as plan administrator and construing the Plan *de novo*. This usurpation of the Administrator's role is inconsistent with *Firestone* and this Court's precedents.

For the reasons stated in Part III, the Administrator's decision to apply a pre-retirement mortality discount was correct, given the applicable Plan language, case law, and regulatory guidance. Even if this Court disagrees with that conclusion, however, it still must uphold the Administrator's decision if it was reasonable. Here, the Administrator's decision was based upon a reasoned application of the Plan. For that reason alone, this Court should reverse the judgment of the district court.

**V.    The District Court Erred In Entering Judgment And Awarding "Injunctive" Relief To Crosby And The Plaintiff Class Because Neither Crosby Nor The Putative Class Are Entitled To Such Relief Under ERISA.**

After determining that the Plan Administrator should have calculated Crosby's lump sum benefit without regard to pre-retirement mortality, the district court "enjoined defendants to recalculate the lump sum benefits of class members who have previously received lump sum benefits, in accordance with the Court's

47

opinion, and to immediately refund under-payments, plus pre-judgment and post-judgment interest . . . ." (R. 52, Final Judgment and Injunction, pg. 2, Apx. 000035). The district court's remedy -- an injunction requiring the payment of money damages plus pre-judgment and post-judgment interest -- was not authorized under ERISA § 502(a)(3).

Crosby sued defendants to recover additional benefits he claimed were due to him under the terms of the Plan and to clarify the rights to such benefits of future lump sum recipients. That type of claim is permitted by ERISA § 502(a)(1)(B). Crosby's insistence that this is an ERISA § 502(a)(3) case defeats his claim for additional benefits and undermines the remedy awarded by the district court.

First, Crosby may not seek additional benefits under ERISA § 502(a)(3) because he may pursue such a claim under Section 502(a)(1)(B). *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (ERISA § 502(a)(3) provides for relief to enforce ERISA's objectives only where none is otherwise available under ERISA); *Wilkins v. Baptist Healthcare System, Inc*, 150 F.3d 609, 615 (6th Cir. 1998) ("The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies."). Second, an award of additional money for benefits is not available under Section 502(a)(3) because it is a form of *legal* relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.

48

204 (2002) (clarifying that only traditional *equitable* relief is available in actions under Section 502(a)(3); therefore, a party may not maintain an action for money damages under that section simply by labeling it as a claim for equitable relief).

ERISA's civil enforcement provisions (*i.e.*, all of the civil remedies available under ERISA) are set forth in Section 502(a), 29 U.S.C. § 1132(a). The Supreme Court has held that the causes of action and remedies set forth in Section 502(a) are the exclusive civil remedies provided to private plaintiffs by ERISA:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." [*Massachusetts Mutual Life Ins. Co. v.*] *Russell*, [473 U.S. 134] at 146 [(1985)].

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (emphasis in original). *See also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) (citing *Pilot Life, supra*).

ERISA § 502(a) provides, in part, for the following types of civil actions:

(a) Persons empowered to bring a civil action

A civil action may be brought --

49

(1) by a participant or beneficiary --

\* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

\* \* \*

29 U.S.C. § 1132(a). Crosby expressly pursued his claims only under Section 502(a)(3). Accordingly, the relief awarded must constitute an injunction to prevent a violation of the Plan or ERISA or "other appropriate equitable relief."

**A.    The Relief Awarded By The District Court Was Not "Appropriate" Within The Meaning Of ERISA § 502(a)(3).**

Initially, the district court's order to pay additional benefits is not "appropriate" because it was an award of additional Plan benefits that Crosby could have obtained under ERISA § 502(a)(1)(B). Crosby claimed his lump sum benefit was too small. He sought an order directing the payment of additional Plan benefits. Thus, Crosby's claim is one under ERISA § 502(a)(1)(B) to "recover benefits [allegedly] due him under the terms of his plan . . . " 29 U.S.C. § 1132(a)(1)(B).

50

Following *Varity, supra*, this Court has held that ERISA § 502(a)(3) "authorizes lawsuits for individualized equitable relief for breach of fiduciary duty and other injuries 'by violations that [§ 1132] does not elsewhere adequately remedy.'" *Wilkins*, 150 F.3d at 615 (alteration in original). "The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Id.* at 615 (citation omitted). The *Wilkins* ruling stems from *Varity*, which stated:

> The statute authorizes "*appropriate*" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Varity*, 516 U.S. at 515. Because Crosby could have sued under Section 502(a)(1)(B) (which Crosby refused to do), it was improper for the district court to grant him relief under Section 502(a)(3).

**B.    The Requested Relief Is Not "Equitable" As Defined By The Supreme Court In *Great-West Life & Annuity Ins. Co. v. Knudson.***

Crosby will no doubt claim that his remedy is secure because the district court entered an injunction. Not true. The district court's purported injunction was

51

nothing more than a money judgment for the plaintiff class.[18]  Rather than requiring some positive action by defendants as an injunction would have done, the sole purpose of the district court's remedy was to require the payment of additional money (essentially contract damages) to Crosby and the plaintiff class.  As such, the remedy was not truly injunctive and was clearly not "equitable" as the Supreme Court has defined that term.

In several decisions, the Supreme Court has explained the narrow scope of "equitable" relief provided under Section 502(a)(3).  Most recently, the Court stated that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were typically available in equity . . . .'"  *Knudson*, 534 U.S. at 209 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)).  In *Knudson*, the Court rejected a medical insurer's claim to enforce a reimbursement provision in an ERISA plan and recover, under Section 502(a)(3), a portion of a plan participant's personal injury settlement.  The Court noted that although the insurer had labeled its claim one for restitution, it nonetheless sought "to impose personal liability on respondents for a contractual obligation to pay money -- relief that was not typically available in equity."  534 U.S. at 210.  The Court noted that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to

---

[18]  The purely monetary (and thus legal) nature of the judgment is demonstrated by the district court's February 27, 2003 order that defendants must pay money into court as security for a stay pending this appeal.  (R70 2/27/03 Order at 2).

52

came from the plaintiff class. The Plan is funded solely by employer contributions. (Plan Art. IV, XVII, Apx. 000113-000114, 000153-000154). The district court appears to have misunderstood this point and assumed that the Plan is an individual account plan (*e.g.*, a 401(k) plan) in which a trust holds funds contributed by the employees. Third, the district court construed the Plan document as requiring the payment of additional benefits. Its remedial order, therefore, was simply a tool to enforce that interpretation of the plan and thus was similar to an order requiring a party to a contract to pay damages for breaching the contract. Such relief clearly is not "equitable" under *Knudson*.

Defendants did not take a particular sum from Crosby and wrongfully withhold it from him. Crosby's claim for additional Plan benefits stems from his attempt to enforce the terms of the Plan as he interprets them. Thus, defendants can no more be said to be in wrongful possession of his money -- and thus subject to an order of equitable restitution -- than any defendant in a breach of contract case who allegedly owes money to the plaintiff. *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 583-84 (6th Cir. 2002) (rejecting claim that reinstatement of health and life insurance benefits constituted equitable relief under ERISA § 502(a)(3)).

The district court found the Supreme Court's statement in *Knudson* that orders to pay money are "almost invariably" legal relief inapplicable. It said, "[i]n *Harris Trust [& Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 250-53

(2000)], the Supreme Court commented on a statement in *Great-West* that orders to pay money are 'almost invariable' [sic] monetary relief.  The Supreme Court reviewed that 'comment' in *Harris Trust* when it stated that under Section 502(a)(3) an injunction to require the return of monies wrongfully retained is appropriate equitable relief."  (R. 51 Opinion at 21, Apx. 000056).  The district court not only confused the sequence of the Supreme Court's rulings -- *Harris Trust* preceded *Great-West* by 18 months -- but also ignored the facts and holding of *Harris Trust*.

In *Harris Trust*, the defendant fraudulently sold worthless interests in motel properties to a pension trust fund.  530 U.S. at 242-43.  Thus, the defendant had been entrusted with plan assets to invest and thus was in a position to return assets the along with any ill-gotten gains.  530 U.S. at 243.  Here, by contrast, defendants were not wrongful recipients of Crosby's money.  Crosby did not seek to recover specific funds that were wrongfully transferred to defendants.  Instead, Crosby seeks to attach the general assets of the defendants as a means to satisfy a judgment for additional Plan benefits.

The district court also purported to rely upon the Supreme Court's decision in *Mertens*, 508 U.S. 248.  *Mertens* dealt only with whether "ERISA authorizes suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty."  *Id.*  at 251.  In deciding whether the *type* of

55

relief requested by the plaintiffs was authorized by Section 502(a)(3), the Court said: "Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages -- monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief." *Id*. at 255.

Finally, the district court claimed that its remedy "is commended by pure dint of logic" because "plaintiff is not seeking here a monetary award of a sum certain." Again, the district court was wrong. Crosby alleged that he had received a lump sum of $52,013.90 and that he should have received a lump sum of $57,262.68. (R. 1 Compl. ¶¶ 56-57, Apx. 000024). Contrary to the district court's assertion, Crosby sought an award of precisely $5,248.78 in additional money from the Plan from the very outset of the case. Thus, contrary to the district court's statement, Crosby in fact sought "a monetary award of a sum certain." The only complicating factor in this case was that Crosby sought similar relief on behalf of all other lump sum recipients under the Plan. Although Crosby did not know the precise amount of their damages when he filed suit and thus could not list them in their complaint, their alleged money damages, like Crosby's, can be reduced by to a sum certain.

56

Accordingly, the district court's remedy was supported by neither case law nor logic. The relief sought by Crosby and awarded by the district court was plainly legal and thus could not be awarded pursuant to ERISA 502(a)(3).