## TABLE OF CONTENTS

Page

Table Of Authorities................................................................................iii

INTRODUCTION .......................................................................................1

ARGUMENT ...............................................................................................3

I.      Crosby Is Making A Plan Interpretation Claim. ................................3

II.     The Plan Does Not Preclude Consideration Of Pre-Retirement
        Mortality...........................................................................................4

        A.      The Plan Administrator Was Permitted To Construe The Plan
                As Allowing Consideration Of Pre-Retirement Mortality. ..................5

        B.      Crosby Seeks To Add A Term To The Plan...........................................6

        C.      The Death Benefit Is Not An Optional Form Of The Normal
                Annuity Benefit......................................................................................6

        D.      The Death Benefit Is An Incidental Benefit. ........................................8

        E.      The Death Benefit Is Not The Same As The "Life" Benefit..............10

III.    Crosby's Authorities Have No Bearing On The Correct Interpretation
        Of The Plan. ....................................................................................12

        A.      Crosby Incorrectly Asserts That All Cash Balance Plans
                Prohibit The Use Of Pre-Retirement Mortality So The Plan
                Must Do Too.........................................................................................12

        B.      No Controlling Cases Support Crosby's Position. ..............................13

        C.      Crosby Fails To Identify Any Statute Or Regulation That
                Requires The Plan To Ignore Pre-Retirement Mortality. ...................14

        D.      Crosby's Actuarial Authority Does Not Help Him. ............................16

IV.     ERISA Section 502(a)(3) Did Not Permit An Order Requiring
        Payment Of Additional Benefits To Crosby And The Plaintiff Class..........18

i

# TABLE OF CONTENTS

Page

V.    Under The Applicable Standard Of Review, This Court Must Reverse
        If The Plan Administrator's Decision Was Rational. ................................... 20

        A.    Crosby's Claim For De Novo Review Defies This Court's
                Decisions............................................................................................. 21

        B.    Defendants Are Not Offering A "Post Hoc Interpretation." .............. 22

        C.    Under The Arbitrary And Capricious Standard, The Court Must
                Uphold The Plan Administrator's Decision. ...................................... 28

# TABLE OF AUTHORITIES

## CASES

*Berger v. Xerox Retirement Income Guaranty Plan,*
231 F. Supp. 2d 804 (S.D. Ill. 2002) ........................................................... 14

*Collins v. Pension Benefit Guaranty Corp.,*
Nos. 88-34306, 89-2997 (D.D.C. July 16, 1998) ...................................... 14

*Daniel v. Eaton Corp.,*
839 F.2d 263 (6th Cir. 1988) ...................................................................... 28

*Davis v. Kentucky Fin. Cos. Retirement Plan,*
887 F.2d 689 (6th Cir. 1989) ...................................................................... 28

*Esden v. Bank of Boston,*
229 F.3d 154 (2d Cir. 2000) ........................................................................ 13

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989) ............................................................................ 20, 21

*Gallo v. Amoco Corp.,*
102 F.3d 918 (7th Cir. 1996) ...................................................... 5, 24, 27, 28

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002) ..................................................................................... 19

*Hunter v. Caliber System, Inc.,*
220 F.3d 702 (6th Cir. 2000) ....................................................... 21, 22, 27, 28

*Lyons v. Georgia Pacific Corp. Salaried Employees Retirement Plan,*
196 F. Supp. 2d 1260 (N.D. Ga. 2002) ........................................................ 13

*Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan,*
221 F.3d 1235 (11th Cir. 2000) ................................................................... 13

*Marquette General Hosp. v. Goodman Forest Indus.,*
315 F.3d 629 (6th Cir. 2003) ............................................................... 21, 28

*Pilot Life Ins. Co. v. Dedeaux,*
481 U.S. 41, 54 (1987) ................................................................................. 15

*Rhoton v. Central States, S.E. and S.W. Areas Pen. Fund,*
717 F.2d 988 (6th Cir. 1983) ....................................................................... 25

*Ross v. Indiana State Teacher's Ass'n Ins. Trust,*
    159 F.3d 1001 (7th Cir. 1998) ................................................................ 5

*Thompson v. J.C. Penney Co., Inc.,*
    2001 WL. 1301751 (6th Cir. 2001) ....................................................... 25

*University Hosps. of Cleveland v. Emerson Elec. Co.,*
    202 F.3d 839 (6th Cir. 2000) ................................................................. 25

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996) (§ 502(a)(3) .......................................................... 18

*Wilkins v. Baptist Healthcare System, Inc.,*
    150 F.3d 609 (6th Cir. 1998) ...................................................... 18, 19, 24

*Williams v. International Paper Co.,*
    227 F.3d 706 (6th Cir. 2000) ......................................................... 25, 28

## STATUTES

ERISA § 205(g)(3) ......................................................................................... 3

I.R.C. § 417(c) ............................................................................................... 3

29 U.S.C. § 1053(a)(2) .......................................................................... 4, 7, 8

29 U.S.C. § 1002(23) ................................................................................. 4, 7

29 U.S.C. § 1054(c) ................................................................................. 4, 16

29 U.S.C. § 1104(a)(1)(D) ........................................................................... 5

I.R.C. § 401 ................................................................................................. 15

I.R.C. § 415(b) ............................................................................................ 15

29 U.S.C. § 1132 ..................................................................... 18, 19, 20, 21

## REGULATIONS

Treas. Reg. 1.411(a) ................................................................................ 8, 15

Treas. Reg. 1.401(a)(9) ................................................................................ 9

Treas. Reg. 1.401(b) ..................................................................................... 9

Treas. Reg. 1.415-3(c) ........................................................................... 15, 16

## REGULATORY MATERIALS

Rev. Rul. 85-18 ................................................................................. 9

IRS Field Service Advisory, 1992 WL1355639 ............................................. 9

IRS Notice 96-8................................................................................. 15

IRS Notice 83-10................................................................................ 15

IRS Notice 87-21................................................................................ 15

## COURT RULES

Fed. R. Evid. 902............................................................................... 17

Fed. R. Evid. 801............................................................................... 17

Fed. R. Evid. 803............................................................................... 17

Fed. R. Evid. 807......................................................................... 17, 18

CH1 10539535.2

## INTRODUCTION

This is an ERISA plan interpretation case. Crosby sues because he claims that the Administrator of the Bowater Incorporated Retirement Plan for Salaried Employees of Great Northern Paper, Inc. (the "Plan") miscalculated the optional lump sum distribution of his retirement benefit by considering the risk that Crosby might have died before reaching age 65 and taking his normal Plan benefit. Crosby's death would have cut off his right to receive a retirement benefit. Nevertheless, he claims that the Plan Administrator should not have considered this "pre-retirement" mortality risk in its present value calculations. Crosby acknowledges that the Employee Retirement Income Security Act (ERISA) of 1974, as amended, and the Internal Revenue Code (I.R.C.) allow a plan to consider pre-retirement mortality in determining present value for purposes of a lump sum calculation. He claims, however, that the Plan precluded the Administrator from doing so.

When Crosby claimed additional benefits (beyond the amount specified by the terms of the Plan), the Plan Administrator construed the Plan as requiring Crosby's lump sum to be calculated according to the "whipsaw" method. In its whipsaw calculation, the Administrator used present value factors specified in the Plan's definition of "Actuarial Equivalence." Because this definition, like the factors to which it refers, does not distinguish between the part of the present value

1

computation that applies to years when Crosby would have been older than the

Plan's normal retirement age or younger than that age, the Administrator did not

make such a distinction.

Crosby argues that the Administrator's interpretation of the Plan was wrong

and was prohibited by law, but his arguments do not change the outcome.

- Crosby's claim that defendants violated ERISA anti-forfeiture rules by considering pre-retirement mortality is incorrect under the statute and is merely a plan interpretation claim.

- Contrary to Crosby's claim, cash balance plans are not required to ignore the risk of pre-retirement mortality, either by statute or otherwise.

- The case law, regulations, and statutes Crosby cites do not prohibit the use of a pre-retirement mortality discount.

- The Plan's death benefit does not preclude consideration of pre-retirement mortality. *See* defendants' March 10, 2003 brief ("Def. Br.") 25-31.

Because the Plan did not state how to calculate a lump sum under the whipsaw

method, the Plan Administrator reasonably and sensibly followed the Plan's

general instructions for determining present value (which make no distinction

between pre-and post-retirement mortality). Under the applicable arbitrary and

capricious standard of review, a court is required to uphold that decision, even if it

thinks the Administrator was wrong.

## ARGUMENT

### I.    Crosby Is Making A Plan Interpretation Claim.

Crosby acknowledges that ERISA § 205(g)(3) and I.R.C. § 417(e) (which govern lump sum calculations) do not forbid consideration of pre-retirement mortality. Instead, he says those statutes merely "required" that the present value of the accrued annuity benefit be 'no less than' the present value computed in accordance with the statutory discount rate and mortality table." Crosby's June 13, 2003 Brief ("Pl. Br.") 51. Crosby acknowledges that he received the amount required by statute. The actuarial literature upon which Crosby relies "recognizes that cash balance plans *may* expressly provide for a forfeiture of the accrued benefit on account of the participant's death <u>before</u> normal retirement age." Pl. Br. 28 (citations omitted). Thus, Crosby cannot claim that it was unlawful for the Administrator to consider pre-retirement mortality.

Crosby claims, in contrast, that the Plan prohibited this. He says: "[l]ike all other cash balance plans, the Plan assumes no preretirement mortality," Pl. Br. 27 (heading II), and that "with respect to lump sum distributions, the Plan plainly assumes no preretirement mortality . . . ." Pl. Br. 29. The Administrator concluded otherwise. Hence, the Court is faced with a dispute over the correct interpretation of the Plan.

3

In an attempt to disguise his plan-interpretation claims as a statutory one, Crosby argues that he is suing to enforce ERISA's rule against forfeiture of a participant's vested accrued retirement benefit. 29 U.S.C. § 1053(a)(2); Pl. Br. 25-26, 29 U.S.C. § 1002(23), however, defines "accrued benefit" as "the individual's accrued benefit <u>determined under the plan</u> and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age . . . ." *Id.* (emphasis added).[1]  Accordingly, Crosby's "statutory" claim is really just one to enforce the Plan.

## II.    The Plan Does Not Preclude Consideration Of Pre-Retirement Mortality.

Crosby argues that the Plan Administrator could not consider pre-retirement mortality because the Plan does not specifically state either that it will do so or that a participant's accrued benefit is extinguished on death.  The Plan, however, expressly extinguishes the participant's right to receive his accrued benefit if he dies.  It states that if a participant dies before age 65, no benefit, except the prescribed death benefit, will be paid.  (R. 6, Ex. 1, Plan § 8.1, Apx. 000122).

---

[1] Section 1054(c)(3) permits a plan to offer optional forms of benefit (such as a lump sum) that are the "actuarial equivalent" of the accrued benefit. 29 U.S.C. § 1054(c)(3).

## A.    The Plan Administrator Was Permitted To Construe The Plan As Allowing Consideration Of Pre-Retirement Mortality.

In addition, although no Plan provision deals specifically with consideration of pre-retirement mortality, the Plan Administrator was not automatically prohibited to consider it.  If following the literal terms of the Plan were the Administrator's only job, this case would have been over long ago because the Plan's literal terms said that Crosby's lump sum would equal his personal account balance.  Instead, a plan administrator must apply the plan to the extent that it comports with ERISA, which sometimes means looking beyond the literal plan terms.  29 U.S.C. § 1104(a)(1)(D)(a plan fiduciary must "discharge his duties with respect to the plan . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]"); *see also* R. 6, Ex. 1, Plan Section 13.1, Apx. 000052 (requiring the Administrator to apply the Plan in a manner satisfying the I.R.C.'s qualification requirements).  "When as in this case the plan document does not furnish the answer to the question, the answer given by the plan administrator, when the plan vests him with discretion to interpret it, will ordinarily bind the court.  That is implicit in the idea of deferential review of the plan administrators' interpretation." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996); *see also Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1011 (7th Cir. 1998) (favorably citing *Gallo*).  In this case, the Administrator was allowed to make a reasonable

decision on how to compute Crosby's lump sum in the absence of specific Plan language on that point. Because the Plan granted the Administrator discretion to interpret the Plan, that decision is binding.

### B.    Crosby Seeks To Add A Term To The Plan.

The Administrator paid Crosby a lump sum that was the Actuarial Equivalent (as the Plan defines that term) of the normal form of benefit. Nothing in the Plan's definition of Actuarial Equivalent, or the I.R.C. sections from which it draws its mortality table and interest discount rate, distinguishes between pre- and post-retirement mortality. Crosby accuses defendants of "effectively add[ing] terms to the Plan (i.e., 'a preretirement mortality discount will be used when computing a lump sum distribution')" (Pl. Br. 22). To the contrary, the Plan uses the "applicable mortality table" in its definition of "Actuarial Equivalent." Crosby is the one who wants to add a qualifier ("post-retirement") to this definition.

### C.    The Death Benefit Is Not An Optional Form Of The Normal Annuity Benefit.

Crosby's argument relies on his theory that the Plan's death benefit is part of the accrued benefit. It makes no sense to consider the death benefit as a factor in calculating the present value of Crosby's accrued retirement benefit because the death benefit is not -- and cannot be -- an accrued benefit. *See* Def. Br. 27-31. Crosby now argues that consideration of pre-retirement mortality violates 29

U.S.C. § 1053(a)(3) because the death benefit is an optional form of the non-forfeitable accrued retirement benefit.

ERISA defines an accrued benefit as the accrued benefit provided by the plan "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23). ERISA also permits optional forms of payment for the accrued benefit, provided they are the actuarial equivalent of the annuity form. 29 U.S.C. § 1054(c)(3). Accordingly, the Plan permits a participant to elect one of several optional forms of benefit besides the normal annuity form. (R. 6, Ex. 1, Plan § 12.2, Apx. 000134)[2] The death benefit is not one of them. Therefore, 29 U.S.C. § 1054(c)(3) has no bearing whatsoever on the Plan's death benefit. In addition, it would be unreasonable to deem the death benefit an optional form of

---

[2]  Under the Plan:

> "Actuarial Equivalent" shall mean with respect to any annuity or benefit, another annuity or benefit which commences at a different date and/or is payable in a different form than the Specified Annuity or benefit, but which has the same present value as the specified annuity or benefit when measured on the basis of the interest rate, mortality table, or other factors, if any, which are applicable to such other annuity or benefit, and are specified in Section D of Appendix A as in effect at the date of commencement of such other annuity or benefit.

(R. 6, Ex. 1, Plan § 1.2, Apx. 00092)  Section D of Appendix A to the Plan specifies the interest rate and mortality table to be used in determining the Actuarial Equivalent under the Plan. (R. 6, Ex. 1, Plan App. A, §D, Apx. 000156-000157)

payment for the accrued annuity benefit because the death benefit is payable only to a participant's spouse or beneficiary if the participant dies.  The accrued benefit, on the other hand, is payable only to the participant if he or she is alive.

Because the death benefit is not an optional form of the accrued benefit, it simply does not factor into the forfeitability analysis under 29 U.S.C. 1053(a)(3), or in the regulations issued under I.R.C. § 411.  Hence, it is not surprising that Crosby is unable to provide any authority for his assertion that "a discount for the possibility that the benefit will not be paid is clearly unreasonable where, as here, the plan expressly provides that the benefit will be paid, albeit 'to a spouse or other beneficiary.'"  Pl. Br. 27.

### D.    The Death Benefit Is An Incidental Benefit.

Crosby attempts to justify the district court's incorrect conclusion that the Plan's death benefit is an accrued benefit under ERISA with a distorted reading of Treas. Reg. 1.411(a)-(7).  That regulation states, "[i]n general, *the term 'accrued benefits' refers only to pension or retirement benefits*.  Consequently, accrued benefits do not include ancillary benefits not directly related to retirement benefits such as . . . incidental death benefits . . ."  Treas. Reg. 1.411(a)-(7) (emphasis added).  Crosby overlooks the first sentence of the regulation.  The death benefit obviously is not a pension or retirement benefit.    Accordingly, under the regulation Crosby cites, it is incidental.

8

Crosby also claims that "a non-incidental death benefit 'directly related' to retirement benefits" is accrued. Pl. Br. 58. This contention incorrectly implies that a retirement plan can choose to provide incidental and non-incidental non-pension benefits. To the contrary, a non-incidental death benefit would violate applicable I.R.C. provisions and disqualify the Plan Def. Br. 28-29.[3]

Moreover, contrary to Crosby's argument (Pl. Br. 60-61), the death benefit is an ancillary death benefit as defined in Treas. Reg. 1.401(a)(9)-(6)(T):[4] (i) it is paid only if the participant dies (the sole benefit in that case is the death benefit); (ii) it is not an optional form of benefit, *see supra* Part II.C; and (iii) it is an incidental death benefit "provided through insurance or *otherwise*." Treas. Reg.

---

[3] Crosby's logic implies that many plainly incidental benefits are accrued benefits. For example, "non-current life insurance protection" directly related to retirement benefits (such as future life insurance coverage during retirement) would be part of the accrued benefit. Obviously, such benefits, which are not pension or retirement benefits are not "accrued."

[4] By citing this regulation, Crosby undermines his earlier argument that Treas. Reg. 1.401-1(b)(1)(i) is not applicable. *See* Pl. Br. 58-59. Treas. Reg. 1.401(a)(9)-(6)(T) refers to Treas. Reg. 1.401-1(b)(1)(i). Crosby cannot contend this regulation applies for purposes of his argument, but not for defendants'. Other materials cited by Crosby also confirm that I.R.C. § 401 and the regulations thereunder apply post-ERISA and that the Treasury Department still looks to the § 401 regulations to determine whether a death benefit is "incidental." *See* Rev. Rul. 85-18, 1992 IRS Field Service Advisory, 1992 WL 1355639.

9

1.401-1(b)(1)(i); Def. Br. 27-31.[5] Accordingly, the Plan's death benefit is not an accrued benefit and the Plan's settlor could amend the Plan to reduce it at any time.

### E.     The Death Benefit Is Not The Same As The "Life" Benefit.

If a Plan participant dies before beginning to receive his retirement benefit, the Plan pays only the death benefit. The death benefit -- paid to the participant's beneficiary -- is "the then vested present value of the Participant's Accrued Benefit to date of death; provided, however, that a Participant who dies while an Employee of the Employer shall be fully vested in the present value of his Accrued Benefit accrued to date of death." (*Id.*) The death benefit also "shall not be less than the qualified preretirement survivor annuity (if applicable) for the Participant's spouse . . . ." (*Id.*) Accordingly, the amount of the death benefit could vary from the amount of the participant's accrued benefit depending upon at least three variables: (1) the extent to which the participant is vested, (2) whether the participant is employed by the Plan sponsor at the time of death, and (3) whether the participant is married such that the qualified pre-retirement survivor annuity provision applies. Thus, contrary to Crosby's claim, the Plan's death benefit is not simply the equivalent of the "life" benefit (the participant's accrued benefit payable on retirement).

---

[5] Crosby ignores the words "or otherwise" in his argument.

Crosby claims that the death benefit is accrued because the Administrator must consider it in computing the present value of the accrued retirement benefit. This circular logic ignores factors that render the value of the death benefit illusory: (1) the Plan's settlor could take away most of the death benefit at any time and (2) the death benefit ceases to exist when a participant takes a pre-retirement lump sum distribution. As a result, the death benefit has no present value to Crosby, who elected to take a pre-retirement lump sum distribution of his benefit and it was proper for the Administrator to disregard it.

Crosby overlooks numerous additional factors that render the death benefit immaterial in determining the present value of Crosby's projected age 65 annuity.

- The death and the life benefits arise under different sections of the Plan.

- The death and the life benefits are payable to two different people (the participant and the surviving spouse or beneficiary).

- The death and the life benefits are mutually exclusive. Upon death, all of the participant's benefits are extinguished. By receiving his or her retirement benefit (in any of the forms allowed by the Plan), however, a participant eliminates the possibility of anyone receiving a pre-retirement death benefit.

- When Crosby elected to take a lump sum distribution of his retirement benefit, he extinguished the death benefit. The only way that the death benefit would have remained part of Crosby's overall benefit package under the Plan would be if had decided to leave his benefit in the Plan -- which he did not do.

11

These reasons show that the premise of Crosby's suit -- that the death benefit is the same as the life benefit -- is not true. This fact unravels Crosby's reasoning and demonstrates that the Administrator's decision was, at a minimum, reasonable.

## III.    Crosby's Authorities Have No Bearing On The Correct Interpretation Of The Plan.

### A.    Crosby Incorrectly Asserts That All Cash Balance Plans Prohibit The Use Of Pre-Retirement Mortality So The Plan Must Do Too.

Crosby overstates his case when he argues that "all" cash balance plans assume no pre-retirement mortality. Pl. Br. 27 (heading II). Crosby bases this argument on a 1992 "position paper" submitted to the IRS by several actuarial firms. Initially, Crosby's obsessive reliance on "position papers," meeting minutes, and working papers is bizarre. These materials are not authoritative and there are serious questions about their admissibility. *See* infra Part III.D. Crosby places great reliance on statements of many people who have no connection to this case -- they were not witnesses, did not participate in the administrative review of Crosby's claim, and their alleged positions were not presented to the Plan's fiduciaries for review. Many of the materials he cites are more than 10 years old, dating to a time when cash balance plans were in their infancy and the issue before the Court had not been identified. More importantly, this case is about interpretation of the Plan. References to other plans (or, in the case of Crosby's "authority," hypothetical and proposed plans) are irrelevant.

Importantly, Crosby also concedes that cash balance plans "may expressly provide for forfeiture of the accrued benefit on account of the participant's death before normal retirement age." Pl. Br. 28 (emphasis added). To the extent that the Plan does not directly address this question, it is a matter for interpretation by the Administrator. Nothing in the Plan precluded the Administrator's decision to apply a pre-retirement mortality discount and the decision to apply one was otherwise reasonable.

### B.    No Controlling Cases Support Crosby's Position.

Crosby pretends that controlling case law supports his position. It does not. *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000), and *Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan,* 221 F.3d 1235 (11th Cir. 2000), simply do not address the issue before the Court. *See* Def. Br. 32-35. In fact, the Administrator in this case used the whipsaw method to comply with those decisions. Moreover, on remand, the district court in *Lyons* ruled, "no legal authority governs the question of whether a pre-retirement mortality discount is proper," and stated, "[s]uch a question initially may be only properly answered by the plan administrator." *Lyons v. Georgia Pacific Corp. Salaried Employees Retirement Plan*, 196 F.Supp.2d 1260 (N.D. Ga. 2002). Thus, the status of *Lyons* favors defendants on the issue in this case.

13

Crosby's reliance upon *Berger v. Xerox Retirement Income Guaranty Plan,* 231 F.Supp.2d 804 (S.D. Ill. 2002), is also questionable. That district court decision is no more persuasive than the district court decision in this case and is wrong for the same reasons. A district court decision interpreting a different plan has no bearing on whether the Plan Administrator's interpretation of the Plan in this case was correct or reasonable. *Berger* is also on appeal to the U.S. Court of Appeals for the Seventh Circuit, a fact Crosby omits from his brief.

Finally, the unpublished decision in *Collins v. Pension Benefit Guaranty Corp.,* Nos. 88-34306, 89-2997 (D.D.C. July 16, 1998), is irrelevant. It does not deal with the terms of any ERISA retirement plan. Instead, it deals with the enforcement of a class action settlement. Crosby appears to believe that a settlement panel decision in that case bears a governmental imprimatur and thus is applicable to this case because one of the panel's members is a <u>former</u> administrator of the Pension and Welfare Benefits Administration. Pl. Br. 31. Contrary to Crosby's claim, *Collins* does not reveal the position of any regulatory body on the matter that is in dispute here.

### C.   Crosby Fails To Identify Any Statute Or Regulation That Requires The Plan To Ignore Pre-Retirement Mortality.

Crosby cites several regulations and statutes which, he claims, endorse his position. These provisions are irrelevant, as Crosby has already admitted that no regulation or statute prohibits a plan from using such a discount. Moreover, the

14

abundance of employee benefits regulations shows that if Congress or the Treasury

Department meant to prohibit the use of pre-retirement mortality discounts in this

context, they were capable of doing so. The absence of such an express

prohibition confirms that neither entity intended such a prohibition. *See Pilot Life*

*Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (refusing to imply additional remedies

under ERISA due to statutes detail and complexity). Furthermore, on even

minimal scrutiny, it is evident that none of the provisions Crosby cites supports his

claim.

- IRS Notice 96-8 is irrelevant because it does not address the issue in this case. *See* Def. Br. at 35-38. IRS Notice 96-8 deals with an interest rate issue, not a mortality discount issue such as Crosby has raised.

- I.R.C. § 401(a)(4) and Treas. Reg. 1.401(a)(4) deal with non-discrimination, not present value of accrued benefits. The I.R.C. establishes tests to determine whether a plan discriminates in favor of highly compensated employees and "safe harbors." Crosby cites a safe harbor provision that requires safe harbor plans to choose an interest rate, including one that disregards pre-retirement mortality. A plan is not obligated to use that rate or even to be a "safe harbor" plan. Therefore, this regulation did not prohibit the Administrator from considering pre-retirement mortality.

- I.R.C. § 415(b) limits the amount of the retirement benefit payable to a participant each year (in the form of a single life annuity). Crosby cites, Pl. Br. 39, IRS guidance on increasing the § 415(b) limits for payments <u>after</u> social security retirement age. The only arguably relevant part of this IRS guidance deals with pre-social security retirement age adjustments to those limits, and that guidance says that a reasonable mortality table <u>must</u> be used, although it <u>may</u> be

15

disregarded if there is no forfeiture of benefits upon death. *See* Q&A G-3 of IRS Notice 83-10 and Q&A-5 of IRS Notice 87-21.[6]

• Although 29 U.S.C. § 1054(c) suggests that a pre-retirement mortality discount should not apply it does so only with respect to determining the accrued value of <u>employee</u> contributions, not employer contributions, which are at issue in this case. Employee contributions presumably belong to the employee's estate if he died. Hence, these benefits are not "ancillary" like the death benefit upon which Crosby relies.[7]

• The recently proposed age discrimination regulations promulgated by the Treasury Department cited by Crosby are also inapplicable. First, they are proposed and thus do not carry the force of law. Crosby cites no authority to show otherwise. Second, they have been partially withdrawn and are subject to intense criticism, further reducing any persuasive value they might have had. IRS Announcement 2003-22. Third, the proposed regulations deal with age discrimination and cash balance plans, not the use of pre-retirement mortality discounts.

### D. Crosby's Actuarial Authority Does Not Help Him.

Crosby places great emphasis on statements by various actuaries. Pl. Br. 40-49. These statements (some contained in "position papers") are irrelevant because they do not relate to the Plan. As defendants have shown, many of these

---

[6] Further undercutting the asserted relevance of Section 415(b) is Treas. Reg. 1.415-3(c)(2), which identifies the values of benefits that are not included in making the adjustments required under 415(b). This section provides that the "value of benefits that are not directly related to retirement benefits (such as pre-retirement disability and death benefits and post-retirement medical benefits)" are not included in adjusting the limits under 415(b). *See* Treas. Reg. 1.415-3(c)(2)(ii).

[7] Contrary to Crosby's claim, Pl. Br. 38-39, 29. U.S.C. § 1054(c) states that a lump sum derived from employee contributions must be the "actuarial equivalent" of the accrued benefit, but it does not prohibit consideration of mortality in determining actuarial equivalence.

16

"experienced pension actuaries" have disavowed Crosby's position that cash balance plans *must not* consider pre-retirement mortality. Def. Br. 41-44. Crosby disagrees, but the debate as to what these actuaries believe shows why the Court should not consider their alleged opinions.

In addition, the opinions reflected in these materials are not admissible in this proceeding. Crosby asks the Court to treat these statements as "unsolicited actuarial literature," not evidence. Pl. Br. 40. This unsupported suggestion is ludicrous because the documents are merely working papers, draft proposals, and statements at conferences. *Cf.* Fed. R. Evid. 902 (limiting types of documents admissible into evidence without foundation). Crosby's actuarial materials are no more persuasive than transcripts of bar association meetings, materials upon which the Court unquestionably would not rely.

Despite his claims to the contrary, Crosby is asserting that these materials are proof of how to calculate lump sums under cash balance plans. These materials, however, are inadmissible hearsay. Fed. R. Evid. 801(c). There is a hearsay exception for "learned treatises," Fed. R. Evid. 803(18), but only those "established as a reliable authority or admission of the [expert] witness or by other expert testimony or by judicial notice." Obviously, Crosby's materials do not fit this exception.

Alternatively, Crosby maintains that the materials are business records admissible under Rule 803(6) or fall into the "Residual Exception" of Rule 807. Pl. Br. 45. Crosby has offered no admissible evidence of a foundation under either rule and the dispute as to whether these materials reflect the actuaries' views shows that they lack the requisite "guarantees of trustworthiness" for admissibility. *See* Fed. R. Evid. 807. Crosby also failed to present these materials to the Administrator in connection with his claim or his administrative appeal. Thus, the Court should disregard these materials. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F. 3d 609, 614 (6th Cir. 1998) (district court is limited to evidence presented to the plan administrator). In any event, these materials are irrelevant because they merely identify a dispute in the actuarial community as to the propriety of using a pre-retirement mortality discount but have no bearing on whether the Plan Administrator made a reasonable interpretation of the Plan.

## IV. ERISA Section 502(a)(3) Did Not Permit An Order Requiring Payment Of Additional Benefits To Crosby And The Plaintiff Class.

Not only was the district court wrong on the merits, but it granted a remedy that is not permitted by ERISA § 502 (a)(3), 29 U.S.C. § 1132(a)(3), the ERISA provision under which Crosby sued. Crosby claims additional benefits under an ERISA plan; therefore, his claim falls under § 502(a)(1)(B) and relief under § 502 (a)(3) was not "appropriate." *Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996)

18

(§ 502(a)(3) relief is available only where none is otherwise available under ERISA); *Wilkins,* 150 F.3d at 615 (following *Varity*). *See also* Def. Br. 51-55.

Crosby now argues that he may sue under ERISA § 502(a)(3) because he cannot prevail under the express terms of the Plan.[8] This claim contradicts Crosby's assertion that the Plan requires payment of additional benefits. Moreover, Crosby is making a claim under the Plan for additional benefits, a classic ERISA § 502(a)(1)(B) claim. This Court only permits § 502(a)(3) suits for alleged breaches that § 502 "does not elsewhere adequately remedy.'" *Wilkins,* 150 F.3d at 615 (alteration in original). That Crosby might fail under § 502(a)(1)(B) because his proffered interpretation of the Plan is wrong (or the Administrator's decision was reasonable) does not mean that he cannot sue under that statue.

Crosby also cannot circumvent the Supreme Court's ruling in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (stating that "[a]lmost invariably . . . suits seeking (whether by judgment, *injunction*, or *declaration*) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they

---

[8] Crosby also complains that defendants have not cited the Plan provision under which Crosby would be entitled to benefits. This is absurd. Crosby is and always has been seeking the allegedly correct calculation of his lump sum benefit under Plan § 12.2(b).

19

seek no more than compensation for loss resulting from the defendant's breach of legal duty.") (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988)) (emphasis added). Although he seeks additional benefits (i.e., money) from defendants' assets, Pl. Br. 64, Crosby argues that "monetary relief may be awarded under ERISA § 502(a)(3) where the money is in the defendants' possession or control, but rightfully belongs to the plaintiff." Pl. Br. 63. That is true of every ERISA 502(a)(1)(B) claim for the wrongful denial of benefits. Clearly, the Supreme Court in *Great-West* did not mean to deem all such claims "equitable" or to create a duplicative avenue of relief for benefit claimants.

## V.    Under The Applicable Standard Of Review, This Court Must Reverse If The Plan Administrator's Decision Was Rational.

Crosby argues that the district court should have applied a de novo standard of review rather than the "arbitrary and capricious" standard described in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In *Firestone*, the Supreme Court held that a plan administrator's interpretation is entitled to deference and is subject to an arbitrary and capricious standard of review if the plan grants the administrator discretion in interpreting the plan. Crosby concedes that the Plan grants the requisite discretion, but argues that a de novo standard of review nonetheless applies. Contrary to Crosby's claim, the district court selected (but misapplied) the correct standard.

20

### A. Crosby's Claim For De Novo Review Defies This Court's Decisions

Crosby relies on two false premises. First, Crosby argues that the *Firestone* arbitrary and capricious standard applies only to ERISA § 502(a)(1)(b) claims for benefits. Pl. Br. 18-19. Crosby, however, challenges the accuracy of an ERISA benefits determination. "This court reviews a challenge to an ERISA benefits determination de novo, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Marquette General Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 632 (6th Cir. 2003) (citing *Firestone*, 489 U.S. at 115). In such cases, the Court reviews administrators' decisions to determine whether they are arbitrary and capricious. *Id.; see also* Plan § 2.4 (giving the Administrator discretion to interpret and apply the Plan) (R. 6 Ex. 1, Apx. 000107).

This Court has rejected Crosby's argument that the arbitrary and capricious standard of review is inapplicable to § 502(a)(3) claims for benefits. *See* Def. Br. 46-47. Although nominally brought under § 502(a)(3), Crosby's claim is for additional benefits under an ERISA plan and it depends on the interpretation of the Plan's terms. Hence, the claim is subject to review under the arbitrary and capricious standard of review, regardless of the ERISA section under which it is brought. *See Hunter v. Caliber System, Inc.,* 220 F.3d 702, 711 (6th Cir. 2000).

**B.    Defendants Are Not Offering A "Post Hoc Interpretation."**

Second, Crosby mischaracterizes the administrative record when he argues

that the Plan Administrator did not interpret the Plan and that the Court therefore

need not defer to the Administrator's decision. Pl. Br. 19. The Administrator

initially informed Crosby that his lump sum would equal his personal account

balance. (R. 20, Pl. Ex 5, Apx. 000335). Crosby claimed that his benefit should be

larger based on the "whipsaw" method, under which the Administrator determines

the Crosby's estimated normal retirement benefit (an annuity at age 65) and

discounts it to its actuarial present value. The Administrator <u>granted</u> Crosby's

claim. (R. 6, Ex. 3, Apx. 000167-000188). In that decision, the Administrator

cited and interpreted numerous Plan sections, including Plan Sections 1.1, 1.2,

1.39, 2.10, 6.5, 13.1, Appendix A Section A, Appendix A Section D(2)(i) and (ii).

(*Id.*, Apx. 000167-000173).

The Plan did not expressly provide for the "whipsaw" method of calculating

lump sums. Nevertheless, consistent with its obligation to construe the Plan

consistent with ERISA and the I.R.C., the Administrator decided to use the

whipsaw method. This meant the Administrator had to select assumptions to use

in the whipsaw calculation. To determine present value of Crosby's projected age-

65 annuity, the Administrator relied upon the Plan's definition of "Actuarial

Equivalence:" "The final step in the [whipsaw] analysis . . . is to determine the

22

present value of the annuity form. The interest rate used for this purpose is the

'applicable interest rate,' 5.78% and the mortality table is the 'applicable mortality

table' described in Appendix A Section D(2)(i) and (ii)." (R. 6, Ex. 3 at 3,

Apx. 000169). Plan Appendix A Section D(ii) defines the "applicable mortality

table" as "the mortality table based on the prevailing standard table in Section

807(d)(5)(A) of the Code for determining reserves for group annuity contracts

issued on the date as of which the Actuarial equivalent is being determined, as set

forth by the Internal Revenue Service." (R. 6, Ex. 3, Apx. 000173). This table

makes no distinction between periods before or after the attainment of normal

retirement age (i.e. between what Crosby calls pre- and post-retirement).

Accordingly, the Administrator applied a single mortality table to all parts of the

present value calculation.

> Crosby appealed, stating:
>
> This appeal is regarding the mortality discount factor applied when
> converting the "Age 65 Lump Sum Value" to the "417(e) Lump Sum
> on 1/1/2001", as shown in Exhibit B of your 2/12/2001 response.
>
> This discount factor is not consistent with the calculation method
> described in IRS Notice 96-8. Further, I believe this discount reduces
> my accrued benefit and, thus, is not allowed under ERISA.

(R. 6, Ex. 4, Apx. 000189). Crosby did not contend that the Administrator failed to

follow the terms of the Plan. Instead, he based his claim solely upon IRS Notice

96-8 (but failed to explain how that notice affected the calculation).

The Pension Administrative Committee ("PAC") denied Crosby's appeal. (R. 6, Ex. 5, Apx. 000190-000194). The PAC decided that IRS Notice 96-8 did not mandate a change in the Administrator's calculation. Although Crosby did not challenge the Administrator's interpretation of the Plan, the PAC nonetheless stated that it believed that interpretation was correct and affirmed it. (*Id.* at 5, Apx. 000194) ("The decision on your claim, as set forth in Mr. Whitlock's letter of February 12, 2001, is also final and binding on you.")[9].

In light of this administrative record, Crosby's claim of a post hoc rationalization is specious. The Administrator interpreted the Plan to call for a pre-retirement mortality discount. Because the pertinent Plan provisions do not distinguish between pre- and post-retirement periods, the Administrator made no such distinction. The question in these administrative review proceedings, *see Wilkins*, 150 F.3d at 619 (treating ERISA benefit claims like other administrative review proceedings), is whether that was rational in light of the Plan's provisions. Defendants may offer interpretations of the Plan to show that the Administrator's decision was rational. *See Gallo,* 102 F.3d at 923.

---

[9] Crosby's claim that the Plan Administrator's decision violates applicable regulations derives from his mischaracterization of the administrative record. (Crosby Br. at 22, citing 29 C.F.R. § 2560.503-1(g)). The initial decision on Crosby's claim clearly met the regulatory requirements. Crosby's appeal letter did not mention the Plan, but relied instead on an IRS Notice, so the PAC simply adopted the Administrator's detailed Plan analysis.

The cases Crosby cites do not support his claim. In *Thompson v. J.C. Penney Co., Inc.*, 2001 WL 1301751 (6th Cir. 2001) (unpublished), the plan administrator gave *no* interpretation to the plan at issue. Accordingly, "there [was] nothing to which the court [could] defer." *Id.* at *4. Here, however, the Plan Administrator rendered a detailed Plan interpretation, including finding that the Plan requires use of a mortality discount rate to determine the "Actuarial Equivalent" lump sum benefit. Accordingly, the Court has something to which it can defer.

*University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 (6th Cir. 2000), also is inapposite because it held that where an administrator makes a conclusory decision which contradicts or effectively adds to the plan's terms, it is arbitrary and capricious. *Id.* at 849. Here, the Administrator interpreted the Plan to call for use of a mortality discount rate for all periods because there was no reason for it to exclude pre-retirement periods. Nothing in the Plan mandated such an exclusion or even distinguished between pre- and post-retirement periods.[10] To the extent the *University Hospitals of Cleveland* case deals with post

---

[10] The other cases cited by Crosby merely refer to administrators' arbitrary and capricious interpretations but do not support application of a different standard of review in this case. *See, e.g., Williams v. International Paper Co.*, 227 F.3d 706, 712-13 (6th Cir. 2000) (plan interpretation was arbitrary and capricious because it disregarded express plan language); *Rhoton v. Central States, S.E. and S.W. Areas Pen. Fund*, 717 F.2d 988, 990 (6th Cir. 1983) (same).

hoc rationalizations, it holds that testimony of a decision maker cannot change the decision or the bases therefore. Here, defendants do not seek to rely on such testimony, but merely to explain why the Administrator's decision was rational in light of the Plan's terms.

Crosby also claims that the Court may not consider defendants' arguments about the Plan's death benefit because the Administrator did not address these points. Initially, Crosby bases this claim on the idea that a plan administrator may not "ignore a pertinent plan provision simply because the claimant failed to note it in the claim." Pl. Br. 23. For all of the reasons stated previously, however, the Plan's death benefit provision is not "pertinent." In addition, Crosby's claim would put plan administrators in a fundamentally unfair position. If Crosby's logic were to prevail, a participant could make a claim for benefits but decide later what would be his key theory for recovery of the requested benefits (which is precisely what Crosby did here). Then, when the plan fiduciaries predictably failed to address that theory (which had not been brought to their attention), the participant would be entitled to de novo review solely because of his intentional omission. This is not the law, nor should it be. It flies in the face of the *Firestone* approach, which focuses on the plausibility of the Administrator's decision, not on the validity of the claimant's arguments in response.

26

This Court's decisions make clear that what is under review is the decision

of the Administrator. *See Hunter,* 220 F. 3d at 710 (if a plan confers discretion, the

administrator's "determination is reviewed under the 'arbitrary and capricious'

standard.") (citing *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950

F.2d 1244, 1248 (6th Cir. 1991)). Accordingly, the question before this Court is

whether the Plan Administrator's determination (or outcome) was one for which a

reasonable explanation exists. Crosby takes pains to point out that he presented his

claim to the Plan's fiduciaries, Pl. Br. 23-24, and that he has therefore, exhausted

his claim. What's sauce for the goose is sauce for the gander: if Crosby really has

exhausted his claim, then the Plan's fiduciaries have decided it and that decision is

entitled to deference.

Indeed, in a similar case, the Seventh Circuit ruled that a plan administrator

need not state all the possible arguments in favor of its position in an

administrative decision. *Gallo,* 102 F.3d 918. Like Crosby, the plaintiff in *Gallo*

claimed that the plan administrator improperly failed to specify the reasoning for

its plan interpretation. Rejecting this assertion as a reason to apply a de novo

standard of review, the court noted "[t]he administrator must give the 'specific

reasons' for the denial . . . , but that is not the same thing as the reasoning behind

the reasons . . ." *Id.* at 922. Thus, the administrator's decision "was sufficient

explanation to enable Gallo to formulate his further challenge to the denial, the

challenge that he has mounted in this suit, and as that is the purpose of requiring a statement of the plan administrator's reason for denying the benefits sought . . . nothing more was required." *Id.* at 923 (internal citations omitted). The same is true here: the Plan Administrator gave Crosby notice of the <u>specific</u> reasons for its interpretation, and that determination is entitled to deference.

## C.    Under The Arbitrary And Capricious Standard, The Court Must Uphold The Plan Administrator's Decision.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Hunter*, 220 F.3d at 710 (quoting *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Under this standard, "the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'" *Williams v. International Paper Co.*, 227 F.3d 706 (6th Cir. 2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). For the reasons stated above and in defendants' opening brief, the Plan Administrator correctly -- or at least reasonably and rationally -- took into account the probability that Crosby would die before receiving his normal retirement benefit in determining the present value that benefit. Accordingly, the Court should affirm that interpretation. *See, e.g., Marquette Gen. Hosp.* 315 F.3d at 632.

("The deferential 'arbitrary and capricious standard' requires us to uphold a

benefits determination if, in light of the plan's provisions, it is rational").

## CONCLUSION

The Court should reverse the district court's November 26, 2002 judgment.

Respectfully submitted,

BOWATER INCORPORATED AND
BOWATER INCORPORATED
RETIREMENT PLAN FOR SALARIED
EMPLOYEES OF GREAT NORTHERN
PAPER INC.


By_____
                One of Their Attorneys

Thomas J. Piskorski
Ian H. Morrison
SEYFARTH SHAW
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000

Dated:  July 28, 2003

29