UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John D. West, on Behalf of Himself and All Other Persons Similarly Situated,<br><br>                                    Plaintiffs,<br>v.<br>AK Steel Corporation Formerly ARMCO Inc.) Retirement Accumulation Penison Plan, a part of the AK Steel Corporation (Formerly ARMCO Inc.) Noncontributory Pension Plan, and<br><br>AK Steel Corporation Benefit Plans Administrative Committee,<br><br>                                    Defendants | Case No.: C-1-02-0001<br><br>Judge: Hon. Sandra S. Beckwith<br><br>Magistrate Judge: Timothy S. Black |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AGAINST NINETY-TWO CLASS MEMBERS, OR, IN THE
ALTERNATIVE, TO AMEND THE CLASS CERTIFICATION ORDER**

Defendants hereby move for summary judgment against those class members who executed general releases releasing their claims against the Defendants in exchange for severance benefits. In the alternative, Defendants move to amend the class certification order to exclude the class members who executed releases on the grounds that (i) individual issues will predominate over class-wide issues with respect to these plaintiffs and (ii) the typicality and adequacy requirements of Fed. R. Civ. P. 23 cannot be satisfied with respect to these individuals. For the reasons set for in the accompanying Memorandum this Court should grant Defendants' motion for summary judgment.

Respectfully submitted,


\_\_/s  George E. Yund_____
George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
David A. Barker
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

December 1, 2004

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John D. West, on Behalf of Himself and All Other Persons Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br>v.<br>AK Steel Corporation Formerly ARMCO Inc.) Retirement Accumulation Penison Plan, a part of the AK Steel Corporation (Formerly ARMCO Inc.) Noncontributory Pension Plan, and<br><br>AK Steel Corporation Benefit Plans Administrative Committee,<br><br>　　　　　　　　　　Defendants | Case No.: C-1-02-0001<br><br>Judge: Hon. Sandra S. Beckwith<br><br>Magistrate Judge: Timothy S. Black |

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AGAINST NINETY-
TWO CLASS MEMBERS, OR, IN THE ALTERNATIVE, TO
AMEND THE CLASS CERTIFICATION ORDER

George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
David A. Barker
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ....................................................................... 1

    A.  The Reduction in Force ........................................................................................ 2

    B.  The Releases ........................................................................................................ 2

STANDARD OF REVIEW ................................................................................................ 4

ARGUMENT ...................................................................................................................... 4

I.  SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST CLASS MEMBERS WHO EXECUTED RELEASES. ...................................................... 4

    A.  ERISA Claims Are Extinguished by a Valid General Release. ........................... 4

    B.  The Releases Cover the Claims Asserted by Plaintiffs. ....................................... 5

II.  IN THE ALTERNATIVE, CLASS MEMBERS WHO SIGNED RELEASES SHOULD BE EXCLUDED FROM THE CLASS. .................................................. 7

    A.  In the Absence of Summary Judgment for Defendants on the Releases, Individual Issues Will Predominate with Respect to Individuals Who Executed Releases. ................ 8

    B.  Employees Who Executed Releases Should Be Carved Out of the Class Under the Typicality and Adequacy Requirements of Rule 23. ....................................... 11

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

### Federal Cases

*Adams* v. *Phillip Morris, Inc.*, 67 F.3d 580 (6th Cir. 1995).................................................................9

*Almond* v. *ABB Industrial Sys.*, 56 Fed. Appx. 672, 2003 WL 173640 (6th Cir. 2003).................5

*Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591 (1997)..................................................... 8, 12

*In re American Medical System, Inc.*, 75 F.3d 1069 (6th Cir. 1996)...........................................11

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................................4

*Barnes* v. *The American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)...........................................7

*Bernard* v. *Gulf Oil Corp.*, 841 F.2d 547 (5th Cir. 1988).............................................................12

*Bittinger* v. *Tecumseh Products Co.*, 83 F.Supp.2d 851 (E.D. Mich. 1998), *aff'd*, 201 F.3d 440, 1999 WL 1204883 (6th Cir. 1999)........................................................................ 10, 11

*Boucher* v. *Syracuse University*, 164 F.3d 113 (2d Cir. 1999) ......................................................7

*Christensen* v. *Kiewit-Murdock Investment Corp.*, 815 F.2d 206 (2d Cir. 1987) .........................7

*Halvorson* v. *Boy Scouts of America*, 215 F.3d 1326, 2000 WL 571933 (6th Cir. 2000)...............5

*Hervey* v. *City of Little Rock*, 787 F.2d 1223 (8th Cir. 1986).......................................................8

*Howlett* v. *Holiday Inns, Inc.*, 120 F.3d 598 (6th Cir. 1997).......................................................11

*Kutschback* v. *Davies*, 885 F.Supp. 1079 (S.D. Ohio 1995).......................................................11

*Mallory* v. *Eyrich*, 922 F.2d 1273 (6th Cir. 1991).......................................................................8

*Mararri* v. *WCI Steel, Inc.*, 130 F.3d 1180 (6th Cir. 1997) ......................................................4, 5

*Melong* v. *Micronesian Claims Commission*, 643 F.2d 10 (D.C. Cir. 1980)..............................12

*Miller* v. *General Motors Corp.*, 845 F.2d 326, 1998 WL 38965 (6th Cir. 1998).........................5

*Nicklin* v. *Henderson*, 352 F.3d 1077 (6th Cir. 2003), *cert. denied, Nicklin v. Potter*, 124 S.Ct. 2107 (2004)......................................................................................................................4, 9

*Oubre* v. *Entergy Operations, Inc.*, 522 U.S. 422 (1998)..................................................... 10, 11

*In Re: PaineWebber Ltd. Partnership Lit.*, 147 F.3d 132 (2d Cir. 1998) .................................... 7

*Raczak* v. *Ameritech Corp.*, 103 F.3d 1257 (6th Cir. 1997) ............................................. 10, 11

*Richardson* v. *Byrd*, 709 F.2d 1016 (5th Cir. 1983) ........................................................ 7

*Samms* v. *Quanex Corp.*, 99 F.3d 1139, 1996 WL 599821 (6th Cir. 1996) .......................... 5, 10

*Shaheen* v. *B.F. Goodrich Co.*, 873 F.2d 105 (6th Cir. 1989) .............................................. 5

*Spann* v. *AOL Time Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003) ................. 8, 9, 10, 11, 12

*Sprague* v. *General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ........................................ 10

*Street* v. *J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) ............................................. 4

*Thomas* v. *Moore USA, Inc.*, 194 F.R.D. 595 (S.D. Ohio 1999) ......................................... 12

*Torello* v. *Unum Life Insurance Co. of America*, 201 F.3d 441, 1999 WL 1204755 (6th Cir. 1999) .............................................................................................................. 6

*United States* v. *Diebold, Inc.*, 369 U.S. 654 (1962) .......................................................... 4

*Valeck* v. *Watson Wyatt and Co.*, 92 Fed. Appx. 270, 2004 WL 500985 (6th Cir. 2004) .......... 5

*Walker* v. *Asea Brown Boveri, Inc.*, 214 F.R.D. 58 (D. Conn. 2003) ........................ 5, 6, 10, 12

*Watts* v. *Duane Arnold Energy Center*, 2000 WL 34031503 (N.D. Iowa 2000) .................... 12

*Weight Watchers of Philadelphia, Inc.* v. *Weight Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972) .............................................................................................. 7

### State Cases

*Jankousky* v. *Jewel Co., Inc.*, 538 N.E.2d 689 (Ill. App. Ct. 1989) ....................................... 7

*In Re Winchell's Donut Houses, L.P. Sec. Lit.*, 1988 WL 135503 (Del. Ch. 1998) .................. 7

## INTRODUCTION

Defendants seek summary judgment against those class members who executed general releases releasing their claims against defendants in exchange for severance benefits. The releases signed by these class members are valid and binding and extinguish the claims they assert against defendants. Accordingly, the claims brought by the class members who executed releases should be dismissed. In the alternative, the class members who executed releases should be excluded from the class on the grounds that (i) individual issues regarding the validity of the releases predominate over class-wide issues with respect to these plaintiffs, and (ii) the typicality and adequacy requirements of Rule 23 cannot be satisfied with respect to these individuals.

## STATEMENT OF UNDISPUTED FACTS

Plaintiffs moved for class certification on May 1, 2002. Briefing was completed on August 29, 2002, and the Court certified a Class on March 9, 2004. The Class consists of approximately 1,260 "vested participants in the AK Steel Corporation (formerly Armco Inc.) Retirement Accumulation Pension Plan who retired or were terminated from employment on or after January 1, 1995 and [who] received their pension benefits under the Plan in the lump-sum form of payment." (March 9, 2004 Order at 3.) On April 8, 2004, the Court granted plaintiffs' Motion for Partial Summary Judgment, concluding that the manner in which plaintiffs' lump-sum disbursements were calculated under the Plan violated the Employee Retirement Income Security Act ("ERISA"). (April 8, 2004 Order at 26.) The Court announced that the action would proceed on the issue of damages. (*Id.*)

After the close of briefing on the class certification issue, certain class members were terminated in connection with a reduction in force ("RIF") that began in late 2003. These class members signed Severance Agreements that included a general release of claims against

AK Steel and related entities. This motion seeks summary judgment against class members who executed these releases, or, in the alternative, their exclusion from the Class.

A. **The Reduction in Force**

In late 2003, AK Steel concluded that a Reduction in Force was necessary in light of mounting losses that threatened the company's future. (Appendix Exhibit ("App. Ex.") 33, ¶ 2.) AK Steel was confronted with serious challenges, including a loss of $396.5 million through the end of September 2003, "extremely challenging business conditions," and "greater inroads by competitors who [unlike AK Steel] have leveraged cost advantages gained through bankruptcy." (App. Ex. 35 at 1.) AK Steel management concluded that "AK Steel needs to change – and change quickly – in order to return to a sustainable level of profitability." (App. Ex. 34.) To combat these challenges, the company announced that it would undertake a 20% reduction of its salaried workforce. (App. Ex. 34; App. Ex. 35 at 1.)

The vast majority of the employees affected by the RIF were terminated from October 2003 through the end of February 2004. (App. Ex. 33, ¶ 3.) Sandra J. Evans, Manager of Human Resources at AK Steel's corporate headquarters, met with terminated employees, typically on the day of their termination, to discuss matters related to their termination. (*Id.* ¶ 4.) Her counterparts at other facilities conducted similar meetings. (*Id.*) At these meetings, the terminated employees were informed that they would have the opportunity to receive severance benefits in exchange for the execution of a general release. (*Id.*) A proposed "Severance Agreement and Release" (the "Release") was then mailed to each employee's home. (*Id.*)

B. **The Releases**

AK Steel distributed two standard form releases to terminated employees, one for employees under 40 and one for employees over 40, which contained additional language relating to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(f). (App.

Ex. 33, ¶ 5.) Representative copies of each type of release are attached as Exhibits 36 and 37. (App. Ex. 33, ¶ 5; App. Ex. 36 (for employees under 40); App. Ex. 37 (for employees over 40).)

The Releases offered the terminated employees benefits to which they were not otherwise entitled, including severance pay, continued medical coverage, a pro-rated incentive payment, and professional job search/resume preparation services. (App. Ex. 33, ¶ 6; App. Ex. 36, ¶¶ 3-5; App. Ex. 37, ¶¶ 3-5.) In exchange, employees were required to release all claims against AK Steel Corporation and related entities. (App. Ex. 36, ¶ 9; App. Ex. 37, ¶ 9.) By signing a Release, employees agreed to forego "any and all claims, causes of action, and rights of recovery of any kind or nature, including without limitation back or front pay or <u>benefits</u> . . . whether known or unknown." (App. Ex. 36, ¶ 9; App. Ex. 37, ¶ 9 (emphasis added)). The Releases extended to "any claims, whether known or unknown . . . for . . . any violation of federal, state, local, statutory or common law." (App. Ex. 36, ¶ 9; App. Ex. 37, ¶ 9.)[1]

---

[1] The Releases read as follows:

> You waive and release and forever discharge, on behalf of yourself and your heirs, representatives and assigns, AK Steel Holding Corporation, AK Steel Corporation and its predecessors, and past, current and future subsidiaries, related entities, their officers[,] directors, shareholders, agents, employees, successors, or assigns, from any and all claims, causes of action, and rights of recovery of any kind or nature, including without limitation back or front pay or benefits, damages of any sort, debts, liabilities, and contract rights, and any costs, fees, or other expenses or attorneys' fees incurred in law or in equity, whether known or unknown. This waiver, release and discharge also includes but is not limited to any claims, whether known or unknown (including those arising out of or relating to your employment with the Company and/or the separation of your employment with the Company) for discrimination, slander, libel, damage to reputation, emotional distress, attorney fees, compensatory damages, punitive damages, tort damages, breach of contract, quasi-contract, promissory estoppel, any violation of federal, state, local, statutory, or common law . . .

(App. Ex. 36, ¶ 9; App. Ex. 37, ¶ 9.)

3

Ninety-two employees who executed Releases from October 2003 through February 2004 later became members of the Class of approximately 1,260 individuals certified by this Court on March 9, 2004. A list of the 92 class members appears in Exhibit 38 of the Appendix hereto. (App. Ex. 33, ¶ 9.)

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). While the court must construe the evidence presented in the light most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), a party opposing summary judgment may not rely on "mere allegations or denials," but rather "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

I. **SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST CLASS MEMBERS WHO EXECUTED RELEASES.**

   A. **ERISA Claims Are Extinguished by a Valid General Release.**

Federal common law governs the validity of a release of a federal cause of action. *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989)), *cert. denied, Nicklin v. Potter*, 124 S.Ct. 2107 (2004). Federal common law provides that a settlement, waiver, or release of a federal claim is to be "examined under normal contract principles unless overreaching or exploitation is inherent in the situation." *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1184 (6th Cir. 1997). Under normal contract principles, the central question in determining the validity of a release is whether it is made "knowingly and voluntarily." *Nicklin*, 352 F.3d at 1080; *Marrari*, 130 F.3d at 1184.

Public policy does not prohibit an "otherwise valid release" of a federal claim. *Mararri*, 130 F.3d at 1184 (quoting *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989)).

The Sixth Circuit has repeatedly applied these principles in unpublished cases holding that a general release is effective to extinguish ERISA claims. *See Samms v. Quanex Corp.*, 99 F.3d 1139, 1996 WL 599821, at *3 (6th Cir. 1996) (holding that there is no "public policy exception" barring waiver of ERISA claims) (citing *Miller v. General Motors Corp.*, 845 F.2d 326, 1998 WL 38965 (6th Cir. 1988)); *Valeck v. Watson Wyatt and Co.*, 92 Fed. Appx. 270, 2004 WL 500985, at *4 (6th Cir. 2004) (ERISA claim waived by valid general release); *Almond v. ABB Industrial Sys.*, 56 Fed. Appx. 672, 2003 WL 173640 (6th Cir. 2003) (same); *Halvorson v. Boy Scouts of America*, 215 F.3d 1326, 2000 WL 571933, at *3 (6th Cir. 2000) (same); *see also Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 66 & n.7 (D. Conn. 2003) (noting that "courts have found that an individual can waive his right to bring an ERISA claim by signing a general release . . . .").

### B. The Releases Cover the Claims Asserted by Plaintiffs.

The Releases plainly cover the ERISA claims asserted in this action. The plaintiffs who executed Releases agreed to waive and release "all claims, causes of action, and rights of recovery of any kind or nature, including without limitation back or front pay or benefits . . . whether known or unknown." (App. Ex. 36, ¶ 9; App. Ex. 37, ¶ 9) (emphasis added). Moreover, the plaintiffs who executed Releases agreed to waive claims not only against AK Steel Corporation, but also against "related entities" and "their officers directors, shareholders, agents, employees, successors or assigns." (*Id.*) The Releases thus extinguish the claims asserted here for additional "benefits" allegedly owed by the company pension plan.

Any assertion that the individuals who executed Releases did not realize that they might be releasing a "whipsaw" claim would be unavailing. A party need not understand the

precise legal theory underlying a particular claim in order to release that claim; rather, it is sufficient if the party has actual or constructive knowledge of the facts that give rise to a claim for relief. *See Torello v. Unum Life Ins. Co. of Am.*, 201 F.3d 441, 1999 WL 1204755, at *9 (6th Cir. 1999) (holding that a "full opportunity to learn the fundamental facts underlying [the] claim" is sufficient); *Walker*, 214 F.R.D. at 66 n.6 (holding that a "general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry") (citation omitted).

Here, the plaintiffs who signed Releases had actual or constructive knowledge of the facts giving rise to a whipsaw claim – namely, that if they elected a lump sum payment of their benefits, they would receive a lump sum payment equal to their account balance without additional calculations or enhancements. These facts were explained to employees on numerous occasions, including (i) when the cash balance plan was initially adopted, (ii) during the employee intake process, and (iii) in the Summary Plan Descriptions provided to all plan participants. (App. Ex. 39, ¶¶ 2, 5; App. Ex. 41 at 4, 5, 10-11; App. Ex. 42 at 11, 14-15; App. Ex. 43 at 6; Defs. App. Vol. II, Ex. 15 at 49, 74-76, 85, 100-103 (named plaintiff's admissions that he received and understood these explanations).) Indeed, the Summary Plan Descriptions furnished to all participants expressly stated that "[t]he value of your retirement benefit at any given time is simply the balance in your RAPP account." (App. Ex. 42 at second unnumbered page; App. Ex. 43 at second unnumbered page.) The Summary Plan Description alone precludes any assertion that the class members who executed Releases lacked actual or constructive knowledge of the basis for the claims asserted in this case. *See Torello*, 1999 WL 1204755 at *9-*10 (holding that claim was barred by a general release where the plaintiff "could have

learned" the basis for his claim "by simply reading the summary plan description in his possession").

It makes no difference to these conclusions that a putative class action was pending at the time the Releases were signed. The Releases were sought as part of a longstanding company policy of obtaining general releases in exchange for severance benefits – a policy that pre-dated the filing of this litigation. (App. Ex. 33, ¶ 9.) The pendency of a <u>putative</u> class action presented no barrier to the execution of a valid Release by putative class members; only the pendency of a <u>certified</u> class action could have had such an effect. *See, e.g., In Re: PaineWebber Ltd. P'ship Lit.*, 147 F.3d 132, 138 (2d Cir. 1998); *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 213 (2d Cir. 1987); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 773, 775 (2d Cir. 1972); *Jankousky v. Jewel Co., Inc.*, 538 N.E.2d 689, 691 (Ill. App. Ct. 1989); *In Re Winchell's Donut Houses, L.P. Sec. Lit.*, 1988 WL 135503 at *1 (Del. Ch. 1998).

II. **IN THE ALTERNATIVE, CLASS MEMBERS WHO SIGNED RELEASES SHOULD BE EXCLUDED FROM THE CLASS.**

Rule 23 imposes an obligation on the federal courts to continuously monitor their class certification orders and to revise those orders as appropriate up to the point of final judgment. A widely-quoted case thus states that:

> Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.

*Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983). *See also Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cir. 1999) ("[U]nder Rule 23(c)(1), courts are 'required to reassess their class rulings as the case develops.'"); *Barnes v. The American Tobacco Co.*, 161

F.3d 127, 140 (3d Cir. 1998) (same); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (holding that "class status under this rule may always be altered or amended" and that "'[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation'") (citation omitted); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986) ("The court's duty to assure compliance with Rule 23(a) continues even after certification."); Fed. R. Civ. P. 23(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment.")

Here, the Court should grant summary judgment against those class members who executed Releases, *see infra* at pp. 4-7, but even if plaintiffs could somehow demonstrate that summary judgment should <u>not</u> be granted, the Court should exclude those individuals from the Class on the ground that they cannot satisfy the predominance requirement of Rule 23(b)(3) and the typicality and adequacy requirements of Rule 23(a). *See Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003) (refusing to certify a class in an ERISA action challenging lump-sum payment determinations on predominance, typicality, and adequacy grounds where numerous plaintiffs in the proposed class had executed releases).

A. **In the Absence of Summary Judgment for Defendants on the Releases, Individual Issues Will Predominate with Respect to Individuals Who Executed Releases.**

The Class was certified under Rule 23(b)(3), which requires a showing that "the questions of law or fact common to the members of the class predominate over any question affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To the extent that "evaluation of the Releases raises questions of law and fact that are not shared by the Class and the named Plaintiffs, and requires a case-by-case factual inquiry unique to many absent class

members," "[t]hese legal and factual issues preclude a finding that common issues will predominate." *Spann*, 219 F.R.D. at 323.

Here, any attempt to escape from the effects of the Releases would presumably consist of an argument that the Releases were not knowingly and voluntarily executed. Courts in the Sixth Circuit consider a number of factors in determining whether a release was knowingly and voluntarily executed, including (1) the employee's experience, background, and education, (2) the amount of time the employee had to consider the release, (3) the clarity of the release, (4) the consideration for the release, and (5) the totality of the circumstances. *Nicklin,* 352 F.3d at 1080 (citing *Adams v. Phillip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)).

These standards leave no room for debate about whether the Releases at issue here were knowingly and voluntarily executed. Employees were given 30 to 45 days to consider whether to execute a Release; they received a variety of valuable consideration in exchange for executing a Release; and the scope of the Release is clear. (*See* App. Ex. 33, ¶ 4; App. Ex. 36, ¶ 13; App. Ex. 37, ¶¶ 13-14.) Nor is there any basis for asserting that the education and background of the employees in question was such that they were incapable of understanding the agreements they executed.

Even if plaintiffs could show a genuine dispute of fact about whether the Releases were knowingly and voluntarily executed, however, any such showing would defeat the predominance requirement of Rule 23. Disputes about whether the Releases were executed knowingly and voluntarily would devolve into individualized inquiries into what each employee knew and understood about the Release at the time he or she signed that document. These inquiries could not be conducted on a class-wide basis, but would require an individual investigation of the state of mind of all 92 class members who executed a Release. Courts have

9

repeatedly recognized that cases presenting such individualized inquiries do not meet the requirements of Rule 23. *See, e.g., Sprague v. General Motors Corp.*, 133 F.3d 388, 398, 399 (6th Cir. 1998) (reversing district court's class certification order where "each plaintiff's claim depended upon facts and circumstances peculiar to that plaintiff"); *Spann*, 219 F.R.D. at 323 (denying class certification where "evaluation of the Releases raises questions of law and fact that are not shared by the Class and the named Plaintiffs, and requires a case-by-case factual inquiry unique to many absent class members"). Indeed, in *Walker v. Asea Brown Boveri*, the court denied class certification in a whipsaw case substantially identical to this one based on the named plaintiffs' execution of a general release in exchange for severance benefits. *See* 214 F.R.D. at 66 (denying class certification and observing that, "whether either of the named plaintiffs knowingly and voluntarily waived his right to bring a claim for pension benefits will necessarily require a fact-specific inquiry.")

Finally, even if one or more of the class members who executed Releases had a colorable argument for voiding their own individual Release, such class members would have to tender back the consideration they received for the Release before challenging its validity. *See Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 871 (E.D. Mich. 1998) (holding, in an ERISA action, that "[t]he tender back of consideration received for a signed release is an absolute prerequisite to avoidance of the release under Michigan and federal law") (citing *Samms*, 1996 WL 599821 at *3), *aff'd*, 201 F.3d 440, 1999 WL 1204883 (6th Cir. 1999).[2] Legal

---

[2] Although the tender-back doctrine has been rejected in the context of ADEA claims, *see Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998); *Raczak v. Ameritech Corp.*, 103 F.3d 1257 (6th Cir. 1997), those cases rely on the heightened protection against waiver of ADEA claims due to specific statutory language directing that an employee "may not waive" rights under the ADEA unless the requirements of the OWBPA are met. *Oubre*, 522 U.S. at 426-427; *Raczak*, 103 F.3d at 1270-71. ERISA, unlike the ADEA, does not contain language providing (continued...)

10

and factual disputes over the tender-back requirement would further overwhelm the few remaining common issues in this litigation.

There would be no loss of efficiency in excluding the 92 class members who executed Releases from the Class because these individuals would still be free to rely on this Court's construction of ERISA as it pertains to liability and the calculation of damages. Accordingly, the Court should grant summary judgment on the Releases, or, in the alternative, it should exclude the 92 individuals from the Class.

### B. Employees Who Executed Releases Should Be Carved Out of the Class Under the Typicality and Adequacy Requirements of Rule 23.

The 92 class members who executed Releases also should be excluded from the Class under the typicality requirement of Rule 23. As this Court observed in its Order of March 9, 2004, the typicality requirement ensures "that the claims of the class members are so interrelated that the interests of the absent class members will be protected." (Order at 9, citing *Kutschback v. Davies*, 885 F. Supp. 1079, 1085 (S.D. Ohio 1995)). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

Named plaintiff John West did not execute a Release and thus his claim is not typical of the 92 class members who did. As the court in *Spann* held in a similar case involving the alleged miscalculation of lump sum payments of pension benefits, "the Releases insert individualized issues into this lawsuit, and those individualized issues prevent a finding that the

---

extra protection against waiver. Thus *Oubre* and *Raczak* do not support the rejection of the tender-back doctrine here. *See Bittinger*, 83 F. Supp. 2d at 872 & nn. 13, 14; *see also Howlett v. Holiday Inns, Inc.*, 120 F.3d 598, 601 (6th Cir. 1997) (noting that "under the common law, such an invalid contract *could* be ratified by the retention of the consideration once the fraud, duress, coercion or mistake was uncovered," although such ratification would contradict the OWBPA where ADEA claims are involved).

Plaintiffs' claims are typical of those brought for the benefit of the Class." *Spann*, 219 F.R.D. at 318. *See also Bernard v. Gulf Oil Corp.*, 841 F.2d 547 (5th Cir. 1988) (finding that plaintiffs who had executed releases could not represent class members who had not); *Melong v. Micronesian Claims Commission*, 643 F.2d 10, 13 (D.C. Cir. 1980) (same); *Watts v. Duane Arnold Energy Center*, 2000 WL 34031503, at *2 (N.D. Iowa 2000) (same, citing numerous cases); *Walker*, 214 F.R.D. at 64-66 (holding that named plaintiffs who had signed releases are subject to unique, fact-specific defenses which render their claims not typical of those class members who had not signed releases).

For similar reasons, Mr. West does not meet the "adequacy" requirement of Rule 23 with respect to class members who executed Releases. To satisfy the adequacy requirement, a class representative must "'possess the same interest'" as the class members. *Amchem Prods.*, 521 U.S. at 625-26 (citations omitted). Mr. West, however, has no interest at all in the factual and legal questions relating to the enforceability of the Releases. He is therefore an inadequate representative of the 92 class members who executed Releases. *See Spann*, 219 F.R.D. at 320 (holding that named plaintiffs whose claims were not subject to Releases "are not adequate representatives of individuals for whom the validity of these Releases may be a major focus of litigation"); *see also Thomas v. Moore USA, Inc.*, 194 F.R.D. 595, 601-02 (S.D. Ohio 1999) (questioning whether a named plaintiff who faced a release defense is an appropriate representative).

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment should be granted, or, in the alternative, the Class should be amended to exclude those employees who executed Releases.

                                    Respectfully submitted,


                                    /s George E. Yund
                                  George E. Yund (0017714)
                                  Frost Brown Todd LLC
                                  2200 PNC Center
                                  201 East Fifth Street
                                  Cincinnati, OH 45202-4182
                                  (513) 651-6824

                                  *Trial Attorney for Defendants*

                                  Robert D. Wick
                                  David A. Barker
                                  Covington & Burling
                                  1201 Pennsylvania Avenue
                                  Washington, DC 20004-2401
December 1, 2004                 (202) 662-6000

                                  *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing Motion For Partial Summary Judgment Against Ninety-Two Class Members, Or, In The Alternative, To Amend The Class Certification Order and the accompanying Memorandum was electronically filed with the Court and have been served by U.S. Mail, postage prepaid on Allen C. Engerman, Law Offices of Allen C. Engerman. P.C., 666 Dundee Road, No. 1200, Northbrook, IL 60062, and Thomas R. Theado, Gary, Naegele, & Theado, 446 Broadway Avenue, Lorain, OH 44052-1797, counsel for the plaintiff, on this 1st day of December, 2004.

                                                 /s George E. Yund