## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

John D. West, on Behalf of Himself
and All Other Persons Similarly Situated,

$\qquad$ Plaintiffs,

v.

AK Steel Corporation Formerly ARMCO Inc.)
Retirement Accumulation Penison Plan, a part of
the AK Steel Corporation (Formerly ARMCO
Inc.) Noncontributory Pension Plan, and

AK Steel Corporation Benefit Plans
Administrative Committee,

$\qquad$ Defendants

Case No.:  C-1-02-0001

Judge:  Hon. Sandra S. Beckwith

Magistrate Judge:  Timothy S. Black

**Oral Argument Requested**

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF DAMAGES AND PRE-JUDGMENT INTEREST

Defendants hereby move for partial summary judgment on the issues of damages and pre-judgment interest.  For the reasons set forth in the accompanying Memorandum, this Court should grant Defendants' motion, deny Plaintiffs' Motion for Partial Summary Judgment on the Issues of Damages and Prejudgment Interest, and issue an Order making the following determinations:

(1)     the Plan may pay damages in the form of supplemental age-65 annuities;

(2)     the Plan may consider the risk of pre-retirement mortality in awarding damages, in accordance with the mortality rates specified by the "applicable mortality tables" prescribed under I.R.C. § 417(e)(3); and

(3)     an award of pre-judgment interest is not merited.

DC: 1634193-3

The Court should also direct counsel for the parties to meet and confer to see if they can agree on a schedule of damages awards that conforms to the determinations made in this Order and in the Court's prior Order of April 8, 2004.

Respectfully submitted,

s/George E. Yund
George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
Samuel S. Heywood
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

December 1, 2004

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2004, the foregoing Defendant's Motion for Partial Summary Judgment on Damages was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

_____ /s  George E. Yund _____

CinLibrary 0001590.0528818  1457810v.1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

John D. West, on Behalf of Himself
and All Other Persons Similarly Situated,

                             Plaintiffs,

   v.

AK Steel Corporation Formerly ARMCO Inc.)
Retirement Accumulation Penison Plan, a part of
the AK Steel Corporation (Formerly ARMCO
Inc.) Noncontributory Pension Plan, and

AK Steel Corporation Benefit Plans
Administrative Committee,

                           Defendants

Case No.: C-1-02-0001

Judge: Hon. Sandra S. Beckwith

Magistrate Judge: Timothy S. Black

**<u>Oral Argument Requested</u>**

---

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF DAMAGES AND PRE-JUDGMENT INTEREST AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THOSE ISSUES

George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
Samuel S. Heywood
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendants*

DC: 1631942-15

# TABLE OF CONTENTS

Page No.

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT .......................................................................................................................... 3

I.   ANY ADDITIONAL BENEFITS OWED BY THE PLAN MAY BE
     PROVIDED IN THE FORM OF SUPPLEMENTAL AGE 65 ANNUITIES
     RATHER THAN SUPPLEMENTAL LUMP SUM PAYMENTS. ........................................ 3

     A.  Neither the Plan nor ERISA requires that plaintiffs' whipsaw benefits
         must be provided in lump sum form. ................................................................ 4

     B.  Class counsel's preference for supplemental lump sum payments does not
         create a legal right to such payments. ............................................................. 8

II.  THE PLAN MAY ACCOUNT FOR THE RISK THAT PLAINTIFFS WILL
     DIE BEFORE REACHING AGE 65 IN CALCULATING THEIR AWARD OF
     DAMAGES. ...................................................................................................................... 9

     A.  The Code and ERISA expressly permit plans to use a pre-retirement
         mortality discount in calculating the actuarial value of an age 65 annuity. ...... 10

     B.  Plaintiffs erroneously treat the Plan's "incidental death benefit" as part of
         a participant's "accrued benefit." .................................................................... 11

         1.   Pre-retirement death benefits are "incidental" benefits, not "accrued
              benefits." ................................................................................................ 12

         2.   Only "accrued benefits" are considered in a whipsaw calculation. ........... 14

     C.  Plaintiffs' authority fails to support their position. .......................................... 15

     D.  Defendants' pre-retirement mortality damages calculations should be used
         instead of plaintiffs' calculations. .................................................................. 19

III. THE COURT SHOULD NOT AWARD THE AMOUNT OF PRE-JUDGMENT
     INTEREST REQUESTED BY PLAINTIFFS ....................................................................... 20

     A.  The Court should decline to award pre-judgment interest. ................................ 20

     B.  If pre-judgment interest is awarded at all, it should be awarded at a rate no
         higher than the rate prescribed in 28 U.S.C. § 1961. ...................................... 22

CONCLUSION ...................................................................................................................... 24

REQUEST FOR ORAL ARGUMENT .................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Bagsby v. Central States, SE & SW Areas Pension Fund,*
    162 F.3d 424 (6th Cir. 1998) ................................................................................ 4-5

*Benefits Committee of Saint-Gobain Corp. v. Key Trust Co.,*
    313 F.3d 919 (6th Cir. 2002) ...................................................................................19

*Berger v. Xerox Corp. Retirement Income Guarantee Plan,*
    338 F.3d 755 (7th Cir. 2003) ...................................................................................15

*Berger v. Xerox Retirement Income Guaranty Plan,*
    231 F. Supp.2d 804 (S.D. Ill. 2002) ................................................................. 16-19

*Caffey v. Unum Life Insurance Co.,* 302 F.3d 576 (6th Cir. 2002) ..........................20, 23

*City of Los Angeles Department of Water & Power v. Manhart,*
    435 U.S. 702 (1978) .................................................................................................7

*Clair v. Harris Trust & Savings Bank,* 190 F.3d 495 (7th Cir. 1999) ...........................21

*EEOC v. Wooster Brush Co. Employees Relief Association,*
    727 F.2d 566 (6th Cir. 1984) ...................................................................................23

*Esden v. Bank of Boston,* 229 F.3d 154 (2d Cir. 2000) ...................................................8

*Flint v. ABB, Inc.,* 337 F.3d 1326 (11th Cir. 2003) ................................................. 20-21

*Ford v. Uniroyal Pension Plan,* 154 F.3d 613 (6th Cir. 1998) ..........................20, 23-24

*Graham v. State of New York, Department of Civil Service,*
    907 F.2d 324 (2d Cir. 1990) .....................................................................................7

*Grantham and Mann, Inc., v. American Safety Products, Inc.,*
    831 F.2d 596 (6th Cir. 1997) ...................................................................................20

*Griggs v. E.I. DuPont de Nemours & Co.,* 237 F.3d 371 (4th Cir. 2001) .....................21

*Harms v. Cavenham Forest Industrial Inc.,* 984 F.2d 686 (5th Cir. 1983) ....................22

*Hunter v. Caliber System, Inc.,* 220 F.3d 702 (6th Cir. 2000) ........................................4

*Johnson v. Botica,* 537 F.2d 930 (7th Cir. 1996) ............................................................6

*Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998)............................19

*Knotts v. Black & Decker, Inc.*, 204 F. Supp.2d 1029 (N.D. Ohio 2002)........................................5

*Kwatcher v. Massachusetts Service Employees Pension Fund*,
    879 F.2d 957 (1st Cir. 1989) ........................................................................................7

*Landwehr v. Dupree*, 72 F.3d 726 (9th Cir. 1995)...........................................................................21

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ................................................................................6

*Lyons v. Georgia Pacific Corp. Salaried Employees Retirement Plan*,
    196 F. Supp.2d 1260 (W.D. Ga. 2002) ........................................................................7

*Lyons v. Georgia Pacific Corp. Salaried Employees Retirement Plan*,
    221 F.3d 1235 (11th Cir. 2000)....................................................................................7

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993)........................................................................21

*Moore v. Reynolds Metals Co. Retirement Program*, 740 F.2d 454 (6th Cir. 1984) ......................6

*Penny v. U.P.S.*, 128 F.3d 408 (6th Cir. 1997).................................................................................5

*Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir. 1986) ........................................................5

*Russello v. United States*, 464 U.S. 16 (1983) ...............................................................................18

*Rybarczyk v. TRW, Inc.*, 235 F.3d 975 (6th Cir. 2000) ...........................................................20, 23

*Skretvedt v. E.I. Dupont De Nemours*, 372 F.3d 193 (3d Cir. 2004) .............................................21

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ........................................................................19

*Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376 (6th Cir. 1986) ..............................5

## FEDERAL STATUTES

26 U.S.C. § 401    ...........................................................................................................................14

26 U.S.C. § 411(a)......................................................................................................................12, 13

26 U.S.C. § 411(d)    ........................................................................................................................17

26 U.S.C. § 417(e)    .........................................................................................................9-11, 15, 18-20

28 U.S.C. § 1961 ..................................................................................................1, 22

29 U.S.C. § 502(a)...............................................................................................20-21

29 U.S.C. § 1053 ................................................................................................12, 17

29 U.S.C. § 1054(c)..............................................................................................5, 15

29 U.S.C. § 1055 ......................................................................................................12

29 U.S.C. § 1055(a) & (e)...................................................................................11, 16

29 U.S.C. § 1055(g) .................................................................................................10

29 U.S.C. § 1132(a)..................................................................................................20

29 U.S.C. 1202 .........................................................................................................13

## FEDERAL REGULATIONS

26 C.F.R. § 1.401(a)(4) ............................................................................................18

26 C.F.R. § 1.401-1(b) .............................................................................................14

26 C.F.R. § § 1.411(a)-4 ...........................................................................................17

26 C.F.R. § 1.411(a)-7(a) .........................................................................................16

26 C.F.R. § 1.411(a)-11 ............................................................................................15

26 C.F.R. § 1.417(e)-1 .........................................................................................15, 17

## OTHER AUTHORITIES

H.R. Rep. No. 93-533 (1973), *reprinted in* 1974 U.S.C.C.A.N 4639 ...............................6

I.R.S. Field Service Advisory 1999-633, 1992 WL 1355639 (1992) ...............................13

I.R.S. Notice 96-8 ..................................................................................................7, 19

Revenue Ruling 66-143, C.B. 1966-1, 79 ..................................................................13

Revenue Ruling 70-611, 1970-2 C.B. ........................................................................13

Revenue Ruling 85-15, 1985-1 C.B. 132 ....................................................................14

Revenue Ruling 95-6, 1995-1 C.B. 80 ......................................................................10

Revenue Ruling 2001-62, 2001-2 C.B. 632 ..............................................................10

## INTRODUCTION AND SUMMARY OF ARGUMENT

On April 8, 2004, this Court granted partial summary judgment to plaintiffs on the issue of liability, holding that the Plan should have engaged in a "whipsaw" calculation when distributing lump sum payments to members of the plaintiff class.[1]  Plaintiffs now seek partial summary judgment with respect to the remaining issues of damages and pre-judgment interest. Plaintiffs' proposed measure of damages, however, goes well beyond the damages that are due under ERISA and this Court's Order.  In each of the following respects, plaintiffs' motion for partial summary judgment should be denied, and defendants' cross-motion should be granted.

1.  <u>Any additional benefits owed to class members may be provided in the form of a supplemental age 65 annuity.</u>

This Court's Order holds that class members are entitled to an award of additional benefits such that their total benefit will be the "actuarial equivalent" of the life annuity that they could have received from the Plan beginning at age 65.  There are at least two ways to meet this actuarial equivalence requirement:  class members whose benefits were underpaid may be provided with (i) a supplemental lump sum payment, or (ii) a supplemental annuity beginning at age 65.  Either type of supplemental payment could be used to top up a class member's benefit to the point of "actuarial equivalence."  As between these two alternatives, defendants prefer to provide supplemental annuities.  Defendants prefer that form of payment because it allows the Plan to spread out its damages payments over time and produces results that more closely conform to the Plan's original intent.

---

[1]  Solely for purposes of this motion, defendants proceed on the premise that a whipsaw calculation is required as indicated in this Court's prior orders.  Defendants reserve their right to contend on appeal that no such calculation is required.

Class counsel would prefer that damages be paid in the form of supplemental lump sum payments, but they fail to cite an iota of authority which <u>requires</u> that damages be paid in that form. Where, as here, there is more than one way to remedy a violation of ERISA, the plan sponsor – not the plan participant – is entitled to choose among the lawful alternatives. Accordingly, plaintiffs have no right to insist that damages must be paid in the particular form that would impose the greatest burden on the Plan.

2.    <u>The death benefits available under the Plan are irrelevant to the calculation of plaintiffs' damages.</u>

If a Plan participant dies before receiving any of his or her retirement benefits, the Plan will pay a death benefit to the participant's surviving beneficiary. Plaintiffs' actuary treated this death benefit as part of a participant's "accrued benefit" for purposes of calculating damages in this case. In so doing, plaintiffs' actuary committed a fundamental error of law.

The whipsaw calculation required by this Court's Order focuses exclusively on a participant's "accrued benefit." A participant's "accrued benefit," in turn, is defined by ERISA as a life annuity beginning at the participant's normal retirement age. The law is clear that the death benefits available under the Plan are not part of that annuity benefit; they are an "incidental" benefit that ERISA treats as separate and distinct from a participant's "accrued benefit." Indeed, death benefits are not even paid to a pension plan "participant"; they are paid to a deceased participant's surviving beneficiary. Plaintiffs' actuary therefore erred in treating the death benefits provided by the Plan as part of a participant's "accrued benefit."

3.    <u>Plaintiffs Should Not Be Awarded the Amount of Pre-Judgment Interest They Request.</u>

Pre-judgment interest is not mandatory in ERISA cases; rather, it should be awarded only if such an award would be "equitable" and "appropriate." Here, an award of pre-judgment interest would satisfy neither of those requirements.

2

Even without an award of pre-judgment interest, the whipsaw calculation will provide plaintiffs with far more "interest" than they were promised in the Plan. Moreover, there can be no dispute that the whipsaw calculation results in unearned windfalls, favors younger employees over older employees, and penalizes plans that provide generous interest rates to their employees. This Court has no choice but to tolerate these results where they are required by the letter of ERISA, but it need not magnify these inequities by awarding pre-judgment interest. The Court instead should deny pre-judgment interest as unwarranted on the facts of this case.

If the Court decides to award pre-judgment interest notwithstanding these considerations, it should do so at the standard rate applied in this Circuit in ERISA cases in which pre-judgment interest is awarded. Plaintiffs ask this Court to impose a higher rate, but they fail to justify that request.

## ARGUMENT

### I.  ANY ADDITIONAL BENEFITS OWED BY THE PLAN MAY BE PROVIDED IN THE FORM OF SUPPLEMENTAL AGE 65 ANNUITIES RATHER THAN SUPPLEMENTAL LUMP SUM PAYMENTS.

Under this Court's Order of April 8, 2004, class members are entitled to an award of additional benefits such that the total benefit provided to each class member is the "actuarial equivalent" of the life annuity that the class member could have received from the Plan at age 65. (Order at 6.) The Order, however, leaves open the question of whether the requisite "actuarial equivalence" must be achieved by providing class members with supplemental lump sum payments or whether it may also be achieved by providing supplemental annuities that begin at age 65. For the reasons set forth below, the Plan should be permitted to pay damages in the form of supplemental age 65 annuities.

A.    **Neither the Plan nor ERISA requires that plaintiffs' whipsaw benefits must be provided in lump sum form.**

ERISA mandates that retirement benefits be made available in the form of an annuity beginning at normal retirement age, but it does not mandate that benefits be made available in the form of a lump sum payment. Lump sum payments are an "optional" form of benefit that plan sponsors may offer at their discretion. *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 712 (6th Cir. 2000) ("A lump sum payment of benefits is considered 'an optional form of benefit'") (quoting 26 C.F.R. § 1.411(d)-4, Q & A 1(b)); *see also* Defs. Appendix Ex. 52, Libman Dep. Tr., at 171 (deposition testimony of plaintiffs' expert witness that plan sponsors are not required to offer lump sum payments).

Since plan sponsors are not required to offer lump sum payments, they are free to limit the extent to which such payments are made available. A plan may provide, for example, that no more than a specified portion of an employee's benefit may be taken in the form of a lump sum payment, and that the remainder of the employee's benefit must be taken in the form of an annuity beginning at normal retirement age. (App. Ex. 65-A, Sher Report, at 5.)

Here, the Plan limits the lump sum payment that a participant may receive to the size of the participant's account balances. Specifically, the Plan authorizes participants to receive a lump sum payment "equal to" the total of their Opening Account Balance and their Future Account Balance, but it does not authorize lump sum payments "greater" than the total of these account balances. (App. Ex. 53, § 4.1(a).) The Plan Administrator has interpreted this language to limit lump sum payments to the sum of a participant's account balances and to require that any additional benefits must be taken in the form of an age 65 annuity. (App. Ex. 54, BPAC Resolution, at ¶ 4.) This is a reasonable interpretation of the Plan entitled to deference

from this Court. *See Bagsby v. Central States, SE & SW Areas Pension Fund*, 162 F.3d 424, 428 (6th Cir. 1998); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).

Defendants acknowledge that, because the drafters of the Plan did not realize that the Plan would have to engage in a whipsaw calculation, the Plan does not explicitly provide for the payment of an additional benefit above and beyond a lump sum distribution of a participant's account balances. As a result, in those situations in which a whipsaw calculation requires the Plan to pay benefits greater than the sum of a participant's account balances, the Plan must be amended – or reinterpreted in light of applicable legal requirements – to specify the form that these additional benefits will take. (App. Ex. 65-A, Sher Report, at 5.) For three reasons, the Plan should be interpreted or amended to provide such additional payments in the form of a supplemental age 65 annuity.

First, a supplemental age 65 annuity is all that is necessary to cure the violation of law found by this Court. This Court held that each class member must receive a total benefit that is the "actuarial equivalent" of the annuity that the class member could have received at normal retirement age. (Order of April 8, 2004 at 5-6, citing 29 U.S.C. § 1054(c)(3).) It is undisputed that this actuarial equivalence requirement can be satisfied by providing a class member with a supplemental age 65 annuity. (App. Ex. 65-A, Sher Report, at 5, 6.) Plaintiffs' expert witness admitted at his deposition that actuarial equivalence could be achieved in this manner (App. Ex. 52 at 169-70, 173-74), and he further admitted that he knew of no basis under ERISA for forcing the Plan to pay damages in the form of supplemental lump sum payments instead of supplemental annuities (*id.* at 169-70).[2]

---

[2]    After providing this sworn deposition testimony, plaintiffs' expert witness turned around and submitted an Affidavit asserting a contrary position. His Affidavit asserts – without any (continued...)

<u>Second</u>, requiring the Plan to pay damages in the form of supplemental lump sum payments would violate the fundamental rule that employers are free to design their pension plans as they see fit, subject only to the requirements of ERISA. In enacting ERISA, Congress recognized that providing employers with freedom of decision-making was "vital to pension plans" and therefore sought to preserve "flexibility in the design and operation of . . . pension programs." H.R. Rep. No. 93-533 (1973), *reprinted in* 1974 U.S.C.C.A.N 4639, 4647. Accordingly, ERISA does not "mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). It is not up to plan participants or the courts "to decide which benefits employers must confer upon their employees"; ERISA leaves that task to the employer. *Moore v. Reynolds Metals Co. Ret. Program*, 740 F.2d 454, 456 (6th Cir. 1984).

These principles require that plan sponsors – not plan participants – be permitted to choose among the permissible remedies for an ERISA violation when there is more than one way to bring a plan into conformity with the law. *See Johnson v. Botica*, 537 F.2d 930, 938 (7th Cir. 1976) (reasoning that if a pension plan provision had violated the Taft-Hartley Act, 29 U.S.C. § 186e, the "proper action would not have been [for the court itself] to reform the [plan] ... but rather to require the Trustees to formulate a substitute provision which would meet the

---

explanation or citation to authority – that providing supplemental age 65 annuities instead of supplemental lump sums "would be a violation of ERISA and the Tax Code." (Libman Affidavit ¶ 15.) It is well settled, however, that a subsequent affidavit cannot be used to contradict sworn deposition testimony. *See Knotts v. Black & Decker, Inc.*, 204 F. Supp.2d 1029, 1045 n.6 (N.D. Ohio 2002) (declaring that, to the extent that a witness' subsequent affidavit "contradicts the prior sworn testimony without explanation, the Court disregards these averments") (citing 11 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 56.14[1][f] (3d ed. 2001)); *Penny v. U.P.S.*, 128 F.3d 408, 415 (6th Cir. 1997) (a party cannot create a genuine issue of material fact by filing an affidavit that contradicts earlier deposition testimony); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (same).

statutory standards"); *Lyons v. Georgia Pac. Corp. Salaried Employees Ret. Plan*, 196 F. Supp.

2d 1260, 1269 (N.D. Ga. 2002) (remanding to the plan administrator to fill in a gap in the plan's

provisions rather than supplying the missing provision by judicial order).

   Here, there are at least two remedies that would cure the violation of law found by

this Court – payment of supplemental lump sums or payment of supplemental annuities. The

Plan Administrator has identified the latter form of payment as the one that best conforms to the

text of the Plan and the one that most closely adheres to the Plan's original intent. (App. Ex. 54,

BPAC Resolution, at ¶¶ 1, 4.) Consistent with the principle that plan sponsors are entitled to

control their pension plans except where ERISA explicitly restricts their authority, the Plan

Administrator's views should govern.

   Third, allowing the Plan to provide supplemental annuities instead of

supplemental lump sum payments will soften the unexpected financial burden that the whipsaw

requirement will impose on the Plan. The caselaw makes clear that ERISA should be construed,

where possible, in a manner that minimizes the imposition of unexpected liabilities on pension

plans.[3] While the whipsaw requirement will inevitably impose *some* degree of unexpected

burden on the Plan,[4] requiring the Plan to pay damages in the form of lump sums would

---

[3] *See City of Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 721 n.36
(1978) (chastising the district court for a lack of "equitable sensitivity to the impact" of damages
remedy on pension plans); *Graham v. State of New York, Dep't of Civil Service*, 907 F.2d 324,
330-31 (2d Cir. 1990) (observing that it is inappropriate to impose a remedy on a pension plan
that would "burden the State or a private employer with additional financial obligations");
*Kwatcher v. Mass. Serv. Employees Pension Fund*, 879 F.2d 957, 966 (1st Cir. 1989) (ERISA
should not be interpreted to penalize plans in ways that "could frustrate ERISA's goals of
expanding pension plan coverage"), *abrogated on other grounds by Raymond B. Yates, M.D.,
P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004).

[4] AK Steel did not expect – and had no reason to expect – that the Plan would have to pay
whipsaw benefits. (Defs. Appendix Vol. II, Ex. 16 at ¶¶ 3-8.) The Plan was adopted in 1995,
prior to the publication of IRS Notice 96-8, and it received an IRS determination letter approving
(continued...)

exacerbate that burden by depriving the Plan of the ability to spread out its damages payments over time. In the absence of an ERISA provision that <u>requires</u> the Plan to pay damages in lump sum form, the Plan should not be forced to bear that additional burden.

For each of these reasons, the Court should award damages in the form of the supplemental age 65 annuities calculated for each class member in the report of defendants' expert witness. (App. Ex. 65-A, Sher Report, at p. 6 & Exhibits 3, 3A, 4, 4A.) The accuracy of these calculations is undisputed.

**B.    Class counsel's preference for supplemental lump sum payments does not create a legal right to such payments.**

Class counsel argues that the Plan must pay damages in lump sum form because this is the form of benefit that class members "elected." (Pltfs. Mem. at 9.) In particular, class counsel asserts that class members elected to receive a lump sum distribution of "100% of their pension benefits." (*Id.*) In reality, however, class members were never <u>offered</u> an opportunity to elect 100% of their "benefits" in the form of a lump sum payment. Class members were permitted, at most, to elect to receive 100% of their "account balances" as a lump sum payment. (App. Ex. 53, § 4.1(a).) Class members were not offered an opportunity to elect a lump sum payment larger than their account balances because the Plan does not afford them any <u>right</u> to a lump sum payment larger than their account balances. (*Id.*; App. Ex. 54 ¶ 4.)

Class counsel also argues that, for various reasons, class members might not <u>want</u> to receive their additional benefits in the form of an age 65 annuity. (Pltfs. Mem. at 9.) The issue here, however, is not what plaintiffs <u>want</u>, but whether plaintiffs have a legal <u>right</u> to insist

---

its terms as lawful. (App. Ex. 62.) Furthermore, the first two district courts to address whipsaw claims rejected those claims; it was not until 2000 that these district court decisions were reversed. *See Lyons v. Georgia Pac. Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235 (11th Cir. 2000); *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000).

that their supplemental payment be made in lump sum form. Plaintiffs fail to cite a shred of authority that supports the existence of such a right.

Nor does plaintiffs' appeal to considerations of fairness support their argument. Any benefit at all that plaintiffs receive under a whipsaw calculation will be a windfall – a benefit for which they did not bargain, that they did not expect to receive, and that the Plan did not expect to have to provide. (App. Ex. 55, West Dep. Tr., at 47-49, 74-75, 85, 100-03.) Plaintiffs are in no position to demand that this unexpected windfall must be paid in the particular form that imposes the greatest financial burden on the Plan.

## II. THE PLAN MAY ACCOUNT FOR THE RISK THAT PLAINTIFFS WILL DIE BEFORE REACHING AGE 65 IN CALCULATING THEIR AWARD OF DAMAGES.

This Court has ordered that class members who received lump sum payments are entitled to an award of additional benefits such that their total benefit will be the "actuarial equivalent" of the life annuity they could have received beginning at age 65. (Order of April 8, 2004 at 6.) The parties, however, do not agree on how "actuarial equivalence" should be calculated under the applicable provisions of Code § 417(e) and ERISA § 205(g).

Defendants maintain that in determining the actuarial equivalent of a life annuity beginning at age 65, the Plan may take account of the risk of "pre-retirement mortality" – the risk that an employee would die before reaching age 65 and consequently would never receive a single payment under a life annuity beginning at that age. Plaintiffs, on the other hand, assert that the risk of pre-retirement mortality should be ignored in calculating actuarial equivalence, and that only the risk of post-retirement mortality – *i.e.*, the risk of death after age 65 – may be considered. In other words, plaintiffs insist that their damages award should be calculated as if there is a 100% chance that they will live until age 65. Plaintiffs' position is groundless.

**A.**     **The Code and ERISA expressly permit plans to use a pre-retirement mortality discount in calculating the actuarial value of an age 65 annuity.**

Internal Revenue Code § 417(e) and its ERISA counterpart, ERISA § 205(g), expressly permit consideration of pre-retirement mortality in determining actuarial equivalence. Those provisions refer to an "applicable mortality table" to be used in discounting a retirement annuity to present value, and they vest the Secretary of the Treasury with authority to prescribe that mortality table. *See* 26 U.S.C. § 417(e)(3)(A); 29 U.S.C. § 1055(g)(3)(A). Since 1994 the Secretary has prescribed two different "applicable" mortality tables. The Secretary initially selected the 1983 Group Annuity Mortality Table ("1983 GAM") as the "applicable" mortality table under Code § 417(e)(3). *See* Rev. Rul. 95-6, 1995-1 CB 80 (App. Ex. 56). In 2001, the Secretary replaced the 1983 GAM table with a version of the 1994 Group Annuity Reserving Table ("1994 GAR"). *See* Rev. Rul. 2001-62, 2001-2 C.B. 632 (App. Ex. 57).

Although the 1983 GAM table and the 1994 GAR table contain slightly different mortality assumptions, in one important respect the two tables are the same. As plaintiffs' actuary concedes, both tables include mortality factors for ages prior to age 65. (App. Ex. 52, Libman Dep. Tr., at 183-86.) The 1983 GAM table specifies an incremental risk of mortality for every year of life from ages 5 through 110, while the 1994 GAR table specifies an incremental risk of mortality for every year of life from ages 1 through 120. (*Id.*)

In selecting the 1983 GAM table and the 1994 GAR table as the "applicable mortality tables" under Code § 417(e)(3), the Secretary made it unmistakably clear that a plan may use the pre-age 65 mortality assumptions in those tables for the purpose of calculating actuarial equivalence under § 417(e). And the AK Steel Plan does just that. The Plan provides

that actuarial equivalence calculations are governed by the same "Applicable Mortality Table" as

is referenced in Code § 417(e)(3).  (App. Ex. 53, at 78 part 1-C; App. Ex. 54, ¶ 2.)[5]

**B.    Plaintiffs erroneously treat the Plan's "incidental death benefit" as part of a participant's "accrued benefit."**

Plaintiffs' actuary concedes that the "applicable mortality table" prescribed under

Code § 417(e) includes mortality assumptions for ages prior to age 65.  (App. Ex. 52, Libman

Dep. Tr., at 183-86.)  He nonetheless ignored these pre-age 65 mortality assumptions in

calculating "actuarial equivalence" in this case.  (Libman Affidavit, ¶ 10.)  He did so based on

his view that the pre-retirement death benefit provided by the Plan "canceled out" the risks of

pre-retirement mortality for purposes of calculating damages.  (App. Ex. 52, at 212.)

ERISA requires defined benefit plans to provide a pre-retirement death benefit to

a participant's surviving spouse if a participant dies before he or she begins receiving retirement

benefits.  *See* 29 U.S.C. § 1055(a) & (e)(1).  The AK Steel Plan complies with this requirement

by providing a surviving beneficiary with a death benefit equal to a deceased participant's

---

[5]    Since AK Steel did not know that a whipsaw calculation would later be required when it adopted the Plan in 1995, it did not select a mortality table for the purpose of discounting an annuity to a lump sum payment.  The Plan Administrator has therefore determined that such calculations should be made by using the "Applicable Mortality Table" selected in Exhibit 1.C of the Plan, which is the same as the Code § 417(e) mortality table.  (App. Ex. 54, BPAC Resolution, ¶ 2.)  Exhibit 1.C of the Plan selects this mortality table for "[o]ther" actuarial equivalence calculations, *i.e.*, calculations other than those specified in Exhibits 1.A and 1.B of the Plan.  (*See id.*; App. Ex. 53 at 78 part 1.C.)  While Exhibit 1.C states that it does not apply to "lump-sum distributions of a Participant's account balance," that is because the drafters of the Plan assumed that there would not <u>be</u> an actuarial equivalence calculation for the purpose of making a lump sum distribution.  Rather, the drafters assumed that participants would simply receive a distribution <u>equal</u> to their account balance.  (App. Ex. 54, ¶ 2.)  Since this Court has now determined that an actuarial equivalence calculation is required by law, that calculation is an "other" calculation governed by Exhibit 1.C.  (*Id.*)

account balance. (App. Ex. 53, § 5.1.)[6] No such benefit is provided, however, if the participant had already begun receiving benefits at the time of his or her death. (*Id.*)

Plaintiffs' actuary treated this pre-retirement death benefit as "part of the benefits to be valued" for purposes of calculating damages in this case. (App. Ex. 52, Libman Dep. Tr. at 212.) In other words, he treated the Plan's pre-retirement death benefit as part of a participant's "accrued benefit." (*Id.* at 211-14; App. Ex. 65-A, Sher Report, at 4-5; App. Ex. 65, Sher Decl., ¶ 6.) As shown below, plaintiffs' actuary committed a fundamental error of law by treating the pre-retirement death benefit available to a deceased participant's beneficiary as part of a participant's "accrued benefit."

### 1.    Pre-retirement death benefits are "incidental" benefits, not "accrued benefits."

This Court held that class members are entitled to an award of damages such that their total benefit will be the actuarial equivalent of their "accrued benefit." (Order of April 8, 2004 at 5-6.) By law, a participant's "accrued benefit" consists of an "annual benefit commencing at normal retirement age," *i.e.*, an annuity beginning at age 65. 26 U.S.C. § 411(a)(7); 29 U.S.C. § 1053(a)(2). Since the pre-retirement death benefit provided by the Plan is <u>never</u> a part of the annuity that a participant can elect to receive at age 65, it is not part of a participant's "accrued benefit" and should not be included in a whipsaw calculation.

Treasury Regulation § 1.411(a)-7 unambiguously provides that an "incidental death benefit" is not a part of the "accrued benefit" provided by a pension plan:

---

[6]    The death benefit provided to surviving beneficiaries is greater than the minimum death benefit required by 29 U.S.C. § 1055(e), but it is less than the retirement benefit available under the Plan. Under the whipsaw calculation required by this Court's Order, a participant's retirement benefit can be greater than his or her account balance. Death benefits, by contrast, will never be larger than a participant's account balance. (*See* App. Ex. 65, Sher Decl., ¶ 6 n.1.)

> In general, the term "accrued benefits" refers only to pension or retirement benefits. Consequently, <u>accrued benefits do not include ancillary benefits not directly related to retirement benefits such as</u> payment of medical expenses (or insurance premiums for such expenses), disability benefits not in excess of the qualified disability benefit . . . , life insurance benefits payable as a lump sum, <u>incidental death benefits</u>, current life insurance protection, or medical benefits described in section 401(h).

Treas. Reg. § 1.411(a)-7(a)(1)(ii) (emphasis added). This regulation was promulgated under the Code provision that defines the term "accrued benefit," *see* 26 U.S.C. § 411(a)(7), and it applies with equal force to the definition of "accrued benefit" under ERISA, *see* 29 U.S.C. § 1202(c). Under the plain terms of the regulation, the pre-retirement death benefits provided by the Plan are not part of a class member's "accrued benefit" if they are "incidental" death benefits.

A series of Revenue Rulings has adopted a "25% test" for determining whether a death benefit provided by a pension plan is "incidental." This test focuses on whether the actuarial value of a death benefit is more than 25% of the total benefit provided by a plan (*i.e.*, more than 25% of the combined retirement benefit and death benefit). *See, e.g.,* Rev. Rul. 70-611 1970-2 C.B. (App. Ex. 58) (using a 25% test to identify "incidental" death benefits under a unit benefit pension plan); Rev. Rul. 66-143, C.B. 1966-1, 79 (App. Ex. 59) (using a 25% test in evaluating the death benefit provided by a money purchase pension plan). Although the 25% test was originally developed in the context of defined contribution plans, the IRS has since confirmed that it is "applicable to defined benefit pension plans as well." I.R.S. Field Service Advisory 1999-633, 1992 WL 1355639 (1992) (App. Ex. 60).

The pre-retirement death benefit available under the AK Steel Plan plainly meets the 25% test. If a participant dies before attaining age 65, her beneficiary will receive a death benefit equal to her account balances. (App. Ex. 53, § 5.1(a).) Similarly, if a participant lives to receive her retirement benefits, she will receive a benefit with an actuarial value at least equal to

her account balances. Since the retirement benefit and the death benefit provided by the Plan are comparable, and since the probability that a participant will die before age 65 is far less than 25% (App. Ex. 52 at 184-86), it necessarily follows that the actuarial value of a participant's pre-retirement death benefit is less than 25% of the value of her total benefit under the Plan.

It is worth noting that if the Plan did <u>not</u> satisfy the 25% test of whether a death benefit is "incidental," the results would be catastrophic for Plan participants. A pension plan that provides death benefits that are more than "incidental" does not meet the tax qualification requirements of Code § 401(a). *See* Treas. Reg. § 1.401-1(b)(1)(i) (a pension plan must primarily provide retirement benefits but may also provide "incidental death benefits"); Rev. Rul. 85-15, 1985-1 CB 132 (all pre-retirement death benefits offered under a plan must, in the aggregate, be incidental to comply with Treas. Reg. § 1.401-1(b)(1)(i)). If the AK Steel Plan failed to meet these tax qualification requirements, Plan benefits would lose their tax-deferred status, subjecting Plan participants to enormous tax liabilities. The IRS has already determined, however, that the Plan <u>is</u> tax qualified, reflecting its implicit determination that the death benefits provided by the Plan are "incidental." (App. Ex. 62 (IRS determination letter approving Plan as tax qualified).)

> **2.    Only "accrued benefits" are considered in a whipsaw calculation.**

Since the incidental death benefits provided by the Plan are not part of a participant's "accrued benefit," those benefits have no place in a whipsaw calculation. As this Court recognized in its Order of April 8, 2004, the whipsaw calculation focuses only on a participant's "accrued benefit." The Order expressly holds that a participant is entitled to the actuarial equivalent of his "accrued benefit," or in other words, the actuarial equivalent of "the annual benefit the participant[] would have received at normal retirement age." (Order of April

14

8th at 5-6.) The Order goes on to hold that a participant's "accrued benefit" must be discounted to present value at the discount rate set forth in Code § 417(e). (*Id*. at 13-15.) The Order makes no mention of incidental or ancillary benefits that are not part of a participant's "accrued benefit."

The statutes and regulations cited in the Order likewise focus on "accrued benefits." ERISA § 204(c)(3), invoked at pages 5-6 of the Order, refers to the distribution of an employee's "accrued benefit." 29 U.S.C. § 1054(c)(3). Similarly, Treasury Regulation § 1.411(a)-11(d), discussed at pages 13-25 of the Order, addresses how to determine the present value of an "accrued benefit." 26 C.F.R. § 1.411(a)-11(d). Moreover, the latter regulation expressly incorporates the present value methodology set forth in Treasury Regulation § 1.417(e)-1(d), which once again addresses the distribution of a participant's "accrued benefit." 26 C.F.R. § 1.417(e)-1(d). None of this authority remotely suggests that incidental death benefits should be taken into account in performing a whipsaw calculation.

Plaintiffs' actuary therefore erred in including death benefits in his calculation of damages. Indeed, plaintiffs' actuary conceded at his deposition that if death benefits are not part of a participant's "accrued benefit," they need not be considered in the calculation of damages. (App. Ex. 52, Libman Dep. Tr., at 213-14.)

## C.    Plaintiffs' authority fails to support their position.

Citing the court of appeals decision in *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003), plaintiffs argue that the risks of pre-retirement mortality should be ignored in the calculation of damages. (Pltfs. Mem. at 5.) In *Berger*, however, the court of appeals was never presented with the argument that an "incidental death benefit" is not a part of a participant's "accrued benefit." The defendant in *Berger* focused largely on issues of liability in the court of appeals, and consequently it devoted less than two

pages of its brief to the role of pre-retirement mortality in the calculation of damages. (App. Ex. 63, Xerox Brief, at iii-v, 67-68.) The resulting discussion of pre-retirement mortality was so truncated and so poorly explained that the court of appeals labeled it "scattershot" and "unfathomable." *Berger*, 338 F.3d at 764. Since the court of appeals was never presented with the argument that incidental death benefits are not part of an "accrued benefit"– or with any understandable argument at all on the subject of pre-retirement mortality – its decision sheds no light on that issue.

Plaintiffs also rely on the district court decision in the same case – *Berger v. Xerox Ret. Income Guaranty Plan*, 231 F. Supp.2d 804 (S.D. Ill. 2002) – but the district court decision rests on a series of errors of law.

First, the district court adopted an erroneous test for whether a death benefit is an "ancillary" or "incidental" benefit. The court derived its test from the reference in Treasury Regulation § 1.411(a)-7 to "ancillary benefits *not directly related to retirement benefits*." 26 C.F.R. § 1.411(a)-7(a)(1)(ii) (emphasis added). According to the court, the pre-retirement death benefit provided by the Xerox plan was "directly related to retirement benefits" – and therefore not "ancillary" – because the size of the death benefit was based on the amount of the retirement benefit that a participant would have received if he had lived until retirement age. 231 F. Supp. 2d at 816-17.

Under the district court's test of whether a death benefit is "ancillary," no death benefit provided by a defined benefit plan would be ancillary, because defined benefit plans always provide a death benefit linked to the size of a participant's retirement benefit. Indeed, ERISA mandates that defined benefit plans provide a minimum death benefit linked to the size of a participant's retirement benefit. *See* 29 U.S.C. § 1055(a) & (e)(1). Since a defined benefit

16

plan cannot be tax-qualified if it provides a death benefit that is more than "ancillary" or "incidental," *see supra* at p. 14, the district court's reasoning would disqualify every defined benefit plan in the country.

The district court failed to cite any authority in support of its novel approach to determining whether a death benefit is "ancillary"; nor are defendants aware of any supporting authority. The correct test of whether a death benefit is "ancillary" is not whether the size of the death benefit is linked to the amount of a participant's retirement benefit; it is whether the death benefit is "incidental" under the 25% test discussed above. *See supra* at pp. 13-14.

Second, the district court concluded that using a pre-retirement mortality discount in the case before the court would have violated ERISA's anti-forfeiture rules. *See* 231 F. Supp. 2d. at 813-14. The anti-forfeiture rules, however, apply to a participant's "accrued benefit," not to incidental death benefits that are distinct from a participant's "accrued benefit." *See* 29 U.S.C. § 1053(a) (setting forth forfeiture rules relating to a participant's "accrued benefit"); Treas. Reg. § 1.411(a)-4 ("[c]ertain rights in an accrued benefit must be nonforfeitable") (emphasis added); 1990 Enrolled Actuaries Meeting, Questions to IRS/Treasury and Summary of their Responses, Q&A-13 (stating that pre-retirement death benefits are not protected under the anti-cutback rule in Code § 411(d)(6), which protects a participant's "accrued benefit") (App. Ex. 64).

Third, the district court reasoned that use of a pre-retirement mortality discount would result in lump sum payments that would not reflect the full actuarial value of a participant's benefit as required by Treasury Regulation § 1.417(e)-1(d). *See* 231 F. Supp.2d at 814. That regulation, however, applies only to the valuation of an "accrued benefit." 26 C.F.R. § 1.417(e)-1(d). Since incidental death benefits are not part of a participant's "accrued benefit," the district court's reliance on the regulation is misplaced.

Fourth, the district court drew precisely the wrong conclusion from the terms of Treasury Regulation § 1.401(a)(4)-8(c)(3). That regulation allows a cash balance plan to automatically satisfy certain Code requirements by incorporating certain features. *See* 26 C.F.R. § 1.401(a)(4)-8(c)(3). One such feature is an interest rate derived from a calculation that uses, *inter alia*, "a standard mortality table but assuming no mortality before normal retirement age." 26 C.F.R. § 1.401(a)(4)-8(c)(3)(iv)(C)(2)(ix) (emphasis added).

Observing that the quoted regulation expressly prohibits consideration of pre-retirement mortality for purposes of a particular calculation, the district court concluded that consideration of pre-retirement mortality also should be prohibited for purposes of calculations under Code § 417(e). *See* 231 F. Supp.2d at 815. In contrast to the quoted regulation, however, neither Code § 417(e) nor the regulations promulgated thereunder expressly prohibit consideration of pre-retirement mortality. To the contrary, the "applicable mortality tables" selected under Code § 417(e)(3) contain a comprehensive set of pre-retirement mortality assumptions. *See supra* at p. 10. The fact that the Treasury Department expressly prohibited consideration of pre-retirement mortality in the quoted regulation, but did not do so under Code § 417(e), proves that pre-retirement mortality may be considered under the latter provision. *See Russello v. United States*, 464 U.S. 16, 22-23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.")

18

In sum, the district court decision in *Berger* is riddled with errors of law, and it fails to apply the correct test of whether a death benefit is part of a participant's "accrued benefit." Plaintiffs' reliance on the district court decision is therefore unavailing.[7]

**D.    Defendants' pre-retirement mortality damages calculations should be used instead of plaintiffs' calculations.**

The calculations of the two sides' actuaries are quite close with respect to most of the potential damages figures, but with respect to calculations that take account of the risks of pre-retirement mortality, plaintiffs' actuary calculated an aggregate lump sum damages figure for the class approximately $100,000 higher than the corresponding figure calculated by defendants' actuary. Plaintiffs' actuary calculated total lump sum damages payments, taking account of pre-retirement mortality and not including pre-judgment interest, of $33.015 million, whereas defendants' actuary calculated a corresponding total of $32.910 million. (Libman Affidavit Ex. 5; App. Ex. 65-A, Sher Report, at Exhibit 3A.)

---

[7]    The district court in *Berger* also erred in relying on IRS Notice 96-8. That Notice does not discuss the question of pre-retirement mortality discounts. Furthermore, Notice 96-8 is a mere notice that lacks the force of law, and the Treasury Department has announced that it is "fundamentally reconsidering all aspects of Notice 96-8." *See* Docket Entry 45, *Defs. Notice of Recent Developments* (July 14, 2003). The Notice therefore deserves no deference from this Court. *See United States v. Mead Corp.*, 533 U.S. 218, 232-36 (2001); *Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co.*, 313 F.3d 919, 926 (6th Cir. 2002); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 302 (6th Cir. 1998).

The district court further erred in relying on the ERISA provisions dealing with employee contributions to defined benefit plans. *See* 231 F. Supp.2d at 815 & n. 13 (citing ERISA §§ 204(c)(2)(B)-(C)). To the extent that those provisions are applicable, they suggest that no whipsaw calculation should be performed at all. The cited provisions mandate that employee contributions must be "projected forward" using the interest rate and mortality assumptions of Code § 417(e)/ERISA § 205(g) even if these are not the factors that apply under the benefit plan. Defendants argued that the same approach should be used here to neutralize the whipsaw calculation, *see Defs. Consolidated Summary Judgment Mem.* at 15-16 & nn. 5-7 (April 4, 2003), but this Court rejected the argument.

Plaintiffs' actuary did not include this calculation in the expert report served on defendants in accordance with the schedule for disclosure of expert opinions; rather, the calculation appeared for the first time in the Libman Affidavit filed on the day that discovery ended. As a result, defendants have not been able to identify the source of the discrepancy. In any event, since plaintiffs bear the burden of proof on proving the amount of their damages, *see Grantham and Mann, Inc., v. American Safety Products, Inc.*, 831 F.2d 596, 601 (6th Cir. 1987), and since plaintiffs have not identified any alleged errors in the calculations of defendants' actuary, defendants' actuary's figures should be used if the Court determines that this particular calculation reflects the proper measure of damages.[8]

## III.    THE COURT SHOULD NOT AWARD THE AMOUNT OF PRE-JUDGMENT INTEREST REQUESTED BY PLAINTIFFS.

### A.    The Court should decline to award pre-judgment interest.

It is well established that "ERISA does not mandate the award of pre-judgment interest to prevailing plan participants." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). Rather, a district court may award or withhold such interest "at its discretion in accordance with general equitable principles." *Id.*; *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).

Since pre-judgment interest for the delayed payment of benefits is not a "benefit expressly provided for in the employee-benefit plan," it is available, if at all, only as an equitable remedy under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Flint v. ABB, Inc.*, 337 F.3d 1326,

---

[8]    With respect to the interest rate at which an account balance is projected forward to age 65, defendants continue to maintain that the appropriate rate is the Code § 417(e) rate, *see Defs. Consolidated Summary Judgment Mem.*, Docket Entry 39, at 12-19 (April 4, 2003), and will so contend on appeal. Since this Court has already rejected that argument, however, defendants have not presented it for a second time in the text.

1329-30 (11th Cir. 2003); *see also Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999).[9]  Under the terms of § 502(a)(3), a plaintiff may only recover an award of pre-judgment interest if such an award would constitute "appropriate equitable relief." 29 U.S.C. § 502(a)(3).  Thus, a pre-judgment interest award must be "equitable," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993), and it must be "appropriate under the circumstances," *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385 (4th Cir. 2001).  Where an award of pre-judgment interest would be inappropriate or inequitable, courts have exercised their discretion to withhold it.  *See, e.g., Landwehr v. Dupree*, 72 F.3d 726, 739 (9th Cir. 1995) (affirming denial of pre-judgment interest on funds incorrectly paid by the plan to the defendant where there was no evidence of "bad faith or ill will").

       Here, awarding pre-judgment interest would be neither appropriate nor equitable.  Even without an award of pre-judgment interest, the whipsaw calculation will provide plaintiffs with far more "interest" than they were promised in the Plan.  Under the whipsaw calculation, plaintiffs' accounts will be projected forward to age 65 at a <u>high</u> interest rate, converted to a life annuity at a <u>high</u> interest rate, and then discounted back to present value at a <u>lower</u> interest rate.  As a result, plaintiffs will receive a huge infusion of extra "compound interest" that the Plan was not intended to provide them.  Depending on how damages are calculated, this extra compound interest will provide class members with damages awards that often exceed $100,000 in value for

---

[9]     A recent Third Circuit decision characterized pre-judgment interest on a judgment under § 502(a)(1)(B) as available under general federal law, not § 502(a)(3).  *See Skretvedt v. E.I. Dupont De Nemours*, 372 F.3d 193, 195-196 (3rd Cir. 2004).  Here too, however, the court recognized that such an award is discretionary in nature:  "interest is not recovered according to a rigid theory . . . but is given in response to considerations of fairness" and "denied when its exaction would be inequitable."  *See id.* at 196 (citing *Board of Commissioners of Jackson Cty., Kansas v. United States*, 308 U.S. 343, 352 (1939)).

a single individual – not including pre-judgment interest. (*E.g.*, App. Ex. 65-A, Sher Report, at Exhibit 3 p. 38 column 4 (showing lump sum damages of $360,000 for a single participant).)

These whipsaw payments will be a windfall from the perspective of the class. AK Steel never promised to pay a whipsaw benefit; class members never expected to receive such a benefit; and they agreed to work for AK Steel without any expectation of such a benefit. (*See* App. Ex. 55, West Dep. Tr. at 47-49, 74-75, 85, 100-03.) Thus, awarding pre-judgment interest on top of the huge infusion of compound interest provided by the whipsaw calculation would only serve to magnify an unearned windfall. The Court should not grant an award of pre-judgment interest where such an award would merely enlarge the plaintiffs' windfall. *See Benefits Comm. of St. Gobain Corp.*, 313 F.3d at 932 (ERISA was not intended "to obtain windfalls for . . . participants"); *Harms v. Cavenham Forest Indus. Inc.*, 984 F.2d 686, 693 (5th Cir. 1983) (windfalls are "abhorred by ERISA").

The whipsaw calculation produces other troubling results as well. Specifically, it produces larger payments to younger employees than to similarly-situated older employees; it penalizes plans for providing generous interest rates to their employees; and it will ultimately lead to lower interest rates in pension plans, to the detriment of millions of plan participants. *See Defs. Consolidated Summary Judgment Mem.*, Docket Entry 39, at 24-30 (April 4, 2003). The court should not make a discretionary award of pre-judgment interest that will only intensify these inequitable results.

**B.     If pre-judgment interest is awarded at all, it should be awarded at a rate no higher than the rate prescribed in 28 U.S.C. § 1961.**

If the Court decides to award pre-judgment interest, it should apply the interest rate that is ordinarily used in this Circuit in ERISA actions: the federal post-judgment interest rate set forth in 28 U.S.C. § 1961. Although not compulsory, the § 1961 rate is the rate most

often used in this Circuit in ERISA cases in which pre-judgment interest is awarded.  *See, e.g.,*

*Caffey*, 302 F.3d at 585 n.3 (noting that the Sixth Circuit had "previously approved" the use of

the § 1961 rate for calculating pre-judgment interest); *Ford*, 154 F.3d at 619 n.5 (noting that the

§ 1961 framework is a reasonable method for calculating pre-judgment interest); *EEOC v.*

*Wooster Brush Co. Employees Relief Assn.*, 727 F.2d 566, 579 (6th Cir. 1984) (observing that

although district courts are not "invariably compelled to adopt" the § 1961 rate in ERISA cases,

"[u]ndoubtedly in the future [they] may be influenced by the congressional wisdom expressed in

[the then recently amended § 1961].").

      Plaintiffs acknowledge that the § 1961 rate would be an appropriate interest rate if

the Court decides to award pre-judgment interest.  (Pltfs. Mem. at 14.)  Moreover, plaintiffs fail

to justify the use of an interest rate higher than the § 1961 rate.

      Plaintiffs refer in passing to an Ohio statute that formerly authorized pre-

judgment interest at a rate of 10% (Pltfs. Mem. at 13), but plaintiffs stop short of advocating that

the Court actually adopt that rate.  According to plaintiffs, they mention the former Ohio

statutory rate "only for purposes of comparison," since they acknowledge that the Sixth Circuit

"looks with disfavor on simply adopting state law interest rates in ERISA cases."  (*Id.*, citing

*Rybarczyk*, 235 F.3d at 985.)

      Plaintiffs also suggest that the Court could select as a pre-judgment interest rate

the 7.5% interest crediting rate that applies to Opening Accounts under § 3.3 of the Plan.  (Pltfs.

Mem. at 13 & Exhibit 4.)  Plaintiffs' suggestion of a 7.5% rate is an afterthought:  that rate is not

among the pre-judgment interest rates employed in the expert report that plaintiffs served in

accordance with the scheduling order in this action.  In any event, plaintiffs' belated suggestion

of a 7.5% rate plainly lacks merit.

Plaintiffs' Opening Accounts will <u>already</u> be credited with interest at a 7.5% rate as a result of the whipsaw calculation. Under that calculation, a participant's Opening Account Balance is projected forward to age 65 at a 7.5% interest rate and then discounted back to present value at a lower interest rate. Plaintiffs are now seeking to (i) project their account balances forward at a 7.5% rate, (ii) discount the balances back to present value at a lower interest rate, and then (iii) bring the account balances forward at a 7.5% rate <u>for a second time</u> in a pre-judgment interest calculation. As plaintiffs' actuary acknowledged at his deposition, this would be a "double whipsaw." (App. Ex. 52, Libman Dep. Tr. at 180-182.) Plaintiffs' abusive request for a "double whipsaw" cannot be reconciled with Sixth Circuit precedent holding that pre-judgment interest should not be "punitive" and "must not result in over-compensation of the plaintiff." *Ford*, 154 F.3d at 618.

Furthermore, awarding a pre-judgment interest rate of 7.5% would simply add to the unearned windfall that plaintiffs will receive under a whipsaw calculation. It is one thing to award a windfall when the text of ERISA requires that result, but it is quite another to magnify that windfall through a discretionary decision to award an unusually high pre-judgment interest rate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment should be denied, and defendants' cross-motion should be granted.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument on the matters presented herein.

Respectfully submitted,


s/George E. Yund_____
George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
Samuel S. Heywood
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendants*


December 1, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on December, 2004,  the foregoing Defendant's Motion for Partial Summary Judgment on Damages was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's system.


_____ /s  George E. Yund _____