UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

John D. West, on Behalf of Himself
and All Other Persons Similarly Situated,

                         Plaintiffs,

v.

AK Steel Corporation Formerly ARMCO Inc.)
Retirement Accumulation Pension Plan, a part of
the AK Steel Corporation (Formerly ARMCO
Inc.) Noncontributory Pension Plan, and

AK Steel Corporation Benefit Plans
Administrative Committee,

                         Defendants

Case No.: C-1-02-0001

Judge: Hon. Sandra S. Beckwith

Magistrate Judge: Timothy S. Black

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST NINETY-TWO CLASS MEMBERS, OR, IN THE ALTERNATIVE, TO AMEND THE CLASS CERTIFICATION ORDER**

George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
David A. Barker
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendants*

DC: 1701874-8

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST CLASS MEMBERS WHO EXECUTED RELEASES ................................................................................. 1

    A.  Plaintiffs' Waiver Argument Should Be Rejected. ....................................... 1

        1.  Defendants Timely Raised the Defense of Release and Plaintiffs Have Not Been Prejudiced. ......................................................................... 2

        2.  Absent Prejudice to Plaintiffs There Is No Waiver Under Rule 8(c). ................. 3

    B.  The Defendants Are "Related Entities" Covered By the Releases. ............................ 5

    C.  A General Release Is Valid to Extinguish ERISA Claims. ..................................... 7

    D.  Individual Issues Do Not Preclude Summary Judgment. ...................................... 9

II. IF THE COURT DECLINES TO AWARD SUMMARY JUDGMENT, CLASS MEMBERS WHO EXECUTED RELEASES SHOULD BE EXCLUDED FROM THE CLASS. ................................... 11

CONCLUSION ............................................................................................................. 12

## INTRODUCTION

As established in *Defendants' Memorandum in Support of Their Motion for Partial Summary Judgment Against Ninety-Two Class Members, or in the Alternative, to Amend the Class Certification Order* ("Defs. Mem."), Defendants are entitled to summary judgment against those class members who executed general releases (the "Releases") in connection with their termination from AK Steel Corporation. Pursuant to the Releases, and in exchange for valuable severance benefits, these class members waived and released the claims asserted in this action. Plaintiffs' challenges to the Releases are groundless: Defendants have not waived their rights to assert the Releases, the Releases by their plain language extend to Defendants as "related entities" to AK Steel, and Sixth Circuit law squarely supports the principle that a valid and applicable general release extinguishes an ERISA benefits claim.

Defendants are therefore entitled to summary judgment against the identified ninety-two class members. In the alternative, the individuals who executed Releases should be excluded from the Class.

## ARGUMENT

I. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST CLASS MEMBERS WHO EXECUTED RELEASES.**

   A. **Plaintiffs' Waiver Argument Should Be Rejected.**

In a strained attempt to avoid the merits of Defendants' motion, Plaintiffs argue that Defendants waived the right to rely on the Releases by failing to plead the defense of "release" in their Answer. Plaintiffs' argument ignores the facts that (1) the Releases had not yet been executed when Defendants submitted their Answer, (2) Defendants timely notified Plaintiffs of the release defense after it arose, and (3) Plaintiffs have had a full opportunity to conduct discovery on the Releases and have suffered no prejudice from the fact that "release"

1

was not pleaded in the Answer. Absent prejudice to Plaintiffs, Sixth Circuit precedent is clear that failure to plead an affirmative defense does not result in waiver.

### 1. Defendants Timely Raised the Defense of Release and Plaintiffs Have Not Been Prejudiced.

Plaintiffs criticize Defendants for failing to plead the defense of release in their Answer, but the grounds for that defense did not <u>exist</u> at the time the Answer was filed. Defendants filed their Answer on April 4, 2002. The defense of release, however, first arose over a year and a half later, when between October 2003 and January 2004 ninety-two individuals who later became class members executed Releases as part of a reduction-in-force at AK Steel. By the time the Releases were executed, the motions for class certification and summary judgment on liability were fully briefed and pending before the Court.

This Court certified a class on March 9, 2004 and granted Plaintiffs' motion for partial summary judgment on liability on April 8, 2004. The April 8 Order directed the parties to proceed to litigate the remaining issues in the case. (Order at 26.) Defense counsel then promptly informed Plaintiffs' counsel of the existence of the Releases and of Defendants' likely intent to rely on them. During a telephone conversation in early May 2004, defense counsel informed Plaintiffs' counsel that Defendants would be producing the Releases and might assert them as a defense to Plaintiffs' damages claims. (Wick Decl. ¶ 2).[1] On May 18, 2004, defense counsel followed up by producing a Bates-numbered set of ninety-two Releases with a cover letter stating that "<u>Defendants may rely on these releases in the West litigation.</u>" (Wick Decl. Ex. 1 (emphasis added).) In a subsequent September 2004 letter, defense counsel again reminded Plaintiffs' counsel of the Releases and identified the witness who would authenticate

---

[1] The Declaration of Robert D. Wick is attached hereto as Exhibit A.

2

them. (*Id.* at ¶ 4.) Plaintiffs did not respond to any of these communications by asserting that Defendants had waived their right to rely on the Releases; Plaintiffs made that assertion for the first time in their response to the instant motion. (*Id.* at ¶ 5.)

Plaintiffs cannot claim any unfair surprise or prejudice as a result of Defendants' assertion of the Releases. Plaintiffs received notice of the defense and a full set of the Releases in May 2004 – a full five months before the discovery cutoff date of October 15, 2004. (Scheduling Order at 2.) Plaintiffs have thus had ample opportunity to conduct discovery on the Releases and to prepare a defense to their assertion.

### 2.  Absent Prejudice to Plaintiffs There Is No Waiver Under Rule 8(c).

Plaintiffs do not even *assert* that they were prejudiced by Defendants' invocation of the Releases. The absence of any assertion of prejudice – much less *proof* of any prejudice – is fatal to Plaintiffs' waiver argument.

Under Sixth Circuit law, "[f]ailure to raise an affirmative defense by responsive pleadings does not always result in waiver." *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Rather, the purpose of Rule 8(c) is merely "to give the opposing party notice of the affirmative defense and a chance to rebut it." *Huss v. The King Co.*, 338 F.3d 647, 652 (6th Cir. 2003) (quotations omitted) (declining to find a waiver where plaintiff "has not shown how he was prejudiced by King's failure to plead the claim as an affirmative defense"). Accordingly, it is well-established that "a defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Charpentier v. Godsil*, 937 F.2d 859, 864 (3rd Cir. 1991) (quotations and citations omitted).

This is especially true where, as here, the plaintiff clearly has been placed on notice of the defense at issue. Thus, the Sixth Circuit has repeatedly held that,

> [i]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (citing cases). Absent such prejudice, there is no basis for enforcing the technical requirements of Rule 8(c) to bar an otherwise valid affirmative defense. *See, e.g., Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003) ("Notably, the plaintiffs never claimed they were prejudiced or unfairly surprised by the government's failure to file a responsive pleading containing the affirmative defense. Because the plaintiffs had a fair opportunity to respond to the government's statute of limitations argument, we find the plaintiffs suffered no prejudice, and, therefore, the government did not waive their defense.").

Nor is it relevant that a defendant has not formally amended its answer to add a new defense. Where a plaintiff received notice of a defense from a source other than the pleadings, courts have routinely held that formal amendment of a pleading is not necessary, and that the defense in question can be raised instead in a dispositive motion. For example, in *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997), the court permitted two affirmative defenses that had not been raised in the defendant's answer to be raised in a "second motion for summary judgment" because there was no "surprise or unfair prejudice" to the plaintiff. *Id.*; *see also Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 55 F. Supp. 2d 309, 315 (D. Del 1999) (citing *Smith v. Sushka* for the proposition that courts "have allowed an affirmative defense to be raised for the first time in a post-answer motion for summary judgment in instances where no prejudice to the non-moving party results").

If the Court nonetheless were to prefer that Defendants amend their Answer to assert the defense of release, it should grant Defendants leave to do so now. Rule 15(a) embodies a "liberal policy of permitting amendments to ensure determination of claims on the

4

merits," and explicitly provides that leave to amend "shall be freely given when justice so requires." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987); Fed. R. Civ. P. 15(a). As the Sixth Circuit interprets this standard, "there must be at least some significant showing of prejudice to the opponent if the motion is to be denied." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quotations and citations omitted). Where, as here, the plaintiff cannot show that it would be prejudiced by an amendment, leave to amend should be granted. *See, e.g., General Electric Co. v. Sargent & Lundy*, 916 F.2d 1119, 1131 (6th Cir. 1990) (reversing district court's denial of leave to amend on eve of trial "in light of the absence of any prejudice to the plaintiff").

    **B.**    **The Defendants Are "Related Entities" Covered By the Releases.**

In the Sixth Circuit, "waivers of employee rights are to be examined under normal contract principles unless overreaching or exploitation is inherent in the situation." *See Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1184 (6th Cir. 1997). (Defs. Mem. at 4.) Under normal contract principles, a contract should be interpreted to "to give effect to the intent of the parties" and "[t]he plain language of the contract is controlling on that point." *Samms v. Quanex Corp.*, 99 F.3d 1139, 1996 WL 599821 at *2 (6th Cir. 1996).

The plain language of the Releases indicates an agreement to waive claims not only against "AK Steel Corporation" but also against "its predecessors, and past, current and future subsidiaries, <u>related entities</u>, their officers[,] directors, shareholders, agents, employees, successors or assigns." (Def Mem. at 3 n.1, 5 (emphasis added).) The term "related entities" is not defined in the Releases and thus should be given its plain meaning. "Related entities" must mean something distinct from "predecessors," "subsidiaries," "successors," "assigns," "officers," "directors," "shareholders," "agents," and "employees" – otherwise the phrase would be superfluous.

The Sixth Circuit, in an unpublished opinion, did not hesitate to find that a release of claims against a party and "any parent or subsidiary or affiliates" was "expansive enough" to waive ERISA claims against a related entity that had not signed the release. *See Halvorson v. Boy Scouts of America*, 215 F.3d 1326, 2000 WL 571933 (6th Cir. 2000). There, the release applied to claims against a local council of the Boy Scouts of America ("BSA") as well as any "parent or subsidiary or affiliates." *Id.* at *2 n.2. Although the local council was "separately incorporated, financed and managed" from the BSA, *id.* at *1, the Sixth Circuit concluded that the "terms of the release are expansive enough to foreclose these claims against BSA as well." *Id.* at *2.

The term "related entities" used in the Releases is at least as broad as the term "affiliates" construed in *Halvorson*. Fidelity to the plain language of the Releases therefore requires the same result here. Under any reasonable interpretation of the phrase "related entities," Defendants AK Steel Corporation Retirement Accumulation Pension Plan ("the Plan") and AK Steel Corporation Benefit Plans Administrative Committee (the "Plan Committee") are "related entities" of AK Steel. The Plan and the Plan Committee were created by AK Steel; they are funded by AK Steel; they exist for the sole purpose of providing retirement benefits to AK Steel employees; and AK Steel is the Plan's legal sponsor under ERISA. Under these circumstances, if the Plan and the Plan Committee were not deemed to be "related entities" of AK Steel, it is hard to imagine what type of entity *would* be deemed a "related entity."

Moreover, treating the Plan and the Plan Committee as related entities of AK Steel would "give effect to the intent of the parties" in entering into the Releases. *Samms*, 1996 WL 599821 at *2. The clear purpose of providing for a release of AK Steel and its officers, directors, employees, "related entities," etc. was to protect AK Steel from claims for which it

6

would be <u>financially responsible</u> – whether or not such claims were asserted against AK Steel itself. Since AK Steel is financially responsible for the Plan and the benefits provided thereunder, any interpretation of "related entities" that excluded the Plan would deprive AK Steel of the protections for which it bargained. Consistent with this conclusion, the Releases apply to "any and all claims" against AK Steel and related entities, including claims for "benefits." (Defs. Mem at 3, 5.)

Tellingly, Plaintiffs attempt to read the "related entities" clause out of the contract. Plaintiffs contend that Defendants are "separate and distinct" legal entities under ERISA, but fail to address whether they are nonetheless "related" to AK Steel. (Pls. Resp. at 5-6.) Plaintiffs cite cases to refute the straw-man argument that releasing an employer from liability "automatically" releases an employee benefit plan from liability (Pls. Resp. at 5 & n.16.), but Defendants here have never contended that they are "automatically" covered by the release of claims against AK Steel. Rather, Defendants argue that the plain language of the Releases applies to them as "related entities" of AK Steel. (Defs. Mem. at 5.)

### C.  A General Release Is Valid to Extinguish ERISA Claims.

Despite Plaintiffs' assertions to the contrary, controlling Sixth Circuit precedent supports the principle that a general release is sufficient to extinguish ERISA pension claims. The Sixth Circuit, in determining whether a general release operated to waive claims asserted under the Americans with Disabilities Act, confirmed the general principle that "waivers of employee rights [under federal statutes] are to be examined under normal contract principles unless overreaching or exploitation is inherent in the situation." *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1184 (6th Cir. 1997). "Public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action" and "waivers of federal statutory rights have been upheld in numerous contexts." *Id.* (citations omitted). A court "should apply

7

principles that encourage . . . settlement . . . in considering whether a settlement and release of a federal statutory right is valid." *Id.* (citation omitted). This precedent plainly applies to the waiver of federal statutory rights under ERISA.

Moreover, the Sixth Circuit, in a string of unpublished opinions, has routinely upheld the validity of general releases against claims asserted under ERISA. (Defs. Mem. at 5 (citing cases); App. Ex. 45-47 & 49.) These cases, although not strictly controlling, are nonetheless persuasive due to their consistency and the fact that they follow logically from *Mararri*. Indeed, the *Samms* opinion indicates that the waivability of ERISA claims was established well prior to *Mararri*: "the former public policy exception that suggested that ERISA claims are immune to waiver has been thwarted by our decision" in *Miller v. General Motors Corp.*, 845 F.2d 326, 1988 WL 38965 (6th Cir. 1998), "<u>specifically approving the waiver of ERISA rights</u>." *Samms*, 99 F.3d 1139, 1996 WL 599821 at *3 (emphasis added).

Plaintiffs' efforts to discount these cases are wholly unpersuasive:

- Plaintiffs ignore both the controlling nature of *Mararri* and its applicability to ERISA claims. (Pls. Resp. at 6-7.)

- Plaintiffs offer no coherent explanation of their theory that the fact claims are asserted against a plan and a plan administrator makes a difference with regard to the waivability of ERISA claims. (Pls. Resp. at 7.)

- The cases Plaintiffs rely on do not establish a relevant distinction between health and welfare benefits and pension benefits (Pls. Resp. at 7 & n.21),[2] nor

---

[2] None of the cases cited by Plaintiffs discuss or explain this purported distinction. *See, e.g., Morais v. Central Beverage Corp. Union Employees Supplemental Retirement Plan*, 167 F.3d 709, 711-723 (1st Cir. 1999) (referring interchangeably to "benefits provided by an ERISA plan," "ERISA benefits," and "waivers of ERISA pension benefits."). While there is some First Circuit precedent, not cited by Plaintiffs, stating that "the heightened scrutiny applied to waiver of rights accrued in ERISA pension plans does not apply in this case where the plans involved were both welfare benefit plans," *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 587 (1st Cir. 1993), the Second Circuit case law cited by Plaintiffs is actually to the contrary. *See Sharkey v. Ultramarine Energy Ltd.*, 70 F.3d 226, 231 (rejecting *Rodriguez-Abreu* (continued...)

has the Sixth Circuit acknowledged such a distinction while repeatedly upholding the waiver of ERISA claims under normal contract principles.

- Plaintiffs rely on out-of-circuit precedent for the proposition that waivers of ERISA claims are (i) subject to "heightened scrutiny" (Pls. Resp. at 7 & n.21), and (ii) "cannot be waived." (Pls. Resp. at 8 & n.7.) Those arguments cannot be reconciled with the Sixth Circuit case law that (i) confirms that waivers of federal rights are to be "examined under normal contract principles," (ii) admonishes federal courts to "apply principles that encourage . . . settlement" when considering the validity of waivers of federal rights, and (iii) consistently upholds waivers of claims under ERISA.[3]

In sum, Plaintiffs' efforts to discount Sixth Circuit law on the validity of general releases of ERISA claims are unavailing. This Court should apply normal contract principles and uphold the Releases as valid waivers of the claims asserted in this action.

### D. Individual Issues Do Not Preclude Summary Judgment.

Plaintiffs assert that summary judgment for Defendants should be denied because individual issues exist with respect to the interpretation and validity of the Releases. (Pls. Resp. at 10-13.) This argument fails for at least three reasons.

First, the subjective interpretation given to a Release by any individual class member is irrelevant; what matters is the plain meaning of the contractual language. "The intent of the parties is best determined by the plain language of the contract." *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003); *see also Samms*, 99 F.3d 1139, 1996 WL 599821 at

---

and holding that "We see no reason to apply a lower level of scrutiny to waivers of severance claims under ERISA than we do to pension claims."); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 317 (S.D.N.Y. 2003) (addressing the "waiver of a claim to [pension] benefits under ERISA.").

[3] Plaintiffs' citation to *Reighard v. Limbach Co.*, 158 F. Supp. 2d 730, 733 (E.D.Va. 2001), for the proposition that allowing a release "to waive prospectively any future rights or claims under ERISA . . . is to grant the employer a license to violate any future rights or claims under ERISA," is a diversion. Defendants do not contend that the Releases waive <u>future</u> claims or rights under ERISA; rather, the Releases waive rights that the class members had accrued at the time of execution of the Releases. (Defs. Mem. at 6.)

*2 (holding that "the plain language of the contract is controlling" and rejecting a plaintiff's subjective interpretation of the scope of a release). A court may not turn to extrinsic evidence to "attempt to discern the intent of the parties" unless the contract is ambiguous as a matter of law and the ambiguity is "apparent on the face of the contract." *Donovan*, 348 F.3d at 512. "If the court finds no ambiguity, it should proceed to interpret the contract – and it may do so at the summary judgment stage." *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999) (quoting *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 33 (1st Cir. 1998)). The plain terms of the Releases apply to the claims at issue, *see supra* at 5-7, and that is the end of the matter.

Second, plaintiffs have not shown that any of the class members who executed a Release actually did – or could – have an individual circumstance that would make a difference with respect to the Releases. Plaintiffs point to a class member who received two lump sum payments rather than one (Pls. Resp. at 12 n.35), and to two other class members who received lump sum payments long before their termination (*id.* at 12 n.36), but this makes no difference because the Releases apply to whipsaw claims based on *all* of these lump sum payments. Plaintiffs also point to a class member's question about her "locked and frozen benefit" under a separate pension plan, but that question, too, has no bearing on the question before this Court.[4]

---

[4] Plaintiff Sharon Sechler apparently asked for a copy of the rules pertaining to the benefit she had earned under a separate and distinct pension plan, which she referred to as her "locked and frozen pension (which was frozen as of 3-3-2000)." (Pls. Resp. Ex. 1.) Her request for these rules has nothing to do with whether she released her whipsaw claim by executing a Release. Plaintiffs do not dispute that Ms. Sechler, and the other class members who executed Releases, had actual or constructive knowledge of the factual basis for their whipsaw claims at the time they executed the Releases. (Defs. Mem. at 5-6.) These plaintiffs knew that they would receive a payment equal to their account balance if they elected a lump sum payment, and they released their claims for anything more when they executed the Releases. (*Id.*)

Third, as Defendants have previously noted, class members may not challenge the validity of the Releases unless they tender back the consideration they received in exchange for them. (Defs. Mem. at 10-11.) *See Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 871 (E.D. Mich. 199) (citing *Samms*, 99 F.3d 1139, 1996 WL 599821 at *3), *aff'd* 201 F.3d 440, 1999 WL 1204883 (6th Cir. 1999)). Because tendering back consideration "is a prerequisite to plaintiff's maintenance of a claim challenging the validity of a release in a non-ADEA context," *id.*, the failure to tender back bars a plaintiff's claim and renders any inquiry into the "knowing and voluntary" nature of the release unnecessary. *Id.* Plaintiffs' counsel, however, have declined to tender back the consideration that the ninety-two class members received in exchange for the Releases.

## II.  IF THE COURT DECLINES TO AWARD SUMMARY JUDGMENT, CLASS MEMBERS WHO EXECUTED RELEASES SHOULD BE EXCLUDED FROM THE CLASS.

Because named plaintiff John West did not execute a Release, his claim is not typical of the ninety-two class members who did, nor is he an adequate representative for them. (Defs. Mem. at 11-12.) Plaintiffs essentially agree. (Pls. Resp. at 9 ("Plaintiff West's claims remain typical of the claims of every class member <u>who did not execute an AK Steel release</u>, and <u>for such members</u> Plaintiff West remains an entirely adequate representative.") (emphasis added).) Thus, if the Court should conclude, despite the plain language of the Releases and the failure to tender back the consideration received in exchange for them, that material questions of law or fact remain concerning the effect of the Releases, Plaintiff West cannot appropriately represent those class members in pursuing those issues because the "typicality" and "adequacy" requirements of Rule 23 are not satisfied. *See, e.g., Spann*, 219 F.R.D. at 318, 320. (Defs. Mem. at 11-12.) In that event, the Court should exclude from the class those class members who executed Releases.

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment against the 92 individuals who executed Releases. In the alternative, the Court should modify its class certification order to exclude them from the Class.

                                                 Respectfully submitted,

                                                 <u>s/George E. Yund</u>
                                                 George E. Yund (0017714)
                                                 Frost Brown Todd LLC
                                                 2200 PNC Center
                                                 201 East Fifth Street
                                                 Cincinnati, OH 45202-4182
                                                 (513) 651-6824

                                               *Trial Attorney for Defendants*

                                                 Robert D. Wick
                                                 David A. Barker
                                                 Covington & Burling
                                                 1201 Pennsylvania Avenue
                                                 Washington, DC 20004-2401
                                                 (202) 662-6000

February 28, 2005

                                               *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2005, the foregoing Defendants' Reply in Support of Their Motion for Partial Summary Judgment Against Ninety-Two Class Members, or, in the Alternative, to Amend the Class Certification Order was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s  George E. Yund_____

CinLibrary 0001590.0528818  1484059v.1