UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

John D. West, on Behalf of Himself
and All Other Persons Similarly Situated,

        Plaintiffs,

v.

AK Steel Corporation Formerly ARMCO Inc.)
Retirement Accumulation Pension Plan, a part of
the AK Steel Corporation (Formerly ARMCO
Inc.) Noncontributory Pension Plan, and

AK Steel Corporation Benefit Plans
Administrative Committee,

        Defendants

Case No.: C-1-02-0001

Judge: Hon. Sandra S. Beckwith

Magistrate Judge: Timothy S. Black

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON
THE ISSUES OF DAMAGES AND PRE-JUDGMENT INTEREST**

George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6824

*Trial Attorney for Defendants*

Robert D. Wick
Stuart J. Evans
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendants*

DC: 1706233-10

As Defendants explained in their opening memorandum on the issues of damages and pre-judgment interest, (1) any additional benefits owed to Plaintiffs may be paid in the form of a supplemental age 65 annuity; (2) the risk of pre-retirement mortality must be considered in calculating a class member's additional benefits; and (3) the Court should not award pre-judgment interest. Plaintiffs' opposition memorandum offers no cogent response. For the reasons set forth below, and in Defendants' opening memorandum, Defendants are entitled to partial summary judgment on each of these issues.

## I. THERE IS NO BASIS IN LAW FOR PLAINTIFFS' INSISTENCE THAT DAMAGES MUST BE PAID IN THE FORM OF SUPPLEMENTAL LUMP SUM PAYMENTS.

This Court found that Defendants violated ERISA by providing certain plan participants with benefit payments that were not the "actuarial equivalent" of the participants' age 65 "accrued benefits." (April 8 Order at 8, 12.) There are at least two ways to remedy such a violation of law: a participant's benefit may be topped up to the point of "actuarial equivalence" either by providing the participant with a supplemental age 65 annuity or by providing a supplemental lump sum payment. (Defs. Opening Mem. at 4-8.) As shown in Defendants' opening memorandum, there is no support for Plaintiffs' insistence on the latter type of relief as opposed to the former. (*Id.*) To the contrary:

- ERISA does not mandate that plan participants be permitted to take their entire age 65 accrued benefit in lump sum form. Partial lump sum distributions are permissible. (Defs. Opening Mem. at 4.)

- Nothing in the Plan authorizes plan participants to elect a lump sum payment larger than a participant's total account balances. (*Id.* at 4-5.)

- The better interpretation of the Plan is that residual benefits above and beyond a lump sum payment equal to a participant's account balances must be taken in the form of an age 65 annuity. (*Id.*)

- Where there is more than one means of bringing a plan into compliance with ERISA, the law permits the plan sponsor – not plan participants – to choose among the permissible alternatives. (*Id.* at 6-7.)

Plaintiffs' only substantive response consists of a vague assertion that they "elected" to take all of their retirement benefits in the form of a lump sum payment. (Pltfs. Reply Mem. at 3.) At most, however, Plaintiffs elected to receive a lump sum payment equal to the balances in their accounts, because that is the most that the Plan *permitted* them to receive in lump sum form. (Defs. Opening Mem. at 4-5, 8.) To the extent that Plaintiffs are entitled to a benefit above and beyond a lump sum payment equal to their account balances, this additional benefit may be provided in the form of an age 65 annuity. (*Id.* at 4-8.)

It is undisputed that providing Plaintiffs with supplemental age 65 annuities would cure the "actuarial equivalence" violation found by this Court. Accordingly, Plaintiffs do not have a *legal right* to a supplemental lump sum payment; they merely *prefer* that form of relief to an equally lawful alternative. Plaintiffs' mere preference for a supplemental lump sum payment is no substitute for a valid legal basis for demanding such relief.

## II. PLAINTIFFS' ACTUARY ERRED IN DISREGARDING THE RISKS OF PRE-RETIREMENT MORTALITY.

Defendants demonstrated in their opening memorandum that Plaintiffs' actuary erred as a matter of law by ignoring the risks of pre-retirement mortality in his damages calculations. Specifically, Defendants showed that:

- Plaintiffs' actuary ignored the risks of pre-retirement mortality based on his view that the Plan's "incidental death benefit" should be treated as part of a participant's "accrued benefit" under ERISA (Defs. Opening Mem. at 11-12);

- Under Treasury Regulation § 1.411(a)-7 and a series of IRS Revenue Rulings, the Plan's "incidental death benefit" is <u>not</u> part of a participant's "accrued benefit" (*id.* at 12-14);

3

- Only a participant's "accrued benefit" is relevant to a whipsaw calculation (*id.* at 14-15).

Plaintiffs do not respond to *any* of this analysis. Instead, they urge this Court to reflexively follow the decision in *Berger v. Xerox*, 231 F. Supp. 2d 804 (S.D. Ill. 2002), which declined to consider the risks of pre-retirement mortality in a whipsaw case.

Defendants respectfully submit that the *Berger* court erred in its analysis of pre-retirement mortality. Defendants' opening memorandum sets forth four fundamental errors of law that appear in the district court's analysis. (Defs. Opening Mem. at 16-18.) Foremost among these errors is the fact that the district court used an erroneous test of whether a death benefit is "ancillary" or "incidental" to a participant's retirement benefit – and therefore distinct from a participant's "accrued benefit." Under the *Berger* court's erroneous test, every defined benefit plan in the country would violate the Internal Revenue Code. (*Id.* at 14, 16-17.)

Plaintiffs make no attempt to explain away the fundamental errors of law committed by the district court in *Berger*. Instead they brush off the district court's errors by noting that the district court was later affirmed by the Seventh Circuit. (Pltfs. Reply Mem. at 4.) As Defendants have already explained, however, the question presented here was not presented to the Seventh Circuit in *Berger*. The Appellants in *Berger* devoted less than two pages of argument to the subject of pre-retirement mortality; they neglected to mention the controlling question of whether an incidental death benefit is part of a participant's "accrued benefit"; and the Seventh Circuit found the resulting discussion so truncated as to be "unfathomable." (Defs. Opening Mem. at 15-16.)

Plaintiffs offer no defense of the mistaken reasoning in *Berger*, and this Court is under no obligation to repeat the *Berger* court's mistakes. *See U.S. v. Blaszak*, 349 F.3d 881, 887 (6th Cir. 2003) (noting that out-of-circuit decisions are not "controlling precedent in this

4

circuit" and are relevant only to the extent they "constitute persuasive authority"). This Court should therefore hold that the risks of pre-retirement mortality must be considered in calculating whipsaw benefits in this case.

### III.  AWARDING PRE-JUDGMENT INTEREST IN THIS CASE WOULD BE INEQUITABLE.

Plaintiffs suggest that they have an absolute right to collect pre-judgment interest. (Pltfs. Reply at 5.) It is well-settled, however, that pre-judgment interest is not mandatory in ERISA cases, but instead is an equitable remedy awarded at the discretion of the Court "in accordance with general equitable principles." (Defs. Opening Mem. at 20.) *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).[1]

Here, an award of pre-judgment interest would be neither equitable nor appropriate. The whipsaw calculation will already provide plaintiffs with far more "interest" than they were promised by the Plan or than they ever expected to receive. (Defs. Opening Mem. at 21-22.) Providing pre-judgment interest on top of a whipsaw payment would therefore magnify an unexpected windfall, contrary to the policy of ERISA. (*Id.* at 22.) An award of pre-judgment interest would also exacerbate the whipsaw calculation's propensity to distribute greater benefits to older employees than to younger ones and to punish plans that provide

---

[1] The cases Plaintiffs rely on actually confirm that the award of pre-judgment interest is equitable and discretionary. *See, e.g., City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 196 (1995) ("[S]uch an award has never been automatic. . . . [T]he allowance of interest on damages is not an absolute right. Whether it ought or ought not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject, whether it be a court or a jury.") (emphasis added); *Wells v. United States Steel*, 76 F.3d 731, 738 (6th Cir. 1996) (declining to award pre-judgment interest on equity grounds); *Tiemeyer v. Comm. Mutual Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) ("[P]rejudgment interest may be awarded in the discretion of the district court.") (emphasis added).

generous interest rates to their employees. (*Id.*) Plaintiffs do not deny that these consequences would accompany an award of pre-judgment interest; nor do they deny that such consequences would be inequitable. The Court should therefore decline to award pre-judgment interest in this case.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

Respectfully submitted,

/s George E. Yund
George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202-4182
(513) 651-6824
(513) 651-6981 (fax)
gyund@fbtlaw.com
George Yund

*Trial Attorney for Defendants*

Robert D. Wick
Stuart J. Evans
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendants*

March 1, 2005

---

[2] Plaintiffs' reply memorandum appears to abandon the suggestion that the Court use the 7.5% interest rate that applies to Opening Accounts under the Plan as the pre-judgment interest rate. (Pltfs. Mem. at 13 & Ex. 4, Pltfs. Reply at 5.)

6

## CERTIFICATE OF SERVICE

       I hereby certify that a true and accurate copy of Defendants' Reply Memorandum in Support of Their Motion for Partial Summary Judgment on the Issues of Damages and Prejudgment Interest was electronically filed with the Court on March 1, 2005. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

                                                                  /s George E. Yund

CinLibrary 0001590.0528818  1484430v.1