IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN D. WEST, on Behalf of          :
Himself and All Other Persons       :
Similarly Situated                  :
                                    :
            Plaintiff,              :
                                    :
        vs.                         :    Case 1:02-cv-0001
                                    :
AK STEEL CORPORATION                :
RETIREMENT ACCUMULATION PENSION     :
PLAN, et al.                        :
                                    :
            Defendant.              :

**<u>ORDER</u>**

Before the Court is the Defendants' motion for summary judgment against ninety-two class members (Doc. 75). Plaintiffs oppose the motion (Doc. 84), to which the Defendants have replied (Doc. 86).

<u>Factual Background</u>

The facts giving rise to this ERISA case are explained in the Court's prior orders granting class certification (Doc. 55) and granting partial summary judgment on liability (Doc. 56).

The instant motion arises from events occurring after the original complaint was filed, and while the class certification motion was under submission. AK Steel Corporation, the employer of all class members and sponsor of the ERISA plan at issue in this case, undertook a reduction in force in the autumn of 2003. Approximately 300 employees were terminated in that reduction

-1-

effort.  According to Defendants' motion, AK Steel offered these employees a severance package, including severance pay of varying amounts; payment of "COBRA" premiums for health insurance for periods beyond the employee's termination date; and job search and resume preparation assistance.  In exchange for these benefits, the employee was required to release "all claims" against AK Steel Corporation and "related entities."  The releases took two forms, one for employees under 40 years of age and a second for those older than 40.  The latter group of releases includes specific language releasing claims under the ADEA.  (Examples of the two forms of the releases appear as Exhibits 36 and 37 to Defendants' motion.)  Of the approximately 300 employees who accepted the severance package and signed a release, 92 are members of the certified class in this case.

The releases were executed between October 2003 and January or February 2004.  This Court's class certification order was issued on March 9, 2004, and the partial summary judgment order on April 8, 2004.  On May 18, 2004, Defendants' counsel sent copies of the class members' releases to Plaintiffs' counsel.  And on September 27, 2004, Defendants identified AK Steel's Human Resources Manager as a potential witness concerning the releases.  (This correspondence is attached as Exhibit A to Defendants' motion.)  The Court's scheduling order (Doc. 57) set a discovery cut-off of October 15, 2004.  Plaintiffs apparently did not seek any discovery concerning these releases.

Defendants timely filed their summary judgment motion

-2-

against the 92 class members who signed a release, contending that their claims in this action are barred. Alternatively, Defendants' motion seeks an order excluding the 92 individuals from the already-certified class, pursuant to F.R.C.P. 23(c)(1).

ANALYSIS

As an initial matter, the Court rejects Plaintiffs' argument that Defendants have waived the affirmative defense of release. It is true that Defendants did not seek to formally amend their answer to include this defense after the 92 releases were signed. However, Defendants gave notice to Plaintiffs' counsel of the fact of the releases, and provided copies of them. There was some delay in disclosing their existence after execution, but ample time was available to Plaintiffs to conduct any discovery Plaintiffs believed necessary. Defendants' failure to formally amend their answer in this case did not unfairly prejudice Plaintiffs. The Court concludes that the Defendants have not waived the defense of release at this stage of the proceedings.

There seems little doubt that, as a general principle, an employee may waive an already-accrued ERISA claim by executing a valid release. The Sixth Circuit has explicitly held that claims under other federal remedial statutes are waivable. See, e.g., Mararri v. WCI Steel, Inc., 130 F.3d 1180, 1184 (6th Cir. 1997), involving discrimination claims under the Americans with Disabilities Act. And several unpublished Sixth Circuit opinions specifically affirm employee waivers of ERISA claims. See, e.g., Samms v. Quanex Corp., 99 F.3d 1139 (table), 1996 U.S. App. LEXIS

27356, at *8 (6th Cir. 1996); and Halvorson v. Boy Scouts of America, 215 F.3d 1326 (table), 2000 U.S. App. LEXIS 9646, at *6 (6th Cir. 2000).

Federal common law provides the test to measure the validity of a release of a federal claim, including one arising under ERISA. Such releases should be "examined under normal contract principles unless overreaching or exploitation is inherent in the situation." Mararri, supra, 130 F.3d at 1184; Runyan v. National Cash Register Corp., 787 F.2d 1039 (6th Cir. 1986). A release must involve a "knowing and voluntary" relinquishment of a right in exchange for valuable consideration. The "knowing and voluntary" nature of a release requires close inspection of the "totality of the circumstances," especially when federally protected benefits (such as those arising under ERISA) are concerned. See, e.g., Nicklin v. Henderson, 352 F.3d 1077, 1080 (6th Cir. 1989); and see, Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58 (D. Conn. 2003). The factors to be examined include the employee's education and experience; the clarity of the agreement; whether the employee had independent legal advice; whether the employer encouraged the employee to seek legal advice before signing the release; and whether the consideration the employee received exceeded benefits the employee was already entitled to under benefit plans or under applicable law. Id. at 65.

The releases in question explicitly waive:

> . . .all claims, causes of action, and rights of
> recovery of any kind or nature, including without

> limitation back or front pay or benefits, damages of
> any sort, debts, liabilities, and contract rights, and
> any costs, fees, or other expenses or attorneys' fees
> incurred in law or in equity, whether known or unknown.
> This waiver, release and discharge also includes but is
> not limited to any claims, whether known or unknown
> (including those arising out of or relating to your
> employment with the Company and/or the separation of
> your employment with the Company) for discrimination,
> slander, libel, damage to reputation, emotional
> distress, attorney fees, compensatory damages, punitive
> damages, tort damages, breach of contract, quasi-
> contract, promissory estoppel, any violation of
> federal, state, local, statutory or common law,
> including but not limited to Title VII of the Civil
> Rights Act of 1964, the Family and Medical Leave Act,
> and the Americans with Disabilities Act."

(Defendants' Exh. 36 at ¶9)

Defendants argue that each employee must have had "actual or constructive knowledge" of the facts giving rise to this ERISA claim for "whipsaw" benefits when each employee signed the release. Therefore, Defendants urge the Court to conclude, as a matter of law, that each and every release was "knowing and voluntary." Defendants point to the fact that the Summary Plan Description for the AK Plan plainly states that a lump sum distribution is equal to a participant's account balance. Defendants cite <u>Torello v. Unum Life Ins. Co.</u>, 201 F.3d 441(table), 1999 U.S. App. LEXIS 32228 (6th Cir. 1999) for the proposition that a release is valid if the employee had a "full opportunity to learn the fundamental facts" before signing the release. But <u>Torello</u> involved far different facts. There, the employee released his employer from "all claims" while assuming that he could make a claim for long term disability benefits under the employer-sponsored ERISA plan. In fact the employee's

-5-

benefit claim was time-barred when he signed the release.  The Sixth Circuit specifically stated that neither Torello nor his lawyer studied the plan terms before Torello signed the release. If they had done so, they would have easily discovered that the time limits for making a benefits claim had long since expired.

Here, an employee reading the Summary Plan Description, or even the entire AK Plan, would not likely learn any facts about the intricacies and technicalities of ERISA and the Internal Revenue Code that mandate a whipsaw calculation.  That inquiry is determined by the law, not by any facts that can be gleaned from the SPD or the plan terms.  The fact that all AK employees may have been "aware" of the Plan terms governing lump sum payments is not a sufficient basis upon which this Court could properly conclude that each class member had actual or constructive knowledge about the facts concerning a "whipsaw" calculation.

And it is quite clear that the RIF releases do not mention this lawsuit.  Nothing in the record suggests that any of the 92 class members had actual knowledge about this suit, or any notice from anyone about the substance of this claim, when they signed the release.  While the releases encompass "all claims" against **AK Steel** (not a formal party to this action), there is no explicit reference to "pension benefits," "retirement benefits," ERISA, or the AK Steel Retirement Plan.

The Court is also concerned that an involuntary reduction in force creates the potential for "overreaching or exploitation" which, as noted in Mararri, supra, triggers a heightened concern

for the knowing and voluntary nature of a release.  Defendants have not provided specific information on the monetary value of the consideration given in the releases.  It may be that some employees would be eligible for a considerably larger sum under the whipsaw calculation than he or she received in return for executing a release.  While the Court does not suggest that any overreaching or exploitation actually occurred, the Court cannot determine as a matter of law under Rule 56 that those circumstances absolutely did not exist for each and every affected class member.

Defendants also argue that the pendency of this action and/or the class certification motion has no bearing on the question of whether the releases are valid and binding on the entire group of 92 employees.  Defendants note that a putative class member is not prohibited from entering into a settlement and release with a defendant prior to class certification, and that such a settlement does not require court approval under Rule 23.  See, e.g., In re PaineWebber Ltd. Partnerships Litigation, 147 F.3d 132, 137-138 (2d Cir. 1998) and cases cited therein.  Certainly, any potential class member in this case was free to settle this ERISA claim for whipsaw benefits prior to this Court's certification order.  But that situation is not the one presented by Defendants' motion.  Defendants are seeking summary judgment based on broad language in standard RIF releases, without a factual record concerning the circumstances of each release.  Defendants cite Christensen v. Kiewit Murdock Inv.

Corp., 815 F.2d 206 (2d Cir. 1987) to support their argument. But there, the Court specifically noted that a full disclosure of the pending lawsuit was made to each Plaintiff before each plaintiff accepted a tender offer that essentially settled the legal claim made in the action.  There is no similar disclosure in the record in this case.

The record also discloses nothing about any of the 92 employees' education or background.  The "over-40" release (Exhibit 37) explicitly encourages an employee to seek legal advice, while the "under-40" release (Exhibit 36) does not.  The parties dispute whether the release clearly includes the Defendants in this case - the AK Plan and its Administrative Committee - within the term "related entities" that is used in the release.

All of these factors inexorably lead to the conclusion that Defendants are not entitled to summary judgment against each of the 92 employees who signed an RIF release.  Defendants' motion for summary judgment against these individuals is denied.  It is also clear, however, that these same factors require a re-examination of the inclusion of these individuals in the defined class.  Obviously, many of these issues demand individualized factual review.  Defendants' motion therefore alternatively seeks an order excluding these 92 employees from the class.  Rule 23(c)(1) states that certification orders may be altered or amended before final judgment, if circumstances should warrant an amendment.  The Court concludes that it must alter the class

definition to exclude the 92 individuals who signed an RIF release.

All of these individuals received individual notice of this action and an opportunity to opt out. None apparently have done so. The notice previously sent stated the fact that these 92 employees might be excluded from the class. The Court finds that it would be inequitable and unfair to simply issue an order excluding these individuals from the class, a development they may not otherwise learn about until a final judgment is entered.

Rule 23(d)(2) grants this Court broad discretion to require, ". . .for the protection of the members of the class . . . that notice be given in such a manner as the court may direct to some or all of the members of any step in the action . . .". The Court finds that the protection of these 92 individuals' due process rights requires that a separate notice be issued to each of them. The notice should explain the basis for the Court's ruling and the fact that Defendants intend to raise the release as a defense to the individuals' claims for whipsaw benefits. The notice should provide some reasonable estimate of the range of the potential recovery of whipsaw benefits that each individual might recover in this case, so that each individual can meaningfully weigh their options. And, the notice should explicitly encourage each class member to seek legal advice concerning this issue.

The parties are directed to consult on the text of this

additional notice, and to submit a draft for the Court's review within thirty days of the date of this Order.


DATED: July 25, 2005          s/Sandra S. Beckwith
                              Sandra S. Beckwith, Chief Judge
                              United States District Court