```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                        WESTERN DIVISION


JOHN D. WEST, on Behalf of        :
Himself and All Other Persons     :
Similarly Situated                :
                                  :
          Plaintiff,              :
                                  :
          vs.                     :    Case 1:02-cv-0001
                                  :
AK STEEL CORPORATION              :
RETIREMENT ACCUMULATION PENSION   :
PLAN, et al.                      :
                                  :
          Defendant.              :
```

**ORDER**

Before the Court is the Plaintiffs' motion for partial summary judgment on issues of damages and prejudgment interest (Doc. 60), and Defendants' combined response and cross-motion on those issues (Doc. 79). Both parties have filed responses and replies to these motions, along with affidavits of their respective experts.

Factual Background

This action was brought by John West, for himself and a class of former participants of the AK Steel Corporation Retirement Accumulation Pension Plan ("AK Plan"), against the Plan and its administrative committee. Plaintiffs allege that the AK Plan violated provisions of the Employee Retirement Income Act of 1974 ("ERISA") and the Internal Revenue Code ("IRC") when calculating consensual lump sum distributions previously made to

-1-

Plaintiffs. After granting class certification (Doc. 55), this Court granted partial summary judgment to the Plaintiffs (Doc. 56), holding that the manner in which the AK Plan calculated those lump sum benefits violated ERISA.

Briefly summarized, this Court found that Section 1.2 of the AK Plan defines "accrued benefit" as a participant's plan account expressed in the form of a single life annuity that is the "actuarial equivalent" of the participant's plan account. The Court rejected Defendants' argument that the projection, or interest credit, rate for deriving that "actuarial equivalent" is found in ERISA, 29 U.S.C. §1054(c)(3), rather than in the express terms of the AK Plan. This Court also found that the 1994 amendment to ERISA Section 203(e), 29 U.S.C. §1053(e), was ambiguous with respect to whether it covers consensual lump sum distributions. Therefore, the Court found that Treasury Regulation §1.411(a)-11(d) was valid with respect to post-1994 distributions, and that the AK Plan should have used the present value discount rates required by 29 U.S.C. §1055(g)(3) [and described in T.R. §1.411(a)-11(d) and IRS Notice 96-8].

The parties' pending motions concern the amount of additional benefits to be awarded to Plaintiffs under the Court's prior order.

## ANALYSIS

The Court did not previously determine the specific projection rate, which is the rate at which a participant's future interest credits should be calculated. At n. 13 of the Court's prior Order (Doc. 56), the Court indicated that Section 3.3 of the AK Plan defines that interest credit rate for both the Opening and Future Accounts. That defined rate is a variable one, because each year's rate is tied to the 5-year Treasury interest rate. Section 3.3 also sets minimum interest credit rates of 7.5% for the Opening Accounts and 3% for the Future Accounts. Thus, the actual rate must be determined separately for each year in question, but can be no less than the minimum specified rates.

Both parties' experts have used the Section 3.3 projection rates, with the specific rate determined at the time of each class member's prior lump sum distribution. Plaintiffs' actuarial expert is Michael L. Libman. Mr. Libman calculates a "Proposed Schedule of Underpayments" based on the amount and date of each class member's prior distribution. (Libman Affidavit, Doc. 62) Libman's Exhibit 2 illustrates Plaintiffs' proposed underpayment calculation. Each participant's Opening and Future Account balances at the lump-sum payment date are identified. The Section 3.3 interest credit rate is then applied for each Account. (Libman's Exhibit 3 lists the applicable interest and annuity conversion rates for 1995 through 2004.) Mr. Libman then calculates the projected age 65 annuity for the participant's

Opening and Future Account, and calculates the projected lump sum payable at normal retirement date for each Account. Each projected lump sum is then discounted to present value, using the discount rates required by 29 U.S.C. §1055(g)(3), and T.R. §1.417(e). Libman then added the two lump-sum projections together, and subtracted the original lump sum amount each participant already received.

Defendants' actuarial expert is Lawrence Sher. Mr. Sher states that he was able to replicate (or "come very close to") Libman's calculations for all but one of the class members. (That one discrepancy apparently involves an overpayment that the participant later repaid.)

Based on the two experts' reports, the Court concludes that the parties agree on the basic data used in calculating the additional payments due to the class members. This data includes the date and amount of the prior lump-sum payment; the Opening and Future Account balances for each class member; and the interest credit rates as defined in Section 3.3 of the Plan and calculated in Libman's Exhibit 3.

The Court recognizes that Defendants disagree with the Court's prior ruling that the interest credit rates must be taken from Section 3.3 of the Plan. Mr. Sher has presented an alternate calculation that uses a variable rate based on the 30-year Treasury rate (Sher Exhibit 4, Doc. 79, App. 65). Sher's calculations result in a markedly lower supplemental lump sum payment to most participants. For example, Sher's Exhibit 5A and

5B reflect the difference to Mr. West, the named plaintiff. The amount of his recovery under Sher's alternate methodology would be approximately 28% less than the amount under the Plan rate. The Court assumes these alternate calculations are offered to graphically illustrate the financial impact to the AK Plan caused by using the AK Plan rates, or for purposes of appeal. While the financial impact is evident and not trivial, the Court again rejects Defendants' argument that the 30-year Treasury rate should be used.

In addition to this interest credit rate dispute, Defendants raise four arguments concerning Plaintiffs' damages claim. Defendants challenge two assumptions Libman used in his calculations, namely Libman's "segregation approach" and his refusal to use a pre-retirement mortality discount. Defendants then argue that any additional payments to class members should be in the form of an age-65 annuity, rather than by additional lump sum distributions that Plaintiffs request. Finally, Defendants urge this Court to deny prejudgment interest. Each of these four arguments is discussed in turn.

1. Libman's "Segregation Approach"

Libman determined a separate lump sum amount for each Participant's Opening and Future Account, rather than a combined value for both accounts. Libman's approach resulted in a slightly higher overall damage calculation. In view of Defendants' objection, Libman agreed to use Sher's method which

avoids the "segregation approach."  See Libman Aff., Doc. 62 at ¶5.  This issue is therefore moot.

2. <u>Libman's Failure to Apply a Pre-Retirement Mortality Discount.</u>

A mortality discount factors into the present value of a future benefit the possibility that the participant might die before receiving that benefit, and thus receive nothing.  Libman did not use a pre-retirement mortality discount in his present value calculation of the lump sum amounts.  Libman based his decision on the fact that the AK Plan "provides a death benefit equal to the sum of the Opening Account Balance plus the Future Account Balance, each calculated as of the participant's date of death, [and so] there is no material gain to the Plan or loss to the participant due to the participant's death should that event occur prior to the participant obtaining an annuity at age 65."  (Libman Aff., Doc. 62 at ¶10)  Defendants argue that the mortality discount should be applied, and offer several reasons to support their expert's use of a pre-retirement mortality discount in calculating present value.

First, ERISA Section 205(g) and IRC Section 417(e) expressly recognize the use of mortality discounts in actuarial equivalence calculations.  (See also 26 C.F.R. 1.401(a)(4)-12, defining "actuarial present value" to take account of both the probability that a payment will be made, and the discount for the time value of money.)  The mortality tables promulgated by the Secretary of the Treasury incorporate mortality factors for all ages.  The

-6-

2001 table covers ages 1 through 120 (Rev. Rul. 2001-62), as does the 1994 version.  But the statutes do not **mandate** the use of any mortality discount unless required to achieve "actuarial equivalence."  For example, it is relatively easy to see that some life expectancy assumption is needed to calculate a retirement annuity, because typically annuity payments stop upon the death of the recipient.  But that same conclusion is not so easily reached in the context of pre-age 65 lump sum payments.

     Second, Section 1.3 of the AK Plan defines "Actuarial Equivalent" as present value derived by using the "applicable factors described in Exhibit I."  Exhibit I to the Plan has three parts.  Exhibits 1.A and 1.B do not pertain here.  Exhibit 1.C states that the IRC Section 417(e) mortality table shall be used for "other" actuarial equivalence calculations, e.g., those not specified in Exhibits 1.A and 1.B.  Defendants argue that Exhibit 1.C should therefore apply here.  Defendants also admit that Exhibit 1.C **expressly** states that it does **not** apply to "lump sum distributions of a Participant's account balance."  Defendants explain that the AK Plan drafters assumed that no actuarial equivalence calculation would ever apply to lump sum distributions, because the AK Plan states that lump sums shall be equal to a participant's account balance.  Now that this Court has ruled that the "whipsaw" equivalence calculation is required by law, Defendants argue that Exhibit 1.C best reflects the appropriate formula to be used.  The Plan's Administrative Committee actually passed a resolution on August 17, 2004 stating

-7-

this position.  (See Doc. 79, App. 54 at ¶2)  This after-the-fact resolution is not binding on this Court.  Defendants do not suggest it is, but offer it as some evidence of the Plan's proper interpretation.  What is clear from this discussion is that the Plan, as originally written, simply does not address the issue of a pre-retirement mortality discount or the calculation of present value of a pre-retirement lump sum distribution.

Third, Defendants argue that the AK Plan's death benefits are "incidental" under applicable tax regulations, and not "accrued" benefits as Libman assumes.  ERISA requires defined benefit plans to provide a pre-retirement death benefit for vested participants.  See 29 U.S.C. §1055(a) and (e)(1), and 26 U.S.C. §401(a)(11).  Section 5.1 of the AK Plan addresses "Death Benefits Prior to Retirement."  Section 5.1(a) defines the benefit for an unmarried participant (or one with a non-spouse beneficiary) as the greater of (1) a lump sum equal to the participant's Account at the time of death, or (2) the actuarial equivalent of the participant's "minimum protected benefit" under Section 4.8.  Section 5.1(b) defines a surviving spouse's benefit as an annuity for that spouse's life, equal to the "Actuarial Equivalent of the Accrued Benefit" of the participant as of the date of death.  Alternatively, the surviving spouse can elect to receive a lump sum distribution of the participant's Account, payable no later than the participant's 65th birthday.

Federal tax law predating ERISA provides that qualified retirement plans can lose their tax-advantaged status if death

benefits are too generous, or more than "incidental." See T.R. 1.401-1(b)(1)(i). Revenue Ruling 85-15, 1985-1 C.B. 132, discusses the interplay between the statutory death benefit requirement and the treasury regulations concerning incidental benefits. That Ruling concludes that the ERISA-required pre-retirement survivor annuity will be deemed incidental, thus preserving tax qualification, so long as that benefit is "subordinate to the primary purpose of the plan" to provide pension benefits.

Defendants argue that to accept Libman's contention that the death benefits are "equal" to pension benefits would require the conclusion that the Plan is not tax-qualified. This, of course, runs counter to the fact that the IRS has approved the AK Plan. However, the determination letter (Doc. 39, Defendants' Exhibit 2) deals only with the Internal Revenue Code. There is no indication that the IRS was asked to review the specific question presented here (can the AK Plan's death benefit be an "accrued benefit" for purposes of the "whipsaw" calculation without losing their "incidental" character for purposes of tax qualification). Nor can the Court find any indication that the IRS has taken a position on this specific question.

Moreover, a favorable determination letter from the IRS is not dispositive of Plaintiffs' ERISA claim. See, e.g., <u>Rybarczyk v. TRW, Inc.</u>, 235 F.3d 975, 984-85 (6th Cir. 2000). See also, <u>Esden v. Bank of Boston</u>, 229 F.3d 154, 175-177 (2d Cir. 2000), rejecting defendant's reliance on an IRS letter ruling to avoid

application of a "whipsaw" calculation to determine lump sum distributions.  The tax characterization of the AK Plan's death benefit as "incidental" does not control the question of whether a pre-retirement mortality discount is properly applied under ERISA to the lump sum calculation.

The nub of the legal question presented here, as the Court views it, is Libman's basic assumption that the AK Plan's death benefits are "accrued benefits" under ERISA, an assumption which Defendants argue is not supported by the AK Plan's terms or by ERISA.  In fact, Libman admits that if the death benefit is not an accrued benefit, a pre-retirement discount **should** be utilized in the present value calculation.  (See Libman Deposition at pp. 213-214; Doc. 79, App. 52.)

ERISA's anti-cutback and actuarial value rules apply only to "accrued benefits."  See, e.g., Laurenzano v. Blue Cross & Blue Shield of Mass. Retirement Income Trust, 134 F.Supp.2d 189, 200 (D. Mass. 2001), noting that ERISA allows only one definition of "accrued benefit" and that is the annual benefit commencing at normal retirement age.  There are very few reported cases addressing the propriety of utilizing a pre-retirement mortality discount in calculating present value of a lump sum distribution of a participant's "accrued benefit" under a cash balance plan.

In Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 196 F.Supp.2d 1260 (N.D. Ga. 2002), the district court faced similar arguments, pro and con, about utilizing a mortality discount.  The plan at issue in Lyons, like the AK Plan, was

silent on the question. The district court concluded that answering the question "would require the court essentially to create new Plan provisions." Id. at 1270. For that reason, the district court referred the matter to the Plan administrator for a proper answer. This Court disagrees with that approach. The question presented here is a legal one - whether ERISA's actuarial equivalence rules forbid use of a mortality discount. (There is no doubt that the AK Plan administrator would apply a mortality discount in determining present value, if that decision were left to the administrator.)

In Berger v. Xerox, 231 F.Supp.2d 804 (N.D. Ill. 2002), the district court concluded that applying a mortality discount for the period before age 65 would cause an impermissible partial forfeiture of vested pension benefits. Id. at 814. This was because the Xerox Plan's death benefit equaled the balance in a participant's account. The court found that applying a pre-retirement mortality discount to a retirement benefit that "does not decrease if the participant dies" would result in a lump sum that was less than the actuarial equivalent of the annuity it is supposed to replace, because it would erode the value of the interest credits due to the participant for each year up to age 65. The court concluded that "if a participant's death before age sixty-five will not result in a reduction of benefits, the use of a mortality discount to determine the present value of the participant's benefit will result in a forfeiture prohibited by ERISA." Id. The Seventh Circuit affirmed the district court's

judgment in Berger v. Xerox, 338 F.3d 755 (7th Cir. 2003), but did not discuss this question at any length. The court of appeals simply observed that use of a pre-retirement mortality discount was "unfathomable" because the participant's death would not reduce his benefits. Id. at 764.

Finally, in Crosby v. Bowater, 212 F.R.D. 350 (W.D. Mich. 2002), vacated and remanded on other grounds, Crosby v. Bowater, 382 F.3d 587 (6th Cir. 2004), the district court found a pre-retirement mortality discount should **not** be used to calculate present value of a lump sum distribution because of the plan's death benefit. That benefit was defined as the "present value of the Participant's Accrued Benefit" at the date of death, a definition almost identical to that of the AK Plan. The district court initially framed its analysis upon actuarial concerns about plan funding: "In other words, . . ., the death of a plan participant does not affect plan funding since the money is necessarily paid to a beneficiary in the event of a participant's death." Id., 212 F.R.D. at 361. But the district court bolstered its conclusion by relying on IRS Notice 96-8, which recommends a lump sum calculation method that does not use a pre-retirement mortality discount.

See also, Patrick Purcell, Pension Issues: Cash Balance Plans, Congressional Research Service #RL30196, August 7, 2003, noting that IRS Notice 96-8, as well as 26 C.F.R. §1.411(a) and 26 C.F.R. §1.417(e) prescribe this valuation method.

The central premise underlying the "whipsaw" calculation is

that a participant's benefit should not be reduced by electing to receive a lump sum instead of waiting to receive an annuity.  The participant therefore is given the benefit of the plan's interest credit rate to retirement age when determining the value of that lump sum.  Applying a pre-retirement mortality discount would run counter to the central premise, by effectively reducing the value of the interest credits.  The practical and actuarial reality of the AK Plan's death benefit also supports this conclusion.  There is little doubt that anomalies arise when cash balance plans are "shoehorned" into ERISA rules that were largely written before the advent of these plans.  See, e.g., Eaton v. Onan Corp., 117 F.Supp.2d 812, 818 (S.D. Ind. 2000), noting that the rules governing defined benefit plans "simply were not developed to address the features of cash balance pension plans."  Additional Congressional and/or regulatory guidance may be forthcoming, and would indeed be helpful.  But based on current law and the authorities discussed above, the Court concludes that a pre-retirement mortality discount should not be applied to the present value calculation because it would reduce a participant's "accrued benefit" of the interest credit rate projection.

3.   Annuity vs. Lump-Sum Form of Additional Benefits

The third major disagreement between the parties concerns the form that the distribution of additional benefits to the class members should take.  Plaintiffs advocate additional lump sum payments, while Defendants advocate for annual annuities commencing at age 65 for each class member.

Plaintiffs contend that an annuity would be contrary to the election that each class member already made to take a lump-sum distribution. In addition, most class members would have to wait, in some cases for years, before receiving any additional payments. Plaintiffs also suggest that AK Steel's uncertain financial condition might imperil payment of any such future annuities.

Defendants urge the Court to award annuities, rather than additional lump sum payments. Defendants note that ERISA does not require plans to permit lump sum payments, and the AK Plan is free to limit the availability of lump sum distributions. The AK Plan's Benefits Committee passed a resolution (Doc. 79, App. 54) after this Court's April 2004 order. That Resolution concludes that a participant who has already received a lump sum payment (all of the current class members) may only receive their additional whipsaw benefits in the form of a supplemental annuity beginning at age 65. The Resolution is based on the Committee's belief that annuity payments "more closely resemble the results that would occur under the written terms of the Plan. This is because the impact of the whipsaw calculation is less pronounced when benefits are paid in the form of a deferred annuity." Defendants assert that this "interpretation" of the Plan is entitled to deference from this Court. Finally, Defendants suggest that it should be the Plan sponsor, not the participants, who determines which of two available ERISA remedies will be implemented.

It is no doubt the case that the AK Plan drafters did not foresee the necessity of a "whipsaw" calculation for consensual lump sum distributions. But the AK Plan drafters **expressly** gave each participant the option of a lump sum distribution. The Class Members all took advantage of that option, but were underpaid as a matter of law. The Court does not view this question as one of defining the types of benefits employers may include in an ERISA plan, clearly a job for employers and plan drafters. Rather, the question is to determine the appropriate remedy due to the Class Members. The AK Plan Benefit Committee's after-the-fact attempt to eliminate additional lump sum payments to these Class Members is not binding on this Court, and cannot trump the election each Class Member already made to receive a lump sum payment.

The Court therefore finds that an award of an additional lump-sum amount to each Class Member best comports with the requirements of ERISA and with the goal of awarding damages in any ERISA case, to give the participant the benefits due under the law.

4.  Prejudgment Interest

Finally, Plaintiffs seek an award of prejudgment interest. It is well-settled that the court may award prejudgment interest in its discretion, and in accordance with general equitable principles. See, Rybarczyk v. TRW, Inc., 235 F.3d 975, 985 (6th Cir. 2000), quoting Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir. 1998). Pre-judgment interest is not awarded for

punitive purposes, but to compensate for the lost time value of money.

Defendants argue that any pre-judgment interest award would be punitive, because the class members are already receiving far more than they expected, and the AK Plan is being forced to pay far more than it expected. Defendants claim that whipsaw damages are essentially a windfall to class members, a result not countenanced by ERISA. They also point out the inequities that result from the application of the whipsaw calculation to lump-sum distributions, especially the fact that younger employees benefit more than older employees, whose loyalty and longevity are essentially penalized.

Damages in an ERISA case are awarded to make the claimant whole - to secure payment of benefits due under the law. The fact that class members may receive "more than they expected" does not alter that fact. Defendants' policy arguments concerning the propriety of whipsaw calculations in cash balance plans do not persuade this Court to deny all pre-judgment interest. The Court concludes that an award of pre-judgment interest is equitable under the circumstances; see, Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993).

The parties also disagree about the appropriate interest rate. The Court finds that in this case, the appropriate rate is that provided by 28 U.S.C. §1961(a), the one-year Treasury rate for the calendar week preceding the entry of a final judgment in this case. The Court rejects Plaintiffs' suggestions that the

Ohio pre-judgment interest rate, or the interest credit rate of Section 3.3 of the AK Plan, be used to calculate prejudgment interest. An award of interest at those levels would, in the Court's judgment, amount to a punitive award which is not the intent or purpose of prejudgment interest. See Ford v. Uniroyal Pension Plan, supra, 154 F.3d at 618: "An excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal . . .".

The Court recently held that pre-judgment interest in an ERISA case accrues from the date the plan administrator denies the participant's claim for benefits. See Dalesandro v. International Paper Company, Case No. 1:01-CV-109, Final Judgment entered July 8, 2005. The Court finds that the same accrual rule should apply here. Mr. West received his lump sum distribution in August 1997. Plaintiffs do not dispute that the prior lump sums paid to the Class Members were properly calculated under the AK Plan as it is written. Mr. West did not submit his administrative claim for additional "whipsaw" benefits until September 26, 2000, which was just after the decision in Esden v. Bank of Boston, 229 F.3d 154 (2d Cir. 2000), apparently the first court decision requiring a whipsaw calculation for lump sum payments. Mr. West's claim was administratively rejected on April 16, 2001. Therefore, the Court finds that pre-judgment interest should accrue from April 16, 2001 to the date of entry

of final judgment.  The Court concludes that awarding pre-judgment interest back to the date of each Class Member's prior distribution, or at a higher interest rate, would be inequitable and punitive under all the circumstances presented by this case.

## CONCLUSION

The Court finds that Plaintiffs are entitled to additional lump sum payments and prejudgment interest calculated in accordance with the findings contained in this Order.

The parties have submitted under seal a series of amended and supplemental class rosters, each reflecting various damage calculations under different assumptions.  The Court has recently ordered that nine individuals who previously opted out of the class will remain class members.  (See Doc. 128)

The Court orders that the parties file under seal an agreed roster of the current class members and the amount due to each class member, in accordance with the terms of this Order.  That roster should also state the total amount due to the class, for purposes of calculating pre-judgment interest.  That roster shall be filed within thirty days of the date of entry of this Order.  Pre-judgment interest will be calculated at the time of entry of a final judgment consistent with the final class roster and damage calculation.

**IT IS SO ORDERED.**


DATED: December 19, 2005                s/Sandra S. Beckwith
                                        Sandra S. Beckwith, Chief Judge
                                        United States District Court