**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Scott D. Dalesandro,            )
<u>et al.</u>,                  )
                                )
            Plaintiffs,          )  Case No. 1:01-CV-109
                                )
     vs.                         )
                                )
International Paper              )
Company,                        )
                                )
            Defendant.           )


O R D E R

        This matter is before the Court on Plaintiffs' motion
for attorney's fees, expenses, interest, and incentive awards
(Doc. No. 45) and supplemental motion for attorney's fees and
expenses (Doc. No. 67).

        This case is an ERISA class action in which the
Plaintiffs claimed benefits pursuant to a severance benefits plan
under the Champion International Paper Corporation Reorganization
Policy #828.  Plaintiffs are a class of former employees of
International Paper Company who accepted employment with Smart
Paper, LLC when Smart Paper purchased the Hamilton B Street Mill
from International Paper.  International Paper denied Plaintiffs'
claims for benefits on the grounds that, because they had
received offers of employment from Smart Paper, Plaintiffs had
not suffered an adverse employment action and, therefore, were
not entitled to receive severance benefits.  On review of the

plan administrator's decision, the Court determined that the plan
administrator's decision was arbitrary and capricious because he
made eligibility for benefits contingent upon his own definition
of "employment action" when the plan provided that benefits were
payable upon "termination," a term that was clearly defined by
the plan and which obviously encompassed the termination of
Plaintiffs' employment from International Paper.  The Court,
therefore, ruled that Plaintiffs were entitled to receive
severance benefits under the terms of the plan.  In the same
order, the Court certified a class of similarly-situated former
employees who are eligible to receive severance benefits under
the plan.

The foregoing is but a thumbnail sketch of the
procedural history of this case.  There are other procedural and
substantive events of consequence relevant in this case.  The
Court, however, will reserve description of those events until
they become relevant to the analysis of Plaintiffs' claims for
fees, expenses, interest, and incentive awards.  Pursuant to 28
U.S.C. § 1132(g),[1] Plaintiffs seek attorney's fees of $902,481.38

---

[1]    Section 1132(g) provides:

(g) Attorney's fees and costs; awards in actions
involving delinquent contributions

(1) In any action under this subchapter (other than an
action described in paragraph (2)) by a participant,
beneficiary, or fiduciary, the court in its discretion
may allow a reasonable attorney's fee and costs of
action to either party.

2

and costs of $12,874.79.  Plaintiffs also move for an award of prejudgment interest and named Plaintiffs Scott Dalesandro and Diane Noonan each seek an incentive award of $10,000. Plaintiffs' claim for attorney fees represents 2,116.90 claimed hours by six attorneys and one paralegal at various rates, totaling $601,654.25, enhanced by a multiplier of 1.5.

In its brief, International Paper suggests that an award of attorney's fees against it is not warranted, but, if the Court does decide to award attorney's fees, International Paper lodges a number of objections against the fees claimed by Plaintiffs.  Specifically, International Paper objects to hours spent during the administrative process and objects to billings for alleged duplicative work.  International Paper also objects to counsels' hourly rates as being excessive for this venue and to counsels' billing increments.  International Paper claims that counsel's fees are excessive for the work performed. International Paper contends that counsel's billing records are too vague, that Plaintiffs should not be compensated for pursuing unnecessary discovery disputes, and that the fees claimed for preparing the fee petition are excessive.  International Paper also objects to the claim for a fee multiplier and opposes Plaintiffs' claim for expenses.  International Paper argues that the Court should not give incentive awards to the named Plaintiffs.  In fact, it is fair to say that International Paper

opposes almost every aspect of Plaintiffs' fee application. International Paper suggests that a more appropriate fee award would be in the neighborhood of $194,000.

While the Court does not agree with all of International Paper's arguments, the Court does find that Plaintiffs' claim for fees should be reduced. The Court takes up the issues presented essentially seriatim.

### A. Whether Attorney's Fees Should Be Awarded

The district court has discretion in deciding whether to award attorney's fees to a prevailing plaintiff in an ERISA case. Armistead v. Vernitron Corp., 944 F.2d 1287, 1301 (6th Cir. 1991). In determining whether to award attorney's fees, the trial court is required to consider the following factors: 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the party's positions. Id.

At the outset, the Court notes that International Paper concedes the second and fourth elements, that is, it has the financial ability to satisfy a reasonable award of attorney's fees and that Plaintiffs sought to confer a benefit on many of

4

the plan's participants.  See Doc. No. 49, at 3 n.1.  The Court
finds that the remaining factors weigh in Plaintiffs' favor as
well.

Regarding the opposing party's bad faith or
culpability, the Court observes that Plaintiffs prevailed in this
matter under the arbitrary and capricious standard, which is the
least demanding form of judicial review.  The Court is cognizant
that an arbitrary and capricious denial of benefits does not
necessarily indicate culpability or bad faith.  See Heffernan v.
Unum Life Ins. Co. of Am., 101 Fed. Appx. 99, 109 (6th Cir.
2004); but see Gatlin v. National Healthcare Corp., 16 Fed. Appx.
283, 290 (6th Cir. 2001)(culpability requirement satisfied where
plan administrator's decision was arbitrary and capricious).
Nevertheless, even if prevailing under the arbitrary and
capricious standard does not automatically satisfy the first
element, the Court finds that it is satisfied in this case.  In
reaching this conclusion, the Court notes that in rendering his
decision, the plan administrator ignored the plain language of
the plan which favored Plaintiffs and imported his own terms and
definitions in order to deny Plaintiffs' claims for benefits.
Thus, International Paper was plainly culpable in this case.

Moreover, the plan administrator's interpretation of
the plan is suggestive of bad faith.  As indicated above, despite
clear language to the contrary, the plan administrator

5

interpreted the plan to deny benefits to employees who received
job offers from Smart Paper.  If this were a good faith
interpretation of the plan, then one must question why the plan
was amended to delete language which clearly and specifically
excluded employees who received subsequent offers of employment
from the purchaser of the Mill from coverage.  See Doc. No. 40,
(Court's order ruling on motions for judgment on the
administrative record), at 16.[2]  The plan amendment coupled with
the plan administrator's unsupportable decision gives credence to
Plaintiffs' theory that International Paper amended the plan in
order to retain its workforce so that it could sell the Mill as a
going concern and then reneged on its obligations under the
amended plan because of the expense.  See Doc. No. 29, at vii-
viii.  Therefore, this factor favors Plaintiffs.

   The above analysis indicates that International Paper's
position on the proper interpretation was relatively weak and
that Plaintiffs' position was relatively strong.  Thus, the last
factor favors Plaintiffs.

---

[2]   In that order the Court stated:

   The Court notes that a earlier severance plan adopted
   by Champion contained a provision which specifically
   made employees who were hired by the purchaser
   ineligible for severance benefits.  See Doc. No. 29,
   Ex. 14, § 1.8(a) ("Excluded Employee is an employee who
   . . . is offered employment by the Purchaser."

6

Finally, with regard to the third factor, an award of attorney's fees against International Paper would serve as a warning to employers not to use their employees and their employees' benefits as pawns in their corporate maneuverings. ERISA was enacted to prevent employers from circumventing their obligations and frustrating employees' expectations regarding their promised benefits. <u>Becker v. Mack Trucks, Inc.</u>, 281 F.3d 372, 381 (3rd Cir. 2002). An award of attorney's fees in this case would remind other employers that they are not to trifle with their employees' benefits.

In summary, the Court finds that all of the factors favor awarding Plaintiffs their reasonable attorney's fees in this case.

## B. <u>The Fees Claimed</u>

Plaintiffs' claim for attorney's fees and expenses is summarized as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Theresa Groh | 1,260.05 | $325/hr | $409,516.25 |
| John C. Murdock | 451.55 | $300/hr | $135,465.00 |
| Myron A. Wolf | 75.25 | $275/hr | $ 20,693.75 |
| Jeffrey S. Goldenberg | 17.7 | $275/hr | $  4,867.50 |
| Todd B. Naylor | 21.3 | $200/hr | $  4,260.00 |
| V. Brandon McGrath | 32.5 | $150/hr | $  4,875.00 |

<u>Paralegal</u>

Stephanie Vaaler       258.55     $ 85/hr        $ 21,976.75

Total Hours & Fees 2,116.90                     $601,654.25

Doc. No. 67. Ex. 1-A.

         In addition, as mentioned, Plaintiffs seek to multiply
the base fee by 1.5 as a reward for the quality of service and
for obtaining exceptional success.  Plaintiffs also appear to
suggest that a multiplier would be appropriate because of their
contingent fee arrangement.  However, in City of Burlington v.
Dague, 505 U.S. 557 (1992), the Supreme Court held that where a
federal fee shifting statute is applicable, as is the case here,
the trial court may not employ a multiplier to compensate for
contingent fee arrangements.  Id. at 567.  Therefore, counsels'
contingent fee arrangement is not a proper basis for increasing
the fees above the lodestar with a multiplier.  Plaintiffs' claim
for a 1.5 multiplier would have brought their application for
attorney's fees up to $902,481.38.

                B. The Hours Billed and Defendant's Objections

         The lodestar amount, i.e., the reasonable hours
expended times a reasonable hourly rate, is presumptively a
reasonable award of attorney's fees for the prevailing party.
Building Serv. Local 47 v. Grandview Raceway, 46 F.3d 1392, 1401
(6th Cir. 1995).  The Court should not, however, award the
plaintiff attorney's fees for duplicative or excessive hours. Cf.
Wayne v. Village of Sebring, 36 F.3d 517, 532-33 (6th Cir. 1994).

The Court will begin its analysis of the hours expended with an obvious problem.  International Paper argues, and the Court agrees, that the time spent and billed by Plaintiffs' counsel in preparing the fee application was excessive.  By the Court's calculation, Ms. Groh's appears to have spent 228.60 hours on this task.[3]  Mr. Murdock has billed 24.70 hours for the fee petition.[4]  Mr. Naylor spent 13.3 hours on fee-related issues.[5]  Paralegal Stephanie Vaaler apparently devoted 42.20 hours to fee petition.[6]  The Court notes that some of both Ms.

---

[3]    As indicated by the following entries with the hours in parentheses: June 30, 2003 (.50), July 9, 2003 (9), July 10, 2003 (10), July 11, 2003 (10), July 14, 2003 (11.5), July 15, 2003 (12), July 21, 2003 (13), July 22, 2003 (1), July 24, 2003 (8), July 25, 2003 (10), July 30, 2003 (9), July 31, 2003 (11.5), August 1, 2003 (2.30), August 2, 2003 (1.80), August 3, 2003 (2.50), August 4, 2003 (3.80), August 5, 2003 (1.30), August 6, 2003 (2.50), August 7, 2003 (3.30), August 8, 2003 (5.20), August 11, 2003 (.80), September 17, 2003 (3.50), September 18, 2003 (6.20), September 22, 2003 (5.80), October 9, 2003 (1), October 10, 2003 (3.70), October 13, 2003 (9.80), October 14, 2003 (.70), October 16, 2003 (6.20), October 17, 2003 (5.50), October 20, 2003 (11.50), October 21, 2003 (8.20), August 3, 2004 (1.80), August 4, 2004 (2.70), August 10, 2004 (8.50), August 11, 2004 (6.80), August 12, 2004 (4.20), August 13, 2004 (3.70), August 16, 2004 (2.50), August 17, 2004 (2.80), and August 18, 2004 (4.30).

[4]    As indicated by the following entries with the hours in parentheses: August 4, 2003 (.30), August 7, 2003 (.80), September 17, 2003 (.80), September 22, 2003 (3.25), October 9, 2003 (1.00), October 20, 2003 (9.50), October 21, 2003 (7.25), and August 13, 2004 (1.80).

[5]    As indicated by the following entries with the hours in parentheses: April 23, 2003 (8) and October 16, 2003 (5.30).

[6]    As indicated by the following entries with the hours in parentheses: June 30, 2003 (3.50), July 1, 2003 (5.75), July 2, 2003 (6.00), July 3, 2003 (6.00), July 7, 2003 (6.25), August 11, 2003 (1.50), October 14, 2003 (3.30), October 16, 2003 (2.70),

Groh's and Ms. Vaaler's billings for preparing the fee application are included with billings for other tasks. For example, on October 13, 2003 Ms. Groh billed a block of 9.80 hours with the description:

> Review letters from class members objecting to Defendants' calculation of benefits; conference with SAV re: same; review and research Defendants' Opposition to Attorney's Fees Motion; outline and draft Reply; phone conference with defense counsel McElligott re: employees' objections to Defendants' calculations of benefits; phone conference with James Hillmann re: customary copy charges; draft Hillmann Affidavit.

See Doc. No. 67, Ex. 1-A, at 5. The Court has no way to discern from this description how many hours Ms. Groh spent on the motion for fees. Similar entries are logged on July 9, 2003, July 21, See id.; Doc. No. 45, Ex. 1. Ms. Vaaler also has a vague or unspecific entry for fees on October 16, 2003. The Court may deduct a reasonable amount of hours if the attorney fails to account adequately for large blocks of time. Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998). Given, however, that Ms. Groh spent parts of forty-one different days working on the fee application, it seems safe to assume to that the bulk of the blocked time was also spent on fees. The Court, therefore, assumes that 90%, or 205.74, of the 228.60 hours was actually spent by Ms. Groh on the fee application. Ms. Vaaler's vague time entry, which was only for 2.70 hours, is rather de

---

October 20, 2003 (3.00), and October 21, 2003 (4.20).

minimis.  Therefore, the Court will assume that all of that time
was spent on fee related issues.

Using the figures above, counsel expended 285.94 hours,
or 13.50% of the time billed, preparing and defending their fee
petition.  In <u>Coulter v. State of Tenn.</u>, 805 F.2d 146 (6th Cir.
1986), the Court held that hours spent preparing and litigating
the attorney fee case should not exceed 3% of the fees allowed in
the underlying case where the issue is submitted on papers
without a trial.  <u>Id.</u> at 151.  The Court will, therefore, at this
time deduct 285.94 hours from the base hours claimed of 2,116.90,
and then add back 3% of the final hours allowed for litigating
the fee application after further remaining adjustments are made.
Thus far, the subtotal of hours allowed is 1,830.96.

International Paper also argues that Plaintiffs should
not be compensated for time expended in an unsuccessful attempt
to recoup payment for accrued but unused vacation time.  The
Court agrees.  Normally, in assessing fees, the trial court will
judge the plaintiff's degree of success as a whole rather than
parsing the case into successful and unsuccessful claims.
<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983).  The exception is
where the plaintiff asserts distinct claims for relief based on
different facts and legal theories.  <u>Id.</u> at 434.  In such a case,
the trial court may judge success on a claim-by-claim basis and
adjust the fee accordingly.  <u>Id.</u>

11

Plaintiffs' claim for payment for accrued but not used vacation time, while perhaps not technically a distinct claim for relief, was obviously an afterthought injected into the case after some of the class members objected to their benefits calculations.  See Doc. No. 63 (Court's order holding that Plaintiffs failed to properly assert claims for vacation pay). The vacation pay issue was a separate and distinct phase of the litigation in which Plaintiffs clearly did not prevail. Therefore, the Court concurs with International Paper that Plaintiffs should not be compensated for hours expended in their late-breaking and unfruitful attempt to recover vacation pay in this case.  By the Court's calculation, Ms. Groh expended 98.48 hours on this issue,[7] Mr. Murdock spent 12.50 hours on this

---

[7]      As indicated by the following entries with the hours expended in parentheses: October 13, 2003 (.98), October 27, 2003 (3.80), October 28, 2003 (7.80), October 29, 2003 (9.20), October 31, 2003 (1.70), November 10, 2003 (8.00), November 11, 2003 (6.70), November 12, 2003 (4.50), November 14, 2003 (.50), November 17, 2003 (1.80), November 18, 2003 (.80), November 19, 2003 (1.20), November 21, 2003 (1.20), December 1, 2003 (1.30), December 2, 2003 (6.50), December 3, 2003 (3.50), December 8, 2003 (2.00), December 9, 2003 (3.80), December 10, 2003 (1.00), December 11, 2003 (1.50), December 12, 2003 (4.20), December 15, 2003 (2.70), December 16, 2003 (3.70), December 17, 2003 (4.20), December 18, 2003 (3.30), December 22, 2003 (.70), December 23, 2003 (.50), January 9, 2004 (.70), January 14, 2004 (2.50), February 10, 2004 (2.00), February 17, 2004 (1.50), February 18, 2004 (2.80), March 1, 2004 (1.50), March 2, 2004 (.80), and March 5, 2004 (.50).  With regard to the October 13, 2003 time entry, the Court has already deducted 90% of that entry because of vagueness of the entry on time spent preparing the fee application.  In order to avoid double-counting, the Court only deducted the remaining 10%, or .98 hours, for time spent on the vacation pay issue.

issue,[8] and Ms. Vaaler spent 60.4 hours on this issue.[9]  The
Court, therefore, will deduct an additional 171.38 hours from the
hours billed.  The subtotal of allowed hours thus far is
1,659.58.

The next point of contention is whether Plaintiffs
should receive attorney's fees for time spent during the
administrative process, which in this case, also includes time
spent litigating International Paper's motion to stay and whether
Plaintiffs would be required to exhaust the available
administrative remedies.  International Paper argues that
Plaintiffs should not receive attorney's fees for exhausting the
administrative process.  Plaintiffs argue that they should be
compensated because the fees were incurred at International
Paper's insistence (in other words, International Paper could

---

[8]     As indicated by the following entries with the hours
expended in parentheses: October 27, 2003 (3.50), October 28,
2003 (2.90), October 29, 2003 (2.70), November 1, 2003 (.70),
November 10, 2003 (.30), November 11, 2003 (.50), November 12,
2003 (.30), November 14, 2003 (.20), November 17, 2003 (.50),
November 18, 2003 (.20), and November 19, 2003 (.70).

[9]     As indicated by the following entries with the hours
expended in parentheses: October 13, 2003 (.20), October 15, 2003
(3.80), October 29, 2003 (2.00), November 6, 2003 (4.00),
November 7, 2003 (5.50), November 10, 2003 (5.80), November 11,
2003 (4.00), November 12, 2003 (.50), November 17, 2003 (.50),
November 18, 2003 (3.00), November 19, 2003 (.90), December 1,
2003 (.70), December 2, 2003 (4.30), December 11, 2003 (1.80),
December 12, 2003 (1.00), December 18, 2003 (1.70), December 19,
2003 (.80), December 22, 2003 (1.30), December 23, 2003 (1.30),
January 9, 2004 (1.50), January 21, 2004 (3.00), January 22, 2004
(2.90), January 23, 2004 (5.00), March 2, 2004 (.20), March 3,
2004 (.50), March 4, 2004 (2.00), and March 5, 2004 (2.20).

have waived the normal exhaustion requirement) to pursue a futile administrative process for purposes of delay.  This presents a close question because, on one hand, there had not been a final interpretation of the plan by the plan administrator at the time Plaintiffs initiated this lawsuit.  Indeed, as the Court noted in an earlier order, Plaintiffs commenced this lawsuit about a week after filing their claims for severance benefits.  On the other hand, Plaintiffs make a persuasive argument that the outcome of the administrative process was a foregone conclusion and they should not have been required to pursue it at all.

The principal case from our circuit on this point is Anderson v. Proctor & Gamble Co., 220 F.3d 449 (6th Cir. 2000), in which the Court held that a prevailing ERISA claimant could not recover attorney's fees for the administrative phase of a benefits proceeding.  Id. at 456.  In Anderson, as opposed to this case, the plaintiff prevailed during her administrative appeal and filed a federal suit solely for the purpose of recovering her attorney's fees.  In this case, Plaintiffs filed suit in federal court to recover benefits alleged to be due, and only later incurred fees in the administrative process.  Nevertheless, Peterson v. Continental Cas. Co., 282 F.3d 112 (2nd Cir. 2002), on which Plaintiffs rely, is also distinguishable.  In Peterson, the claimant filed a claim for benefits and pursued the claim through a final decision at the administrative level

before filing suit in federal court.  The district court remanded the case to the plan administrator to consider the medical evidence against the claimant's true regular occupation.  The plan administrator again denied benefits to the claimant.  The district court held that the plan administrator's decision was arbitrary and capricious and reversed the decision.  The district court awarded the claimant attorney's fee incurred during the administrative process both before and after she filed the federal suit.  On appeal, the Court held that the claimant could not recover the attorney's fees she incurred for the pre-litigation administrative process, but that she could recover the attorney's fees she incurred in the second administrative proceeding after the district court acquired jurisdiction and remanded the case to the plan administrator.  See id. at 119-23.

This case is distinguishable from Peterson because Plaintiffs had not exhausted any administrative process when they filed this lawsuit.  Moreover, this Court did not remand issues to the plan administrator for reconsideration.  Rather, the Court merely stayed the case so that the initial administrative process could be completed.  Thus, this case is more like Anderson and the Peterson Court's holding on pre-litigation administrative process fees, than the Peterson Court's holding on post-litigation administrative process fees.  In other words, Plaintiffs filed this lawsuit at such an early stage in the

15

process that, although they incurred legal fees during administrative proceedings post-litigation, in reality the administrative process was the functional equivalent of a pre-litigation proceeding.  Therefore, the Court finds that <u>Anderson</u> controls the decision here and mandates that Plaintiffs may not recover attorney's fees for exhausting the administrative process.  Similarly, Plaintiffs should not recover fees for time spent litigating the motion to stay as these fees would not have been incurred had they allowed the administrative process to play out.  Although the Court is not without misgivings about this decision because of the relative predictability of the plan administrator's decision, a contrary result would tend to encourage the premature institution of federal proceedings and thwart the purpose of requiring exhaustion of remedies in ERISA cases.  <u>Costantino v. TRW, Inc.</u>, 13 F.3d 969, 975 (6th Cir. 1994) (listing policies behind administrative exhaustion requirement).

     The Court's review shows that Ms. Groh spent 140.75 hours on the administrative process and litigating the motion to

stay[10] and Mr. Murdock spent 44.75 hours on these tasks.[11]  The
Court will, therefore, deduct an additional 185.50 hours from the
total claimed.  The subtotal of hours allowed thus far is
1,474.08.

The next issue for consideration is whether Plaintiffs
should be awarded attorney's fees for time spent on discovery
issues.  International Paper argues that Plaintiffs should not be
compensated for pursuing unnecessary discovery disputes.
International Paper seeks to exclude hours billed for drafting
discovery requests and preparing and filing two motions to compel
to obtain documents that were not part of the administrative
record and therefore not relevant to the case.  Plaintiffs'
discovery fees are split between merits issues and class
certification issues.  The Court agrees with International Paper
that Plaintiff should not recover fees for time spent preparing

---

[10]    As indicated by the following entries with the hours
expended in parentheses: March 20, 2001 (8), March 21, 2001
(5.5), March 22, 2001 (10), March 23, 2001 (6.50), April 4, 2001
(4), April 5, 2001 (4), April 6, 2001 (6), April 9, 2001 (7),
April 12, 2001 (.75), April 23, 2001 (3.50), April 27, 2001 (3),
September 25, 2001 (1.50), October 10, 2001 (11), October 11,
2001 (12), October 12, 2001 (12), October 13, 2001 (6), October
14, 2001 (10), October 15, 2001 (7), December 7, 2001 (5),
December 10, 2001 (9), December 11, 2001 (2), January 11, 2002
(5), and January 14, 2002 (2).

[11]    As indicated by the following entries with the hours
expended in parentheses: March 20, 2001 (6.25), March 22, 2001
(7.75), March 23, 2001 (5.50), March 30, 2001 (1.50), April 4,
2001 (3.50), April 6, 2001 (1.50), April 9, 2001 (6.50), April
12, 2001 (.75), April 23, 2001 (1.50), April 27, 2001 (1.50),
December 7, 2001 (2.75), December 11, 2001 (1.50), January 11,
2002 (3.25), and January 14, 2002 (1).

merits-based discovery requests and motions, although Plaintiffs should be compensated for class certification discovery issues.

In an ERISA case, the Court's review is typically limited to the record that was before the plan administrator, and the plaintiff is not entitled to discovery beyond the administrative record except to resolve procedural issues on claims of denial of due process by the plan administrator or claims of alleged bias on the part of the plan administrator. Putney v. Medical Mut. of Ohio, 111 Fed. Appx. 803, 806-07 (6th Cir. 2004). In their reply brief, Plaintiffs argue that pursuit of discovery was necessary to develop a factual basis for such due process and bias claims. See Doc. No. 53, at 25-26. The Court notes, however, that counsel expended hours on discovery issues at the outset of the case, when the administrative process had just commenced. At that early stage, until Plaintiffs had actually been thwarted by the plan administrator in their attempt to develop a proper administrative record, and had suffered prejudice as a result by a denial of their claims, there was no need to conduct discovery on these issues. This points out the wisdom of letting the plan's administrative process play out – it keeps the parties from pursuing issues that may not be of consequence.

Moreover, as opposed to a case involving a claim for medical or disability benefits in which there is likely to be

18

substantial documentary evidence to present to the plan administrator, in large part this case presented a question of plan interpretation based on a set of mostly undisputed facts. In other words, there was likely to be little dispute over the basic facts. Plaintiffs were participants in the plan, their employment with International Paper ended, and they were hired or were offered jobs by Smart Paper. The only question was whether that set of facts established entitlement to severance benefits under the plan. Thus, in the Court's opinion, there is very little the plan administrator could have done to unfairly restrict the administrative record. The Court, therefore, agrees with International Paper that at least some of the hours billed by counsel in pursuit of merits discovery issues will have to be deducted.

In determining how many hours to deduct for time expended on merits discovery issues, the Court is again faced with entries in which time on discovery is commingled with time on other issues. Initially, therefore, the Court will simply total hours in which discovery or merits discovery is an entry (excluding entries which clearly show time spent on class certification discovery, which the Court believes was time reasonably and properly spent) and then attempt to arrive at a proper estimation of the time that should be deducted. The Court's review of counsel's time sheets shows that Ms. Groh has

19

entries totaling 342.25 hours in which at least part of the time was expended on discovery issues.[12]  Mr. Murdock's time sheet has entries totaling 43 hours in which at least some of the time was apparently expended on merits discovery.[13]  Mr. McGrath devoted four hours to discovery-related issues on February 21, 2001.

Initially, the Court finds that any hours expended by counsel on discovery issues before the administrative proceedings were completed were not reasonably and necessarily spent. Although Plaintiffs obviously had suspicions regarding the integrity of the proceedings, it is not reasonable to prepare to embark on a discovery expedition into bias and procedural issues before the process is completed and a final decision rendered. The Court will, therefore, deduct all hours expended on discovery

---

[12]    As indicated by the following entries with the hours expended in parentheses: February 21, 2001 (14), February 23, 2001 (5.5), May 28, 2001 (2.5), May 29, 2001 (4), May 30, 2001 (7), May 31, 2001 (4), June 1, 2001 (2.5), June 2, 2001 (7), June 4, 2001 (10), June 5, 2001 (8.5), June 6, 2001 (.50), August 3, 2001 (6), August 10, 2001 (.50), August 17, 2001 (1), May 1, 2002 (10), May 2, 2002 (7.5), May 17, 2002 (2.5), June 3, 2002 (1), June 5, 2002 (1), June 6, 2002 (.50), June 18, 2001 (.75), June 19, 2001 (1), June 20, 2001 (2.5), July 30, 2001 (2), August 3, 2001 (6), August 10, 2001 (.50), August 17, 2001 (1), June 25, 2002 (12), June 26, 2002 (14), June 29, 2002 (13), June 30, 2002 (14), July 1, 2002 (12), July 2, 2002 (12), July 3, 2002 (14), July 8, 2002 (1), July 23, 2002 (3.0), July 24, 2002 (9), July 25, 2002 (11), July 27, 2002 (12), July 28, 2002 (14), July 30, 2002 (14), August 2, 2002 (14), August 3, 2002 (12), August 4, 2002 (12), August 6, 2002 (13), August 7, 2002 (10), August 8, 2002 (8), and  August 9, 2002 (9).

[13]    As indicated by the following entries with the hours expended in parentheses: February 21, 2001 (12.25), May 1, 2002 (8.50), May 2, 2002 (4.25), May 23, 2002 (1), August 8, 2002 (10.25), and August 9, 2002 (6.75).

prior to December 7, 2001, when a final decision was rendered at the administrative level on Plaintiffs' claims for benefits. Where discovery entries are intermingled with entries on other tasks, the Court has assumed that 30% of the time was expended on discovery and reduced the hours accordingly.  A 30% reduction is admittedly somewhat arbitrary, but is intended to reflect the Court's reasoned judgment on the amount of time likely to have been spent on discovery based on the content of the entire entry. The entries where the Court made estimates on time spent on discovery are identified below with an asterisk.  The Court, therefore, makes the following reductions for time expended on merits discovery prior to the completion of the administrative process: Groh, 49.50 hours,[14] Murdock, 3.68 hours,[15] McGrath, 4 hours,[16] for a total reduction of 57.18 hours.

The subtotal of hours allowed thus far is 1,416.90.

The next issue is whether more hours should be deducted for time spent on merits discovery after the administrative

---

[14]    As indicated by the following entries with the hours expended in parentheses: February 21, 2001 (4.2*), February 23, 2001 (1.65*), May 28, 2001 (2.5), May 29, 2001 (4), May 30, 2001 (7), May 31, 2001 (4), June 1, 2001 (2.5), June 2, 2001 (2.1*), June 4, 2001 (3), June 5, 2001 (8.50), June 6, 2001 (.50), June 18, 2001 (.75), June 19, 2001 (1), June 20, 2001 (2.5), July 30, 2001 (2), August 3, 2001 (1.8*), August 10, 2001 (.50), and August 17, 2001 (1).

[15]    As reflected in the February 21, 2001, representing a reduction of 30%.

[16]    Entry of February 21, 2001.

process was completed.  The hours expended relate to Plaintiffs'
motion to compel merits discovery (Doc. No. 27).  Ultimately,
this motion became moot because of the Court's ruling on the
parties' cross-motions for judgment on the administrative record.
Nonetheless, the issue here is not whether Plaintiffs' motion was
successful or unsuccessful, but whether the hours expended by
counsel pursuing discovery were necessary and reasonable.  There
remain 332.07 hours of entries with at least some time spent on
merits discovery after the deduction of the 57.18 hours above.
Applying the 30% assumption to 332.07 hours leaves an estimate of
99.62 hours spent in pursuit of merits discovery.

        Under the circumstances of this case, the Court cannot
say that 99.62 hours expended on merits discovery was
unreasonable or unnecessary.  As the Court indicated, <u>supra</u> at 5-
6, the plan administrator's interpretation of the plan suggested
bad faith.  In addition, although the Court has disallowed hours
expended on the administrative process, there was a reasonable
basis for counsel to believe that the administrative process was
likely to be only a formality.  Therefore, the Court believes
that Plaintiffs' had a reasonable basis to pursue bias and due
process discovery under the <u>Wilkins</u> decision.  In <u>Heffernan</u>, the
Court permitted the plaintiff to recover forty-hours of
attorney's fees for discovery when she raised a procedural
challenge to the plan administrator's decision.  <u>See</u> <u>Heffernan</u>,

104 Fed. Appx. at 109.  Because of the rather unique nature of
the case, the Court does not believe that awarding Plaintiffs a
little more than double the fees in <u>Heffernan</u> in pursuit of a
procedural challenge is unwarranted.  Accordingly, the Court will
not make any further deductions for hours expended on discovery.

          International Paper also objects to a number of hours
billed by attorney Myron Wolf.  It appears from the record that
Plaintiffs initially contacted Mr. Wolf about their claims, who
then referred the case to Ms. Groh and Mr. Murdock.  Thereafter,
it appears that Mr. Wolf acted primarily in a liaison or
consultative capacity.  Mr. Wolf submitted a bill for $20,693.75.
representing 75.25 hours of time at $275.00 per hour.  <u>See</u> Doc.
No. 46.  As International Paper correctly points out, after the
initial referral and consultations with Ms. Groh and Mr. Murdock,
which appear to have been completed on or about February 16,
2001, almost the entirety of Mr. Wolf's remaining time entries
consist of receiving and reviewing pleadings and letters filed or
sent by others.  There is no indication in the time sheets that
receiving and reviewing this documents triggered any tangible
action which contributed to the overall success of the case.  To
the extent that simply receiving and reviewing pleadings and
letters contributed in a substantive manner to the case, this
activity was clearly duplicative of work performed by Ms. Groh
and Mr. Murdock.  Therefore, the Court disallows all hours billed

23

by Mr. Wolf after February 16, 2001, a total of 54.75 hours.  The
Court allows 20.5 hours for services rendered by Mr. Wolf from
the inception of the case through February 16, 2001.

The subtotal of hours allowed thus far is 1,362.15.

International Paper also complains about other
duplicative hours, block billing, and counsels' billing
increments.  International Paper also complains that expensive
partners performed work that could have been done by less
expensive associates.  Where block billing seemed to impose an
obstacle in determining the reasonable hours expended, the Court
made what it believes are appropriate adjustments to account for
the ambiguity of the entry.  The Court is cognizant that in some
cases a plaintiff would not recover fees for work performed by
partners that could have been done by an associate.  On the
other hand, as pointed out in their papers, Plaintiffs' counsels'
firm has only four lawyers and one associate.  Thus, the division
of labor between partner and associate can go only so far.  Under
similar circumstances, the Seventh Circuit ruled that the
district court erred in reducing plaintiff's fee award where she
was represented by a small firm.  See Price v. Marshall Erdman &
Assoc., Inc., 966 F.2d 320, 327 (7th Cir. 1992).  This is also a
double-edged argument, because it is possible that a partner can
do the required work more quickly and efficiently than an
associate.  See In re Boston & Maine Corp., 776 F.2d 2, 9 (1st

24

Cir. 1985) ("Associates, however, are not invariably more cost-effective than partners.  In some circumstances, and assuming of course that the partner is not performing merely routine work, the use of a more experienced attorney may save time because of his ability to size-up and do only what needs to be done most effectively.").  Therefore, the Court will not make any further reduction in the hours allowed on the grounds that an associate could have performed work done by partners.

The Court does agree, however, that counsel's time sheets reflect unnecessary duplication of effort on certain occasions.  The Court particularly observes duplication where two or more lawyers appear to have performed the same task on the same day.  The Court outlines these seemingly duplicative hours below:

**February 17, 2001**

TLG - research & fact investigation; conferences        12 hours
    with JCM, VBM, and JSG

JSG - conferences with TLG, JCM & VBM; research          6 hours

VBM - research ERISA; conferences with TLG, JCM &        4 hours
    JSG


**February 18, 2001**

JCM - research & fact investigation; conferences     12.75 hours
    with TLG & VBM

TLG - research & fact investigation; conferences        14 hours
    with JCM & VBM

25

VBM - research ERISA; conferences with JCM & TLG       6 hours

**February 19, 2001**

JCM - research & draft complaint; conferences       10.5 hours
      with TLG, VBM & JSG

TLG - research & draft complaint; conferences       12 hours
      with JCM, VBM & JSG

JSG - conferences with TLG, JCM, & VBM              3 hours

VBM - research ERISA; conferences with JCM,         8 hours
      TLG & JSG


**February 20, 2001**

JCM - research & draft complaint; conferences JCM,  10.75 hours
      TLG & JSG

TLG - research & draft complaint; conferences       12 hours
      with JCM & VBM

VBM - research ERISA; conferences with JCM &        8 hours
      TLG

**February 21, 2001**

JCM - review/revise complaint; draft class          8.57 hours[17]
      representatives rights and responsibilities;
      draft first set of documents requests; draft
      memo to VBM re: discovery; conferences with
      TLG.

TLG - draft complaint; review JCM memo to VBM re:   9.8 hours[18]
      discovery; conferences with JCM; prepare for
      and meet with clients.

---

[17]    The actual entry is for 12.25 hours, but the Court has
already deducted 3.68 hours from this entry in analyzing
discovery fees.  See supra, at 21.

[18]    As indicated in footnote 17, the actual entry was for
14 hours, but the Court has already deducted 4.20 hours in its
discovery analysis.

**February 22, 2001**

JCM - prepare civil cover sheet and attachment to    6.5 hours
      same; edit/revise complaint; conferences with
      TLG.

TLG - draft, revise and finalized complaint;    10 hours
      conferences with JCM; phone conferences with
      clients.

**June 12, 2001[19]**

TLG - phone conference with witness.    1.5 hours

JCM - phone conference with witness.    1.5 hours

**June 11, 2002**

TLG - review Defendant's motion for judgment on    11 hours
      administrative record; research.

JCM - review Defendant's motion for judgment on    8.50 hours
      administrative record; research.

**June 12, 2002**

TLG - review Defendant's motion for judgment on    14 hours
      administrative record; conference with JCM re:
      same; research.

JCM - review Defendant's motion for judgment on    7.25 hours
      administrative record; conference with TLG re:
      same.

**June 13, 2002**

JCM - review/analyze Defendant's motion for judgment  6 hours
      on administrative record; follow up research.

---

[19]    There were also some apparently duplicative hours
billed in March and April 2001 in reference to litigating the
International Paper's motion to stay.  The Court, however, has
already deducted all of these hours in its exhaustion of
administrative remedies analysis.  See supra, at 17.

TLG - meeting with SV re: research and organization  12 hours
      of administrative record; research re:
      Defendant's motion for judgment.

**June 15, 2002**

TLG - research re: Defendant's motion for judgment;  12 hours
      conference with JCM.

JCM - conference with TLG re: research and motion  12 hours
      for judgment; review/analysis of Defendant's
      motion for judgment.

**June 30, 2002**

TLG - research issues re: Defendant's motion for    14 hours
      judgment, Plaintiffs' entitlement to judgment;
      Plaintiff's entitlement to discovery; phone
      conferences with clients and other employees;
      draft affidavits; conference with JCM re:
      class certification research and brief sections
      and strategy.

JCM - draft, and supplemental research, Plaintiffs'  11.5 hours
      motion for class certification; conference
      with TLG re: class certification research
      and brief sections and strategy.

**July 2, 2002**

TLG - draft opposition to judgment motion; research 12 hours
      issues re: Defendant's motion for judgment,
      Plaintiffs' entitlement to judgment; Plaintiffs'
      entitlement to discovery; phone conferences
      with clients and other employees; draft
      affidavits; conference with JCM re: class
      certification research and brief sections and
      strategy.

JCM - assist in draft/edit opposition to judgment   10.5 hours
      motion; research and final edits to Plaintiffs'
      motion for class certification; conference
      with TLG re: class certification research and
      brief sections and strategy.

**July 24, 2002**

TLG - review Defendant's supplement to          9 hours
      administrative record; review Defendant's
      response to motion to compel discovery related
      to the merits; conference with JCM; review
      and research Defendant's opposition to
      Plaintiffs' motion for judgment.

JCM - review Defendant's response to Plaintiffs'   3.25 hours
      motion to compel discovery related to class
      certification; strategy conference with TLG.

**July 25, 2002**

TLG - review Defendant's supplement to          11 hours
      administrative record; review Defendant's
      response to motion to compel discovery
      related to the merits; conference with JCM;
      review and research Defendant's
      opposition to Plaintiffs' motion for judgment.

JCM - review/analysis of Defendant's reply/     7.25 hours
      opposition memorandum; conference with TLG.

**August 4, 2002**

TLG - research, draft and revise reply memorandum   12 hours
      in support of Plaintiff's motion for judgment;
      Plaintiffs' motion to compel.

JCM - research and assist in drafting reply      5.75 hours
      memorandum in support of Plaintiff's motion
      for judgment; research and draft reply
      memorandum in support of class certification.

**August 7, 2002**

TLG - Research, draft and revise reply memorandum   10 hours
      in support of Plaintiffs' motion for judgment,
      Plaintiffs' motion to compel; conference with
      JCM re: reply memorandum in support of class
      certification.

JCM - research and draft reply memorandum in support   12 hours
      of class certification; conference with TLG
      re: same.

**August 8, 2002**

JCM - draft reply in support of Plaintiffs' motion        10.25 hours
     for class certification; conference with TLG;
     assist in edit/revision Plaintiffs' reply
     memorandum in support of Plaintiff's motion
     for judgment, Plaintiffs' motion to compel.

TLG - research, draft and revise reply memorandum        8 hours
     in support of Plaintiffs' motion for judgment,
     Plaintiffs' motion to compel; conference with
     JCM re: reply memorandum in support of class
     certification.

**August 9, 2002**

TLG - letter to Roberts, Younger/McElligott;        9 hours
     research, draft and revise reply memorandum
     in support of Plaintiffs' motion for judgment,
     Plaintiffs' motion to compel; conference with
     JCM re: reply memorandum in support of class
     certification; phone conference with clients.

JCM - draft/edit reply in support of Plaintiffs'        6.75 hours
     motion for class certification; draft reply
     in support of motion to compel re: merits;
     conference with TLG.

**November 25, 2002**

TLG - review Roberts letter w/attached IP motion        3 hours
     to supplement motion for judgment on
     administrative record; conference with JCM;
     research.

JCM - review/analysis of IP motion to supplement        2.5 hours
     motion for judgment on administrative
     record; conference with TLG.

**December 3, 2002**

JCM - review and revise opposition supplement;        2 hours
     conference with TLG.

TLG - conference with JCM; finalize opposition        3 hours
     to motion to supplement.

**February 6, 2003**

TLG - prepare for and participation in                4 hours
        conference with Court, conference with
        JCM re: same.

JCM - conference with TLG; prepare for and            3 hours
        participate in Court conference.

**May 22, 2003**

TLG - conference with JCM re: judgment issues     7.5 hours
        and settlement; phone conference with
        opposing counsel; research fees and interest
        issues.

JCM - conference with TLG re: judgment issues and   4 hours
        settlement; preparation for phone conference
        with opposing counsel; phone conference re:
        final judgment with opposing counsel and
        follow up.

**May 30, 2003**

TLG - prepare for phone conference with defense     2 hours
        counsel re: outstanding issues for final
        judgment entry; conference with JCM; phone
        conference with McElligott re: final
        judgment issues.

JCM - prepare for phone conference with defense     2.5 hours
        counsel re: outstanding issues for final
        judgment entry; conference with JCM.

**June 20, 2003**

TLG - prepare for phone conference; phone           2 hours
        conference with Judge Beckwith re: final
        judgment entry and briefing schedule.

JCM - prepare for phone conference; phone           5.25 hours
        conference with Judge Beckwith re: final
        judgment entry and briefing schedule;
        detailed review of IP proposed notice and
        draft Exhibit A for notice.

**July 2, 2003**

```
TLG - revised notice; conference with JCM;        2 hours
      letter to M. Wolf.

JCM - draft proposed notice; conference           2.25 hours
      with TLG.
```

**July 7, 2003**

```
JCM - draft, revise and finalize proposed notice;  3.5 hours
      conference with TLG; draft correspondence
      to James McElligott enclosing final class
      notice and Exhibit A's proposed by Plaintiffs.

TLG - review proposed notice submitted to Court;   2 hours
      conference with JCM.
```

**August 25, 2003**

```
TLG - review Court order approving distribution    1.20 hours
      of notice to the class; conferences with
      JCM and SAV re: the procedure for drafting and
      sending notice to the class.

JCM - conference with TLG and SAV re: drafting and  .80 hours
      sending notice to the class.

SAV - conference with TLG and JCM re: sending notice .80 hours
      to the class.
```

**August 28, 2003**

```
JCM - review final notice and draft recommended     .50 hours
      changes; conference with TLG re: same;
      conference with SAV re: issuance of notice.

TLG - conference with JCM re: final notice language .20 hours

SAV - conference with JCM re: sending notice to     .30 hours
      the class.
```

**September 8, 2003**

```
TLG - conference with JCM and review of class notice .80 hours
      and Exhibit A drafts; review stipulated entry
      approving amended class action notice, conference
      with JCM re: same.
```

JCM - draft entry and forward to opposing counsel    3.20 hours
      approving Rule 23 class action notice; final
      review of class notice with Exhibit A and
      forwarded to opposing counsel; conference with
      TLG re: class notice, attachments thereto and
      entry opposing same.


**September 19, 2003**

TLG - conference with JCM re: modification of notice .30 hours
      to the class.

JCM - conference with TLG re: modification of notice .30 hours
      to the class.

**September 23, 2003**

TLG - coordinate and finalize class action notice;    .80 hours
      conferences with JCM and SAV re: same.

JCM - conference with TLG and SAV re: class action    .30 hours
      notice.

SAV - meeting with CP re: giving instructions on      2.70 hours
      format of Flex Six documents to be typed;
      obtain envelopes for mailing; prepare notice
      of mailing; conferences with JCM and TLG re:
      class notice.

**November 12, 2003**

TLG - Draft and revise Plaintiffs' responses to       4.50 hours
      Defendant's interrogatories and requests for
      production of documents; phone conferences with
      clients re: same; conference with JCM re:
      same; conference with SAV re: same.

JCM - conference with TLG re: Plaintiffs' responses   .30 hours
      to Defendant's interrogatories and requests for
      production of documents.

SAV - revise exhibits to discovery responses;          .50 hours
      prepare Exhibit for discovery response;
      conference with TLG re: same.

**July 26, 2004**

TLG - draft and revise report to Court re: class          3.70 hours
      notice and need for final judgment entry;
      conference with JCM re: pension enhancement
      valuation and expert report re: same.

JCM - conference with TLG re: pension valuation            .50 hours
      and Rosen work on report re: same.

**July 27, 2004**

TLG - draft and revise report to the Court re:            2.80 hours
      class notice and need for final judgment
      entry; compile exhibits and draft affidavits
      to the Plaintiffs' report; conference with
      JSG re: pension valuation.

JSG - conference with TLG; valuation and analysis         1.80 hours
      related to Flex 6 recipients.

**August 5, 2004**

TLG - phone conference with H. Rosen re:                  3.20 hours
      calculation of Flex Six Pension Enhancement
      value to class; review pension enhancement
      calculations on the 17 Exhibit A's for the
      qualified class members; review the entire
      retirement plan; compile materials to transmit
      to H. Rosen and draft letter re: same;
      conference with JCM re: same.

JCM - conference with TLG re: expert valuation of          .50 hours
      the pension enhancements.

**August 6, 2004**

TLG - phone conferences with H. Rosen re:                 1.50 hours
      preliminary calculations and report to submit
      to the Court; identify missing information and
      conference with SAV re: follow up to get
      information on dates of birth and race
      information; conference with JCM re: same.

JCM - conference with JCM re: expert analysis of           .50 hours
      pension enhancement.

SAV - conference with TLG re: filling in missing           .20 hours
      information for the pension valuation.

**August 9, 2004**

TLG - review retirement plan and conference with        6.20 hours
      H. Rosen re: preliminary report on Flex Six
      enhancement value; conference with SAV re:
      follow up information; review time entries and
      revise for supplemental motion.

SAV - conference with TLG re: information for          2.40 hours
      pension enhancement; review file for
      information re: Flex 6 class members'
      DOB and race; LocatePlus searches;
      telephone conferences with class members
      re: knowledge of Flex 6 class members' DOB
      and race; prepared chart re: same.

These entries reflect that there were potentially 483.17.

duplicative hours, with emphasis on the word "potentially."[20]

        The first thing that stands out from this set of

entries is a number of duplicative billings for counsel to confer

with each other.[21]  In other words, where two or more lawyers

conferred together, each submitted an entry for the time spent in

the conference.  Thus, depending on the number of lawyers

involved in the conference, the same hour could be billed two or

three times.  Although the Court recognizes the importance of

_____

        [20]    The subtotals for these hours are: Groh, 256.00 hours;
Murdock, 183.47 hours; Vaaler, 6.90 hours ; McGrath, 26 hours;
Goldenberg, 10.80 hours.

        [21]    There was also substantial conferencing among counsel
on the attorney's fees and the vacation pay issues.  The Court,
however, has already deducted hours expended on these issues and,
therefore, to avoid double-counting, did not itemize conferences
on these issues.  In addition, the Court has already deducted
hours expended in exhausting the administrative process and did
not separately itemize apparent duplicative hours related to
exhaustion of administrative remedies.

periodic conferences among trial counsel, the trial court may nevertheless deduct hours for excessive conferencing.  See Guckenberger v. Boston Univ., 8 F. Supp.2d 91, 101 (D. Mass. 1998); Citibank, N.A. v. Hicks, No. Civ. A. 03-2283, 2004 WL 1895189, at *6 (E.D.Pa. Aug. 24, 2004).

The Court is again faced with the problem that the time spent in conference is not clearly delineated in the entries.  A clearer picture emerges in later entries where one attorney entered a block of time for a number of tasks, including conferences, and another attorney only billed time for conferencing.[22]  On those occasions, it appears that conferences accounted for anywhere from about 10% to about 25% of the amount of time of the primary entry.  It, therefore, seems reasonable to estimate that, where conferences were convened, approximately 15% of the gross time billed was spent in conferences.  Of the entries on the forty-one separate dates detailed above, conferences were held on thirty-five of them.  The Court, therefore assumes that 85% (35/41), or 410.69 hours, of the 483.17 hours includes conference time.  Of this 410.69 hours, the Court further assumes that 15%, or 61.60 hours, constitutes duplicative hours spent in conference.  In order to avoid multiple recoveries for the same hour of conferencing, the Court

---

[22]    See, e.g., entries of August 25, 2003, September 8, 2003, September 23, 2003, November 12, 2003, July 26, 2004, August 5, 2004.

36

will then deduct 50%, or 30.80 hours, of the 61.60 hours in conferences as being duplicative. Overall, this is approximately a 6.375% (85% x 15% x 50%) reduction of the potentially duplicative hours outlined above.[23]

The subtotal of hours allowed thus far is 1,331.35.

The other area of noticeable duplication of effort was in the drafting of pleadings. Not including time spent on research and fact investigation, and with a 6.375% allowance for time already deducted for conferencing, two lawyers expended 75.01 hours[24] researching and drafting a twelve page, one claim complaint. This is an excessive amount of time, particularly when one considers that it does not include approximately 96 hours expended just prior to the drafting of the complaint on initial research and fact investigation. Because of the relatively straightforward facts of the case, a more reasonable amount of time to complete research and draft the complaint is 40 hours. The Court will, therefore, deduct a further 35.01 hours

---

[23]    Consequently, this results is a 6.375% reduction in the subtotals described in footnote 20, supra. Groh (16.32 hours), Murdock (11.69 hours), Vaaler (.44 hours), McGrath (1.66 hours), and Goldenberg (.69 hours).

[24]    As indicated by the following entries with the hours expending in parentheses: February 19, 2001 (Murdock - 10.5; Groh - 12); February 20, 2001 (Murdock - 10.75; Groh - 12); February 21, 2001 (Murdock - 8.57; Groh 9.8); February 22, 2001 (Murdock - 6.5; Groh - 10). These figures are the total hours before applying the 6.375% deduction for conferences. Additionally, the entries for February 21, 2001, are the net hours remaining after the deductions for time expended on discovery.

from the total hours allowed, distributed proportionally between the lawyers. This results in a 15.87 hour deduction from Mr. Murdock's billings and a 19.14 hour deduction from Ms. Groh's billings. No further deductions will be made from time expended on initial research and investigation because the Court hesitates to enter any order which would tend to discourage, however remotely, compliance with Rule 11.

The subtotal of hours allowed thus far is 1,296.34.

The final area of possible duplication of effort or excess expenditure of hours the Court will consider is the time spent researching and briefing the cross-motions for judgment on the administrative record and the motion for class certification. By the Court' estimation, between June 2002 and December 2002, counsel expended approximately 245 hours completing the merits and class certification briefing. The Court does note that included in this estimation are hours spent pursuing discovery, which the Court has nonetheless allowed. Therefore, the actual hours expended on dispositive motions is actually less than 245. Nonetheless, the Court does not find that these hours were unnecessarily or duplicatively expended. This was the most crucial juncture of the case and counsel had to draft their own motion for judgment as well as an opposition to International Paper's motion for judgment. The briefs were well done and obviously resulted in success for the Plaintiffs. Consequently,

the Court will not deduct any further hours as being duplicative or unnecessarily expended.

International Paper also objects to counsel's time sheets because counsel billed in fifteen minute increments instead of six or ten minute increments. Although International Paper lodges a blanket objection against this practice, it has not identified any single entry which was inflated as result of having been billed in fifteen minute increments. In any event, the Court has thoroughly dissected the hours expended and has encapsulated and adjusted for any inflation caused by the billing increments. Therefore, the Court will not impose any additional reductions in the hours claimed because of the billing increments.

For the reasons stated above, the Court finds the following hours were reasonably expended:

|  | Claimed | Deducted | Allowed |
|---|---|---|---|
| Groh | 1,260.05 | (529.93) | 730.12 |
| Murdock | 451.55 | (113.19) | 338.36 |
| Wolf | 75.25 | (54.75) | 20.50 |
| Goldenberg | 17.70 | (0.69) | 17.01 |
| McGrath | 32.50 | (5.66) | 26.84 |
| Naylor | 21.30 | (13.30) | 8.00 |
| Vaaler | 258.55 | (103.04) | 155.51 |
| Total | 2,116.90 | (820.56) | 1,296.34 |

The Court then adds an additional 3% to each attorney's hours for preparation and litigation of the fee application:

|  | Allowed | Fee Application | Final Total |
|---|---|---|---|
| Groh | 730.12 | 21.90 | 752.02 |
| Murdock | 338.36 | 10.15 | 348.51 |
| Wolf | 20.50 | .62 | 21.12 |
| Goldenberg | 17.01 | .51 | 17.52 |
| McGrath | 26.84 | .81 | 27.65 |
| Naylor | 8.00 | .24 | 8.24 |
| Vaaler | 155.51 | 4.67 | 160.18 |
| Total | 1,296.34 | 38.90 | 1,335.24 |

## C. The Reasonable Rate

To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004).

As indicated above, Ms. Groh seeks compensation at a rate of $325 per hour; Mr. Murdock seeks $300 per hour; Mr. Wolf and Mr. Goldenberg seek $275 per hour; Mr. Naylor seeks $200 per hour; and Mr. McGrath seeks $150 per hour. Paralegal Stephanie Vaaler seeks compensation at $85 per hour. Supporting Ms. Groh's and Mr. Murdock's claimed rates is the affidavit of local

attorney Carl Stich, Jr., a partner in the firm of White, Getgey & Meyer Co., LPA, who states that based on his knowledge of rates charged by local litigation attorneys of comparable skill and experience, a reasonable fee for Ms. Groh's and Mr. Murdock's services is between $275 and $350 per hour.  Mr. Stich states further that the rates claimed by Ms. Groh and Mr. Murdock are well within the rates charged by comparable attorneys in this field and in this area.  Doc. No. 45, Ex. 5.  Mr. Stich also vouches for Ms. Groh's and Mr. Murdock's professional skill and reputation as being of the highest caliber.  Id.  The remaining attorneys' claimed rates are supported by their own affidavits which set forth their qualifications, bar admissions, and customary hourly rates.  Id. Ex. 3; Doc. No. 46.

International Paper contends that the rates charged by Plaintiffs' counsel are excessive for this area and for their skill, experience, and reputation.  International Paper argues that the following rates are reasonable for Plaintiffs' counsel - $215 per hour for Ms. Groh and Mr. Wolf; $190 per hour for Mr. Murdock and Mr. Goldenberg; $165 per hour for Mr. Naylor. International Paper agrees that a rate of $150 per hour is reasonable for Mr. McGrath.  Doc. No. 49, at 8 n.13. International Paper objects to the rate claimed by Ms. Vaaler as being completely unsubstantiated as to its reasonableness. International Paper's argument is supported by a study published

41

by the Ohio State Bar Association entitled "Desktop Reference on the Economics of Law Practice in Ohio" which reports average hourly rates charged by office location, size of firm, area of practice, and years of practice.  Doc. No. 49, Ex. 2. International Paper's position is also supported by the affidavit of local attorney Jack Fuchs, a partner with the firm Thompson, Hine LLP who specializes in employee benefits litigation.  Id. Ex. 3.  Mr. Fuchs avers that based on his experience and knowledge of his own rate ($260 per hour) and rates charged by other ERISA litigators, a reasonable hourly rate in 2001 for an attorney with more than fifteen years of experience would be between $225 and $275 per hour and between $175 and $225 for litigators with eight to fifteen years of experience.  Mr. Fuchs further states that in his estimation, rates would increase between $5 and $15 per year in subsequent years.

Upon review of the evidence before it as well as the Court's experience awarding attorney's fees in other cases, the Court finds that the following are the reasonable rates for Plaintiffs' counsel:  Ms. Groh and Mr. Wolf - $275.00 per hour; Mr. Murdock and Mr. Goldenberg - $225 per hour; Mr. Naylor - $175 per hour; Mr. McGrath - $150 per hour; and Ms. Vaaler - $85 per hour.  There are several justifications for arriving at these rates.

First, with regard to Ms. Groh's hourly rate, the Court notes that $275 per hour is the rate which both Plaintiffs' expert and Defendant's expert agree, albeit at the margins, is a reasonable rate to pay an attorney of Ms. Groh's experience, ability and reputation. Consequently, both sides would be hard-pressed to argue that $275 per hour is an unreasonable rate of compensation. Second, a rate of $275 per hour approximates a reasonable extrapolation of the reasonable market rates for attorneys in the Cincinnati area established by former Chief Judge Rubin's committee.[25] Although Ms. Groh is technically not a senior partner under the parameters established by the Rubin Committee, she is rapidly approaching that bracket. A 4% COLA applied to a rate of $128.34 per hour (the Rubin Committee rate

---

[25]     In 1983, in response to the growing number of statutes that required the trial court to determine a reasonable fee to award the prevailing party, former Chief Judge Carl Rubin of the Southern District of Ohio formed a committee to determine a reasonable fee for attorneys in the Cincinnati area. Recognizing that seasoned attorneys are more valuable than attorneys with lesser experience, the committee arrived at the following categories and hourly rates: Paralegals - $37.91/hour; Law Clerks - $23.96/hour; Young Associates (2 years of experience or less) - $61.77/hour; Intermediate Associates (2 to 4 years of experience) - $71.62/hour; Senior Associates (4 to 5 years of experience) - $82.81/hour; Young Partners (6 to 10 years of experience) - $96.39/hour; Intermediate Partners (11 to 20 years of experience) - $113.43/hour; and Senior Partners (21 or more years of experience) - $128.34/hour. See Beya v. Hoxworth Blood Center, Case No. 1:96-CV-407 (S.D. Ohio, Aug. 25, 1998) (Beckwith, J.) (Doc. No. 183). This Court has approved applying a 4% annual cost of living adjustment ("COLA") to the rates established by the Rubin Committee. See James v. Runyon, 868 F. Supp. 911, 913-14 (S.D. Ohio 1994)(Beckwith, J.); See James v. Frank, 772 F. Supp. 984, 1000 (S.D. Ohio 1991) (Jones, Circuit Judge, sitting by designation).

for senior partners) for 20 years (to the year 2003, approximately the mid-point of this litigation) results in an hourly rate of $281.41. Finally, the Court notes that in a more recent case, <u>Vann v. University of Cincinnati</u>, No. C-1-00-846, 2001 WL 1842468 (S.D. Ohio Jan. 2, 2001)(Beckwith, J.), a civil rights case, it awarded plaintiff's senior trial counsel an hourly rate of $250 per hour. A 4% COLA applied to $250 results in an hourly rate of $270.40. In other words, application of a number of different, yet logical, methodologies consistently results in an hourly fee in the neighborhood of $275 per hour for an attorney of Ms. Groh's experience, reputation, and ability. Therefore, the Court finds that $275 per hour is a reasonable rate to pay Ms. Groh for her services.

Mr. Wolf requests compensation at a rate of $275 per hour. Although his affidavit reflects more years of experience than Ms. Groh, the time sheets show that Mr. Wolf's role in the case was minor. The Court sees no reason to pay Mr. Wolf more than he is requesting for his limited participation in the case. Accordingly, the Court finds that a rate of $275 per hour is reasonable for Mr. Wolf's services.

Mr. Murdock moves to be paid at a rate of $300 per hour. Despite Mr. Stich's affidavit to the contrary, this rate is too high based on Mr. Murdock's years of experience. According to Mr. Fuchs, Mr. Murdock's services are worth between

44

$175 to $225 per hour.  The Court finds that $225 per hour is too low.  Again, applying the Rubin Committee standards, based on his years of experience, Mr. Murdock technically falls within the young partner bracket, but like Ms. Groh, he is rapidly approaching the next tier, which is intermediate partner. Applying the same 4% COLA over a twenty year period results in an hourly rate of $248.54.  Therefore, the Court finds that a rate of $250 per hour is reasonable for Mr. Murdock.  Although $250 per hour is not intended to be a compromise rate of compensation, the Court does note that $250 an hour exactly splits the difference between the high suggested by Mr. Fuchs and the low suggested by Mr. Stich.  This further suggests that $250 per hour for Mr. Murdock is a reasonable rate.

Mr. Goldenberg has roughly the same years of experience as Mr. Murdock.  Therefore, the Court awards Mr. Goldenberg a rate of $250 per hour.

Mr. Naylor requests compensation at a rate of $200 per hour.  Mr. Naylor falls squarely in the young partner bracket of the Rubin Committee.  Applying the 4% COLA over a twenty-year period results in a rate of approximately $211 per hour.  There is no other evidence supporting a reasonable fee for Mr. Naylor's services.  Like Mr. Wolf, however, the Court sees no reason pay Mr. Naylor a premium rate for his limited participation in the

case.  Accordingly, the Court awards Mr. Naylor a rate of $200 per hour.

The parties agree that $150 per hour is a reasonable rate for Mr. McGrath.  Accordingly, the Court awards Mr. McGrath $150 per hour.

Finally, Ms. Vaaler requests compensation at a rate of $85 per hour.  Application of the Rubin Committee factors results in a rate of $83.07 per hour.  Therefore, the Court finds that $85 per hour for Ms. Vaaler's services is reasonable.

### D. Fee Multiplier

Plaintiffs move for a multiplier of 1.5 times the lodestar fee for the quality of service performed in comparison to the hourly rate, the exceptional results obtained, and the contingent nature of the case.  As noted above, however, Plaintiffs cannot obtain a multiplier of the lodestar because counsel took the case on a contingent basis.  See supra, at 8.

In Geier, the Sixth Circuit analyzed and distilled a number of Supreme Court cases addressing the appropriateness of awarding the plaintiff a lodestar multiplier.  According to the Court, many of the factors which the trial court would consider in determining whether to apply a multiplier are already subsumed in calculating the reasonable fee.  See Geier, 372 F.3d at 794. Nevertheless, the Geier Court held that the district court could apply a multiplier to the lodestar if first it determined that

46

the case was one of the "rare and exceptional cases" deserving of
a multiplier.  Id. at 794-95.  Once the trial court decides that
the case is rare and exceptional, it may then consider a list of
factors to determine whether to award a fee multiplier.  Id.[26]

Unfortunately, the Geier Court did not further explain
the circumstances under which a case becomes "rare and
exceptional."  The Court did, however, decide that the case
before it was rare and exceptional and remanded it to the trial
court to analyze the factors listed above.  The plaintiffs in
Geier prevailed in a thirty-six year struggle to eliminate
segregation in Tennessee's public universities.  In holding that
the case before it was exceptional, the Court stated that its
"magnitude is formidable in numerous respects."  Id. at 795.  The
Court noted that the "legal principles advanced by the Geier
Plaintiffs were pathbreaking and of great social import."  Id.
The plaintiffs fought against stubborn state opposition and
contrary judicial precedents from outside this Circuit to obtain
injunctive relief valued at $320 million.  In addition, the Geier

---

[26]     Those factors are:  1) the time and labor required; 2)
the novelty and difficulty of the question; 3) the skill
requisite to perform the legal service properly; 4) the
preclusion of other employment by the attorney due to acceptance
of the case; 5) the customary fee; 6) whether the fee is fixed or
contingent; 7) time limitations imposed by the client or the
circumstances; 8) the amount involved and the results obtained;
9) the experience, reputation, and ability of the attorney; 10)
the "undesirability" of the case; 11) the nature and length of
the professional relationship with the client; and 12) awards in
similar cases.  Id. at 792.

case focused the federal judiciary on desegregation of higher education, steered federal jurisprudence in a different direction, and spurred the Justice Department to file lawsuits against other states, effectively ending segregation in public higher education in the South.  <u>Id.</u> at 795-96.

The <u>Geier</u> plaintiffs set the bar very high for others. It is not apparent whether the <u>Geier</u> Court would require the plaintiffs in every case to have the nobility of purpose of those plaintiffs, coupled with the sweeping results of that litigation, to merit a multiplier of attorney's fees.  A more cautious analysis of the case would be that the results in <u>Geier</u> were so stunning that it clearly was a rare and exceptional case but that it did not establish a minimum standard for other plaintiffs in other cases.

Nevertheless, if <u>Geier</u> did not set the standard for rare and exceptional cases, it certainly establishes a reference point for purposes of comparison.  In comparison, the present case does not meet even reduced expectations for rare and exceptional cases.  While Plaintiffs obviously achieved a good result for themselves and their fellow class members, the case itself is of limited social scope and impact.  The fact that Plaintiffs prevailed under the arbitrary and capricious standard to some degree is already taken into consideration by the decision to award Plaintiffs attorney's fees at all.  Moreover,

although prevailing under the arbitrary and capricious standard
is not an every day occurrence, certainly it happens often enough
not to make it a rare and exceptional circumstance.  The Court
does not view this case as having established a legal principle
of any sweeping significance.  Instead, this case presented a
rather narrow matter of plan interpretation, dependent upon the
meaning of the specific language at issue.  The case may or may
not have any precedential value in other cases, but it is not
obvious that it does.  Therefore, despite the size of the
judgment obtained by the Plaintiffs and the difficult burden of
persuasion to be carried, the Court does not find this to be a
rare and exceptional case in which the lodestar should be
enhanced by a multiplier.

### E.  Common Fund Analysis

        Because this case proceeded to judgment and Plaintiffs
received an award of attorney's fees through a fee-shifting
statute, the Court finds that Plaintiffs' counsel may not receive
a further enhancement of their fees through a common fund
analysis.  The case law suggests that fee-shifting cases and
common fund cases are different and that the common fund method
for awarding attorney's fees applies only when the parties settle
the case.  See Rawlings v. Prudential-Bache Properties, Inc., 9
F.3d 513, 516 (6th Cir. 1993)("In assessing the reasonableness of
requests for fees in class actions resulting in the creation of a

common fund, a court must consider factors that are not present in statutory fee-shifting cases."); <u>Swedish Hosp. Corp. v. Shalala</u>, 1 F.3d 1261, 1268 (D.C. Cir. 1993)  ("Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [the fee shifting statute] . . . reflects the amount of time reasonably expended on the litigation.")(citing <u>Blum v. Stenson</u>, 465 U.S. 886, 900 n.16 (1984)).  In <u>Brytus v. Spang & Co.</u>, 203 F.3d 238 (3rd Cir. 2000), the Court indicated that it might be possible for prevailing class action ERISA litigants to receive a combination of the lodestar and common fund amount of fees, but suggested that instance would be limited to cases where the defendant was insolvent or had insufficient funds or where the plaintiffs could not obtain other competent counsel.  <u>Id.</u> at 246-47.  Those two exceptions, however, are not present in this case.

Finally, this Court notes that because International Paper is required to bear the reasonable costs of the litigation, the problem of freeriders, which is the primary justification for the common fund method of awarding fees, is not present.  <u>See Geier</u>, 372 F.3d at 790 ("The [common fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.").  In other words, because of the

fee-shifting statute, the class members are not unjustly enriched
at the expense of the named Plaintiffs.  Therefore, the Court
finds that the attorney's fees to be awarded to Plaintiffs'
counsel should not be increased under the common fund doctrine.

### F. Incentive Awards for the Named Plaintiffs

Because, as explained above, this is not a common fund
case, the Court finds that the named Plaintiffs are not entitled
to an incentive award.  See Hadix v. Johnson, 322 F.3d 895, 898
(6th Cir. 2003)("As both the district court and the defendants
note, incentive awards are usually viewed as extensions of the
common-fund doctrine, a doctrine that holds that a litigant who
recovers a common fund for the benefit of persons other than
himself is entitled to recover some of his litigation expenses
from the fund as a whole.").

### G. Final Fees Awarded

|            | Hours Allowed | Hourly Rate | Total        |
|------------|---------------|-------------|--------------|
| Groh       | 752.02        | $275        | $ 206,805.50 |
| Murdock    | 348.51        | $250        | $  87,127.50 |
| Wolf       | 21.12         | $275        | $   5,808.00 |
| Goldenberg | 17.52         | $250        | $   4,380.00 |
|            |               |             |              |
| McGrath    | 27.65         | $150        | $   4,147.50 |
| Naylor     | 8.24          | $200        | $   1,648.00 |
| Vaaler     | 160.18        | $ 85        | $  13,615.30 |

51

Total              1,335.24                    $ 323,531.80

### G. Contingency Fee

Counsel for Plaintiffs also move the Court for
permission to recover 25% of the value of the judgment as per
their contingency fee agreement with Plaintiffs.  The Court notes
that it is permissible for counsel recover both a statutory fee
and a fee under a contingency fee arrangement.  Drennan v.
General Motors Corp., 977 F.2d 246, 254 (6th Cir. 1993).
Nevertheless, the district court still has authority to review
and set aside an unreasonable contingent fee contract.  Krause v.
Rhodes, 640 F.2d 214, 218 (6th Cir. 1981).

The Court notes at this time that the record does not
support counsel's request for payment of a 25% contingent fee
from the value of the judgment.  The retention agreements
submitted by counsel, Doc. No. 45, Exs. 6 & 7, do not indicate
any agreement to a 25% contingent fee by the class
representatives.  Instead, the agreement states only that "Our
fees (payment for our time) must be approved by the Court and are
dependent upon a recovery.  You will have the opportunity to
discuss any fee request to the Court and object to our request if
you choose to do so."  See id. § 7.  The affidavits submitted by
the class representatives, Mr. Dalesandro and Ms. Noonan,
indicate that they agree that "Defendant should pay the full

52

amount of my attorney's fees and expenses up to 25% of the total value of the Class recovery." Dalesandro Aff. (Doc. No. 45, Ex. 6) ¶ 6; Noonan Aff. (Doc. No. 45) ¶ 6 (emphasis). While Mr. Dalesandro and Ms. Noonan acknowledge that they understand that attorney's fees could be paid out the Class recovery, <u>see</u> <u>id.</u> ¶ 8, there seems to be no acknowledgment or understanding on their part that the fee paid to counsel could amount to 25% of their recovery. Similarly, the notice to the class (Doc. No. 50) does not inform the class that a fee equaling 25% could be deducted from their benefit to pay for attorney's fees. The Court is, therefore, unwilling at this time to approve payment of a 25% contingent fee from the judgment without ensuring that the Class representatives have truly agreed to deduction of a 25% contingent fee. Additionally, the Court wants to ensure that the absent class members are on notice of the contingent fee arrangement and have an opportunity to object to that fee if they desire.

Accordingly, Plaintiffs' motion to approve payment of a 25% contingent fee is denied without prejudice to its renewal. Counsel may supplement the record in support of this request to address the concerns raised by the Court within twenty-one (21) days of the date of this order.

I. <u>Expenses</u>

53

Plaintiffs claim expenses in the amount of $12,874.79. Based on the foregoing discussion and analysis of the appropriate award of attorney's fees to Plaintiffs, one could reasonably anticipate that International Paper would object to a substantial portion of Plaintiffs' claim for expenses. If that was the expectation, one would not be disappointed.

The principal area of dispute is Plaintiffs' claim for the expense of hiring a economic expert to calculate the value of the enhanced Flex Six retirement benefits for the twenty or so class members who qualify for that benefit under the terms of the severance plan. Under the terms of the severance plan, eligible employees who had attained age 49 at the time of termination, and whose age and years of service equaled at least 59, would have their retirement plan benefit enhanced by the most beneficial combination of an additional six years of age and/or years of service for early or normal retirement. <u>See</u> Plan at "Section 3 Pension Enhancement."[27]

---

[27]    The Flex Six provision states:

> If an Eligible Employee has attained age 49 as of the date of Termination and the Eligible Employee's age plus years of service equal at least 59, the Eligible Employee's pension benefit from the Retirement Plan shall be enhanced by crediting the Eligible Employee with the most beneficial combination of an additional six (6) years of age and/or service credit under the Retirement Plan for early or normal retirement. As part of such enhanced benefit the Eligible Employee shall be entitled to post retirement death benefits, life insurance and medical plan coverage.

According to Plaintiffs, it was necessary to hire an expert to calculate the value of the enhanced retirement benefit for those participants because International Paper has taken the position that the affected participants are still employed by Smart Paper and, therefore, not eligible to receive early or normal retirement benefits from the retirement plan.  The total cost of this analysis was $5,275.00.  It appears, however, that counsel hired this expert solely for the purpose of estimating a value of the total judgment so they then in turn could claim a percentage of the fund for their fees.  The Court finds that this is not a reasonable expenditure to charge to International Paper. The class members derived no benefit from the hiring of this expert.  Accordingly, the Court disallows this expense.

International Paper objects to the rate billed by Plaintiffs for photocopying, $.15 per page as being excessive. Relying on <u>Tinch v. City of Dayton</u>, 199 F. Supp.2d 758, 770 (S.D. Ohio 2002), and 28 U.S.C. § 1920, International Paper argues that the standard rate for photocopying is $.05 per page. Regrettably, even seemingly inconsequential matters, such as a 10 cent dispute over the reasonable rate to be paid for photocopying, is not allowed to escape the trial court's attention in assessing a fee petition.  <u>See</u> <u>Bowling v. Pfizer, Inc.</u>, 132 F.3d 1147, 1152 (6th Cir. 1998).

Unfortunately, <u>Tinch</u> does not purport to establish a standard rate for photocopying charges nor does the opinion in fact state that $.05 per copy is the standard rate for photocopying.  Rather, Chief Judge Rice stated only that plaintiffs had not carried their burden of establishing that $.25 per copy was reasonable and that in his experience $.05 per copy was the reasonable rate for copies.  <u>See</u> <u>Tinch</u>, 119 F. Supp.2d at 769-70.  To repeat, no standard was established in <u>Tinch</u>.  On the other hand, the Court notes that, at least in a bankruptcy matter, a court held that $.20 per copy was a reasonable rate. <u>See</u> <u>In re Union Cartage Co.</u>, 56 B.R. 174, 178 (Bankr. N.D.Ohio 1986).  Therefore, the Court finds that $.15 per copy is a reasonable rate for copies.  International Paper does, however, validly argue that Plaintiffs have not established that all of its copying expenses, totaling $5,060.06, about 40% of the total expenses billed, were necessarily incurred.  The problem again is insufficient or non-existent detail as to the reason for the charge.  Accordingly, the Court deducts 25%, or $1,265.02, from the photocopying expense for inadequate documentation.  <u>See</u> <u>Gradisher v. Check Enforcement Unit, Inc.</u>, No. 1:00-CV-401, 2003 WL 187416, at *8 (E.D.Mich. Jan. 22, 2003).

Plaintiffs' expert expense and photocopying expenses account for approximately 80% of the total expenses claimed. Although International Paper quibbles over some of the remaining

56

charges, such as long distance telephone charges, mileage, and postage expenses, as being inadequately documented as well, the amounts billed for these items are de minimis when compared to the whole.  Upon review of the remaining expenses, the Court finds that they are reasonable.  Accordingly, the Court will not take any further deductions from the expenses claimed.

In summary, the Court awards Plaintiffs expenses of $6,334.77.

<u>Conclusion</u>

In conclusion, for the reasons stated, the Court awards Plaintiffs $323,531.80 in attorney's fees and $6,334.77 in costs.

**IT IS SO ORDERED**

Date_July 8, 2005_____          _____s/Sandra S. Beckwith_____
                               Sandra S. Beckwith, Chief Judge
                                 United States District Court