**PAULETTE PONY, Plaintiff-Appellee, MICHAEL R. MITCHELL, Intervenor-Appellant, v. COUNTY OF LOS ANGELES, Defendant-Appellee, and MARC JON WEIGENSBERG; CAROLA FELBER; QUITZIA GUERRERO, a/k/a Doe 1, Defendants.**

No. 03-56855

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*2006 U.S. App. LEXIS 574*

September 13, 2005, Argued and Submitted, Pasadena, California
January 11, 2006, Filed

**PRIOR HISTORY:** **[\*1]** Appeal from the United States District Court for the Central District of California. D.C. No. CV-02-02222-SJO. S. James Otero, District Judge, Presiding.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Michael R. Mitchell, in pro per, Woodland Hills, California, for the appellant. Clayton C. Averbuck, Monroy, Averbuck & Gysler, Westlake Village, California, and Timothy T. Coates, Greines, Martin, Stein & Richland, L.L.P., Los Angeles, California, for the defendant-appellee.

**JUDGES:** Before: Jerome Farris, Ferdinand F. Fernandez, and Jay S. Bybee, Circuit Judges.

**OPINION:** BYBEE, Circuit Judge:

The issue before us is whether a plaintiff bringing suit under *42 U.S.C. § 1983* can assign her right to seek attorney's fees to her attorney. We answer that she may not, and we affirm the judgment of the district court.

I. FACTS AND PROCEDURAL HISTORY

On March 19, 2002, Wilma Pony, the legal guardian of Paulette Pony, a minor, filed suit against the County of Los Angeles (the "County") and various employees of the Los Angeles Juvenile Alternative Work Program ("JAWS") in the United States District Court for the Central District of California. The complaint alleged that Pony was a victim **[\*2]** of various traditional torts and constitutional violations arising out of medical procedures she was subjected to by JAWS employees on April 24, 2001.

On March 4, 2002, Pony entered into a retainer agreement with attorneys Michael Mitchell and David Margulies. The agreement contained the following provision:

> Client agrees to and hereby does irrevocably assign and transfer to Attorneys all of Client's rights and powers, whether contingent or vested or both, (a) to waive "prevailing party" status, (b) to *waive, apply for, obtain judgment upon, collect, and/or receive* any statutory attorney's fee award, and (c) to make and/or accept a "lump sum, including all attorney's fees" settlement offer. Client acknowledges and agrees that the foregoing assignment and transfer may make it more difficult for Client to settle the case, because Client will not possess the powers or rights to waive "prevailing party" status or the powers or rights to waive, apply for, obtain judgment upon, collect, and/or receive any attorney's fee award. Client hereby authorizes and directs the court to make

> any such attorney fee award and judgment thereon in Attorneys' names only and not in Client's [*3] name. In the event that a right to apply for statutory attorney's fees survives settlement or judgment respecting Client's claims, Attorneys will negotiate and seek agreement from Defendants upon the amount of statutory attorney's fees to be paid by Defendants; otherwise Attorneys will apply for statutory attorneys fees.

(emphasis in original). The agreement also provided that the attorneys would receive the greater of one-third of the gross amount of the award (forty percent if settlement was reached within sixty days of trial), or statutory attorney's fees.

Mitchell began representing Pony and continued to do so through discovery and pre-trial motions. Problems arose during the course of settlement negotiations, however. The County offered to settle Pony's claim for a "lump sum, including all attorney's fees" figure. Mitchell wrote a letter to the County's attorneys stating that if the County made a "lump sum, including all attorney's fees" offer which was acceptable to Pony, "it will perforce be in abrogation of my rights under the retainer agreement and I will be legally and ethically powerless to resist it." Citing *California Business and Professions Code Section 6128(b)* [*4] , which makes it a misdemeanor for an attorney to "willfully delay[] his client's suit with a view to his own gain," Mitchell said that such a settlement offer "will force me to resign as plaintiff's counsel because of the conflict it creates." Mitchell also advised the County that if such a settlement were reached, he intended to seek statutory attorney's fees pursuant to his rights under his retainer agreement with Pony. He also declared his intent to pursue other claims, such as a claim for intentional interference with contractual relations. n1

> n1 Mitchell has waged a long war in his attempts to secure attorney's fees in civil rights cases. His insistence on an assignment, via the retainer agreement, of plaintiff's statutory rights to pursue attorney's fees, while maintaining co-counsel throughout the case, is only his most recent attempt to do so. *See, e.g., Mitchell v. City of Los Angeles, 753 F.2d 86 (9th Cir. 1985)* (declining to decide whether an attorney or former attorney has standing to seek attorney's fees because Mitchell did not appeal the district court's order dismissing the underlying suit); *Willard v. City of Los Angeles, 803 F.2d 526 (9th Cir. 1986)* (finding against Mitchell and holding that, pursuant to *Evans v. Jeff D., 475 U.S. 717, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986)*, the right to attorney's fees resides in the client, so that an attorney or former attorney does not have standing to sue for fees); *Venegas v. Skaggs, 867 F.2d 527 (9th Cir. 1989)* (asserting validity of contingency fees in excess of statutory fees), *aff'd sub nom. Venegas v. Mitchell, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990)*; *Darby v. City of Torrance, 810 F. Supp. 271 (C. D. Cal. 1992)* (refusing to allow a transfer from plaintiff to Mitchell of his right to collect attorney's fees), *rev'd on other grounds*, 1995 U.S. App. LEXIS 1171 (9th Cir. 1995) (unpublished memorandum opinion); *Darby v. City of Torrance, 810 F. Supp. 275 (C. D. Cal. 1992)* (refusing to allow Mitchell to withdraw in order to pursue statutory fees under his retainer agreement with Darby); *Mitchell v. County of Los Angeles, 211 F.3d 1274 (9th Cir. 2000)* (unpublished memorandum opinion) (ruling Mitchell lacked standing to challenge the constitutionality of County's settlement policy).

[*5]

Nonetheless, settlement negotiations continued, and a week later Mitchell signed an attorney substitution making co-counsel, David Margulies, Pony's sole counsel of record. The substitution was filed two weeks later. The day before it was filed, Pony and the County reached a tentative settlement agreement whereby Pony received $ 29,999.99 in exchange for release of all of her claims against the County and a waiver of her right to seek attorney's fees.

The tentative settlement was disrupted by Mitchell, who reiterated his intentions to pursue statutory attorney's fees from the County despite the settlement. Following Mr. Mitchell's formal request to the court for fees and a June 9, 2003, hearing on the issue of attorney's fees, the district court concluded that the case had not yet been settled and scheduled the case for trial.

Prior to trial, Pony and the County reached a firm settlement, with Pony releasing all of her claims against the County in exchange for $ 29,999.99. The settlement was inclusive of all attorney's fees, "notwithstanding any statutory or contractual rights which plaintiff's present or former counsel may have or have had and notwithstanding any language in the [*6] retainer agreement between plaintiff and her present or former counsel." As part of the settlement, however, Pony and Margulies had to agree to indemnify the County against any fees or costs sought by Mitchell. The court dismissed Pony's suit on account of settlement on July 16, 2003.

In response to the dismissal, Mitchell filed two motions: a Motion for Relief from Order, alleging that the court's dismissal of the suit was by mistake or inadvertence, and a motion for attorney's fees. The district court ruled that Mitchell lacked standing, and denied both motions. He now appeals.

II. ANALYSIS

A. *Mitchell's Standing to Seek Attorney's Fees* n2

> n2 We review a district court's determination of standing de novo. *Beck v. Pace Int'l Union, 427 F.3d 668, 678-79 (9th Cir. 2005)*.

Successful plaintiffs in civil rights suits may seek attorney's fees from the losing defendant. Under *42 U.S.C. § 1988(b)*, "in any action or proceeding to enforce a provision of [*42 U.S.C. § 1983*] [*7] ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ...."

The Supreme Court has held that *Section 1988* vests the right to seek attorney's fees in the prevailing party, not her attorney, and that attorneys therefore lack standing to pursue them. *Evans v. Jeff D., 475 U.S. 717, 730-32, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986)*; see also *Venegas v. Mitchell, 495 U.S. 82, 88, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990)*; *Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 579 (9th Cir. 2004)*; *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc., 89 F.3d 574, 577 (9th Cir. 1996)*; *Willard v. City of Los Angeles, 803 F.2d 526, 527 (9th Cir. 1986)*. Once the prevailing party exercises her right to receive fees, the attorney's right to collect them vests, and he may then pursue them on his own. *Virani, 89 F.3d at 578*. Unless and until the party exercises this power, however, the attorney has no right to collect fees from the non-prevailing party, and the non-prevailing party has no duty to pay them. *Id*. A prevailing party may

waive **[*8]** her statutory eligibility for attorney's fees as a condition of settlement. *Evans, 475 U.S. at 737-38* (concluding that *42 U.S.C. § 1988* does not create a general rule prohibiting settlements conditioned on the waiver of fees).

In this case, Pony, the prevailing party, did not exercise her rights to pursue attorney's fees. To the contrary, she waived them as a condition of settlement with the County. Accordingly, under the Court's ruling in *Evans* and our ruling in *Virani*, Mitchell has no standing to pursue attorney's fees merely as a result of his position as Pony's former attorney.

Mitchell argues that he need not rely on his status as Pony's former attorney. He contends that he has standing under his retainer agreement with Pony, whereby she assigned her rights to apply for attorney's fees to him. If the assignment is valid, Mitchell argues, he stands in her shoes and may assert her rights to statutory attorney's fees as if she had asserted them herself. However, Pony's putative assignment to Mitchell is invalid because the right to seek attorney's fees under *42 U.S.C. § 1988* is a substantive cause of action **[*9]** which cannot be transferred contractually.

*Section 1988* establishes a prevailing plaintiff's right to seek attorney's fees, but it provides no direct guidance on whether plaintiffs have the ability to transfer this right. *Section 1988* also provides that courts should resolve ambiguities in the federal civil rights laws by looking to the common law, as modified by the laws of the state in which they sit. *42 U.S.C. § 1988(a) (2000)* ("In all cases where [federal laws] are not adapted to [protecting and vindicating civil rights], or are deficient in their provisions [to do so], the common law, as modified and changed by the constitution and statutes of the State wherein the court [sits shall govern] ..., so far as [it] is not inconsistent with the Constitution and laws of the United States ...."); *Chardon v. Fumero Soto, 462 U.S. 650, 655-56, 103 S. Ct. 2611, 77 L. Ed. 2d 74 (1983)*; see also *Town of Newton v. Rumery, 480 U.S. 386, 392, 107 S. Ct. 1187, 94 L. Ed. 2d 405 (1987)* ("We resolve [a question regarding *42 U.S.C. § 1983*] by reference to traditional common-law principles, as we have resolved other questions about the principles **[*10]** governing *§ 1983* actions."); *Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)*, *superseded by statute*, Judicial Improvements Act of 1990, Pub. L. No. 101-650, Title III, § 313(a), 104 Stat. 5089, *as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 379-80, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004)*. We must therefore turn to California state law for guidance.

The Supreme Court has construed claims brought under *Section 1983* as tort claims for personal injury. *City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999)* ("There can be no doubt that claims brought pursuant to *§ 1983* sound in tort."); *Heck v. Humphrey, 512 U.S. 477, 483, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)*; *Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)* ("We have repeatedly noted that *42 U.S.C. § 1983* creates a species of tort liability ...." (quotations omitted) (footnote omitted)); *Wilson, 471 U.S. at 276-77*. The right to apply for fees under *Section 1988* is only granted to a prevailing party, and is therefore fundamentally **[*11]** derivative of the underlying substantive claim itself. Thus, California tort law is the appropriate source from which to obtain the rules of decision for the instant case. *Cf. Heck, 512 U.S. at 483*; *Memphis Cmty. Sch. Dist., 477 U.S. at 305-06*; *Wilson, 471 U.S. at 266-67*.

The right to sue in tort for personal injury is non-assignable under California law. *Pac. Gas & Elec. Co. v. Nakano, 12 Cal. 2d 711, 87 P.2d 700, 701 (Cal. 1939)* ("It is well settled in this

jurisdiction that a purely tort claim is not assignable."); *Curtis v. Kellogg & Andelson, 73 Cal. App. 4th 492, 86 Cal.Rptr.2d 536, 545 (Ct. App. 1999)* (stating that causes of action "which arise from a wrong done to the person" are non-assignable under California law); , *Hartford Accident & Indem. Co. v. Gropman163 Cal. App. 3d Supp. 33, 209 Cal.Rptr. 468, 471 (Ct. App. 1984)* ("It is well established in California that an assignment of a cause of action for personal injuries is void ....") (citing *Lee v. State Farm Mut. Auto. Ins. Co., 57 Cal. App. 3d 458, 129 Cal.Rptr. 271, 275 (Ct. App. 1976))*; *Block v. Cal. Physicians' Serv., 244 Cal. App. 2d 266, 53 Cal.Rptr. 51, 53 (Ct. App. 1966)* **[*12]** ("It is the established rule in California that an assignment of a cause of action for personal injuries is void ...."). Just as plaintiff cannot assign her *Section 1983* action, she cannot assign an action, such as *Section 1988*, that is derivative of it. *Cf. Erickson v. R.E.M. Concepts, Inc., 126 Cal. App. 4th 1073, 25 Cal.Rptr. 3d 39, 49-50 (Ct. App. 2005)* (allowing the assignment of the right to collect attorney's fees on actions under a contract when made with the assignment of other contractual rights, which are freely assignable under California law); *Cal. Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc., 96 Cal. App. 4th 598, 117 Cal.Rptr.2d 390, 396-97 (Ct. App. 2002)* (same). Accordingly, plaintiff's right to seek statutory attorney's fees is not transferrable in California, and the retainer agreement's provisions to the contrary are void as a matter of law.

This application of California tort law is consistent with the purpose of the federal civil rights statutes. *See Felder v. Casey, 487 U.S. 131, 139, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988)* ("Any assessment of the applicability of a state law to federal civil rights litigation, therefore, must **[*13]** be made in light of the purpose and nature of the federal right."). Preventing civil rights plaintiffs from contractually transferring their rights to attorney's fees furthers both the federal policy of protecting civil rights and the federal policy of encouraging settlement. *See Evans, 475 U.S. at 732* ("We believe that a general proscription against negotiated waiver of attorney's fees in exchange for a settlement on the merits would itself impede vindication of civil rights, at least in some cases, by reducing the attractiveness of settlement."); *Marek v. Chesny, 473 U.S. 1, 10, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985)* ("There is no evidence ... that Congress, in considering *§ 1988*, had any thought that civil rights claims were to be on any different footing from other civil claims insofar as settlement is concerned.").

Mitchell's strongest argument in favor of upholding the transfer under the retainer agreement comes from dicta in *Venegas v. Mitchell, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990)*. In that case, the Court addressed the issue of whether statutory attorney's fees operated as an upper bound on the compensation attorneys could receive from civil **[*14]** rights plaintiffs. The Court concluded that the statute did not impose a ceiling on compensation, and that parties could contract for contingency fees or hourly rates in excess of the statutory level. *Id. at 90*. Mitchell relies on the Court's statement that:

> It is the party's entitlement to receive the fees in the appropriate case ... [and] it is the party's right to waive, settle, or negotiate that eligibility. ...
>
> ... If *§ 1983* plaintiffs may waive their causes of action entirely, there is little reason to believe that they may not assign part of their recovery to an attorney if they believe that the contingency arrangement will increase their likelihood of recovery. A contrary decision would place *§ 1983* plaintiffs in the peculiar position of being freer to negotiate with their adversaries than with their own attorneys.

*Id. at 88*.

While at first glance, this may seem like a solid foundation for Mitchell to rely on, it does not withstand careful scrutiny. In *Venegas*, the Court was writing in the context of contingency fees and was referring to a plaintiff's ability to assign a portion of her *recovery*, not her *substantive* **[*15]** *causes of action*. Generally, a party may freely assign the proceeds of his judgment or the value of his recovery. This is true under federal, California, and common law. *See, e.g., id. at 87* ("We have never held that *§ 1988* constrains the freedom of the civil rights plaintiff to become contractually and personally bound *to pay an attorney a percentage of the recovery*, if any ....") (emphasis added); *CAL. BUS. & PROF. CODE § 6147* (West 2000). This is also consistent with current *Section 1988* jurisprudence, which holds that an attorney is free to collect statutory attorney's fees once a client has exercised his rights by demanding them, but not before. *Evans, 475 U.S. at 730-31*; *Virani, 89 F.3d at 578*. Thus, while a plaintiff can transfer the right to *collect* attorney's fees, she may not transfer the right to *seek* or *waive* them.

In summary, Mitchell's argument falls beyond the scope of the Supreme Court's holding in *Venegas*, and represents an extension that is unsupported by the Court's logic and analysis. Accordingly, the assignments to Mitchell under the retainer agreement are invalid **[*16]** as a matter of law. Without his contractual rights, Mitchell lacks standing to bring a claim for attorney's fees. *See Evans, 475 U.S. at 730-32*. n3

> n3 In light of our disposition on standing, we do not reach the County's alternative argument that the retainer agreement's transfer provisions are void because acquiring Pony's right to seek attorney's fees would violate Mitchell's duty of loyalty to his client.

B. *Supremacy Clause Challenge to the County's Settlement Policy*

Mitchell also asserts that the County has a "custom, policy, or practice of settling civil rights cases only on a 'lump sum, including all attorney's fees basis.'"He further asserts that this practice contradicts federal policy and congressional intent to provide attorney's fees for civil rights victims, as manifested in *42 U.S.C. § 1988*, and that the County's conduct therefore violates the *Supremacy Clause of the United States Constitution*. *See U.S. CONST. art. VI, cl. 2*. The County denies **[*17]** having such a policy, and maintains that its actions are consistent with the Constitution. The County further argues that Mitchell lacks standing to challenge the settlement on this basis; Mitchell counters by alleging that he has both direct and third-party standing. We do not reach the substantive merits of Mitchell's claim, as we find that Mitchell lacks standing to challenge the County's policy under the *Supremacy Clause*. n4

> n4 We note that we have never held that a policy of only settling *Section 1983* actions on a lump sum basis, including all attorney's fees, would violate the *Supremacy Clause*, although we have previously alluded to this possibility. *See Bernhardt v. Los Angeles County, 339 F.3d 920, 926 (9th Cir. 2002)* ("Although at this stage of the remand proceedings Bernhardt's case still remains sketchy, she has shown enough to establish that her [challenge based on the

*Supremacy Clause*] presents serious questions about the nature and effect of the County's settlement policy."); *id. at 926 n.5* ("As in our earlier opinion, we do not now resolve the question of whether Bernhardt properly states a claim pursuant to *§ 1983* or otherwise states a claim upon which relief can be granted.") (internal quotations omitted); *see also Evans, 475 U.S. at 737-40*. *Bernhardt's* analysis of the merits of such a claim remains dicta--as would any analysis we might make here.

**[*18]**

Mitchell does not have standing to challenge the legality of the County's action merely by virtue of being a voter or a taxpayer. To satisfy this Court's jurisdictional standing requirement, a plaintiff "must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*; *see also Allen v. Wright, 468 U.S. 737, 754, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)* ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."). In order to have direct standing under Article III, a plaintiff must demonstrate that:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)* **[*19]**  (citing *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))*. We find that Mitchell is unable to satisfy the first two of these elements.

As we have discussed above, the right to seek attorney's fees under *42 U.S.C. § 1988* belongs to clients, not to attorneys. *Evans, 475 U.S. at 730-32*. Therefore, the County's policy of settling claims only on a "lump sum, including all attorney's fees" basis has not directly deprived Mitchell of any right. *Cf. Bernhardt v. County of Los Angeles, 279 F.3d 862, 871 (9th Cir. 2002)* (holding that civil rights plaintiff who was unable to retain counsel because of the County's policy does have standing to sue). Mitchell must therefore argue that he has suffered a monetary injury, in that he would have received greater fees in this case than he actually did if the County had not had such a policy.

Such a claim is inherently "conjectural or hypothetical." In the absence of its policy, the County might have refused to settle Pony's civil rights case at all. This seems particularly likely given that the ultimate settlement amount, $ 29,999.99, is less than **[*20]**  the attorney's fees Mitchell seeks (over $ 50,000); moreover, Mitchell was not Pony's only attorney and he terminated his representation of her before the settlement was reached. It is therefore entirely possible that the case would have gone to trial. Had the County prevailed at trial, Mitchell, under his contingency fee arrangement with Pony, would not have received any compensation at all. But even if the County were willing to settle Pony's case without forcing her to waive her right to seek attorney's fees, Pony, as a prevailing party, would still be free to use waiver as a bargaining chip in order to increase the

amount that the County would pay her in the settlement. *Evans, 475 U.S. at 731 n.20*. In such a scenario, one would expect Mitchell's compensation to mirror that which he has received under the County's policy. Mitchell's monetary injuries are therefore speculative, at best, and he is unable to satisfy Article III's "injury in fact" requirement.

This same line of logic demonstrates that Mitchell has also failed to satisfy the second requirement for Article III standing. For much the same reasons that it is uncertain whether Mitchell was injured by the [*21] County's policy, it is also unclear whether his injury, if any, is fairly traceable to the County's actions. Without its policy, the County might have insisted on taking the case to trial; if the County had won at trial, Mitchell would have received nothing. Even if the County had been willing to settle with Pony while permitting her to retain her right to seek attorney's fees, she still would have had the right to bargain away that right in exchange for a larger settlement, and there is every reason to believe that she would have done so. Therefore, even if Mitchell has suffered an injury, he would have suffered the same injury in the absence of the County's policy; his injury, if any, thus cannot fairly be traced to the County's actions.

Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party. *See Allen, 468 U.S. at 751* ("Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights ...."). However, "vendors and those in like positions have been uniformly permitted [*22] to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren, 429 U.S. 190, 195, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976)* (holding that a vendor of alcoholic beverages had standing to bring an equal protection challenge to a law setting a different drinking age for males and females on behalf of her would-be customers); *see also U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 720-21, 110 S. Ct. 1428, 108 L. Ed. 2d 701 (1990)* (holding that an attorney who had allegedly collected illegal fees under the Black Lung Benefits Act had standing to raise black lung benefit claimants' due process right to legal representation); *Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623-24, 109 S. Ct. 2646, 109 S. Ct. 2667, 105 L. Ed. 2d 528 (1989)* (holding that law firm had third-party standing to challenge a drug forfeiture statute on behalf of *Sixth Amendment* rights of an existing client where forfeited assets were needed to pay attorney's fees); *Barrows v. Jackson, 346 U.S. 249, 254-58, 73 S. Ct. 1031, 97 L. Ed. 1586 (1953)* (holding, in a suit to enforce a racially restrictive land covenant, that [*23] white sellers of land have standing to litigate the constitutional rights of potential black purchasers). *But see Conn v. Gabbert, 526 U.S. 286, 292-93, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999)* (holding that attorney did not have standing to assert his client's alleged right as a grand jury witness to have counsel present outside the jury room). Mitchell attempts to fit this case into the holdings of this line of cases by arguing that, as Pony's attorney, he has third-party standing to challenge the County's settlement policy on her behalf.

However, this case differs from all of these other cases in one fundamental way: It is clear in this case that Pony, the holder of the rights at issue, does not wish to assert them. As a condition of settlement, she indemnified the County against any attorney's fees that it must pay to Mitchell. Consequently, the claim that Mitchell is asserting is directly *against* Pony's interests. *Cf. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 15-18, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004)* (holding that a noncustodial parent did not have standing to assert the constitutional claims of his daughter

when the parent with exclusive legal custody objected **[*24]** on the grounds that litigation was not in the child's best interest); *Craig, 429 U.S. at 192* (noting that the vendor challenging the constitutionality of the statute on the grounds that it violated the equal protection rights of certain clients had such a client as co-plaintiff); *Triplett, 494 U.S. 715, 110 S. Ct. 1428, 108 L. Ed. 2d 701* (challenging lawyer had contracted to provide claimants with representation in exchange for 25% contingency fee); *Caplin & Drysdale, Chartered, 491 U.S. 617, 621, 109 S. Ct. 2646, 105 L. Ed. 2d 528* (challenging law firm's compensation would have been paid from client's forfeited assets); *Barrows, 346 U.S. 249, 73 S. Ct. 1031, 97 L. Ed. 1586* (challenging sellers sought to sell to non-Caucasian buyers who were disadvantaged by covenant).

A litigant is granted third-party standing because the tribunal recognizes that her interests are aligned with those of the party whose rights are at issue and that the litigant has a sufficiently close connection to that party to assert claims on that party's behalf. *See Coal. of Clergy, Lawyers, & Professors v. Bush, 310 F.3d 1153, 1166 n.1 (9th Cir. 2002)* (Berzon, J., concurring) **[*25]** ("Third-party standing recognizes a wide range of relationships in which the third-parties' interests are sufficiently aligned with the interests of the rights-holder that standing is appropriate."); *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops, 24 F.3d 743, 747 (5th Cir. 1994)*; *Harris v. Evans, 20 F.3d 1118, 1124-25 (11th Cir. 1994)* (en banc) ("Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned ...."); *Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd., 854 F.2d 745, 748 (5th Cir. 1988)*; *cf. Newdow, 542 U.S. at 15*; *Craig, 429 U.S. at 195*. To find that Mitchell has standing in this case to assert a claim based on Pony's rights--a claim that she does not wish to bring and one that is directly adverse to her interests--would not only be contrary to established Supreme Court case law, but would contravene the policies and rationale on which the doctrine of third-party standing is based. *See Newdow, 542 U.S. at 15*. Accordingly, we agree with the decision of the district **[*26]** court and hold that Mitchell does not have third-party standing to challenge the County's settlement policy.

### III. CONCLUSION

We hold that the provisions of the retainer agreement conveying Pony's right to seek or waive attorney's fees to Mitchell are void under California law. We reach this conclusion because *Section 1983* sounds in tort and California law prohibits a plaintiff from transferring her substantive tort claims. We also find that Mitchell lacks standing to raise a constitutional challenge to the County's settlement policy. We therefore dismiss Mitchell's claims and affirm the judgment of the district court.

AFFIRMED.