# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| John D. West, on Behalf of Himself and All Other Persons Similarly Situated, <br><br>  Plaintiff, <br> v. <br> AK Steel Corporation (Formerly ARMCO Inc.) Retirement Accumulation Pension Plan, a part of the AK Steel Corporation (Formerly ARMCO Inc.) Noncontributory Pension Plan, and <br><br> AK Steel Corporation Benefit Plans Administrative Committee, <br><br>  Defendants | Case No.: C-1-02-0001 <br><br> Judge: Hon. Sandra S. Beckwith <br><br> Magistrate Judge: Timothy S. Black |

## DEFENDANTS' UNOPPOSED MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL WITHOUT POSTING OF SUPERSEDEAS BOND

On March 29, 2006, this Court entered its amended final judgment awarding $37,638,442.79, plus pre- and post-judgment interest, to the Plaintiff Class. (Dkt. no. 145.) On March 31, 2006, Defendants filed a notice of appeal. (Dkt. no. 146.) Defendants' appeal is currently pending before the United States Court of Appeals for the Sixth Circuit.

Defendants hereby move pursuant to Fed. R. Civ. P. 62 to stay execution of the Court's March 29, 2006 judgment pending disposition of Defendants' appeal, and request that the Court waive the posting of a supersedeas bond or other security. Defendants' motion should be granted because it is not opposed by Plaintiff, because there is no material risk that the judgment will not be paid at the conclusion of the appellate process if the judgment is affirmed, and because requiring the posting of a bond would be a waste of money.

# ARGUMENT

I. **THIS COURT SHOULD STAY EXECUTION OF THE JUDGMENT WITHOUT REQUIRING THE PLAN TO POST A BOND OR OTHER SECURITY.**

Pursuant to Fed R. Civ. P. 62(d), Defendants are entitled to stay the enforcement of the Court's retroactive award of benefits "as a matter of right" by posting a supersedeas bond or other adequate security for the portion of the judgment that would be due and payable during the pendency of the appeal. *See Arban v. West Publishing Corp.*, 345 F.3d 390, 409 (6th Cir. 2003); *see also* Fed. R. Civ. P. 62(d). The Court has discretion, however, to stay its judgment *without* requiring the Plan to post a bond or other security. *See Arban*, 345 F.3d at 409 (holding that Rule 62(d) does not prohibit a court in its discretion from waiving the filing of a bond); *see also Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986) ("The district judge can in his discretion stay the execution of a judgment pending appeal without requiring a bond."). The Court should exercise its discretion to stay execution of the judgment without posting of a bond for the reasons set forth below.

A. **There is No Material Risk That the Judgment Will Go Unpaid If Affirmed on Appeal.**

Although the Sixth Circuit has not spelled out explicitly what analysis a court should apply when determining whether to grant a stay without requiring the posting of a bond, it has observed that:

> [A]n inflexible requirement of a bond would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money.

*Arban*, 345 F.3d at 409 (quoting *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986)); *see also Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988) (listing criteria to consider for waiver of appeal bond); *Fed. Prescription Serv. v. Am.*

*Pharm. Ass'n*, 636 F.2d 755, 760-61 (D.C. Cir. 1980) ("[T]he district court in its discretion may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery."). Thus, if an appellant demonstrates the ability to timely satisfy the judgment in the event the appeal is unsuccessful, requiring the appellant to pay for a bond would be a "waste of money," and the bond requirement should be waived. *See Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 782 (7th Cir. 2004) (noting that the court had previously vacated an appeal bond required by the district court because "there was no basis for . . . concern" that the defendant "would lose the ability to pay the amounts that it had agreed to pay in the settlement").

Here, Defendants' ability to pay the judgment at the conclusion of an appeal is clear.

First, the Plan already has a segregated pool of assets set aside for payment of benefits that is more than sufficient to satisfy the judgment in this case. The Court's judgment awards the Class $37,638,442.79, plus pre- and post-judgment interest. (Dkt. no. 145.) As of March 31, 2006, the Plan held approximately $1.8 billion in assets – far more than necessary to satisfy the judgment, assuming it is upheld on appeal. (Declaration of Albert E. Ferrara, Jr., at ¶ 2)(attached hereto as Exhibit A); *cf. Arban*, 345 F.3d at 409 (affirming stay of judgment without bond "[i]n light of the vast disparity between the amount of the judgment in this case and the annual revenue" of the defendant); *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1155 (2d Cir. 1986) ("Pennzoil's interest in protecting the full amount of its judgment during the appellate process is reasonably secured by the substantial excess of Texaco's net worth over the amount of Pennzoil's judgment."), *rev'd on other grounds* 481 U.S. 1 (1987). These assets are held in trust for the sole purpose of paying participant benefits and plan expenses – they cannot be used for

any other purpose. *See* 29 U.S.C § 1104(a)(1)(A) (limiting expenditure of plan assets to payment of benefits and reasonable plan administrative expenses); 26 U.S.C. § 401(a)(2) (favorable tax benefits only available to "qualified plans" meeting certain ERISA funding requirements).

Nor is there a prospect that the Plan's assets would be depleted before the conclusion of an appeal. During the 2005 calendar year, the Plan paid out $234 million in benefits, and this payout rate will tend to decline over time. (Declaration of Frederick D. Sandstrom, Ex. 1, Attach. A at 1.)(attached hereto as Exhibit B). At this payout rate, even assuming that AK Steel makes no further contributions to the Plan and that the Plan earns no investment return on its $1.8 billion in assets, it would be approximately eight years before the Plan would run out of assets. (*Id.*) The appeal will be over and the judgment, assuming it is affirmed, will have been paid long before that time.

Second, an additional layer of security for the judgment is added by the fact that AK Steel is legally obligated to inject new funds into the Plan if necessary to pay participant benefits. *See* 29 U.S.C. § 1082(c)(11) (liability for contributions rests with sponsoring employer); 26 U.S.C. § 412(c)(11) (same). Indeed, AK Steel continues to make all funding contributions to the Plan required by ERISA. (Sandstrom Decl., Ex. 1, Attach. A at 1-2.) On May 19, 2006, AK Steel's Board of Directors authorized the company to make a $78.7 million contribution to the Plan; this contribution satisfies AK Steel's entire 2006 Plan funding requirement. (Supplemental Declaration of Richard Ogus, at ¶ 3)(attached hereto as Exhibit C). During the 2005 calendar year, AK Steel made an additional contribution of $150 million that was not required by ERISA. (Sandstrom Decl., Ex. 1, Attach. A at 2.) Because of these payments, the Plan's total assets are not expected to decline at a rate corresponding to the Plan's

present benefit payout obligations. In fact, between December 31, 2005 and March 31, 2006, the Plan's net assets *increased* by approximately $33 million. (Ferrara Decl., at ¶ 2.)

Third, even if *all* of the funds in the Plan and *all* of AK Steel's funds were somehow depleted by the time the appeals court rules in this action – which Defendants regard as a purely hypothetical scenario – the judgment awards payable to all but approximately 82 of the 1,230 Class members are 100% insured by the Pension Benefit Guaranty Corporation (PBGC). (Sandstrom Decl., Ex. 1 at 4-12; *id.*, Ex. 1, Attach. F at 1.) Accordingly, the PBGC would step in and pay the vast majority of Class members in full even if the Plan did not. *See id.*; *see also* 29 U.S.C. § 1322(a); 29 C.F.R. § 4022, Subpart B.

The foregoing arguments demonstrate that there is no material risk that the judgment would go unpaid at the conclusion of the appeal and that requiring the posting of an appeal bond would therefore be a waste of money. Under these circumstances, other courts have granted stays without a bond. *See Berger v. Xerox Ret. Income Guaranty Plan*, No. 00-CV-0584-DRH, slip op. at 2 (S.D. Ill. Dec. 18, 2002) (Sandstrom Decl., Ex. 3); *see also Rybarczyk v. TRW, Inc.*, No. 95-CV-2800-AA, Dkt no. 320 (N.D. Ohio Sept. 24, 1997). In the *Xerox* case, which this Court has cited in its previous orders, defendant Xerox's motion to stay execution and waive posting of a bond was granted because the court credited Xerox's arguments that the Xerox Plan "ha[d] more than enough assets to pay the members of the Class the amount it might ultimately be required to pay them." *Xerox*, slip op. at 2.

### B. Requiring a Bond Would Waste Plan Assets and Expose Class Members To the Risk of Paying the Costs of a Bond.

Defendants' investigation of the cost of posting a surety bond indicates that the cost of such a bond in this case would be in excess of a million dollars. Since there is no material risk that the judgment will go unpaid at the conclusion of an appeal (assuming it is

affirmed), requiring the Plan to undertake this expense would needlessly deplete the Plan of assets that otherwise could be used to pay participant benefits.

Furthermore, if Defendants were to prevail on appeal, the costs of the bond could be taxed against the Class. *See* Fed. R. App. P. 39(e); *see also Guse v. J.C. Penney Co.*, 570 F.2d 679, 681-82 (7th Cir. 1978) (discussing taxability of appeal bond cost under Fed. R. App. P. 39(e)); *Dana Corp. v. IPC Limited Partnership*, 1990 WL 142468, at *1 (E.D. Mich. May 21, 1990) (taxing costs of supersedeas bond to plaintiff under Fed. R. App. P. 39(e)). Defendants should not be forced to expend Plan funds to provide redundant security for a judgment that is already secure; and the Class should not be exposed to the risk that the costs of the bond will be taxed against them.

### C. Plaintiff Does Not Oppose the Requested Stay.

Defendants have provided valuable consideration to the Class in exchange for the consent of Class Counsel, on behalf of the Class, to a stay of execution of the judgment without a bond. Specifically, in exchange for Class Counsel's consent to this motion, Defendants agreed to withdraw – and hereby do withdraw – any argument that the Class is not entitled to receive any additional payments due them in this case in the form of a lump sum payment as opposed to a supplemental annuity beginning at age 65. (Sandstrom Decl., Ex. 2.) This is a valuable concession. Defendants estimate that, due to time value of money considerations, payment of the judgment in the form of supplemental lump sums will cost the plan in excess of two million dollars more in real terms than payment in the form of supplemental annuities. Class Counsel insisted on this concession as a condition of their consent because it makes payment of the judgment more secure in the event (however unlikely) that the PBGC were to take over the Plan before the conclusion of an appeal. (Sandstrom Decl., Ex. 1 at 8.)

6

"The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979); *see also Hamlin v. Charter Township of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (same). In this case, both parties agree that their rights will be adequately protected by this agreement. Therefore, a supersedeas bond is unnecessary to secure the Court's judgment pending appeal.

## CONCLUSION

For the foregoing reasons, the Court should stay execution of the judgment pending appeal without requiring Defendants to post a bond or other alternative security.

Respectfully submitted,

/s/ George E. Yund
George E. Yund (0017714)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202-4182
(513) 651-6824
(513) 651-6981  (fax)
gyund@fbtlaw.com

*Trial Attorney for Defendants*

Robert D. Wick
Covington & Burling
1201 Pennsylvania Avenue
Washington, DC  20004-2401
(202) 662-6000

*Attorney for Defendants*

July 28, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Motion was electronically filed with the Court and has been served by U.S. Mail, postage prepaid on Allen C. Engerman, Law Offices of Allen C. Engerman. P.C., 666 Dundee Road, No. 1200, Northbrook, IL 60062, and Thomas R. Theado, Gary, Naegele, & Theado, 446 Broadway Avenue, Lorain, OH 44052-1797, counsel for the Plaintiff Class, on this 28th day of July, 2006.

/s/ George E. Yund

CINLibrary 0001590.0528818  1654630v.1