IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| John D. West, on Behalf of Himself and All Other Persons Similarly Situated | : : : | Case No. C-1-02-0001 |
| Plaintiffs, vs. | : : : | District Judge Sandra S. Beckwith |
| AK Steel Corporation (formerly ARMCO) Retirement Accumulation Pension Plan, et al. | : : : | Magistrate Judge Timothy S. Black |
| Defendants. | : | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' UNOPPOSED MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL WITHOUT POSTING OF SUPERSEDEAS BOND**

Based upon the information provided by Defendants' counsel, Plaintiffs' counsel have no reason to oppose Defendants' motion seeking a stay of execution absent a supersedeas bond, especially inasmuch as the requirement and posting of an appeal bond may result in a reduction of assets available to satisfy the Class's judgment. Therefore, Plaintiffs' counsel do not oppose the Court's entry of the Order proffered with Defendants' Motion,[1] with such acquiescence being premised on an aggregate of data and analyses provided by Defendants, and supplemented by Plaintiffs' counsel, as more fully is set forth below.

---

[1] Defendants' Unopposed Motion to Stay Execution of Judgment Pending Appeal Without Posting of Supersedeas Bond, filed July 28, 2006 (Doc. No. 149) ["Defendants' Motion"].

For more than a year, counsel for the parties have discussed the method by which payment of the judgment could best be secured pending Defendants' appeal. In the course of those discussions, defense counsel supplied data and analyses to Class Counsel, including the following:

- An opinion letter from Keightley & Ashner dated May 18, 2006 and signed by Attorney James J. Keightley,[2] with that letter's attachments marked "A" through "F";

- From the Plan's Actuary, Richard A. Ogus, ASA, EA, the following:
  – A letter dated March 7, 2006, marked "Attachment A" to the Keightley & Ashner opinion letter;
  – A letter dated May 18, 2006, marked "Attachment F" to the Keightley & Ashner opinion letter;
  – A declaration dated May 6, 2006, and;
  – A supplemental declaration dated May 23, 2006;

- A declaration of Albert E. Ferrara, Jr., Vice-President, Finance, and the Chief Financial Officer of AK Steel Corporation dated May 5, 2006;

- Documents obtained by Defendants under a Freedom of Information Act request of the PBGC regarding the Eastern Air Lines case cited in Mr. Ogus's aforementioned letter dated March 7, 2006;

- Information relative to the credit ratings on AK Steel; and

- The transcript of the comments made during the course of AK Steel's Internet-webcasted investors' conference of April 25, 2006.

---

[2] James J. Keightley, now in private practice as a partner in the Washington, D.C. law firm of Keightley & Ashner LLP, served as General Counsel of the Pension Benefit Guaranty Corporation from 1995 to 2005, in which role Mr. Keightley supervised all litigation, regulatory, and advisory matters arising under the PBGC's termination insurance program. Before serving with the PBGC, Mr. Keightley had a long career at the Internal Revenue Service, including as Associate Chief Counsel for Litigation from 1982-1991 and Special Counsel for Large Cases from 1991-1995.

Positing the accuracy of Defendants' data and analyses, Plaintiffs' counsel obtained from their own retained experts, and in conversations with current members of the Office of the Chief Counsel of the PBGC, further support for the conclusion that, under the facts of this case and without a material change therein, Defendants have satisfied their burden "to objectively demonstrate reasons to depart from the requirement of a full supersedeas bond."[3]

"A district court may waive the requirement that a defendant post a bond where the defendant 'objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining the same degree of solvency during the period of the appeal.'"[4] Such demonstration must be more than a showing of the defendant's present ability to pay the judgment; a defendant must also "present 'a financially secure plan for maintaining that same degree of solvency during the period of an appeal.'"[5] In the instant case, Defendants' data and

---

[3] *United States v. Grable*, No. L88-257, 1991 U.S. Dist. Lexis 6931 at *2 (W.D. Mich. April 24, 1991) (citing *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 637 F. Supp. 357, 357 (D.D.C. 1986); *United States v. Kurtz*, 528 F. Supp. 1113, 1115 (E.D. Penn. 1981)). Plaintiffs' counsel do not embrace Defendants' assertions that "there is no risk that the judgment will not be paid at the conclusion of the appellate process if the judgment is affirmed," "[n]or is there a prospect that the Plan's assets would be depleted before the conclusion of an appeal." Defendants' Motion at 1 and 4. Such assertions ought properly be qualified, as done herein, to signify the more reasonable conclusion "that there is no material risk that the judgment would go unpaid at the conclusion of the appeal and that requiring the posting of an appeal bond would therefore be a waste of money." *Id.* at 5.

[4] *Childress v. Williams*, No. 97-CV-72335, 2000 U.S. Dist. Lexis 21775 at *2 (D. Mich. March 28, 2000) (quoting *Enserch Corp. v. Shand Morahan & Co., Inc.*, 918 F.2d 462, 464 (5th Cir. 1990)).

[5] *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 353 (D. Mich. 1998), aff'd in part and rev'd in part on other grounds, 165 F.3d 426 (6th Cir. 1999) (quoting *Poplar Grove Planting & Refining, Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979)).

analyses provide important parts of the plan advanced by Defendants for the security of the judgment's payment pending appeal.

In the first instance, Defendants have a segregated pool of assets set aside for payment of benefits that presently appears to be sufficient to satisfy the judgment in this case, and there appears to be little prospect that the Plan's assets would be depleted before the conclusion of Defendants' appeal. Furthermore, the Plan's sponsor, AK Steel, is required by law to further fund the Plan in order to pay participant benefits. In any event, Defendants' analyses show that the PBGC would guarantee payment to Class Members and at 100% of each Member's entitlement for all but 82 Members.

In addition, Defendants have forever withdrawn their "form of payment" argument,[6] thus further securing the integrity of the lump-sum nature of the judgment rendered in this action. As Defendants' Motion correctly observes, "Class Counsel insisted on this concession as a condition of their consent because it makes payment of the judgment more secure in the event (however unlikely) that the PBGC were to take over the Plan before the conclusion of an appeal."[7]

But the parties' agreement regarding the judgment's security has additional, important and integral terms. Defendants will immediately inform Class Counsel in the

---

[6] Defendants' "form of payment" argument was advanced by Defendants in this court, to the effect that any additional amounts found to be owed a Class Member at the conclusion of the litigation may be paid, at Defendants' option, either in the form of a supplemental annuity beginning at age 65 or in the form of a supplemental lump sum payment. E.g., Defendants' Motion for Partial Summary Judgment on the Issues of Damages and Pre-Judgment Interest, filed Dec. 1, 2004 (Doc. No. 79) at pages 1-2 and 3-9 of the motion's appended supporting memo.

[7] Defendants' Motion at 6.

event that either Defendant or the Plan's contributing sponsor becomes aware, or knows or has reason to know of

    (a)    Pension Benefit Guarantee Corporation (PBGC) consideration of an involuntary Plan termination,

    (b)    Any consideration by Defendants or the Plan's contributing sponsor of a voluntary or distress termination, except that notice of consideration of a distress termination in connection with a bankruptcy filing shall not be required prior to the filing of a bankruptcy petition,

    (c)    The occurrence of any event described in 29 U.S.C. §1343(c)(1) and (4)–(13),[8] or

---

[8] 29 U.S.C. §1343 concerns events which a plan's administrator and sponsor must report to the PBGC. Subsections (c)(1) and (c)(4)–(13) of 29 U.S.C. §1343 provide that such reportable events include:

(1) when the Secretary of the Treasury issues notice that a plan has ceased to be a plan described in section 4021(a)(2) [29 USCS § 1321(a)(2)], or when the Secretary of Labor determines the plan is not in compliance with title I of this Act; * * *

(4) when the Secretary of the Treasury determines that there has been a termination or partial termination of the plan within the meaning of section 411(d)(3) of the Internal Revenue Code of 1986 [26 USCS § 411(d)(3)], but the occurrence of such a termination or partial termination does not, by itself, constitute or require a termination of a plan under this title;

(5) when the plan fails to meet the minimum funding standards under section 412 of such Code [26 USCS § 412] (without regard to whether the plan is a plan described in section 4021(a)(2) of this Act [29 USCS § 1321(a)(2)]) or under section 302 of this Act [29 USCS § 1082];

(6) when the plan is unable to pay benefits thereunder when due;

(7) when there is a distribution under the plan to a participant who is a substantial owner as defined in section 4022(b)(6) if--
    (A) such distribution has a value of $ 10,000 or more;
    (B) such distribution is not made by reason of the death of the participant; and
    (C) immediately after the distribution, the plan has nonforfeitable benefits which are not funded;

(8) when a plan merges, consolidates, or transfers its assets under section 208 of this

  (d) An event anticipated to occur as described in 29 U.S.C. §1343(b)(3).[9]

Finally, in the event of a takeover or successor trusteeship of the Plan by the PBGC, whether by an involuntary Plan termination or a voluntary or distress termination, Defendants will support and join in the Class's contentions with respect to Plan assets and the judgment consistent with the May 18, 2006 Keightley & Ashner opinion letter.

Therefore, under the facts of this case and without a material change therein, Plaintiffs' counsel do not oppose the Court's entry of the Order proffered with

---

Act [29 USCS § 1058], or when an alternative method of compliance is prescribed by the Secretary of Labor under section 110 of this Act [29 USCS § 1030];
(9) when, as a result of an event, a person ceases to be a member of the controlled group;
(10) when a contributing sponsor or a member of a contributing sponsor's controlled group liquidates in a case under title 11, United States Code, or under any similar Federal law or law of a State or political subdivision of a State;
(11) when a contributing sponsor or a member of a contributing sponsor's controlled group declares an extraordinary dividend (as defined in section 1059(c) of the Internal Revenue Code of 1986 [26 USCS § 1059(c)]) or redeems, in any 12-month period, an aggregate of 10 percent or more of the total combined voting power of all classes of stock entitled to vote, or an aggregate of 10 percent or more of the total value of shares of all classes of stock, of a contributing sponsor and all members of its controlled group;
(12) when, in any 12-month period, an aggregate of 3 percent or more of the benefit liabilities of a plan covered by this title and maintained by a contributing sponsor or a member of its controlled group are transferred to a person that is not a member of the controlled group or to a plan or plans maintained by a person or persons that are not such a contributing sponsor or a member of its controlled group; or
(13) when any other event occurs that may be indicative of a need to terminate the plan and that is prescribed by the corporation in regulations.

[9] 29 U.S.C. §1343(b) provides that, "[n]o later than 30 days prior to the effective date of an event described in paragraph (9), (10), (11), (12), or (13) of subsection (c), a contributing sponsor to which the requirements of this subsection apply shall notify the corporation that the event is about to occur."

Defendants' Unopposed Motion to Stay Execution of Judgment Pending Appeal Without Posting of Supersedeas Bond.

        Respectfully submitted,

        s/  Thomas R. Theado
        Plaintiffs' Trial Attorney and Class Counsel
        Thomas R. Theado (0013937)
        GARY, NAEGELE & THEADO, LLC
        446 Broadway Avenue
        Lorain, Ohio  44052-1797
        Ph:    440-244-4809
        Fx:    440-244-3462

        Robert D. Gary (0019610)
        Jori Bloom Naegele (0019602)
        Thomas A. Downie (0033119)
        GARY, NAEGELE & THEADO, LLC
        446 Broadway Avenue
        Lorain, Ohio  44052-1797
        Ph:    440-244-4809
        Fx:    440-244-3462

        Allen C. Engerman
        LAW OFFICES OF ALLEN C. ENGERMAN, P.C.
        666 Dundee Road – # 1200
        Northbrook, Illinois  60062
        Ph:    847-564-5555
        Fx:    847-564-4944

        COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

  I hereby certify that on July 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Thomas A. Downie | tdownie@gntlaw.com |
| Allen C. Engerman | acelaw@mcn.org |
| Stuart J. Evans | sevans@cov.com |
| Robert D. Gary | office@gntlaw.com |
| Jori Bloom Naegele | jnaegele@gntlaw.com |
| Thomas R. Theado | ttheado@gntlaw.com |
| Robert D. Wick | rwick@cov.com |
| George Edward Yund | gyund@fbtlaw.com |

              s/  Thomas R. Theado
              Thomas R. Theado (0013937)
              Attorney for Plaintiffs
              GARY, NAEGELE & THEADO, LLC
              446 Broadway Avenue
              Lorain, Ohio 44052-1797
              Telephone: (440) 244-4809
              Telecopier: (440) 244-3462
              E-mail: TomTheado@aol.com