IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

John D. West, on Behalf of : Case No. 1:02-cv-001
Himself and All Other Persons :
Similarly Situated, :
   :
   Plaintiffs, :
   :
  vs. :
   :
AK Steel Corporation :
Retirement Accumulation Pension :
Plan, et al., :
   :
   Defendants. :

## ORDER

Before the Court is Plaintiffs' motion for an award of attorney's fees as prevailing parties under ERISA. (Docs. 131 and 177) Plaintiffs have filed a separate motion seeking a common fund fee award and an incentive award to the class representative John West. (Docs. 132 and 178) Defendants have filed separate responses to each motion (Docs. 283 and 285, respectively), and Plaintiffs have filed their replies. (Doc. 288 and 289) The briefs and exhibits for these motions span more than 1,000 pages.

The facts of this case are well known to the parties and the Court, and will be discussed as needed in conjunction with the issues raised in the fee motions.

## DISCUSSION

The Court has discretion to award fees under ERISA, 29 U.S.C. §1132(g)(1).  In exercising that discretion, the Court considers the following factors: (1) the culpability or bad faith of the opposing party; (2) the opposing party's financial ability to satisfy an award; (3) the deterrent effect on others in similar circumstances; (4) whether the party seeking fees conferred a benefit on all Plan participants or resolved a common legal question; and (5) the relative merits of the party's positions.  See <u>Armistead v. Vernitron Corp.</u>, 944 F.2d 1287, 1301 (6th Cir. 1991).

Plaintiffs clearly prevailed in this case and obtained a substantial judgment against Defendants.  Defendants were found to have violated ERISA in determining the amounts of the class members' lump-sum payments.  The Court need not find bad faith to conclude that this factor weighs in Plaintiffs' favor. Defendants are able to satisfy an award, although they suggest that the current economic climate is precarious for American steelmakers, and that market reverses have negatively affected the Plan.

Plaintiffs argue that a fee award would have a salutary deterrent effect on other pension plans, and encourage compliance with ERISA.  This factor is certainly entitled to some weight. While the precise issue posed by this case (a whipsaw calculation for lump-sum distributions from cash balance plans) will likely not arise again after the effective date of the Pension Protection Act, the fact that Plaintiffs have prevailed in this

lengthy litigation certainly has a salutary effect.  Moreover,
the judgment has a preclusive effect in the follow-on litigation,
involving claims by employees who received lump sum payments
after the close of the class period in this case.[1]  Regarding the
fourth factor, there is no doubt that Plaintiffs have conferred a
benefit shared by all class members who previously received a
lump-sum distribution from the Plan.  Plaintiffs prevailed at
every step of this case, and have secured a sizeable judgment.
Clearly, all of the applicable factors support an award of
attorney's fees.

## I.   **Lodestar Fee.**

In ERISA cases, as with other fee-shifting statutes, the
Court must first calculate the lodestar, the reasonable hours
expended on the case times the reasonable hourly rates for
Plaintiffs' attorneys.  Plaintiffs have submitted detailed time
records for their attorneys' time.  For the period from case
inception to January 2006, they report the following:

|                    | Total Hours | Less Conferencing | Net Hours | Billed Amount |
|--------------------|-------------|-------------------|-----------|---------------|
| Allen C. Engerman  | 113.25      | (2.61)            | 110.64 @$600.00 | $  66,384.00 |
| Robert D. Gary     | 65.35       | (1.31)            | 64.04 @$440.00  | $  28,177.60 |
| Jori Bloom Naegele | 32.80       | (0.59)            | 32.21 @$300.00  | $   9,663.00 |
| Thomas R. Theado   | 663.40      | (3.46)            | 659.94 @$300.00 | $ 197,982.00 |
| Thomas A. Downie   | 587.80      | (2.61)            | 585.19    | $175,557.00   |

---

[1] <u>Lintner v. AK Steel</u>, Case No. 1:09-cv-231 (S.D. Ohio).

@$300.00

**Paralegal**

Mark A. Long          65.15          -0-          65.15      $  5,537.75
@ $85.00

    **SubTotal:**                                    **$388,733.75**

    Plaintiffs submit the following request for the second period, from January 2006 through the early April 2009:

| | Total Hours | Less Conferencing | Net Hours | Billed Amount |
|---|---|---|---|---|
| Allen C. Engerman | 353.00 | (5.90) | 347.10 @$750.00 | $260,325.00 |
| Robert D. Gary | 166.20 | (4.54) | 161.66 @$575.00 | $ 92,954.50 |
| Jori Bloom Naegele | 142.80 | (3.81) | 138.99 @$500.00 | $ 69,495.00 |
| Thomas R. Theado | 962.50 | (11.35) | 951.15 @$500.00 | $475,575.00 |
| Thomas A. Downie | 871.25 | (7.62) | 863.63 @$400.00 | $345,452.00 |
| Richard M. McKee | 238.15 | (0.53) | 237.62 @$300.00 | $ 71,286.00 |
| Jeffrey A. Engerman | 232.90 | (3.32) | 229.58 @$450.00 | $103,311.00 |
| Richard A. Naegele | 216.40 | (1.18) | 215.22 @$325.00 | $ 69,946.50 |

**Paralegal**

Mark A. Long          132.95          (0.20)          132.75      $ 11,283.75
@ $85.00

    **SubTotal:**                                  **$1,499,628.75**

    Class Counsel's total requested lodestar fee is therefore $1,888,362.50.

    The column entitled "Less Conferencing" represents Plaintiffs' voluntary proposed reduction in each attorney's

"conference" hours.  This reduction is based upon the assumptions utilized by this Court in its order in <u>Dalesandro v. International Paper</u>,[2] reducing excessive conferencing hours among several attorneys.

Defendants object to both the amount of time spent and to the requested hourly rates.

**A.  Hours Reasonably Spent on the Case.**

"The [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983).  In determining the reasonableness of hours spent, the Court should not engage in a post hoc critique of strategic decisions that Class Counsel may have made in good faith during the course of the case.  See, e.g., <u>Goos v. National Ass'n of Realtors</u>, 68 F.3d 1380, 1386 (D.C. Cir. 1995), noting that "litigation is not an exact science," and the determinative issue is whether the task was reasonable in view of the ultimate goal of the case.

Utilizing an XLS format intended to avoid double-counting time entries, Defendants sorted and coded Plaintiffs' requested time under several categories to which it objects, such as "non-germane activities," "vague or inadequate time descriptions," or "excessive meeting/conferencing."  (See Doc. 283, Exhibit C,

---

[2] Case No. 1:01-cv-109, Order Granting Attorneys' Fees (Doc. 96, July 8, 2005).

Foster Declaration and attachments.)  The Court has reviewed these lengthy exhibits and will not attempt to make individual rulings on each and every listed entry.  Instead, the Court has reviewed the Plaintiffs' requested time in view of Defendants' objections.

1.  **Time Entries from 10/26/01 through 01/16/2006**:

The Court disallows the following entries from the Gary, Naegele & Theado attorneys, because they reflect excessive or unnecessary attorney time, or are not reasonably related to the litigation.

| | | |
|---|---|---|
| 1/2/2002 | JBN  10.00 | Travel to and from Cincinnati to file complaint. |
| 3/19/2002 | | Three separate entries (RDG 0.05, TAD 0.05, JBN 0.05) and one on 3/20/2002 (TRT 0.10) concerning reviewing pro hac vice orders. |
| 4/25/2002 | TRT 0.10 | Phone call with a hotel on rooms. |
| 5/10/2002 | TRT 0.80 | Reviewing Docket sheets on AK Steel |
| 5/21/2002 | TRT 0.30 | [same] |
| 7/1/2002 | | TRT (0.25), RDG (0.25), JBN (0.20), TAD (0.25), all concerning a discrimination suit against AK Steel. |
| 1/21/2003 | TRT 0.30 | Emails re new AKS president. |
| 7/15/2003 | TRT 0.25 | Emails re "Waldrop." |
| 11/19/2003 | TRT 0.25 | Email re AKS executives retirement. |
| 03/24/2003 | TRT 0.50 | Email re "his leg." |
| 10/27/2004 | | Two entries (TRT 0.35 total) Emails on Knudsen. |
| 11/29/2004 | TRT (0.05) | |
| 11/30/2004 | TRT (0.10) | Both entries t/cs to Atty Payne. |
| 1/24/2005 | | TRT 0.50, TAD 0.25, JBN 0.10, RDG 0.25, all emails re management bonuses. |

| 1/25/2005 | RDG 0.25, JBN 0.10, TAD 0.25, all emails re general counsel. |
|---|---|
| 1/29/2005 | TRT 0.30      Emails re campaign contribution. |
| 2/26/2005 | TRT (0.25), RDG (0.25), JBN (0.25), TAD (0.25), all emails re Fortune article. |
| 03/25/2005 | TRT (0.20), TAD (0.25), JBN (0.10), RDG (0.25), all emails re webcast. |
| 7/15/2005 | TRT 0.20      Email re Motley Fool article. |
| 7/25/2005 | RDG (0.25), JBN (0.25), TAD (0.25), all emails re webcast. |
| 8/19/2005 | TRT 0.30      Email on Senate race. |
| 8/22/2005 | TRT 0.10      T/c re Flower City. |
| 9/1/2005 | TRT 0.10      T/cs re Flower City. |
| 10/24/2005 | TRT (0.70), TRT (0.40), emails on other case and journal article. |
| 10/26/2005 | TRT 0.75      Emails on retirement study |
| 10/27/2005 | TRT 0.60      Email on study |
| 11/24/2005 | TRT 0.60      Email on consolidations |
| 11/29/2005 | TRT 0.40      Email on consolidations |
| 12/5/2005 | TRT 0.60      Email re Sereboff |
| 12/22/2005 | 14 separate RDG entries (out of 17 entered on same date), all re "review e-mails" on various subjects, each entry 0.25, total disallowed 3.5 hours. |
| 12/28/2005 | 4 separate RDG entries, each 0.25, to review e-mails, total disallowed 1.0 hr. |
| 01/13/2006 | TRT 0.25      Email on labor negotiations |

Defendants' blanket objection to all hours for review of company SEC reports or monitoring AK Steel's financial status during this period are overruled. Plaintiffs persuasively argue

that class counsel, primarily Mr. Theado, was obliged to stay
informed of adverse reports that might deprive the class of any
effective remedy or affect settlement potential.  Mr. Theado's
time is not excessive and is reasonably within the scope of class
representation.

However, the hours logged by all the other attorneys to
simply review the information passed along by Mr. Theado appears
excessive and duplicative.  The Court will deduct 50% of those
hours (as identified in Foster Exhibit 11), 0.7 hours for Mr.
Gary, 0.40 for Mr. Downie, and 0.4 hours for Ms. Naegele.

Allen Engerman:  Engerman's reported time for the initial
period is 113.25 hours.  Defendants note that 142 entries, or
about 80 hours, is for reported time to read emails or "review"
information.  Defendants object to **all** of Allen Engerman's time,
contending his entries do not document any substantive
contribution to the case.

Plaintiffs disagree.  Mr. Engerman was initially contacted
by the plaintiff John West, and it was Engerman who consulted
with the GN&T firm about West's representation in this Court.
Due to Engerman's much higher hourly rate, use of GN&T attorneys
helped reduced the overall fees.  Engerman is a highly
experienced attorney who has practiced law for almost 50 years.
For the past 15 years he has specialized in ERISA class actions
on behalf of beneficiaries and plan participants.  (See Doc. 177,
Exhibit 3, A. Engerman Declaration)  His other cases particularly
include Esden v. Bank of Boston, and Lyons v. Georgia Pacific,

-8-

two previous cash balance/whipsaw calculation lawsuits, both of which resulted in favorable appellate decisions cited by the Sixth Circuit in this case. Engerman states that he exercised "extreme prudence and care" in recording his time, and that only time he believes was productive to the case was listed.

The Court does not question Mr. Engerman's expertise and long experience. However, the Court disallows several entries from his time for the same reasons that similar entries for the GN&T attorneys are disallowed, as of marginal relevance to the case or reflecting excessive attorney time:

| | | |
|---|---|---|
| 03/20/2002 | 0.25 | pro hac vice order |
| 07/01/2002 | 0.25 | Email re AK Steel discrimination suit |
| 01/21/2003 | 0.25 | Email re AK Steel new president |
| 07/15/2003 | 0.25 | Email re Waldrop |
| 10/22/2004 | 0.75 | Emails re case reassignment |
| 10/22/2004 | 0.50 | [same] |
| 10/22/2004 | 0.25 | [same] |
| 01/24/2005 | 0.50 | Email re management bonuses |
| 01/25/2005 | 0.50 | Email re general counsel |
| 01/29/2005 | 0.50 | Email re campaign contribution |
| 02/26/2005 | 0.25 | Email re Fortune magazine |
| 10/24/2005 | 0.25 | Email re Patrick v. AK Steel |
| 11/24/2005 | 0.25 | Email re consolidation |
| 11/29/2005 | 0.25 | [same] |
| 12/5/2005 | 0.25 | Email re Sereboff |
| 12/06/2005 | 0.25 | Email re pension legislation |

12/07/2005      0.25      [same]

12/10/2005      0.25      Emails re court's docket

In addition, 1.6 hours are deducted from his time for reviewing emails on financial matters, as with Messrs. Gary and Downie and Ms. Naegele.

Conferences and Meetings.

The time sheets for the initial period include time spent by five attorneys and one paralegal.  Recognizing that "excessive" time spent in conferences and meetings among the lawyers should not be included, Plaintiffs have proposed a reduction of 7.5% of each attorney's reported conference/meeting hours.

Plaintiffs contend that their lawyers prosecuted this case in a collegial manner, making tactical and strategic decisions only after consultation among the attorneys.  Defendants contend that the majority of time entries by Robert Gary, Jori Naegele, and Allen Engerman do not document any substantive contribution to the case, as they read emails from or conferred with Theado and Downie (whom Defendant concedes were the lead lawyers for the litigation).  The Court does not question the long experience and expertise of Gary, Naegele and Engerman.  But several of their billing entries are vague.  For example, there are over 20 RDG entries describing a phone call with A. Engerman on "issues."

In Dalesandro, the Court was required to estimate total conferencing time due to counsels' block billing.  Once estimated (based on corresponding entries from other lawyers), the Court assumed that 15% of that time was duplicative, and reduced that

by half.  That sort of estimated calculation is not required here; counsel have not block-billed and have segregated what they believe to be their "conferencing" time - a total for all attorneys of 140.85 hours, out of 1414.50 total reported, or just under 10% of total hours.  (See Doc. 131, Exhibit 8.)  (The Court notes that this exhibit does not include all time spent by the lawyers conferring or talking to each other.  For instance, not all of the telephone calls on "issues" between Gary and Engerman cited above are included on Plaintiffs' Exhibit 8.)

Theado logged a total of 663.40 hours for this period, 46.15 of which he describes as "conference" hours, and the bulk of those were for conferences and meetings with Downie.  Downie billed a total of 587.80 hours, of which 34.60 he identifies as conference hours.  Given that these two attorneys performed the bulk of the substantive work in this case, and given the many complex issues that were involved over the history of the litigation, the Court cannot conclude that these conference hours for Theado and Downie are excessive or duplicative.  No reduction will be made for those hours.

Robert Gary logged a total of 65.35 hours, of which Plaintiffs classify 17.45 as "conference" time, or 26.7% of his total time.  J. Naegele billed a total of 32.80 hours, of which Plaintiffs categorize 7.90 hours for conferences, 24% of her total time.  Given that all of the Theado and Downey conference time is allowed, the Court finds that a reduction of an additional 10% of the reported conference time for these two

attorneys is appropriate. Gary's time is further reduced by 1.75 hours, and J. Naegele's by .79 hours.

Aside from conference and meeting hours, the bulk of time reported by Gary and Naegele is to "review emails" on various subjects. See, e.g., entries on 9/22/2003; 4/23/2004; 5/29/2004; 6/8/2004; 7/15/2004; 8/12/2004; and 10/20/2004. The Court appreciates that lawyers working on a complex class action must stay informed about the case. But some of these entries are either about routine matters, or simply indicate a "review" with no indication of resulting substantive input. The Court previously reduced Gary's "review" hours (for 12/22 and 12/28/05) by 4.5 hours, and also reduced time for reviewing financial information emails, and so no further reductions to Gary's time are made on this basis. The Court will reduce J. Naegele's time by 2%, or 0.65 hours, to account for such routine entries.

The Court will also deduct 10% of A. Engerman's reported conference hours, or 3.48 hours. (His conference time is listed under the initials "OTH" on Plaintiffs' Exhibit 8.)

The time requested for paralegal assistance, 65.15 hours, is approximately 4.5% of the total reported attorney time for the period. The Court finds these entries and the amount of time to be reasonable and it is allowed in full.

The reductions discussed so far for the initial 2001-2005 period are as follows:

|  | Requested Hours | Deducted Hours | Allowed Hours |
|---|---|---|---|
| Allen C. Engerman | 113.25 | 11.08 | 102.17 |

| | | | |
|---|---|---|---|
| Robert D. Gary | 65.35 | 8.50 | 56.85 |
| Jori Bloom Naegele | 32.80 | 12.89 | 19.91 |
| Thomas R. Theado | 663.40 | 9.60 | 653.80 |
| Thomas A. Downie | 587.80 | 1.95 | 585.85 |
| **Paralegal** | | | |
| Mark A. Long | 65.15 | -0- | 65.15 |

### 2.   Time Entries from January 2006 through April 2009.

The submitted time entries for this period are attached to Doc. 177 and are lengthy.  Plaintiffs again attach a schedule segregating what they believe to be their conference hours. (Doc. 177, Exhibit 5)

Defendants object to the extensive amount of time spent on this part of the case.  They note that three additional attorneys worked on the case after this Court granted final judgment, and the total time logged is more than double the time spent from inception through final judgment in this Court.  Defendants also object to excessive time spent by several lawyers for "review," and for excessive and duplicative meetings and conferences.

Jeffrey Engerman:  Plaintiffs state that Jeffrey Engerman, whose office is in Los Angeles, California, was first involved in the case in November 2004, but that he did not log any time until after final judgment was entered.  Plaintiffs contend that by early January 2006, they were engaged in a "three-front war" to defend their judgment: the Sixth Circuit appeal; fending off legislative proposals that could have deprived them of the judgment; and "battles" in the Executive

-13-

Branch.  Plaintiffs needed more "troops" for these "wars," and Jeffrey Engerman became more active in the case.  Plaintiffs assert that much of the required editing and revision work was "offloaded" from other lawyers to J. Engerman, who provided "great insights" on issues.  (See Doc. 289 at p. 12)

Defendants note that the large majority of J. Engerman's time, like that of A. Engerman's, is for "review and analysis," or for conferences with other attorneys.  Defendants also note the somewhat remarkable similarity in the two Engermans' time descriptions.  Foster Exhibit 4 (Doc. 283, Exhibit C) contains a side-by-side comparison of these entries, the large majority of which are identical.  The major difference between them is that J. Engerman typically billed 0.10 hour for "review and analysis" of emails, while A. Engerman typically billed 0.25 hours for the same task.

The Court must conclude that J. Engerman's time logs do not substantiate Plaintiffs' arguments.  Allen Engerman, who has unquestionable extensive experience in ERISA litigation in general, and cash balance "whipsaw" cases in particular, was involved in the case from the very beginning.  J. Engerman is a 1999 law school graduate who has been co-counsel in several ERISA cases.  It is not clear what added value or expertise J. Engerman provided after final judgment was entered.  While Plaintiffs argue that he provided valuable "editing and revision work," the vast majority of his reported hours are for "review and analysis" of emails from Mr. Theado and others, not for editing or revising

anything.  The identical descriptions entered by the Engermans

also supports a conclusion that most of J. Engerman's time was

not reasonable, given his late involvement in the case.

In <u>Dalesandro</u>, this Court disallowed hours logged by an

attorney which consisted almost entirely of receiving and

reviewing pleadings and documents authored by others, with no

evidence of a tangible action contributing to the success of the

case.  The Court has reviewed J. Engerman's time records for the

period January 17, 2006 through March 27, 2009, and reaches a

similar conclusion.  The Court disallows all of J. Engerman's

requested time, **except** for the entries on 2/22/06 (.80 hrs);

3/4/06 (0.60); 3/10/06 (2 entries, 0.70 hrs); 3/16/06 (2 entries,

1.10 hrs); 3/20/06 (0.5 hrs); 3/21/06 (2 entries, 1.7 hrs);

3/27/06 (2 entries, 0.7 hrs); 3/29/06 (2 entries, 0.5 hrs);

4/4/06 (2 entries, 0.8 hrs); 5/5/06 (0.7 hrs); 5/24/06 (2

entries, 0.9 hrs); 7/5/06 (0.2 hrs only); 8/4/06 (0.5 hrs only);

8/15/06 (0.3 hrs); 9/11/06 (0.10 hrs); 9/22/06 (0.3 hrs); 11/1/06

(2 entries, 0.4 hrs); 11/2/06 (0.3 hrs); 2/16/07 (0.5 hrs);

3/1/07 (0.2 hrs); 4/20/07 (0.1 hrs); 6/5/07 (0.5 hrs); 7/19/07

(0.8 hrs); 8/16/07 (0.3 hrs); 8/24/07 (0.2 hrs); 12/11/07 (1.5

hrs); 12/17/07 (0.7 hrs); 12/19/07 (3 entries, 1.1 hrs); 7/16/08

(0.3 hrs); 9/17/08 (0.2 hrs); 12/2/08 (0.3 hrs); 12/18/08 (0.3

hrs); 12/19/08 (0.2 hrs); 1/29/09 (3 entries, 1.0 hrs); 2/11/09

(0.5 hrs); 2/24/09 (0.5 hrs); and 2/25/09 (0.9 hrs).

The total reasonable time allowed for J. Engerman is 21.2

hours, the identified entries which in the Court's opinion

reflect substantial effort and are not unduly duplicative of other attorneys' time. The requested time of 232.9 hours is therefore reduced by 211.70 hours.

Allen Engerman: Allen Engerman billed 353 hours for the second part of the case, of which Plaintiffs characterize 78.70 hours as conference time (22.3%). Defendants again object to the entirety of his time, arguing that his time logs do not document any substantive work. Defendants contend that A. Engerman simply reviewed emails or participated in conferences, unnecessarily attended the Sixth Circuit mediation conference, and worked on the fee petition.

As with the initial period, the majority of A. Engerman's entries describe "review and analysis" of various emails and subjects. Some of the descriptions relate to issues of tangential relevance (such as 1/27/06, "Mittal's acquisition of Arcelor," 6/23/06 "Brazilian joint ventures," or 1/29/08, "SCOTUS blog postings"). There are also several repetitive entries among Engerman and others for emails or telephone calls on the same subjects on the same day (such as repetitive checking of the Supreme Court's order list, a task unnecessarily performed by almost all the attorneys).

However, the Court also recognizes Mr. Engerman's long experience in ERISA litigation and his particular expertise in whipsaw cases. The Court will not second-guess reliance placed on Mr. Engerman's expertise and advice by Messrs. Theado, Downie or their colleagues during the appellate portion of the case by

questioning each and every one of Engerman's time entries. To
account for the duplicative or marginally relevant descriptions
in some entries (which the Court believes is approximately 10% of
the total), for overlap with J. Engerman's disallowed time, and a
10% reduction for conference time, the Court will reduce Mr.
Engerman's total time by 30%, or 105.90 hours.

<u>Robert Gary and Jori Naegele</u>.  The time entries for Mr.
Gary for the second period total 166.20 hours.  According to
Plaintiffs, this includes 60.55 hours in conferences and meetings
with other counsel, 36.4% of his time.  A large portion of the
remaining entries are for review of e-mails, articles or orders.
Ms. Naegele logged 142.80 hours, of which 50.75 (35.5%) are
conference hours, and 32.90 hours are for review of emails.

Both Gary and Naegele traveled to Washington in April 2008
to observe Supreme Court arguments in <u>Metropolitan Life v. Glenn</u>.
That case was on appeal from the Sixth Circuit, and the question
on which certiorari was granted dealt with the appropriate
standard of judicial review of a plan administrator's conflict of
interest, arising when the plan both determines and pays claims.[3]
That issue seems to be of marginal relevance to the issues
presented in Defendants' certiorari petition, and it is unclear
why two lawyers needed to attend.  5.2 hours are deducted from
Gary's time (4/22 and 4/23/08), and all of Ms. Naegele's 10.2
hours for this trip.

---

[3] See <u>Metro. Life Ins. Co. v. Glenn</u>, 128 S.Ct. 1117 (Jan.
18, 2007), order granting petition for certiorari.

Both Gary and Naegele also traveled to Cincinnati for the Sixth Circuit oral arguments in this case (along with Messrs. Theado, Downie, and Richard Naegele).  The Court finds it excessive for five attorneys to bill for travel out of town, to observe other arguments before the Circuit panel, and to attend the appellate argument in this case.  Mr. Gary's and Ms. Naegele's hours for these activities (13.7 hours for each attorney on 3/15 and 3/16/07) are reduced by 50%, or 6.85 hours each.

Defendants also note that Gary and Naegele (along with Theado, Downie, and A. Engerman) attended the Sixth Circuit mediation conference in June 2006.  Five attorneys may appear to be excessive for this purpose.  However, the Court is aware that the Sixth Circuit's Mediation Office encourages the participation of all knowledgeable counsel at such conferences.  The Court cannot conclude that the decision to have these lawyers participate in the mediation, given the magnitude of the issues at stake, was excessive or unnecessarily duplicative.

The Court finds that a reduction in conference time for the second portion of the case is also appropriate, especially given the higher percentage of conference hours in the total reported time.  The Court reduces the hours Plaintiffs categorize as conference time for both Mr. Gary and Ms. Naegele by 15%, a further reduction of 9.08 hours for Gary and 7.61 hours for Ms. Naegele.  Both attorneys' time is also reduced by 5% of total, to account for duplicative entries among counsel, or 8.31 for Gary

and 7.14 for J. Naegele.

   <u>Thomas Theado and Thomas Downie</u>.  As previously noted, Defendants do not dispute that Theado and Downie were essentially the lead attorneys.  Mr. Downie has appeared before this Court for oral argument and he argued the Sixth Circuit appeal.  The Court is well aware of Mr. Theado's extensive work throughout this case.  Defendants state that, in view of their objections to the time requested by the other attorneys, they are not objecting to conference/meeting time for these two lawyers.  The Court is not sustaining all of Defendants' other objections, but does conclude that some reduction in conferencing time is appropriate.  Recognizing their lead roles, the Court will deduct the suggested 7.5% of the reported conference time for each, or 11.35 hours for Theado, and 7.62 hours for Downie.

  Defendants also object to what they categorize as non-germane or inadequately described entries for Theado and Downie, listed in Foster Exhibits 11 and 12.  With respect to the 2006-2009 time, as was the case with A. Engerman, the Court finds that some reduction in both Theado's and Downie's time is appropriate.  Several entries on Exhibit 11 appear to be tangentially related to the issues in the case (such as emails concerning AK's option activity or a union strike), or are not recoverable (contacts with press or posting information on the firm's website).  The Court will reduce Theado's and Downie's time by 25 hours each to account for these and similar entries.

  Regarding entries on Foster Exhibit 12, most of these are

telephone calls or meetings among counsel where a particular topic was not identified in the billing entry. Given the reductions already made above with respect to conferencing time, no further reduction will be made for time listed there for Theado and Downie.

Richard Naegele. Mr. Naegele is with a different law firm from Messrs. Theado, Downie, Gary, and J. Naegele. He specializes in pension, ERISA and employee benefits issues, with specific expertise in plan administration and regulations. He has practiced law for thirty years, has served as a court-appointed administrator, and as a special master appointed to oversee the operation of a multi-employer pension plan. (R. Naegele Declaration, Doc. 177 at Exhibit 3.)

Defendants initially object to the late submission of R. Naegele's pre-January 2006 time. His time records were not included in Plaintiffs' original statutory fee motion filed in January 2006. Plaintiffs respond that the charges for his time were mistakenly submitted as a litigation expense with Plaintiffs' prior "common fund" fees motion. (See Doc. 132, Exhibit 4 at p. 5, identifying $25,345.00 payable to the firm of Wickens, Herzer, Panza, Cook & Batista for service through January 11, 2006.) All briefing on attorneys' fees was stayed shortly after those initial motions were filed.

The Court finds that Plaintiffs' failure to submit R. Naegele's complete time records with their 2006 motion is harmless. Defendants have had a full opportunity to review his

time and to present their objections. The Court has reviewed the entries covering the period August 18, 2001 to January 7, 2006, totaling 97.40 hours, and finds that they document R. Naegele's substantive and specific contribution to the case in his area of expertise, are not excessive, and are not unduly duplicative of time submitted by others.

Regarding R. Naegele's 2006-2009 time (119 hours), Defendants object to his excessive "review" or "analysis" of work done by others, which Defendants assert was 83.90 hours. The Court disagrees that these entries reflect excessive time. Unlike the seriatim entries for "review of email" on various subjects that appear on J. Engerman's time records, R. Naegele's time records reflect that he was generally asked to review subjects within his particular expertise. Entries that include "review and analysis" also most often include providing feedback or responses to Theado or Downie, and occasionally A. Engerman. The Court considers it reasonable for Mr. Naegele to attend the Sixth Circuit appellate argument, given that Court's consideration of the effect of the Pension Protection Act and I.R.S. Notice 2007-6 to Plaintiffs' claims. Given his relatively few reported conference hours, no reduction is made due to what Defendants contend is "excessive" conference time. The Court overrules Defendants' objections to Mr. Naegele's time, and finds that the requested hours are reasonable.

Richard McKee. Mr. McKee is a 2005 law graduate who first reported time on this case on April 21, 2007, the day after

the Sixth Circuit's opinion affirming this Court's judgment. McKee was admitted to the Ohio bar in 2005, passed the United States Patent Office bar examination in August 2007, and he has been with the GN&T firm since then. (Doc. 177, Exhibit 3, McKee Declaration) McKee logged 238.15 hours from April 2007 through April 2009.

Defendants challenge 9.95 hours of McKee's time as non-germane (Foster Exhibit 11), and 2.8 hours because the entries are vague (Foster Exhibit 12). All but one of these entries reflect time spent by a very junior attorney to review emails on a variety of subjects. 10.95 of this 12.75 hours are deducted. The Court also discounts McKee's conference hours (which Plaintiffs state are 7.10 hours) by 50%, or 3.55 hours, due to his junior status and late entry to the case.

McKee's entries from August 16 to December 19, 2007 (with a handful of minor exceptions) are for research on contra proferentum in connection with the certiorari petition, a total of 111.75 hours. This is almost half of McKee's total hours. The Court finds this to be an excessive amount of time spent by a junior attorney on basic research, and deducts 60%, or 67.05 hours. The balance of McKee's entries generally reflect assistance provided to Theado and Downie on aspects of the case that a junior attorney could be expected to perform. The requested paralegal time (132.95 hours) is reduced by 17.70 hours for the entries listed in Foster Exhibit 11. The Court agrees that this time is not reasonably related to the case.

-22-

The adjustments discussed so far for 2006-2009 are:

|  | Requested | Deducted | Adjusted |
|---|---|---|---|
| Allen C. Engerman | 353.00 | (105.90) | 247.10 |
| Robert D. Gary | 166.20 | (29.44) | 136.76 |
| Jori Bloom Naegele | 142.80 | (31.80) | 111.00 |
| Thomas R. Theado | 962.50 | (36.35) | 926.15 |
| Thomas A. Downie | 871.25 | (32.62) | 838.63 |
| Richard M. McKee | 238.15 | (81.55) | 156.60 |
| Jeffrey A. Engerman | 232.90 | (211.70) | 21.20 |
| Richard A. Naegele | 216.40 | -0- | 216.40 |
|  | (includes all RAN time, 2001-2009) | | |
| **Paralegal** | | | |
| Mark A. Long | 132.95 | (17.70) | 115.25 |

3. <u>**Lobbying Time**</u>.

Defendants generally object to any time requested for "lobbying" Congress or the Executive Branch. Foster Exhibits 8 and 9 contain the entries to which Defendants object on this basis.

In <u>Kentucky Restaurant Concepts v. City of Louisville</u>, 117 Fed. Appx. 415 (6th Cir. 2004), Plaintiffs successfully challenged the constitutionality of an adult entertainment regulatory ordinance. The district court granted plaintiffs attorneys' fees, but disallowed time spent by their attorneys to oppose the ordinance's original passage by appearing before the local Board of Aldermen. Plaintiffs argued that the presentations and arguments made to the Board amounted to work spent on gathering evidence that they later used to challenge the

ordinance in court.  The Sixth Circuit rejected this argument, noting that while it "... may be advisable to pursue political alternatives before resorting to litigation, these activities, occurring before the initiation of a lawsuit, are not within the purview of litigation."  Id. at 420 (internal citation omitted).

Defendants cite Halderman by Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939 (3rd Cir. 1995), where the Third Circuit rejected a fee request for "lobbying" time.  But there, the disallowed fees were for time spent publicizing plaintiffs' successful contempt motion, which was based on defendants' violations of a prior consent decree.  The Third Circuit noted that the disallowed time was for "writing press releases, speaking with reporters and otherwise publicizing the contempt motion."  Citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169 (4th Cir. 1994), the court noted that fees for time spent in attempting to "sway public opinion" are not recoverable.

There was no pre-suit "lobbying" in this case as there was in Kentucky Restaurants.  And the time entries Defendants challenge as "lobbying" are (with a few exceptions) not for press releases or public relations efforts by counsels' firm.  Rather, Plaintiffs state that sometime in 2005, Congress began considering amendments to ERISA, particularly with respect to cash balance plans.  The resulting legislation, the Pension Protection Act of 2006, permits a cash balance plan to pay a participant his or her hypothetical account balance without performing the whipsaw calculation.  The PPA expressly states

that those provisions apply only to distributions made after August 17, 2006.  The Sixth Circuit held that the PPA does not apply to this case; see <u>West v. AK Steel</u>, 484 F.3d at 411-412, rejecting Defendants' contrary arguments.

In the months prior to PPA's passage, however, Congress apparently debated making the cash balance changes retroactive. See, e.g., the letter addressed to "Colleagues" signed by Senator Brown and then-Congressman Strickland, December 15, 2005, urging rejection of any retroactive effect of the pending bills. (See Doc. 178, Exhibit 1)  Plaintiffs filed with their reply brief some of AK Steel's lobbying reports, showing payments to its attorneys for Congressional lobbying on the PPA, and specifically on interpretation of Section 701(e)(2), the cash balance/whipsaw provision.  (See Doc. 289, Exhibits 1-4)  Plaintiffs argue that any time their lawyers spent on these efforts was directly related to the lobbying by Defendants and others and was necessary to protect their judgment, and is therefore reasonably related to the litigation.

As an initial matter, the Court rejects Defendants' characterization as "lobbying" of a reasonable amount of time spent by attorneys keeping themselves informed about the pending legislation, and communicating with class members about these important issues.  (See, e.g., Theado entries on 1/25/06, 3/25/06, and 6/8/2008, among others which reflect communications with class members.)

But it is also apparent to the Court that some of the

challenged entries describe classic "lobbying" efforts - communicating or meeting with Congressional representatives or their staff, preparing position papers, monitoring Congressional floor debates or committee hearings, or communicating with other attorneys not involved in this case about the legislation. There are several reasons the Court must conclude that fees for this sort of "lobbying" cannot be awarded. First, there is no objective manner by which to measure the effectiveness of counsels' efforts. While the final PPA statute operates prospectively and did not affect the judgment, that result is not necessarily due to counsels' efforts. The legislative history suggests that the final bill was the result of protracted negotiations between the Senate and the House on a variety of contentious issues. There is no way for this Court to know how or why various legislators ultimately voted the way they did.

Second, the Sixth Circuit has held that a prevailing ERISA plaintiff may not recover attorneys' fees for time spent in a pre-suit administrative claim process. See Anderson v. Proctor & Gamble Co., 220 F.3d 449, 456 (6th Cir. 2000). This is true even though exhaustion of administrative remedies is usually required. If fees incurred to exhaust required administrative remedies are not recoverable, it is highly doubtful that fees incurred to lobby elected officials should be recoverable.

Third, Plaintiffs have not demonstrated that "lobbying" on the issue could not have been done by non-lawyers. Counsel in this case obviously have expertise and experience in complex

ERISA issues and in the whipsaw calculation.  However, the issue Congress was considering that affected this case was whether or not PPA's cash balance provisions would apply retroactively. Retroactivity of legislation is not an especially complex legal question arising only under ERISA, and it is an issue which likely arises with some frequency in a wide variety of areas.

Fourth, Plaintiffs' counsel is actively involved in other ERISA and pension litigation.  Their time spent regarding all of the legislative and regulatory proposals may well have benefitted other clients.  The Court could not conclude that all of these efforts were related only to this case, such that all of the fees should be paid by Defendants.

The fact that Defendants may have paid their own lobbyists is not dispositive of the merits of this issue.  The same observations would apply if Defendants had prevailed and were seeking recovery for their lobbying fees.  Furthermore, Defendants have rightfully objected to the submission of these lobbying reports with Plaintiffs' reply brief.  The Court has not considered and does not need to consider these records to arrive at a decision on this question.

The time entries listed in Foster Exhibit 8 that reflect communications with class members, or reasonably staying informed of potential legislative impacts on the judgment, is not "lobbying."  Theado's 2001-2005 time for what the Court finds is "lobbying" or closely related activity included in Foster Exhibit 8 is approximately 15% of the total hours listed, a reduction of

6.59 hours.  Theado's 2006-2009 hours are reduced by 35%, or 50.28 hours.  The Court believes this discount fairly reflects time spent communicating with Congressional members and staff, preparing position papers, watching broadcasts, and participating in telephone calls unrelated to the case.

Mr. Downie's "lobbying" entries are primarily for reviewing emails from and discussing issues with Theado, and some research on legislative and tax concerns.  The Court will deduct 35% of Downie's 2006-2009 hours (25.97 hours) for the same reasons that Mr. Theado's hours were reduced.  Downie's time spent during the initial portion of the case, 9.8 hours, is allowed in full.

The entries for Allen Engerman on Foster Exhibit 8 are largely for review and analysis of emails from Mr. Theado.  There are also some telephone calls or conferences, and a one-hour meeting with a legislator.  The Court finds it appropriate to discount Allen Engerman's 2001-2005 hours by 20% (1.4 hours), and his 2006-2009 hours by 50% (17.88 hours).  Mr. Gary's entries are similar to those of Mr. Engerman's, primarily for reviewing emails and for legislative meetings and contacts.  Most of Mr. Gary's 2001-2005 entries contained in Foster Exhibit 8 were already disallowed above; the 2006-2009 hours are reduced by 50% (14.10 hours).  Ms. Naegele's 6.4 "lobbying" hours are similarly reduced, by 3.2 hours.  (The Court has already reduced Jeffrey Engerman's time, a reduction which includes most if not all the entries on Foster Exhibit 8.  No further reduction to his time is made.)  Paralegal time is reduced by one hour (entries on

7/17/2006 through 7/28/2006 on Foster Exhibit 8).

Defendants also object to any time spent to "lobby" the Solicitor General and the Department of Labor, entries appearing on Foster Exhibit 9.  On June 9, 2008, the Supreme Court invited the Solicitor General to file a brief expressing the views of the United States concerning Defendants' certiorari petition.  The SG's brief, filed on December 2, 2008, opposed a grant of certiorari.  (The brief is attached to Doc. 177 as Exhibit 2.) Plaintiffs state that the Solicitor General's office requested a conference with both sides of this case before filing the brief.

The Court rejects Defendants' general objection that all time spent by Plaintiffs' counsel responding to and meeting with representatives of the Solicitor General or the Solicitor for the Department of Labor is "lobbying" a political body, for which fees may not be recovered.  The time was clearly related to the Supreme Court's consideration of Defendants' certiorari petition, and the meetings were held at the Solicitor's request.  The Court also overrules Defendants' general objection to the time prior to June 9, 2008, entries for which reflect research into and discussions about securing a DOL amicus brief.

Allen Engerman's 12.75 hours included in Foster Exhibit 9 is for reviewing email and for conferences with the other attorneys. Engerman's time is reduced by 50%, 6.38 hours, to avoid duplication of effort.  No reductions are granted for Mr. Gary or Ms. Naegele's time, which is minimal in any event.

Mr. McKee's 2.6 hours contained in Foster Exhibit 9 are

disallowed not because of the subject matter, but because McKee, a very junior attorney, was simply reviewing emails from or speaking with Mr. Theado on various subjects related to "lobbying."

In summary, the reductions for "lobbying" time challenged in Foster Exhibits 8 and 9 are:

Theado:        6.59  (2001-2006) and 50.28 (2006-2009)

Downie:       25.97  (2006-2009)

Gary:         14.10  (2006-2009)

J. Naegele:    3.2   (2006-2009)

A. Engerman:   1.4   (2001-2006) and 24.26 (2006-2009)

R. McKee       2.6   (2006-2009)

Paralegal:     1.0   (2006-2009)

* * *

The adjusted lodestar hours to this point, with all reductions discussed above, are:

|                    | Requested | Disallowed | Adjusted |
|--------------------|-----------|------------|----------|
| 2001 - Jan. 2006:  |           |            |          |
| Allen C. Engerman  | 113.25    | 12.48      | 100.77   |
| Robert D. Gary     | 65.35     | 8.50       | 56.85    |
| Jori Bloom Naegele | 32.80     | 12.89      | 19.91    |
| Thomas R. Theado   | 663.40    | 16.19      | 647.21   |
| Thomas A. Downie   | 587.80    | 1.95       | 585.85   |
| **Paralegal**      |           |            |          |
| Mark A. Long       | 65.15     | -0-        | 65.15    |
| Sub-Total:         | 1,527.75  |            | 1,475.74 |
| Jan 2006 - March 2009: |       |            |          |

| | | | |
|---|---|---|---|
| Allen C. Engerman | 353.00 | 130.16 | 222.84 |
| Robert D. Gary | 166.20 | 43.54 | 122.66 |
| Jori Bloom Naegele | 142.80 | 35.00 | 107.80 |
| Thomas R. Theado | 962.50 | 86.63 | 875.87 |
| Thomas A. Downie | 871.25 | 58.59 | 812.66 |
| Richard M. McKee | 238.15 | 84.15 | 154.00 |
| Jeffrey A. Engerman | 232.90 | 211.70 | 21.20 |
| Richard A. Naegele | 216.40 | -0- | 216.40 |

(includes all RAN time 2001-2009)

**Paralegal**

| | | | |
|---|---|---|---|
| Mark A. Long | <u>132.95</u> | 18.70 | <u>114.25</u> |
| Subtotal: | 3,316.15 | | 2,647.68 |

**TOTAL FOR CASE:**   **4,843.90**                      **4,123.42**

### 4.    Time Spent on Fee Motions.

Defendants have listed in Foster Exhibit 10 all the hours they contend Plaintiffs spent working on the fee motions (through early April 2009).  That exhibit includes 44 hours through January 2006, representing 2.8% of the total requested time (1527.75 hours) for the same period, and 3% of the approved adjusted time.  For the entire case, Defendants contend that the fee motion time is 230 hours, 4.7% of the total requested time, and 5.6% of the adjusted total lodestar hours.

In Coulter v. State of Tenn., 805 F.2d 146, 151 (6th Cir. 1986), the Sixth Circuit held that "[i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main

case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary." This case did not require a trial, but neither is this a mine-run ERISA benefit claim. The length of the litigation, the fact that it is a class action, and the number of discrete legal and factual issues raised during the case, are in the Court's view a set of unusual circumstances that justify a somewhat larger award than <u>Coulter</u>'s 3% guideline suggests.

Regarding the entries on Foster Exhibit 10, the Court has already disallowed almost all of the 23.10 hours of J. Engerman's time listed there. Approximately 3.2 hours of Mr. Theado's listed time is for conversations with class members on various topics, where fees were mentioned in the billing entry. The Court does not consider this to be time spent preparing fee motions. Moreover, several challenged entries are for attorney conferences on several subjects which may have included some discussion of fees. Allen Engerman's entries on Foster Exhibit 10 include 4.25 hours of telephone calls with J. Engerman. Since J. Engerman's time is disallowed, the Court will also deduct 4.25 hours from A. Engerman's time.

Making these adjustments to the time shown on Foster Exhibit 10 reduces the fee hours to approximately 200. While this is approximately 4.8% of the total adjusted lodestar time, and at the high end of <u>Coulter</u>'s range, the Court does not find this time to be unreasonable for this case. An additional 4.25 hours

are deducted from Allen Engerman's time for the 2006-2009 period, but no other reductions for fee motions will be made.

**B.**     **Hourly Billing Rates**.

Defendants object to Plaintiffs' requested hourly rates, contending they are inflated for this case and for this district. A reasonable hourly rate is usually the prevailing market rate, or the rate that lawyers of comparable skill and experience can reasonably expect to command in this venue. Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). The determination of a reasonable rate is difficult given wide variations in lawyers' experience, skill and reputation, so an attorney's customary client billing rate is one reliable indicia of that attorney's prevailing market rate. See, e.g., Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995): "... normal billing rates usually provide an efficient and fair short cut for determining the market rate." (internal citation omitted).

This Court has often referred to the 1983 Rubin Committee rates and applied a 4% annual COLA to measure the reasonableness of requested hourly rates.[4]  And in Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618, n. 6 (6th Cir. 2007), the Sixth Circuit

---

[4] That committee arrived at the following categories and hourly rates for 1983: Paralegals - $37.91/hour; Law Clerks - $23.96/hour; Young Associates (2 years of experience or less) - $61.77/hour; Intermediate Associates (2 to 4 years of experience) - $71.62/hour; Senior Associates (4 to 5 years of experience) - $82.81/hour; Young Partners (6 to 10 years of experience) - $96.39/hour; Intermediate Partners (11 to 20 years of experience) - $113.43/hour; and Senior Partners (21 or more years of experience) - $128.34/hour.

cited the Ohio State Bar Association's annual survey of hourly rates. That survey is a helpful reference; but the mean or median rates for the small group of attorneys who responded do not adequately account for the experience and expertise of Plaintiffs' lawyers in this case. This case also involved specialized knowledge of ERISA and Internal Revenue Code regulations, as well as responsibilities to the entire certified class. Plaintiffs' fee motion includes declarations from each lawyer attesting to their requested rates.

Plaintiffs filed with their reply brief a number of affidavits from other ERISA and class action lawyers concerning hourly rates. Defendants have objected to the late submission of these materials. The affidavits, expressing opinions on the relevant market and counsels' reasonable rates, were improperly filed for the first time with a reply brief. The Court is aware that opinions on appropriate hourly rates vary, sometimes widely, among experienced counsel. The Court will not consider these belatedly-filed affidavits, but will rely on the benchmarks it has used in other cases: the Court's own appraisal of the skill and competence exhibited by Plaintiffs' attorneys, the relevant market, the specialized area of law involved in this case, and the Rubin Guidelines. The Court also declines Plaintiffs' suggestion, raised in the reply, that the Court should order defense counsel to produce their billing records.

**2001-2006 Rates**: Allen Engerman, Robert Gary, Jori Naegele,

Thomas Theado, and Thomas Downie all are senior partners as defined in the Rubin Guidelines. The Guidelines suggest a senior partner hourly rate for 2005 of $304.16. Ms. Naegele, Mr. Theado, and Mr. Downie all request $300 per hour for the initial portion of the case. Mr. Gary's requested rate is $440, and Allen Engerman's is $600.

The $300 rate is eminently reasonable, and also falls within the Rubin Guidelines. Messrs. Gary and Engerman seek substantially higher rates than are typically seen in this community. Both attorneys state that they have often received fee awards that greatly exceed their standard hourly rates. Mr. Gary notes that a district court in Washington recently approved GN&T firm rates of $275 up to $575 per hour, in a lodestar-based award in a class action settlement.[5] He also states that the Northern District of Ohio awarded him $300 per hour in 1995, in an ERISA class action that resulted in a judgment for the class.[6] Applying the 4% COLA to that rate results in a $440 per hour rate for 2005.

The Court has already noted the long experience and expertise of both Messrs. Engerman and Gary, and both are in the very upper echelons of experienced litigators. This Court approved a very experienced local ERISA attorney's requested $350

---

[5] See Pelletz v. Weyerhaeuser Co., Case Nos. C08-0334 and C08-0403 (W.D. Washington), January 9, 2009 Order granting attorneys' fees and costs, attached to Doc. 289.

[6] See Costantino v. TRW, Inc., Case No. C86-3368 (N.D. Ohio), Order Approving Distribution of Fees and Expenses, May 5, 1995 (attached as Exhibit 4 to Doc. 131).

rate in 2007, even though the Rubin Guidelines rate would have been lower. (See <u>Neiheisel v. AK Steel</u>, Case No. 1:06-cv-030, Order of January 17, 2008.) In another recent case from this district, a $450 hourly rate was cited with approval in the court's lodestar crosscheck analysis of a negotiated fee award in an ERISA class action. See <u>Bailey v. AK Steel Corp.</u>, Case No. 1:06-cv-468 (Doc. 112, Order Granting Attorneys' Fees), a case challenging a threatened reduction to retiree health benefits, which was settled by creation of a $600 million trust fund. Plaintiffs' lawyers were highly experienced ERISA specialists who practice in the national market. That is also true here, and both Plaintiffs and Defendants are represented by highly experienced ERISA attorneys with national practices.

Other recent fee awards made within this district include <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729 (6th Cir. 2005), where plaintiff's lawyer, a preeminent local civil rights attorney, was awarded $350/hour for time spanning August 2003 to November 2005, a rate approved by the Sixth Circuit. In <u>Jorling v. Habilitation Services</u>, 2005 U.S. Dist. LEXIS 44005 (S.D. Ohio, July 14, 2005), the court granted $385/hour to a local, highly experienced employment lawyer who obtained a $1 million verdict for his client in an ADEA case.

The Sixth Circuit has noted a general rule concerning out-of-town lawyer's rates:

> [W]hen a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is

pending, the court should deem the relevant community
for fee purposes to constitute the legal community
within that court's territorial jurisdiction; thus the
prevailing market rate is that rate which lawyers of
comparable skill and experience can reasonably expect
to command within the venue of the court of record,
rather than foreign counsel's typical charge for work
performed within a geographical area wherein he
maintains his office and/or normally practices, at
least where the lawyer's reasonable home rate exceeds
the reasonable local charge.

Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 350 (6th Cir.
2000) (internal citations and quotations omitted). The Sixth
Circuit found an exception to that general rule applied in
Adcock, where the district court had refused to award out-of-town
counsel his normal billing rate. The Sixth Circuit reversed
because defendant had forced the plaintiff to retain an out-of-
district lawyer to take a deposition from a defense witness in
another state.

Moreover, the Sixth Circuit has also noted that out-of-town
counsel with experience and knowledge regarding a client or a
particular area of law may handle a matter more efficiently than
local counsel, who would have to spend extra time to learn the
facts and the law. See, e.g., Graceland Fruit, Inc. v. KIC
Chems., 320 Fed. Appx. 323, 329-330 (6th Cir. 2008), approving
out-of-town counsel's rates based on a long-standing attorney-
client relationship, and because local counsel would have had to
get "up to speed" on the facts, increasing the fees. Plaintiffs
also cite Torgeson v. Unum Life Ins. Co., 2007 U.S. Dist. LEXIS
9332, at *18-21 (N.D. Iowa February 5, 2007), where the Iowa
district court granted $425 per hour to an experienced ERISA

lawyer from Chicago, noting he was able to prosecute the case more efficiently than local attorneys who were not as familiar with the applicable law, resulting in an overall reasonable fee even at his higher out-of-town hourly rate.

This Court recently found it reasonable for parties to retain out-of-town counsel in a patent infringement action, because it is a highly specialized practice area in which it is quite common to obtain out-of-town counsel.  This Court granted higher rates but at the average patent rate in counsel's home district ($381, reduced from a requested rate of $425).  See Swap-a-Lease v. Sublease Exchange.com, Case No. 1:07-cv-45, April 27, 2009 Order granting attorneys' fees.  Much like a patent case, this case benefitted from counsels' specialized knowledge of ERISA and of class action management issues.

Finally, Hensley noted that where a plaintiff has obtained "excellent results, his attorney should recover a fully compensatory fee."  461 U.S. at 435.  Plaintiffs' lawyers clearly achieved exceptional success for the class, which the Court finds is appropriate to consider in determining a reasonable hourly rate.

Balancing all of these factors, the Court concludes that  a reasonable 2005 rate for both Mr. Gary and Mr. Engerman is $425.  The requested paralegal rate of $85 per hour is reasonable under the Rubin Guidelines, Defendants do not object, and it is approved.

**2006-2009 Rates**: The hourly rates sought for the latter

portion of the case are: A. Engerman $750; R. Gary, $575; J. Naegele $500; T. Theado $500; T. Downie $400; R. McKee $300; J. Engerman $450; R. Naegele $325.  These rates reflect increases over the 2005 requested rates of 25% for A. Engerman, 30.68% for Mr. Gary, 33% for Mr. Downie, and 66% for Mr. Theado and Ms. Naegele.  Publicly-reported inflation rates for the same time period pale in comparison.  A 4% COLA applied to Mr. Theado's requested 2005 rate results in a 2009 hourly rate of $351.  The same increase applied to the approved 2005 rates yields a $497 rate for Messrs. Gary and A. Engerman.  Plaintiffs have not justified these very large increases in their requested hourly rates.  The Court will award increases of 4% per annum over the approved 2005 rates.

Mr. McKee is considered an intermediate associate under the Rubin Guidelines, and Jeffrey Engerman is a young partner. Mr. McKee's requested rate of $300 for a very junior lawyer is not reasonable, and the Court will use the Rubin Guideline adjusted rate of $191.  Plaintiffs' initial fee motion notes that, while they were not seeking fees for J. Engerman at that time, "courts in the past have awarded fees on his behalf at a rate of $225 per hour." (Doc. 131, p. 14 at n.34.)  J. Engerman's requested rate of $450 is reduced to $263, based on a 4% per annum COLA applied to his acknowledged 2005 rate.  Mr. Richard Naegele's requested rate of $325 for the entire period is within the Rubin Guidelines for senior partners, is reasonable, and is approved.

**Lodestar Summary**

Based on all of the factors discussed above, the Court concludes that the following represents the reasonably adjusted lodestar amount:

| 2001-2005: | Hourly Rate | Hours | Fees |
|---|---|---|---|
| A. Engerman | $ 425 | 100.77 | $42,827.25 |
| R. Gary | $ 425 | 56.85 | $24,161.25 |
| J. Naegele | $ 300 | 19.91 | $ 5,973.00 |
| T. Theado | $ 300 | 647.21 | $194,163.00 |
| T. Downie | $ 300 | 585.85 | $175,755.00 |
| M. Long | $ 85 | 65.15 | $ 5,537.75 |
| Sub-Total: | | | $448,417.25 |

| 2006-2009: | | | |
|---|---|---|---|
| A. Engerman | $ 497 | 218.59 | $108,639.23 |
| R. Gary | $ 497 | 122.66 | $60,962.02 |
| J. Naegele | $ 351 | 107.80 | $37,837.80 |
| T. Theado | $ 351 | 875.87 | $307,430.37 |
| T. Downie | $ 351 | 812.66 | $285,243.66 |
| R. McKee | $ 191 | 154.00 | $29,414.00 |
| J. Engerman | $ 263 | 21.20 | $ 5,575.60 |
| R. Naegele | $ 325 | 216.40 | $70,330.00 |
| M. Long | $ 85 | 114.25 | $ 9,711.25 |
| SubTotal: | | | $915,143.93 |

**TOTAL LODESTAR FEES:**                **$  1,363,561.10**

Plaintiffs do not seek an enhancement or multiplier of the lodestar.  The Sixth Circuit has indicated that such enhancements

are generally impermissible, except in "rare cases of exceptional success." Barnes v. City of Cincinnati, 401 F.3d 729, 745 (6th Cir. 2005). Plaintiffs have not addressed the issue, and therefore the Court need not consider it.

## II. Common Fund and Class Representative Awards.

Plaintiffs filed a separate motion seeking an attorneys' fee award of 28% of the amount of the judgment. (Docs. 132 and 178) They argue that, after notice to the class and a fairness hearing, a percentage-of-the-fund award is appropriate to compensate class counsel, and that the statutory lodestar fee should be paid to the class. They cite Costantino v. TRW, cited above, where the district court followed that procedure, awarding 30% of the judgment fund to class counsel and the statutory fees to the class. (See Doc. 131, Exhibit 4)

Plaintiffs' motion offers many arguments in support of a percentage-based common fund award. They note that fees recovered under a fee-shifting statute belong to the prevailing party and are paid by the losing defendant. But any such fee award does not invalidate a client's obligation under a fee agreement with the attorney. They argue that a lodestar award paid by the defendant similarly should not preclude the Court from granting a percentage fee award from the judgment fund. They note that different factors underlie the determination of a common fund award and prevailing party statutory fees. Contingency risk is a particular difference, as the Supreme Court has held it is improper to consider risk in awarding a lodestar

multiplier (at least in an individual plaintiff case).[7]

In addition, statute-based fee awards do not include all necessary or required litigation expenses, particularly expert fees, which can be considered in determining a percentage-of-the-fund award.  Plaintiffs cite <u>McClendon v. Continental Group, Inc.</u>, 872 F.Supp. 142 (D.N.J. 1994), which discussed the appropriateness of a percentage award from an ERISA settlement fund:

> The device of a lump-sum settlement is normally used in class action cases governed by a fee-shifting statute which, if the plaintiffs were to prevail at trial, might permit them to obtain substantial fees directly from the defendant in addition to the amount of any judgment.  ...  A settlement like the one reached here has the effect of converting a statutory fee case into one in which plaintiffs' attorney must seek compensation from the common fund created by the agreement.

<u>Id</u>. at 152 (internal citations and quotations omitted).

A common fund award also avoids the freerider problem of class members who benefit from the litigation without contributing to its costs.  That problem is largely avoided, however, when a defendant is paying the entirety of what the Court determines to be a reasonable fee under a fee-shifting statute.

The motion also argues that the award of an unenhanced lodestar fee is a disincentive to class counsel in this case, who faced a determined and well-financed adversary and were required

---

[7] See <u>City of Burlington v. Dague</u>, 505 U.S. 557, 567 (1992).

to litigate to final judgment and through a lengthy appeal.[8]
They suggest that experienced class counsel may avoid prosecuting
class actions under fee-shifting statutes if they cannot be
adequately compensated.  Limiting fee recoveries to the lodestar
would also encourage cheaper settlements to maximize an
attorney's percentage recovery, rather than pursuing a case to
final judgment that recovers 100% of the class claims.  They
argue that the factors utilized in this circuit to determine an
appropriate common fund award support their request.  Those
factors are enumerated in <u>Bowling v. Pfizer, Inc</u>., 102 F.3d 777,
780 (6th Cir. 1996), and recently applied by this Court in <u>Hainey
v. Parrot</u>, No. 1:02-cv-733 (S.D. Ohio, November 6, 2007, Order
Awarding Fees), a class action settlement in a 42 U.S.C. §1983
case, and in <u>Clevenger v. Dillard's, Inc.</u>, No. 1:02-cv-558, 2007
U.S. Dist. Lexis 17464, at *9 (S.D. Ohio, March 9, 2007), an
ERISA class action that was settled after extensive discovery and
motion practice.

Plaintiffs also note that the class notice in this case
informed the class that it was possible that class counsel might

_____

[8]Plaintiffs' reply brief quotes from an article published in
Benefits Law Journal, prompted by the 2003 IBM cash balance plan
litigation.  The authors note that lodestar-based fee awards are
often much lower than common fund/percentage awards, suggesting
that cash balance plans should refuse to settle to make the plan
"less attractive to plaintiff lawyers ...".  (Doc. 288 at pp. 13-
14)  There is nothing in the record to suggest that Defendants
"refused to settle" in order to deny counsel a larger fee.
Moreover, such speculative economic considerations could as
easily support a plan's decision to settle "early and cheap" in
order to avoid paying any attorneys' fees on top of a potential
judgment.

be paid from any recovery.  (See Doc. 91-1, April 21, 2005, and
Doc. 104, May 24, 2005.)  That notice was distributed after class
certification as required by Rule 23(c), and was necessarily
general with regard to attorneys' fees.  More recently, the Court
has received approximately 110 letters from members of the class,
all of whom generally opine that Defendants should bear the cost
of their attorneys' fees.  See, e.g., Doc. 286, letter from class
member Edgington:

> [I]f AK Steel had properly compensated class members
> initially there would be no attorney fees.  Class
> Members would have received their full pension
> compensation earned over many years of loyal service to
> Armco Inc. at the time of their retirements. ...  It
> does not seem right that the Class Members should now
> have to incur costs, a reduction in their original
> benefit, which could have been avoided or substantially
> lower if AK Steel had initially compensated people
> fairly or had not continued to contest this lawsuit.

While these letters are certainly not dispositive, the Court
takes notice that almost 10% of the class members have sent
letters on this subject.

Finally, the pending motion recognizes that this Court
denied a common fund award in Dalesandro, an ERISA class action
that also resulted in a judgment for plaintiffs.  There,
plaintiffs sought statutory fees and a percentage fee from the
judgment fund.  Plaintiffs distinguish Dalesandro from their
position, because **both** types of fee awards were requested; here,
their proposal is to subtract the statutory fees from any
percentage fee, avoiding a "double recovery."

In Dalesandro, this Court reviewed available case law

discussing common fund awards in class actions under fee-shifting statutes that result in judgments.  In particular, the Court cited <u>Brytus v. Spang & Co.</u>, 203 F.3d 238 (3rd Cir. 2000). There, plaintiffs sued an ERISA plan sponsor who had terminated the plan and seized the surplus plan assets.  The district court ordered defendant to pay the entire reversion amount back to the plan.  Plaintiffs then applied for prevailing party attorneys' fees under ERISA and a percentage of the fund created by the judgment, with the statutory fee amount to be subtracted from the percentage award.  The district court denied that request and awarded an unenhanced lodestar fee.

The Third Circuit affirmed.  The court cited <u>Dague</u>'s sharp limits on the availability of a lodestar enhancement, noting some uncertainty whether <u>Dague</u>'s prohibition on risk multipliers would also apply to common fund awards (or to the lodestar cross-check in such cases).  Even assuming <u>Dague</u> would not bar recovery of some kind of enhanced fees, the Third Circuit accorded great deference to the trial court's decision that the lodestar fees awarded were reasonable.  The court found that no inequity resulted from that award which would justify disturbing the trial court's decision.

The court also addressed the argument raised here, that awarding an unenhanced lodestar for successfully pursuing a class action to judgment will foster more "cheap" settlements.  The solution to that possibility, in the <u>Brytus</u> majority's view, is to subject fee applications in settled cases to thorough judicial

scrutiny.  The court did not adopt a rule that fees in cases litigated to judgment should be close to what might be awarded from a settlement.  Nor did the court rule that the common fund doctrine can never be applied to a judgment, suggesting it might be appropriate if a defendant could not pay statutory fees, or if plaintiffs could adequately establish that competent counsel would not have been available otherwise.

The <u>Brytus</u> dissent would have remanded the case with specific directions to the district court to determine if the case merited a higher fee award.  It noted a concern that the majority's decision "... creates a compelling incentive for the plaintiffs' counsel to settle, thus adding to the already significant conflict of interest between plaintiff class members and their counsel."  <u>Id</u>. at 249.

The Sixth Circuit has not directly addressed this specific question.  <u>Rawlings v. Prudential-Bache Properties</u>, 9 F.3d 513 (6th Cir. 1993) discussed the advantages and disadvantages of both methods of fee calculation, but the case involved a securities case settlement.  The court reaffirmed the district court's broad discretion in arriving at a reasonable fee.

The Court is aware of the perceived disadvantages articulated by counsel of an unenhanced lodestar award.  The approved lodestar fee is approximately 2.7% of the total judgment deposited with the Court.  It is entirely possible that an earlier settlement of the case would have resulted in a higher fee award.  (For instance, in <u>Clevenger</u>, the Court awarded 29% of

-46-

a $35 million settlement fund, or $10.15 million, an amount to which none of the 25,500 class members objected.)

However, many courts including this one have found that the lodestar provides a more careful check on fees. It affords greater accountability, and avoids requiring class counsel to argue for a share of their clients' recovery. See, e.g., <u>Cook v. Niedert</u>, 142 F.3d 1004 (7th Cir. 1998), affirming the district court's use of the lodestar (plus a multiplier) in a settled ERISA class action. This Court has denied the bulk of Defendants' objections to the lodestar calculation, and has granted hourly fees that are generous for this district. The Court finds that the lodestar calculated above is fair and reasonable compensation for counsels' endeavors in this case, which clearly resulted in an excellent result.

Defendants have raised other objections to a common fund award (including that ERISA's anti-alienation rules would bar an award), and Plaintiffs have responded, in particular by challenging Defendants' standing on this question. The Court declines Defendants' suggestion that they be considered amicus parties on this question. The Court expresses no opinion on any arguments and objections to a common fund award that are not addressed in this order. Plaintiffs' motion to submit supplemental authority on these issues (Doc. 298) is therefore denied as moot.

The Court also expresses no opinion concerning any fee agreements that may exist between Class Counsel and the class

members, as that issue is not before the Court.

**Incentive Award to Class Representative West**.

Plaintiffs' common fund motion also seeks an incentive award to the lead plaintiff, John West, of $45,000.  Mr. West has been actively involved in the case from the beginning.  The Court does not doubt Mr. West's contributions, and his services on behalf of the class were valuable.  The requested amount is comparable to awards permitted in <u>Hainey v. Parrott</u> ($50,000 to each class representative), and in <u>Brotherton v. Cleveland</u>, 141 F.Supp.2d 907 (S.D. Ohio 2001) ($50,000 award).

However, both of those cases were common funds created by a settlement.  In <u>Hadix v. Johnson</u>, 322 F.3d 895 (6th Cir. 2003), an incentive award was sought by the named plaintiff in a prison reform case that resulted in a consent decree but no damages, and attorneys' fees had already been awarded.  The Sixth Circuit affirmed the denial of an incentive award to the named plaintiff, as the case did not create a settlement fund from which the award might be paid: "Unsurprisingly, we are unable to find any case where a claim for an incentive award that is not authorized in a settlement agreement has been granted in the absence of a common fund."  <u>Id</u>. at 898.

As this Court found in <u>Dalesandro</u>, an incentive award is not appropriate unless there is a settlement fund from which that award would be paid.  Therefore, the motion for an incentive award is denied.

**III.  Court Costs.**

Plaintiffs seek an award of costs in the amount of
$10,723.01, as detailed in Exhibit 7 to their fee motion.
Defendants do not oppose this request, and the Court finds it to
be reasonable.

**CONCLUSION**

For all the foregoing reasons, the Court grants Plaintiffs'
motion for an award of attorneys' fees and costs pursuant to 11
U.S.C. §1132(g) (Docs. 131 and 177).  Plaintiffs are awarded fees
in the amount of $1,363,561.11, and costs in the amount of
$10,723.01.  Plaintiffs' motion for a percentage-of-the-judgment
award and an incentive award to the class representative (Docs.
132 and 178) is denied.  Plaintiffs' motion for leave to file
supplemental authority (Doc. 298) is denied as moot.

SO ORDERED.

DATED: August 31, 2009         s/Sandra S. Beckwith
                               Sandra S. Beckwith
                               United States Senior District Judge